1   Michael W. Sobol (SBN 194857)
    msobol@lchb.com
2   Nicole D. Sugnet (SBN 246255)
    nsugnet@lchb.com
3   **LIEFF CABRASER HEIMANN**
    **& BERNSTEIN, LLP**
4   275 Battery Street, 29th Floor
    San Francisco, CA  94111-3339
5   Telephone:  415.956.1000
    Facsimile:  415.956.1008
6
    Hank Bates (SBN 167688)
7   hbates@cbplaw.com
    **CARNEY BATES & PULLIAM, PLLC**
8   2800 Cantrell Road, Suite 510
    Little Rock, AR 72202
9   Telephone:  501.312.8500
    Facsimile:  501.312.8505
10
    Ray E. Gallo (SBN 158903)
11  rgallo@gallo-law.com
    Dominic R. Valerian (SBN 240001)
12  dvalerian@gallo-law.com
    **GALLO LLP**
13  1299 Fourth St., Suite 505
    San Rafael, CA 94901
14  Telephone: 415.257.8800

15  Attorneys for Plaintiff,
    individually and on behalf of
16  all others similarly situated

17                  UNITED STATES DISTRICT COURT

18                  NORTHERN DISTRICT OF CALIFORNIA

19

20

21  DANIEL MATERA, as an individual, and          Case No. 5:15-cv-04062
    on behalf of other persons similarly
    situated,                                     **CLASS ACTION COMPLAINT FOR:**

22
                        Plaintiff,                1. Violations of the California Invasion of Privacy
23                                                   Act, Cal. Pen. Code §630 *et seq.*
    v.
24                                                2. Violations of the Electronic Communications
    GOOGLE, INC.,                                    Privacy Act, 18 U.S.C. §2510 *et seq.*
25
                        Defendant.
26
                                                  **DEMAND FOR JURY TRIAL**
27

28

    1271445.2                                          - 1 -

1

**I.      INTRODUCTION**

2      1.      Defendant Google, Inc. ("Google," "Defendant," or "the Company") has

3   created a business model that relies upon intercepting, reading, and analyzing the content of

4   private email messages.  Specifically, in offering its web-based email service ("Gmail")[1] to

5   users, Google elected to forego charging money for the service, instead employing a system

6   architecture that scans each email sent to or from a Gmail accountholder, then deriving and

7   cataloging the content of that email in order to create data profiles of the communicants for

8   purposes of selling to paying customers, and sending to the profiled communicants, targeted

9   advertising based upon analysis of these profiles.

10      2.      In so doing, Google secretly and systematically diverts the transmission of

11   email messages to devices—separate from the devices that are instrumental to sending and

12   receiving email—that are designed to and do extract the messages' content.  Google analyzes

13   the content of users' email messages to predict their behavior, and to influence and manipulate

14   them in order to gain an economic advantage over them.  As Google's former CEO Eric

15   Schmidt described it: "We know where you are.  We know where you've been.  We can more

16   or less know what you're thinking about."[2]

17      3.      Google has not obtained any consent from non-Gmail users to having their

18   emails scanned, analyzed, and cataloged indefinitely.  These individuals have never agreed to

19   Google's terms of service and have not at any point or in any fashion agreed to allow Google

20   to acquire and indefinitely store the contents of their emails.  Yet, whenever these individuals

21   send or receive email messages from a Gmail accountholder, this is precisely what Google

22   does.

23      4.      Google's practice of intercepting, extracting, reading, and using the private

24   email content of individuals who do not have email accounts with Google violates the

25

26
[1] Google offers several variations of its Gmail product including Gmail for individual users, a
version for businesses called Google Apps for Work, and a version for educational institutions
called Google Apps for Education.  Collectively, all Google-based email services will be referred
27   to as "Gmail" in this Complaint.

28
[2] Interview with Eric Schmidt by Maria Bartiromo, CNBC (Dec. 9, 2009), reposted on the
Huffington Post (Mar. 8, 2010) (available at http://www.huffingtonpost.com/2009/12/07/google-
ceo-on-privacy-if_n_383105.html).

- 2 -

1271445.2

California Invasion of Privacy Act, Cal. Pen. Code §§ 630, *et seq.* ("CIPA"), and the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510 *et seq.* ("ECPA").

5.      Plaintiff seeks to represent a class of persons in the State of California, who have not established an email account with Google, and who have sent emails to or received emails from individuals who have, and for this purpose used, Google email accounts; as well as a class of all persons in the United States, who have not established an email account with Google, and who sent emails to or received emails from individuals with Google email accounts before December 19, 2014 (collectively, "the Classes").

6.      Plaintiff seeks, on behalf of the proposed Classes, (1) a declaration that Google's conduct violates CIPA; (2) a declaration that Google's conduct before December 19, 2014 violated ECPA; (3) injunctive relief in the form of, *inter alia*, an order enjoining Google from intercepting and cataloging the content of Class members' emails in violation of CIPA; (4) injunctive relief in the form of, *inter alia*, an order requiring Google to purge all information gathered from the interception of the content of Plaintiff's and Class members' messages in violation of ECPA and/or CIPA;  and (5) attorney's fees and costs of litigation.

7.      Google has committed a breach of trust from which every facilitator of communications is prohibited: it acquired the substance of individuals' communications without their consent. These acts are the twenty-first-century equivalent of AT&T eavesdropping on each of its customers' phone conversations, or of the postal service taking information from private correspondence—acts that uniformly would be condemned as egregious and illegal invasions of privacy under any circumstance. As the California Supreme Court has said:

> [A] measure of personal isolation and personal control over the conditions of its
> abandonment is of the very essence of personal freedom and dignity…. A
> [person]…whose conversations may be overheard at the will of another…is less of a
> [person], has less human dignity, on that account. He who may intrude upon another at
> will is the master of the other and, in fact, intrusion is a primary weapon of the tyrant.

1271445.2

1

2

*Shulman v. Group W Productions, Inc.,* 18 Cal. 4th 200, 231 (Cal. 1998) (citation omitted).

## II.    THE PARTIES

8.    Plaintiff Daniel Matera resides in San Francisco, California. Plaintiff does not have and never has had an email account with Google. Plaintiff has sent emails to and received emails from Gmail users.  In so doing, Plaintiff's emails were, without Plaintiff's knowledge or consent, intercepted and scanned by Google for purposes of acquiring, interpreting, and cataloging the content of those electronic communications.  Although Plaintiff has never consented to having his emails intercepted and scanned by Google for the purpose of acquiring and cataloging their message content, and has never had any mechanism by which to opt out of such practices, he has continued to—and as a practical matter must continue to—communicate with Gmail users via email:  By virtue of the ubiquity of Gmail, and the fact that tens if not hundreds of millions of Gmail accounts are presently in existence, it is impossible for Plaintiff to avoid sending or receiving emails from Gmail users.

9.    Defendant Google, Inc. ("Google," "Defendant," or "the Company") is a United States corporation headquartered in Mountain View, California, and incorporated under the laws of Delaware.

## III.    JURISDICTION AND VENUE

10.    Pursuant to 28 U.S.C. § 1331, this Court has original jurisdiction over the claims of Plaintiff that arise under the Electronic Communications Privacy Act of 1986 ("ECPA"), 18 U.S.C. §§ 2510 *et seq*.

11.    This Court has personal jurisdiction over Defendant because Defendant owns and operates a business that is headquartered in the Northern District of California and conducts substantial business throughout California.

12.    Venue properly lies in this district pursuant to 28 U.S.C. § 1391(b)(1), as Google, Inc. is headquartered in this district.

- 4 -

1271445.2

1    IV.    **STATEMENT OF FACTS**

2        13.    Google is a California-based multinational corporation that offers web-based

3    services, including, among others, the electronic communications service known as Gmail.

4        14.    In addition to providing Gmail, Google sells advertising services.

5        15.    Google products, including but not limited to Gmail, are embedded with data

6    mining devices that track individual users' behavior and report the information back to the

7    Company.  Indeed, while Google initially declared that its collection of user data was

8    maintained solely to make its services work better,[3] the Company subsequently—and

9    surreptitiously—began amalgamating user data from across its various platforms for ad

10   targeting.[4]

11       16.    This strategy has enabled Google to become the dominant force in online

12   advertising. Google's user data enable it to deliver ads that are highly targeted to susceptible

13   buyers.  It can thus sell more advertising and command higher prices.  Google's revenues are

14   almost entirely derived from ad sales, which accounted for 96% of its total revenue of $29.3

15   billion in 2010; 96% of its total revenue of $37.9 billion 2011; 95% of its total revenue of $46

16   billion in 2012, 91% of $56 billion in 2013, and 89% of $66 billion in 2014.[5]

17       17.    Google has developed products premised on interpersonal communication—

18   including Gmail—that have the attendant, undisclosed property of scanning and cataloging

19   users' communications to acquire and retain user data and deliver targeted advertisements

20   based on these profiles.

21       18.    Google never obtained consent from Plaintiff or any Class member to scan and

22   catalog the contents of his or her email communications with Gmail users.

23

24   _____

25   [3] Singel, Ryan. "Analysis: Google's Ad Targeting Turns Algorithms on You," Wired (Mar. 11, 2009) (available at http://www.wired.com/business/2009/03/google-ad-annou/).

26   [4] *Id.*

27   [5] Google Form 10-K for fiscal year ending December 31, 2013, "Management's Discussion and Analysis of Financial Condition and Results of Operations." (available at http://www.sec.gov/Archives/edgar/data/1288776/000128877614000020/goog2013123110-

28   k.htm#sCF5BD61C9BB5908EEE622E71A9CC8F22); https://investor.google.com/financial/ tables.html.

- 5 -

1271445.2

**Google's Specific Content Extraction and Data Mining Procedures and Devices**

19.     When Plaintiff and Class members sent emails to or received emails from Gmail users, Google intercepted these communications to scan, compile, analyze, and archive the contents of the communications.  Upon information and belief, Google employed a variety of devices—in the course of transmitting Plaintiff's and Class members' messages—to acquire and manipulate the content of said messages.  During the Relevant Time Period, such devices included, but were not limited to:

- **The Content Onebox process ("COB process")**—a distinct piece of Google's infrastructure, the purpose of which is to acquire and interpret the content of users' Gmail, including Plaintiff's and Class members' emails.  Through the COB process, during the Relevant Time Period, Google not only collected the content of said messages, but also created metadata about that content.

- **Changeling**—a distinct piece of Google's infrastructure that the Company used to acquire and interpret the contents of users' Gmail, including Plaintiff's and Class members' emails.

20.     Upon information and belief, after extracting the content of Plaintiff's and Class members' messages and creating new, derivative data ("metadata") therefrom, Google utilized a process called "Nemo," whereby it determined how best to monetize the data gathered.

21.     In addition to using the intercepted content of Gmail to sell advertisements, Google also cataloged the intercepted content, including the emails of Plaintiff and Class members, to create user profiles to be stored indefinitely. The future purposes of this indefinitely stored information are unclear and have not been disclosed.

22.     Among other devices, Google utilized "PHIL," or the Probabilistic Hierarchical Inferential Learner, a distinct piece of Google's infrastructure the purpose of which is to learn the "meaning behind text" of the content of Gmail and the Plaintiff's and Class members' emails, by learning the relationships between words and concepts present in the acquired data.

23.     Upon information and belief, PHIL's purpose is to process the data gathered from the intercepted messages' content to create "PHIL clusters," which amount to the inferred meaning of particular words or phrases derived by reading and acquiring the content of the

- 6 -

1271445.2

user's emails.  Through PHIL clusters, Google learns "concepts" by learning an explanatory model of text.  As such, PHIL's concepts are intended to and (on information and belief) do model the actual ideas passing through a person's mind before the person composes the text that is read and acquired by Google.

**Google Did Not Obtain the Consent of Plaintiff or Class members to Scan and Catalog the Contents of Their Emails**

24.     At all relevant times, Google indiscriminately intercepted, scanned, and cataloged all emails sent or received by its Gmail accountholders.  Google had no policy of limiting this practice only to email between Gmail users.  So, whenever Plaintiff and Class members exchanged emails with Gmail users, the contents of those private communications were scanned and cataloged by Google.

25.     At all relevant times, Google had no policy in place to obtain the consent of non-Gmail users to having their emails scanned and cataloged, in the course of exchanging emails with Gmail users.  Neither did Google have a policy in place during the relevant timeframe to put Plaintiff or Class members on notice that their private correspondence with Gmail users was being and would be scanned, cataloged, analyzed, and used, *inter alia*, to sell and deliver targeted. Google did not notify or even attempt to notify Plaintiff or the Class members of any of those facts, or in any way seek to obtain their consent to any of these acts. Nor did Google have a process in place to exclude non-Gmail users' emails from its scanning and cataloging practices.

26.     Before December 19, 2014, Google's Gmail Terms of Service and Privacy Policy made no mention of the practices complained of herein, and thus Google failed to legally obtain the consent of Gmail users to the practices complained of herein. *See In re Google Inc. Gmail Litig.*, 2013 U.S. Dist. LEXIS 172784 at *50 (N.D. Cal. Sept. 26, 2013) ("The Court finds that Gmail users' acceptance of [Google's Terms of Service and Privacy Policy] does not establish explicit consent.")

27.     On or about December 19, 2014, Google amended its Privacy Policy to read, in relevant part: "Our automated systems analyze your content (including emails) to provide you

1271445.2

personally relevant product features, such as customized search results, tailored advertising, and spam and malware detection." Plaintiff and the Class Members were never subject to or on notice of Google's Privacy Policy, either before or after its amendment. Plaintiff and the Class Members never clicked on or otherwise accepted Google's Privacy Policy—which is buried in a supplement to a click-through agreement on a website. Google does not legally or conscionably obtain user's consent to its Privacy Policy, either before or after its amendment.

**Google's Conduct Falls Outside the Only Possible Exception to the Statutes Prohibiting Its Conduct—None of the Actions Complained of Herein Fall Within the Ordinary Course of Google's Email Provider Business**

28.     Google's interception of Gmail, including the emails of Plaintiff and the Class members, as alleged herein, were not conducted in the ordinary course of its business, within the meaning of CIPA or ECPA. Google cannot demonstrate the interception facilitated the communication service or was incidental to the functioning of the provided communication service. There is no nexus between Google's interception of Gmail and its *subscriber's* ultimate business, that is, the ability of Google to provide the underlying service or good. Instead Google intercepts Gmail for the distinct purpose of acquiring and retaining user data and creating targeted advertising, and therefore the interception is outside the ordinary course of Google's business. *Google Inc. Gmail Litig.*, 2013 U.S. Dist. LEXIS 172784, *30 (N.D. Cal. Sept. 26, 2013); *Campbell v. Facebook Inc.*, 2014 U.S. Dist. LEXIS 177331, *21 (N.D. Cal. Dec. 23, 2014).

**Plaintiff and Class Members Are at Continued Risk of the Injuries Alleged Herein**

29.     Plaintiff is constrained to communicate with Gmail users through those users' Gmail accounts, given the ubiquity of Gmail. Plaintiff cannot reasonably avoid sending emails to or receiving emails from Gmail users.

30.     Google has changed the language in its privacy policy 3 times in 2015, alone, and 8 times since January 1, 2013. Google has come under criticism for aggregating its privacy policy across platforms and products (*i.e.*, making a one-size-fits-all policy to govern YouTube, Gmail, Google+, etc.). Google is free to amend its Privacy Policy in the future,

1271445.2

eliminating all reference to its scanning practices—which Plaintiff contends are, at present, still too oblique to establish express consent on the part of Gmail users to the scanning practices described herein.

31.     Google has, in the past, made affirmative representations that it would not acquire or catalog message content on certain of its email platforms, only to be caught subsequently engaging in the precise activities it had publicly disclaimed.[6]  Accordingly, absent an order from this Court enjoining Google from such practices, Plaintiff and Class members are and will remain at risk of Google unilaterally dispensing with the privacy rights guaranteed by the laws of California and the United States.

## V.     CLASS ALLEGATIONS

32.     Plaintiff brings this class action, pursuant to Rule 23 of the Federal Rules of Civil Procedures, individually and on behalf of all members of the following classes, which are jointly referred to throughout this Complaint as the Class:

> **CIPA Class** (Count One): All persons in the State of California who have never established an email account with Google, and who have sent emails to or received emails from individuals with Google email accounts.

> **ECPA Class** (Count Two): All persons in the United States who have never established an email account with Google, and who sent emails to or received emails from individuals with Google email accounts before December 19, 2014.

33.     Excluded from each of the Classes are the following individuals and/or entities: Google and its parents, subsidiaries, affiliates, officers and directors, and any entity in which Google has a controlling interest; any and all federal, state or local governments, including but not limited to their department, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

---

[6] http://blogs.wsj.com/digits/2014/04/30/google-stops-scanning-student-gmail-accounts-for-ads/

- 9 -

1271445.2

34.     Plaintiff reserves the right to modify or amend the definition of each of the proposed Classes before the Court determines whether certification is appropriate.

35.     This action readily satisfies the requirements set forth under Federal Rule of Civil Procedure 23:

## Class Action Allegations

36.     Each Class is so numerous that joinder of all members is impracticable.  Upon information and belief, Class members number in the millions.

37.     There are questions of law or fact common to the Classes.  These questions include, but are not limited to, the following:

a.      Whether Google's acts and practices complained of herein amount to an intentional and unauthorized connection to an electronic communication, in violation of Cal. Pen. Code § 631(a) (on behalf of the CIPA Class);

b.      Whether Google's acts and practices complained of herein amount to the willful and unauthorized reading, attempting to read, or learning the contents or meaning of Plaintiff's and Class members' in transit communications, in violation of Cal. Pen. Code § 631(a) (on behalf of the CIPA Class);

c.      Whether Google used or attempted to use any information acquired in violation of Cal. Pen. Code § 631(a) (on behalf of the CIPA Class);

d.      Whether Google intentionally intercepted, endeavored to intercept, or procured any other person to intercept or endeavor to intercept Plaintiff's and Class members' electronic communications in violation of 18 U.S.C. § 2511(1)(a) (on behalf of the ECPA Class);

e.      Whether Google acquired any "contents" of Plaintiff's and Class members' electronic communications, within the meaning of 18 U.S.C. § 2510(8) (on behalf of the ECPA Class);

f.      Whether Plaintiff's and Class members' emails were "electronic communications" within the meaning of 18 U.S.C. § 2510(12) (on behalf of the ECPA Class);

- 10 -

1271445.2

g.      Whether Google used an "electronic, mechanical, or other device,"
within the meaning of 18 U.S.C. § 2510(5) (on behalf of the ECPA Class);

h.      Whether Google intentionally used, or endeavored to use, the contents
of Plaintiff's and Class members' electronic communications, knowing or having reason to
know that the information was obtained in violation of 18 U.S.C. § 2511(1)(a) (on behalf of
the ECPA Class);

i.      Whether Google acted intentionally in violating privacy rights;

j.      Whether an injunction should issue; and

k.      Whether declaratory relief should be granted.

38.      Plaintiff's claims are typical of the claims of the Class of non-Gmail users in
that Plaintiff and the Classes sent emails to and received emails from Gmail users.  In the
process, Google intercepted, scanned, and acquired the content of those electronic
communications.  Google further used or endeavored to use the contents of Plaintiff's and
Class members' electronic communications.  Plaintiff and the Class members did not consent
to the interception and use of their electronic communications, which acts form the basis for
this suit.  Moreover, like all Class members, Plaintiff suffers a substantial risk of repeated
injury in the future.  Like all Class members, although Plaintiff has never consented to having
his emails intercepted and scanned by Google for the purpose of acquiring and cataloging their
message content, and has never had any mechanism by which to opt-out of such practices, he
has continued to—and *must* continue to—communicate with Gmail users via email.  Indeed,
by virtue of the ubiquity of Gmail in its various incarnations[7], and the fact that tens if not
hundreds of millions of Gmail accounts presently exist, Plaintiff and Class members cannot
avoid sending emails to or receiving emails from Gmail users now and in the future.  Plaintiff
and the Class members are entitled to injunctive and declaratory relief as a result of the
conduct complained of herein.  Because the conduct complained of herein is systemic, Plaintiff
and all Class Members face substantial risk of the same injury in the future.  Google's conduct

---

[7] *See* footnote 1, *infra*.

1271445.2

- 11 -

1

2

3

is common to all Class members and represents a common thread of conduct resulting in injury to all members of the Class. Plaintiff has suffered the harm alleged and has no interests antagonistic to any other Class member.

4

5

6

7

8

9

39. Plaintiff will fairly and adequately protect the interests of the Classes. Plaintiff's interests do not conflict with the interests of the Class members. Furthermore, Plaintiff has retained competent counsel experienced in class action litigation, consumer protection litigation, and electronic privacy litigation. Plaintiff's counsel will fairly and adequately protect and represent the interests of the Classes. FRCP 23(a)(4) and 23(g) are satisfied.

10

11

12

13

14

15

16

17

40. In acting as above-alleged, and in failing and refusing to cease and desist despite public outcry and the initiation of lawsuits, Google has acted on grounds generally applicable to the entire Classes, thereby making final injunctive relief and corresponding declaratory relief each appropriate with respect to the Classes as a whole. The prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Google and other email providers.

18

19

20

21

22

41. Injunctive relief is necessary to prevent further unlawful and unfair conduct by Google. Money damages, alone, could not afford adequate and complete relief, and injunctive relief is necessary to restrain Google from continuing to commit its illegal and unfair violations of privacy. As discussed in paragraphs 29-31, *infra*, Defendant routinely has altered the terms of its Privacy Policy, conflated the application of its contract with its customers across platforms, and acted contrary to its public-facing representations.

23

24

25

26

27

28

- 12 -

1271445.2

1  **VI.    CAUSES OF ACTION**

2  <center>**COUNT ONE**</center>

3  <center>**(Violations of CIPA, Cal. Pen. Code §§ 630, *et seq.*)**</center>

4  <center>**(Brought on behalf of the Plaintiff and the CIPA Class)**</center>

5       42.    Plaintiff incorporates the preceding paragraphs of this complaint as if repeated

6  here.

7       43.    Cal. Pen. Code § 630 provides that "[t]he Legislature hereby declares that

8  advances in science and technology have led to the development of new devices and

9  techniques for the purpose of eavesdropping upon private communication and that the invasion

10  of privacy resulting from the continual and increasing use of such devices and techniques has

11  created a serious threat to the free exercise of personal liberties and cannot be tolerated in a

12  free and civilized society."

13       44.    Cal. Pen. Code § 631(a) prohibits the use of "any machine, instrument, or

14  contrivance, or...any other manner" to "intentionally tap[], or make[] any unauthorized

15  connection, whether physically, electrically, acoustically, inductively, or otherwise, with any

16  telegraph or telephone wire, line, cable, or instrument" *or* to "willfully and without the consent

17  of all parties to the communication, or in any unauthorized manner, read[], or attempt[] to read,

18  or to learn the contents or meaning of any message, report, or communication while the same

19  is in transit or passing over any wire, line, or cable, or is being sent from, or received at any

20  place within this state."

21       45.    Cal. Pen. Code § 631(a) further prohibits the "use[], or attempt[] to use, in any

22  manner, or for any purpose, or to communicate in any way, any information so obtained."

23       46.    Google's acts and practices complained of herein, engaged in for purposes of

24  acquiring and using the content of emails sent to and from Plaintiff and Class members to

25  generate significant advertising profits, violated and violate Cal. Pen. Code § 631.

26       47.    Google committed the acts and practices complained of herein knowingly and

27  willfully, spending significant sums and using cutting-edge technology to do so in the most

28  comprehensive and effective manner possible.  Google's actions were at all relevant times

1271445.2

<center>- 13 -</center>

intentional as evidenced by, *inter alia*, the design of its data flow processes, its utilization of message-scanning devices, its utilization of devices to divine the meaning of the content of private messages and to discern the communicants' likely thoughts before writing them, and Google's use of that information for, *inter alia,* data profiling and ad targeting.

48. Google was not a party to the emails sent or received by Plaintiff and Class members at any point during the relevant time period.

49. Google engaged in the acts complained of herein without the consent of Plaintiff and Class members.

50. Each email sent to and from Plaintiff and Class members, and scanned and cataloged by Google, was a "message, report, or communication" within the meaning of Cal. Pen. Code § 631.

51. Each email sent to or from Plaintiff or to or from any Class member, and scanned and cataloged by Google, was "in transit" within the meaning of Cal. Pen. Code § 631.

52. Each of the actions taken by Google and complained of herein extends beyond the normal occurrences, requirements, and expectations regarding the facilitation and transmission of private messages.

53. Pursuant to Cal. Penal Code § 7, Google, a corporation, is a "person."

54. As a result of Google's violations of Cal. Pen. Code § 631, and pursuant to Cal. Pen. Code § 637.2, Plaintiff and Class members are entitled to the following relief:

a. A declaration that Google's conduct violates CIPA;

b. Injunctive relief in the form of, *inter alia*, an order enjoining Google from continuing its practice of intercepting the content of Plaintiff's and Class members' emails in violation of CIPA;

c. Injunctive relief in the form of, *inter alia*, an order requiring Google to destroy all data created or otherwise obtained from its illegal interception of emails sent or received by Plaintiff or any Class member; and

- 14 -

1271445.2

        d.      An award of attorney's fees and costs of litigation as provided by CIPA, the private attorney general doctrine existing at common law and also codified at California Civil Code Section 1021.5, and all other applicable laws;

55.     In addition, pursuant to Cal. Pen. Code § 637.2, Plaintiff individually seeks monetary damages in the amount of $5,000, as well as trebled actual damages, in an amount to be proved at trial.

56.     While certain devices and methods have been identified in this Complaint, Plaintiff reserves the right to assert CIPA violations as to any further devices subsequently disclosed or discovered.

## COUNT TWO

### (Violations of ECPA, 18 U.S.C. §§ 2510, *et seq.*)

### (Brought on behalf of Plaintiff and the ECPA Class)

57.     Plaintiff incorporates the preceding paragraphs of this complaint as if repeated here.

58.     Google's actions alleged herein, and each of them, have at all times affected interstate commerce. Upon information and belief, Google mail has more than 425 million users worldwide.

59.     Google, a corporation, is a "person" within the meaning of 18 U.S.C. § 2510(6).

60.     The email communications transmitted by Plaintiff and the Class members, and each of them, were and have been at all relevant times "electronic communications," pursuant to 18 U.S.C. § 2510(11).

61.     Google engaged in the acts complained of herein without the consent of Plaintiff or the Class members.

62.     Google engaged in the acts complained of herein without the consent of Gmail users.

63.     Google's actions were at all relevant times intentional as evidenced by, *inter alia*, the design of its data flow processes, its utilization of message-scanning devices, its

- 15 -

1271445.2

utilization of devices to divine the meaning of the content of private messages and to discern the communicants' likely thoughts before writing them, and Google's use of that information for, *inter alia*, data profiling and ad targeting.

64. Google used one or more "devices," as defined pursuant to 18 U.S.C. § 2510(5), to intercept the electronic communications transmitted to Google mail users by Plaintiff and the Class members, and each of them. Such devices include, but are not limited to, the distinct pieces of Google infrastructure comprising the COB process, Changeling, the "Nemo" process, and PHIL.

65. The devices were not used by Google, operating as an electronic communication service, in the ordinary course of providing electronic communication services. Specifically, Google's interception of electronic communications sent by and to Plaintiff and the Class members, and each of them was, among other things, (a) for undisclosed purposes; (b) for purposes of acquiring, cataloging and retaining user data; (c) for purposes beyond facilitating the transmission of emails sent or received by either Gmail users or Plaintiff and the Class members; (f) contrary to Google's public statements; (g) in violation of federal law; and (h) in violation of the property rights of Plaintiff and Class members in their private information. These activities are not within the ordinary course of business of a provider of an electronic communication service.

66. The conduct alleged herein did not occur after the electronic communications had been transmitted and were in storage. Rather, Google transferred, transmitted, or routed each communication to each of its self-serving devices to acquire and learn private information about Plaintiff and the Class members from their emails in the course of those emails' transmission.

67. Google's conduct complained of herein also violated 18 U.S.C. § 2511(1)(d), which prohibits the intentional use or endeavoring to make use of "contents of any wire, oral, or electronic communication," when such contents were acquired in violation of 18 U.S.C. § 2511(1)(a).

1271445.2

68.     As a result of Google's violations of § 2511, and pursuant to § 2520, Plaintiff seeks the following relief for himself and the Class:

    a.     A declaration that Google's conduct prior to December 19, 2014 violated ECPA.

    b.     Injunctive relief in the form of, *inter alia*, an order enjoining Google from intercepting the content of Plaintiff's and the Class members' emails in violation of ECPA in the future;

    c.     Injunctive relief in the form of, *inter alia*, an order requiring Google to destroy all data created or otherwise obtained from the interception of emails sent or received by Plaintiff and Class members, or any of them, before December 19, 2014; and

    d.     Attorney's fees and costs of litigation as provided by ECPA.

69.     In addition, pursuant to § 2520, Plaintiff individually seeks the greater of (1) the sum of actual damages sustained by Plaintiff and any profits made by Google as a result if its ECPA violations complained of herein or (2) statutory damages of the greater of (a) $100 a day for each day of violation or (b) $10,000.

70.     While certain devices have been identified in this Complaint, Plaintiff reserves the right to assert ECPA violations as to any further devices subsequently disclosed or discovered.

## VII.    PRAYER FOR RELIEF

    WHEREFORE, Plaintiff requests that judgment be entered against Defendant and that the Court grant the following:

    A.     An order determining that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, that Plaintiff is a proper class representative, appointing Plaintiff's attorneys as Class counsel pursuant to Rule 23(g) of the Federal Rules of Civil Procedure, and providing that Class notice be promptly issued;

1271445.2

1

2     B.    Judgment against Google for Plaintiff's and Class Members' asserted causes of

            action;

3

4     C.    Appropriate declaratory relief against Google;

5     D.    Injunctive relief in the form of, *inter alia*, an order enjoining Google from

            continuing its practice of intercepting the content of Plaintiff's and Class

6           members' emails in violation of CIPA and ECPA;

7

8     E.    Injunctive relief related to CIPA in the form of, *inter alia*, an order requiring

            Google to destroy all data acquired, created or otherwise obtained from the

9           interception of emails sent or received by Plaintiff and Class members;

10    F.    Injunctive relief related to ECPA class in the form of, *inter alia*, an order

11          requiring Google to destroy all data created or otherwise obtained from the

12          interception of emails sent or received by Plaintiff and Class members prior to

13          December 19, 2014;

14    G.    An award of damages to Plaintiff pursuant to Cal. Pen. Code § 637.2;

15    H.    An award of damages to Plaintiff pursuant to 18 U.S.C. § 2520;

16    I.    Reasonable attorney's fees and costs reasonably incurred; and

17    J.    Any and all other and further relief to which Plaintiff and the Class may be

18          entitled.

19

20

21

22    Dated: September 4, 2015          Respectfully Submitted,

23                                       /s/ Michael W. Sobol

24

25

26

27

28

1271445.2

- 18 -

1    Michael W. Sobol (State Bar No. 194857)
     msobol@lchb.com
2    Nicole D. Sugnet (SBN 246255)
     nsugnet@lchb.com
3    LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
     275 Battery Street, 29th Floor
4    San Francisco, CA  94111-3339
     Telephone:  415.956.1000
5    Facsimile:  415.956.1008

6    Hank Bates (State Bar No. 167688)
     CARNEY BATES & PULLIAM, PLLC
7    2800 Cantrell Road, Suite 510
     Little Rock, AR 72202
8    Telephone:  501.312.8500
     Facsimile:  501.312.8505

9
     Ray E. Gallo (State Bar No. 158903)
10   rgallo@gallo-law.com
     Dominic Valerian (State Bar No. 240001)
11   dvalerian@gallo-law.com
     GALLO LLP
12   1299 Fourth St., Suite 505
     San Rafael, CA 94901
13   Phone: 415.257.8800

14
     *Attorneys for Plaintiff*
15

16

17

18

19

20

21

22

23

24

25

26

27

28

     1271445.2

     - 19 -

1

2

## **DEMAND FOR JURY TRIAL**

3

Plaintiff hereby demands a trial by jury of all issues so triable.

4

5    Dated: September 4, 2015                    Respectfully Submitted,

6                                               /s/ Michael W. Sobol

7                                               Michael W. Sobol (State Bar No. 194857)
                                                msobol@lchb.com
8                                               Nicole D. Sugnet (SBN 246255)
                                                nsugnet@lchb.com
9                                               LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
                                                275 Battery Street, 29th Floor
10                                              San Francisco, CA  94111-3339
                                                Telephone:  415.956.1000
11                                              Facsimile:  415.956.1008

12                                              Hank Bates (State Bar No. 167688)
                                                CARNEY BATES & PULLIAM, PLLC
13                                              2800 Cantrell Road, Suite 510
                                                Little Rock, AR 72202
14                                              Telephone:  501.312.8500
                                                Facsimile:  501.312.8505

15                                              Ray E. Gallo (State Bar No. 158903)
16                                              rgallo@gallo-law.com
                                                Dominic Valerian (State Bar No. 240001)
17                                              dvalerian@gallo-law.com
                                                GALLO LLP
18                                              1299 Fourth St., Suite 505
                                                San Rafael, CA 94901
19                                              Phone: 415.257.8800

20                                              *Attorneys for Plaintiff*

21

22

23

24

25

26

27

28

1271445.2                                       - 20 -