1    COOLEY LLP
     MICHAEL G. RHODES (116127) (rhodesmg@cooley.com)
2    WHITTY SOMVICHIAN (194463) (wsomvichian@cooley.com)
     KYLE C. WONG (224021) (kwong@cooley.com)
3    KAREN L. BURHANS (303290) (kburhans@cooley.com)
     AMY M. SMITH (287813) (amsmith@cooley.com)
4    101 California Street, 5th Floor
     San Francisco, CA 94111-5800
5    Telephone:    (415) 693-2000
     Facsimile:     (415) 693-2222
6

7    Attorneys for Defendant
     GOOGLE INC.

8

              UNITED STATES DISTRICT COURT
9
             NORTHERN DISTRICT OF CALIFORNIA
10
                 SAN JOSE DIVISION
11

12

13    DANIEL MATERA, as an individual, and on       Case No. 5:15-cv-04062 LHK
     behalf of the other persons similarly situated,

14                      Plaintiff,     **DEFENDANT GOOGLE INC.'S MOTION TO**
                                   **DISMISS PLAINTIFF'S INDIVIDUAL AND**
15         v.                                **CLASS ACTION COMPLAINT;**
                                       **MEMORANDUM OF POINTS AND**
16    GOOGLE INC.,                    **AUTHORITIES IN SUPPORT THEREOF**

17                  Defendant.     **F.R.C.P. 12(b)(1), 12(b)(6)**

18                                   Date:        February 25, 2016
                                  Time:        1:30 p.m.
19                                   Courtroom: 8 - 4th Floor
                                          280 S. First Street
20                                           San Jose, CA 95113
21                                   Judge:       The Hon. Lucy H. Koh
                                  Trial Date: Not yet set

22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

GOOGLE'S MOTION TO DISMISS COMPLAINT
MEMORANDUM OF POINTS & AUTHORITIES
CASE NO. 5:15-CV-04062 LHK

# TABLE OF CONTENTS

PAGE

NOTICE OF MOTION AND MOTION TO DISMISS ............................................................. 1

STATEMENT OF ISSUES TO BE DECIDED .................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ......................................................... 2

I.    INTRODUCTION. ..................................................................................................... 2

II.   STATEMENT OF FACTS. ...................................................................................... 3

    A.    Gmail. ......................................................................................................... 3

    B.    Google's Current Terms And Disclosures. ............................................. 4

    C.    Plaintiff's Complaint. ............................................................................... 4

III.  APPLICABLE STANDARDS. ................................................................................. 5

IV.  ARGUMENT ............................................................................................................ 5

    A.    Plaintiff Has No Standing To Seek Injunctive Relief On His Classwide ECPA Claim Because Gmail Users Consent To The Practices In Dispute. .......... 5

    B.    The Wiretapping Claims Fail Because The Alleged Scanning Practices Are Part Of Google's Ordinary Course Of Business As An ECS Provider. ................. 9

        1.    Automated Processing of Emails Falls Within the Ordinary Course of Business Exception. ................................................................ 9

        2.    The Court Should Certify the Question of the Proper Scope of the "Ordinary Course of Its Business" Exception Under 28 U.S.C. § 1292. ....................................................................................... 15

            a.    The Scope of the "Ordinary Course of Its Business" Exception Involves a Controlling Question of Law. ..................... 16

            b.    Substantial Ground for Difference of Opinion Exists As to the Scope of the "Ordinary Course of Its Business" Exception. ...................................................................... 17

            c.    Certification May Materially Advance the Termination of the Litigation. ................................................................... 18

    C.    The Court Should Decline Supplemental Jurisdiction Over The CIPA Claim. ................................................................................................ 18

    D.    The CIPA Claim Fails As A Matter Of Law for Multiple Reasons. .................... 20

V.    CONCLUSION. ....................................................................................................... 25

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i.

**GOOGLE'S MOTION TO DISMISS COMPLAINT
MEMORANDUM OF POINTS & AUTHORITIES
CASE NO. 5:15-CV-04062 LHK**

PAGE(S)

## Cases

*ACRI v. Varian Assocs., Inc.,*
   114 F.3d 999 (9th Cir. 1997)................................................................................19

*Adams v. City of Battle Creek,*
   250 F.3d 980 (6th Cir. 2001).........................................................................13, 14

*Apple v. Superior Court,*
   56 Cal. 4th 128 (2013) ................................................................................23, 24

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ..........................................................................................5

*Avelar v. Youth & Family Enrichment Servs.,*
   364 Fed. App'x 358 (9th Cir. 2010)....................................................................18

*Backhaut v. Apple Inc.,*
   No. 14-CV-02285-LHK, 2015 U.S. Dist. LEXIS 107519 (N.D. Cal. Aug. 13,
   2015) ...............................................................................................................7

*Bailey v. United States,*
   516 U.S. 137 (1995)..........................................................................................10

*Baker v. United States,*
   722 F.2d 517 (9th Cir. 1983)...............................................................................5

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ..........................................................................................5

*Berry v. Funk,*
   146 F.3d 1003 (D.C. Cir. 1998) .................................................................... 13-14

*Campbell v. Facebook,*
   77 F. Supp. 3d 836 (N.D. Cal. 2014) ......................................................10, 17, 18

*Caviness v. Horizon Cmty. Learning Ctr., Inc.,*
   590 F.3d 806 (9th Cir. 2010)...............................................................................5

*City of Los Angeles v. Lyons,*
   461 U.S. 95 (1983)............................................................................................5

*Colvin v. Tooley-Young,*
   No. C14-1962JLR, 2015 U.S. Dist. LEXIS 90647 (W.D. Wash. July 13, 2015)....................19

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

GOOGLE'S MOTION TO DISMISS COMPLAINT
MEMORANDUM OF POINTS & AUTHORITIES
CASE NO. 5:15-CV-04062 LHK

*Com. v. Proetto*,
771 A.2d 823 (2001) ...................................................................................................8

*DaimlerChrysler Corp. v. Cuno*,
547 U.S. 332 (2006) ...................................................................................................5

*Davis v. Pacific Telephone & Telegraph Co.*,
59 P. 698 (Cal. 1899) ..........................................................................................22, 25

*Deacon v. Pandora Media, Inc.*,
901 F. Supp. 2d 1166 (N.D. Cal. 2012) ...................................................................22

*Folgelstrom v. Lamps Plus*,
195 Cal. App. 4th 986 (2011) ..................................................................................15

*Garcia v. Google*,
786 F.3d 733 (9th Cir. 2015)......................................................................................8

*Gest v. Bradbury*,
443 F.3d 1177 (9th Cir. 2006)...............................................................................2, 5

*In re Google Inc. Gmail Litig.*,
No. 13-MD-02430-LHK, 2013 U.S. Dist. LEXIS 172784 (N.D. Cal. Sept. 26,
2013) ................................................................................................................ *passim*

*In re Google Privacy Policy Litig.*,
2013 WL 6248499 (N.D. Cal. Dec. 3, 2013) ................................................. *passim*

*Gross v. FBL Fin. Servs.*,
557 U.S. 167 (2009)..................................................................................................22

*Guest v. Leis*,
255 F.3d 325 (6th Cir. 2001)......................................................................................8

*Hall v. EarthLink Network, Inc.*,
396 F.3d 500 (2d Cir. 2005)......................................................................................12

*Helman v. Alcoa Global Fasteners Inc.*,
No. CV 09-1353, 2009 WL 2058541 (C.D. Cal. June 16, 2009).........................17, 18

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ...................................................................15

*Keene Corp. v. United States*,
508 U.S. 200 (1993)..................................................................................................11

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii.

GOOGLE'S MOTION TO DISMISS COMPLAINT
MEMORANDUM OF POINTS & AUTHORITIES
CASE NO. 5:15-CV-04062 LHK

*Kirch v. Embarq Management Co.*,
  702 F.3d 1245 (10th Cir. 2012)....................................................................12, 13

*Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in
  Amministrazione Straordinaria*,
  921 F.2d 21 (2d Cir. 1990)..........................................................................16, 17

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ...........................................................................................5

*Mohawk Indus., Inc. v. Carpenter*,
  558 U.S. 100 (2009)......................................................................................16, 18

*Molski v. Kahn Winery*,
  381 F. Supp. 2d 1209 (C.D. Cal. 2005) .............................................................19

*NetApp, Inc. v. Nimble Storage*,
  41 F. Supp. 3d 816 (N.D. Cal. 2014) ................................................................19

*Nguyen v. Medora Holdings, LLC*,
  No. 5:14-cv-00618-PSG, 2015 U.S. Dist. LEXIS 109125 (N.D. Cal. Aug. 18,
  2015) ...................................................................................................................7

*People v. Nuckles*,
  56 Cal. 4th 601 (2013) ......................................................................................24

*Ratzlaf v. United States*,
  510 U.S. 135 (1994)...........................................................................................12

*Reese v. BP Exploration (Alaska) Inc.*,
  643 F.3d 681 (9th Cir. 2011)...................................................................16, 17, 18

*Regal Stone Ltd. v. Longs Drug Stores Cal., L.L.C.*,
  881 F. Supp. 2d 1123 (N.D. Cal. 2012) .............................................................16

*Smith v. United States*,
  508 U.S. 223 (1993).........................................................................................10

*Stanislaus Food Prods. Co. v. USS-POSCO Indus.*,
  782 F. Supp. 2d 1059 (E.D. Cal. 2011)................................................................5

*Sunset Telephone and Telegraph Co. v. City of Pasadena*,
  161 Cal. 265 (1911) .....................................................................................22, 23

*United States v. Maxwell*,
  45 M.J. 406 (C.A.A.F. 1996) ..............................................................................8

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv.

GOOGLE'S MOTION TO DISMISS COMPLAINT
MEMORANDUM OF POINTS & AUTHORITIES
CASE NO. 5:15-CV-04062 LHK

*United States v. Nosal*,
676 F.3d 854 (9th Cir. 2012)..........................................................................24

*VIA Techs., Inc. v. SonicBlue Claims LLC*,
No. C 09-2109 PJH, 2011 WL 2437425 (N.D. Cal. June 17, 2011)........................17

*Watkins v. L.M. Berry & Co.*,
704 F.2d 577 (11th Cir. 1983)........................................................................13, 14

*Wong v. HSBC Mortg. Corp. (USA)*,
2009 U.S. Dist. LEXIS 10399 (N.D. Cal. Jan. 21, 2009) .....................................20

*Wren v. Sletten Constr. Co.*,
654 F.2d 529 (9th Cir. 1981).............................................................................19

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) ............................................................. *passim*

*In re Yahoo Mail Litig.*,
No. 13-CV-04980-LHK, 2015 U.S. Dist. LEXIS 68585 (N.D. Cal. May 26,
2015) ..........................................................................................................9

*Yunker v. Pandora*,
No. 11-CV-03113 JSW, 2013 U.S. Dist. LEXIS 42691 (N.D. Cal. Mar. 26,
2013) ........................................................................................................15

**Statutes**

18 U.S.C.
§ 2510 ...................................................................................... *passim*
§ 2511 ....................................................................1, 4, 10, 11, 12

28 U.S.C.
§ 1292 ............................................................................1, 15, 16, 18
§ 1332 ...........................................................................................19
§ 1367 ...........................................................................................19

Cal. Penal Code
§ 629 ..............................................................................................21
§ 629.50 ....................................................................................21, 22
§ 629.51 ..........................................................................................21
§ 630 ..........................................................................1, 4, 20, 21
§ 631 ...................................................................................... *passim*

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

v.

**GOOGLE'S MOTION TO DISMISS COMPLAINT
MEMORANDUM OF POINTS & AUTHORITIES
CASE NO. 5:15-CV-04062 LHK**

**Other Authorities**

*Black's Law Dictionary* 588 (9th ed. 2009) ...................................................................................20

Federal Rules of Civil Procedure
    12(b)(1) ...........................................................................................................................1
    12(b)(6) ........................................................................................................................1, 5

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**GOOGLE'S MOTION TO DISMISS COMPLAINT
MEMORANDUM OF POINTS & AUTHORITIES
CASE NO. 5:15-CV-04062 LHK**

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE that on February 25, 2016, at 1:30 p.m., defendant Google Inc. ("Google") will and hereby does move to dismiss Plaintiff's Individual and Class Action Complaint (the "Complaint"). Google's Motion to Dismiss is made pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure, and is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities and other pleadings in support of the Motion, and all pleadings on file in this matter, and upon such other matters as may be presented to the Court at the time of the hearing or otherwise.

## STATEMENT OF ISSUES TO BE DECIDED

1. Does Plaintiff have Article III standing to pursue his classwide claim under the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. §§ 2511, *et seq.*, which seeks exclusively injunctive relief, where there is no risk of ongoing ECPA violations because Gmail users expressly consent to Google's scanning, analysis, and storage of email content via Google's revised terms of service?[1]

2. Has Plaintiff stated an individual claim for statutory damages under ECPA where Google's automated processing of emails occurs as part of its ordinary course of business in providing the Gmail service?

3. If the Court declines to reconsider its prior ruling from *In re Google Inc. Gmail Litig.,* No. 5:13-MD-02430-LHK ("*Gmail*"), concerning the "ordinary course of its business" exception in ECPA, 18 U.S.C. § 2510(5)(a)(ii), should it certify a question for interlocutory review under 28 U.S.C. § 1292 so that the Ninth Circuit can resolve the current intra-District conflict concerning that statutory exception?

4. If the Court dismisses the ECPA claim (either in whole or in part), should it exercise supplemental jurisdiction over Plaintiff's additional claim under California's Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 630, *et seq.*, which involves an unresolved issue

---

[1] Plaintiff fails to demonstrate Article III standing for any claims in the Complaint since he relies solely on alleged statutory violations without alleging actual injury. This issue is now before the Supreme Court in *Spokeo, Inc. v. Robins*, as discussed in Google's concurrently filed Motion to Stay. Google reserves all rights to seek dismissal based on the Supreme Court's ruling in *Spokeo*.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1.

GOOGLE'S MOTION TO DISMISS COMPLAINT
MEMORANDUM OF POINTS & AUTHORITIES
CASE NO. 5:15-CV-04062 LHK

of California law, a California plaintiff, and a proposed class limited to California citizens?

5. If the Court exercises supplemental jurisdiction, has Plaintiff stated a claim that Google's automated processing of email violates CIPA, where the statute's express terms and legislative history confirm that it does not apply to electronic communications like email?

## MEMORANDUM OF POINTS & AUTHORITIES

### I. INTRODUCTION.

This case is based on the automated processing of emails in Google's Gmail service that the Court considered in *Gmail*—but involves two critical distinctions that dictate a different result at the pleading stage and warrant dismissal of the present Complaint in its entirety.

First, following the Court's September 26, 2013 ruling on Google's motion to dismiss in *Gmail*, Google amended its Terms of Service ("TOS") and Privacy Policy to more fully explain the processing of emails in the Gmail system. These disclosures go beyond the terms the Court previously considered and clarify that Google's systems automatically analyze the contents of Gmail users' emails for various specified purposes, and do so as emails are sent, received, and stored by Google's systems. Google's revised terms fully address the issues noted in the Court's *Gmail* order and preclude any future claim of an ECPA violation because all current Gmail users expressly consent to the automated analysis of the emails they send and receive using Gmail.

Second, Plaintiff's classwide ECPA claim "*seek[s] injunctive relief only.*" (*Gmail* ECF No. 190 at 2 (emphasis added) (citing *Gmail* ECF No. 190-1 at ¶ 32).) Unlike the *Gmail* plaintiffs who focused on statutory damages, the putative ECPA class here seeks only injunctive relief to stop the processing of emails in the Gmail system and to require the deletion of data derived from this process. But under established Article III requirements, Plaintiff must show he faces a risk of *ongoing* ECPA violations in order to pursue his proposed injunctive remedies. *See Gest v. Bradbury*, 443 F.3d 1177, 1181 (9th Cir. 2006) (plaintiffs seeking declaratory and injunctive relief "must demonstrate that they are realistically threatened by a repetition of the violation" at issue and past violations are insufficient) (quotation marks omitted). Plaintiff cannot make this necessary showing. As a matter of law, he cannot demand that Google halt the processing of emails when Gmail users expressly consent to these practices under Google's

current TOS and Privacy Policy, as discussed above. Nor can Plaintiff demand the deletion of data used to provide services to Gmail users, who affirmatively elect to receive Google's free services and agree that those benefits can be supported by the contents of emails in their accounts. Because these requested injunctive remedies do not address any threatened ECPA violations, Plaintiff's classwide ECPA claim must be dismissed for lack of Article III standing.

Further, because Plaintiff's classwide ECPA claim fails as a matter of law, the Court should decline supplemental jurisdiction over the remaining CIPA claim—which involves an unresolved issue under California law, a California plaintiff, and a proposed class limited to California citizens. Indeed, the Ninth Circuit has repeatedly confirmed that a court should decline supplemental jurisdiction over a remaining state law claim where the federal claims at issue are dismissed from the case. Even if Plaintiff's individual ECPA claim survives, the Court should not maintain jurisdiction over the CIPA claim because the potential application of CIPA to email presents a novel and complex issue of law that no California court has yet addressed at the appellate level. The interests of comity and judicial efficiency require the dismissal of Plaintiff's CIPA claims so that California courts may decide these important issues in the first instance.

If the Court opts to retain jurisdiction of all claims, it should nonetheless dismiss the Complaint in its entirety because both the ECPA and CIPA claims suffer from multiple defects of pleading. Some of the issues that warrant dismissal here overlap with those the Court previously considered in *Gmail*, and Google respectfully submits that the Court should revisit its prior findings, for all the reasons set forth below. In sum, when considered in the proper context of their statutory language, legislative history, and applicable case law, the ECPA and CIPA claims must be dismissed because neither statute was intended to address the routine processing of email by an electronic communications services ("ECS") provider in the normal course of its business.

**II.    STATEMENT OF FACTS.**

   **A.    Gmail.**

As the Court is aware, Gmail is a web-based email service with over 400 million users worldwide. Like all email providers, Google applies automated systems to process emails for various purposes, including filtering out spam, detecting computer viruses, and providing features

that allow users to search and sort their emails, among other functions. Google also displays ads to Gmail users, which are selected by applying automated scanning to a user's emails, in some circumstances. The revenue from these targeted advertisements enables Google to provide the Gmail service for free to the public. Gmail's advertising-based business model is similar to that of other free email services offered by AOL, Hotmail, and Yahoo (which the Court addressed in the *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016 (N.D. Cal. 2014) ("*Yahoo Mail*"), matter).

### B. Google's Current Terms And Disclosures.

In order to use the Gmail service, users must agree to the Google Terms of Service ("TOS") and incorporated Privacy Policy. Following the Court's ruling in *Gmail*, Google amended its TOS and Privacy Policy in April and December 2014, respectively, to add more terms and disclosures related to Gmail.[2] The relevant terms are addressed more specifically below, and include (1) clarification that Google's "automated systems analyze your content (*including emails*) to provide you personally relevant product features, such as customized search results, tailored advertising, and spam and malware protection," and (2) multiple explanations that this analysis of email content "occurs as the content is sent, received, and when it is stored." (McCune Decl. ¶¶ 2, 4; Exhs. A-B (emphasis added).)

### C. Plaintiff's Complaint.

Plaintiff alleges he has a non-Gmail email account that he has used and continues to use to exchange emails with Gmail users.[3] Plaintiff claims that Google violates ECPA, 18 U.S.C. §§ 2511(1)(a) and (1)(d), and CIPA, Cal. Penal Code §§ 630 *et seq.*, by unlawfully "intercepting" his emails communications with Gmail users. (Compl. ¶ 4.) Specifically, Plaintiff claims that Google violated ECPA and CIPA by applying automated processing to emails he exchanged with Gmail users for purposes of displaying targeted advertising in Gmail. (*Id.* ¶¶ 4, 8.) As Plaintiff acknowledges, his classwide ECPA claim is focused exclusively on injunctive relief to modify Google's business practices, and he seeks to recover monetary remedies only on his *individual*

---

[2] The relevant versions of the TOS and Privacy Policy are attached to the Declaration of Declaration of Jay McCune ("McCune Decl.") and Google has concurrently filed a Request for Judicial Notice of these materials, which are referenced in part in the Complaint.
[3] The Complaint does not specify when Plaintiff sent or received these emails.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ECPA claim and CIPA claims.  (*Gmail* ECF No. 190 at 2 (citing *Gmail* ECF No. 190-1 at ¶ 32).)

### III.    APPLICABLE STANDARDS.

This Motion is governed by Rule 12(b)(6) as interpreted in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  Under these standards, the court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations."  *Stanislaus Food Prods. Co. v. USS-POSCO Indus.*, 782 F. Supp. 2d 1059, 1064 (E.D. Cal. 2011); *see also Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir. 2010).

### IV.    ARGUMENT.

#### A.    Plaintiff Has No Standing To Seek Injunctive Relief On His Classwide ECPA Claim Because Gmail Users Consent To The Practices In Dispute.

Where plaintiffs assert a claim for "declaratory and injunctive relief," they "must demonstrate that they are realistically threatened by a *repetition* of the violation" at issue, in order to satisfy the requirement of Article III standing.[4]  *Gest*, 443 F.3d at 1181 (citation and quotation omitted, emphasis in text).  "[P]ast wrongs do not in themselves amount to that real and immediate threat of injury necessary to make out a case or controversy."  *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983).  At the pleading stage, "[t]he facts to show [Article III] standing must be clearly apparent on the face of the complaint."  *Baker v. United States*, 722 F.2d 517, 518 (9th Cir. 1983).  Further, "a plaintiff must demonstrate standing for *each claim* he seeks to press."  *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (emphasis added).

Given these threshold requirements, Plaintiff must allege facts to show he faces a risk of ongoing ECPA violations in order to pursue his claim for injunctive relief under ECPA.[5]  But Plaintiff cannot make this required showing in light of the current terms that govern the use of Gmail.  Because all Gmail users expressly consent to the practices in dispute, Plaintiff is not "threatened by a repetition" of any ongoing ECPA violations, and has no standing to seek

---

[4] This derives from the Article III standing requirement that a plaintiff show (1) an "injury in fact" that is (2) fairly traceable to the challenged action of the defendant, and (3) is likely redressable by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561-62 (1992).
[5] Plaintiff's Complaint mirrors this requirement in seeking an injunction to stop Google from processing email content "in violation of ECPA in the future." (Compl. ¶ 68b.)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5.

GOOGLE'S MOTION TO DISMISS COMPLAINT
MEMORANDUM OF POINTS & AUTHORITIES
CASE NO. 5:15-CV-04062

injunctive relief as a matter of law.

Under ECPA, there is no liability where one party to the communication consents to the alleged interception. As this Court has recognized, ECPA's single-party consent defense applies where one party has consented by agreeing to the terms of service governing an electronic communication service. *Yahoo Mail*, 7 F. Supp. 3d at 1028. In *Yahoo Mail*, the Court found that Yahoo Mail users agree to terms in which they "acknowledge that Yahoo scans and analyzes users' email for various purposes," including targeted advertising, and further agreed that Yahoo will "scan[] and analyz[e] emails for the purposes of creating user profiles … and sharing content from the emails with third parties." *Id.* at 1029-31. In light of these disclosures, the Court concluded that Yahoo had obtained consent from its users and dismissed plaintiff's ECPA claim as a matter of law.

Similarly here, Plaintiff cannot demand that Google cease its processing of emails because all Gmail users expressly consent to the practices in dispute pursuant to Google's current TOS and Privacy Policy. In April and December 2014, Google revised its terms to address the concerns the Court expressed in its *Gmail* ruling. To that end, Google's current terms now specify that:

- The contents of Gmail users' emails are analyzed to provide Google services[6];

- These services include targeted advertising and other features that are personalized to users based on email content and other factors[7]; and

- The analysis of email content occurs as emails are being transmitted to and from users, and also after it has been stored by Google[8].

These terms address each of the practices in dispute and preclude any possibility of an ECPA

---

[6] *See* McCune Decl., Exh. A (TOS) at "Your Content in our Services" (explaining that "[o]ur automated systems analyze *your content (including emails)*" to provide various services) (emphasis added); McCune Decl., Exh. B (Privacy Policy) at "Information we Collect" ("We collect information about the services that you use and how you use them," including "Gmail messages").

[7] *See* McCune Decl., Exh. A (TOS) at "Your Content in our Services" (explaining that email content is analyzed "to provide you personally relevant product features, such as customized search results, tailored advertising, and spam and malware detection.").

[8] *See* McCune Decl., Exh. A (TOS) at "Your Content in our Services" ("This analysis occurs as the content is sent, received, and when it is stored."); McCune Decl., Exh. B (Privacy Policy) at "Information we collect" ("Our automated systems analyze this information as it is sent and received and when it is stored.").

violation in connection with Google's current practices.

Specifically, Plaintiff seeks injunctive relief to halt the processing of Gmail to create "user profiles" for purposes of "targeted advertising." (Compl. ¶¶ 1, 17, 68b.) But Gmail users expressly agree that the contents of the emails they send and receive will be analyzed and used to provide "targeted advertising" and other personalized features. Plaintiff further contends that Google's processing of Gmail violates ECPA because it occurs "in the course of those emails' transmission." (*Id*. ¶ 66.) But Google explains in multiple disclosures that email content is analyzed "as the content is sent, received, and when it is stored."[9] (McCune Decl., Ex. A-B, D-F.) These disclosures bar any ECPA claim as a matter of law regarding Google's ongoing processing of emails and divest Plaintiff of standing to seek an injunction to stop Google's current practices. *See Backhaut v. Apple Inc.*, No. 14-CV-02285-LHK, 2015 U.S. Dist. LEXIS 107519, at *25 (N.D. Cal. Aug. 13, 2015) (Koh, J.) (plaintiff lacked standing for injunctive relief where Apple had resolved the disputed issue with its iMessage service); *Nguyen v. Medora Holdings, LLC*, No. 5:14-cv-00618-PSG, 2015 U.S. Dist. LEXIS 109125, at *2, *24-25 (N.D. Cal. Aug. 18, 2015) (plaintiffs lacked standing to pursue injunctive relief in false advertising action where defendants had removed the offending "all natural" language from its product).

For similar reasons, Plaintiff also lacks standing to pursue his alternative injunctive demand that Google "destroy all data" derived from its processing of email. (Compl. at VII.F.) On his ECPA claim, Plaintiff specifically limits this demand to emails exchanged with Gmail users before December 2014, in an apparent effort to avoid the consent defense of ECPA.[10] (*Id.*) But the express consent that Gmail users give under Google's current terms applies to *all* emails in a user's Gmail account *without* limitation to messages sent or received after any particular date.

---

[9] Plaintiff also alleges in passing that Google stores user content from emails for unspecified "future" uses (Compl. ¶ 21), but these vague assertions cannot be used to manufacture standing. In *Yahoo Mail,* the Court held that Yahoo users had consented to unspecified "future" uses of their emails where Yahoo's terms disclosed its storage of email data. 7 F. Supp. 3d at 1031 ("Accordingly, the Court [held] that Yahoo Mail users consented to Yahoo's collection and storage of their emails for future use."). Similarly here, Google's express disclosure that email content "is stored" provides express consent for Google to use such data in the future.

[10] This self-imposed limitation is a tacit admission that Google's December 2014 amendments bar an ECPA claim at least as to emails sent *after* that date. In fact, the TOS was amended in April 2014 and so express consent applied as of that earlier date. (McCune Decl., Exh. A.)

The TOS provides that Google's "automated systems analyze *your content (including emails)*" to provide various services including "tailored advertising." Thus, if Plaintiff sent an email to a Gmail users before December 2014 and that email remains in the user's account today, it is part of that user's current "content" that he or she has agreed can be analyzed to deliver Google service. [11] Further, where Gmail users make the rational consumer decision to receive personalized ads that are more relevant to the user's interests (as compared to randomly selected ads), Plaintiff cannot second-guess that decision and demand deletion of the data that enables that service. Indeed, multiple courts have recognized that senders of emails do not have an ongoing interest that trumps the recipient's right to use those communications as they choose. *Com. v. Proetto*, 771 A.2d 823, 830 (2001) *aff'd*, 575 Pa. 511, 837 A.2d 1163 (2003) (explaining that "[s]ending an email . . . is analogous to leaving a message on an answering machine" and the recipient can take various actions including "download[ing], print[ing], [and] sav[ing]" the message); *United States v. Maxwell*, 45 M.J. 406, 417 (C.A.A.F. 1996) (analogizing email communications to letters and explaining that "once [a] letter is received and opened, the destiny of the letter then lies in the control of the recipient of the letter, not the sender, absent some legal privilege.") (cited with approval in *Guest v. Leis*, 255 F.3d 325, 333 (6th Cir. 2001)). Here, there can be no potential ECPA violation based on emails exchanged before December 2014, because Gmail users expressly consent that all emails currently in their accounts can be used to provide services to them.[12]

For all these reasons, Plaintiff's classwide ECPA claim should be dismissed with

---

[11] Various provisions in the Privacy Policy reiterate that a Gmail user's emails will be used to provide Google services, regardless of when the email was sent or received. For example, the Privacy Policy explains that the collection of information "includes information like your . . . Gmail messages . . . or other Google-hosted content," without limitation to those received after a certain date. (McCune Decl. ¶ 5, Exh. C.) The Privacy Policy also explains that Google "may use information in your Gmail inbox" to provide services, again without limitation. (*Id.*)

[12] It also bears emphasizing that Plaintiff is seeking an extraordinary remedy that would require Google to delete data that belongs to Gmail users and enables services they have elected to receive. The Ninth Circuit has recently recognized that a "mandatory injunction" such as this, which "orders a responsible party to take action" is "particularly disfavored" and must meet stringent requirements. *Garcia v. Google*, 786 F.3d 733, 740 (9th Cir. 2015) (citations and quotations omitted). Standing should thus be considered in light of these heightened standards.

prejudice for lack of Article III standing in light of Google's current terms and disclosures.[13]

## B. The Wiretapping Claims Fail Because The Alleged Scanning Practices Are Part Of Google's Ordinary Course Of Business As An ECS Provider.

### 1. Automated Processing of Emails Falls Within the Ordinary Course of Business Exception.

Beyond these Article III standing issues, Plaintiff's individual ECPA claim for statutory damages and his ECPA claim for classwide injunctive relief also fail for the independent reason that the automated processing of emails in the Gmail system falls within the "ordinary course of its business" exception of ECPA. This Court previously reached a different conclusion in *Gmail*, but Google respectfully submits that the Court erred in concluding that the "ordinary course of its business" exception applies only to conduct that "facilitates the transmission of the communication at issue or is incidental to the transmission of such communication." *In re Google Inc. Gmail Litig.*, No. 13-MD-02430-LHK, 2013 U.S. Dist. LEXIS 172784, at *27 (N.D. Cal. Sept. 26, 2013). Instead, a careful review of the statute, the applicable case law, and the facts alleged in the Complaint compel a different result, for the following reasons.

*First*, the limitation that the Court imposed in *Gmail* does not appear on the face of the statute. Instead, Congress carved out from liability any conduct involving an ECS provider's own devices used "in the ordinary course of its business." 18 U.S.C. § 2510(5)(a)(ii). In normal usage, "business" broadly encompasses "the activity of making, buying, or selling goods or providing services in exchange for money" or "the amount of activity that is done by a store, company, factory, etc."; while the term "ordinary" is defined as "normal" or "usual."[14] Neither

---

[13] This standing issue is distinct from the standing arguments the Court considered in *Yahoo Mail,* where the Court initially dismissed an ECPA claim (in its entirety) and SCA claim (in part) based on express consent. 7 F. Supp. 3d at 1030-35. Yahoo then argued in opposing class certification that the named plaintiffs lacked standing to seek injunctive relief on the remaining claims (that is, the claims for which there was no express consent). *In re Yahoo Mail,* No. 13-CV-04980-LHK, 2015 U.S. Dist. LEXIS 68585, at *38 (N.D. Cal. May 26, 2015). As to those claims, the Court held that plaintiffs' continuing exchanges of emails with Yahoo users did not undermine plaintiffs' standing to seek injunctive relief. *Id.* at *38-39. Here, Google is not arguing that Plaintiff's continuing exchange of emails with Gmail users eliminates standing, but rather that Plaintiff lacks standing to seek injunctive relief because there is no of any risk ongoing violation, given the express consent in Google's current terms.

[14] *See, e.g.,* Dictionary.com, available at http://dictionary.reference.com/browse/ordinary (last visited October 28, 2015) and http://www.merriam-webster.com/dictionary/business (last visited October 28, 2015).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

GOOGLE'S MOTION TO DISMISS COMPLAINT
MEMORANDUM OF POINTS & AUTHORITIES
CASE NO. 5:15-CV-04062

word suggests Congress intended to narrowly limit the exception to acts that facilitate the transmission of a communication. *See Smith v. United States*, 508 U.S. 223, 228 (1993) (applying dictionary definitions to interpret a statute and explaining that "[w]hen a word is not defined by a statute, we normally construe it in accord with its ordinary or natural meaning"). Moreover, an ECS provider is exempted from liability for conduct in the ordinary course of "*its*" business— meaning the scope of the exception must be determined based on the particular business practices of the entity at issue. Congress could have limited the exception only to acts in the ordinary course of "providing a communication service" or in "the transmission of communications" or similar terms, but it chose not to, and the Court should not impose limitations that are expressly omitted from the statute. *See Bailey v. United States*, 516 U.S. 137, 145 (1995) ("We consider not only the bare meaning of the word but also its placement and purpose in the statutory scheme" as the "meaning of statutory language, plain or not, depends on context.") (citations omitted).

Indeed, since the *Gmail* decision, multiple courts in this District have construed the same terms and concluded that the "ordinary course of its business" defense is not limited to conduct necessary to the transmission of an electronic communication. *See In re Google Privacy Policy Litig.*, 2013 WL 6248499, at *10-11 (N.D. Cal. Dec. 3, 2013) ("*Google Privacy Policy*") (holding that the exception applies broadly to the "customary and routine business practices" of an ECS provider because an alternative standard based on necessity would "beg[] the question of what exactly it means for a given action to be 'necessary' to the delivery of Gmail."); *Campbell v. Facebook,* 77 F. Supp. 3d 836, 845 (N.D. Cal. 2014) (agreeing with the *Google Privacy Policy* court that "the exception must cover more than just 'necessary' activities").[15]

**Second**, this Court's contrary finding relied on a misreading of a related provision in ECPA. In *Gmail*, the Court relied on Section 2511(2)(a)(i)[16] to buttress its view that the

---

[15] While rejecting any "necessity" requirement, Judge Hamilton in *Campbell*, also "agree[d] with the *Gmail* court's finding that there must be 'some nexus between the need to engage in the alleged interception and the subscriber's ultimate business, that is, the ability to provide the underlying service or good.'" *Campbell*, 77 F. Supp. 3d at 844.

[16] Section 2511(2)(a)(i) provides that "[i]t shall not be unlawful under this chapter for an operator of a switchboard, or an officer, employee, or agent of a provider of wire or electronic communication service, whose facilities are used in the transmission of a wire or electronic communication, to intercept, disclosure, or use that communication in the normal course of his

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

GOOGLE'S MOTION TO DISMISS COMPLAINT
MEMORANDUM OF POINTS & AUTHORITIES
CASE NO. 5:15-CV-04062

"ordinary course of its business" exception should be read narrowly. Specifically, the Court found that Section 2511(2)(a)(i) "explicitly limits the use of service observing or random monitoring by electronic communication service providers to mechanical and service quality control checks." *Gmail*, 2013 U.S. Dist. LEXIS 172784, at *36. Based on that finding, the Court concluded that "the statutory scheme suggests that Congress did not intend to allow electronic communication service providers unlimited leeway to engage in any interception that would benefit their business models" and "this statutory provision would be superfluous if the ordinary course of business exception were as broad as Google suggests." *Id.* However, the actual text of the provision provides that the limits on "service observing and random monitoring" apply only to providers of *wire communication services*, not ECS providers like Google. *Id.* This supports a broad interpretation of the exception for ECS providers, not a narrow one.

Moreover, applying the "ordinary course" exception in accordance with its terms does not render Section 2511(2)(a)(i) superfluous, as the Court concluded. Section 2511(2)(a)(i) provides protection for individual employees (an "officer, employee, or agent") of a communications service provider, not the providers themselves. Because an ECS provider's employee's access to communications is generally limited to specific functions, it makes sense to apply a more restrictive standard for these individual employees' access, tied to acts that are "a necessary incident to the rendition of his service." This does not undermine the conclusion that the "ordinary course" exception, as applied to the automated processing of the ECS provider as a whole, is subject to a different and broader standard. Indeed, the fact that Congress chose not to repeat the "necessary incident" language from Section 2511(2)(a)(i) in the "ordinary course of its business" exception confirms it did not intend to limit the exception to actions that are necessary or incidental to the provision of the communication service. *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993) ("Where Congress includes particular language in one section of a statute but omits it in another . . . it is generally presumed Congress acts intentionally and purposely in

employment while engaged in any activity which is necessary incident to the rendition of his service…except that a provider of wire communication service to the public shall not utilize service observing or random monitoring except for mechanical or service quality control checks."

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

GOOGLE'S MOTION TO DISMISS COMPLAINT
MEMORANDUM OF POINTS & AUTHORITIES
CASE NO. 5:15-CV-04062

the disparate inclusion or exclusion."). Far from creating an inconsistency or surplusage, Google's interpretation harmonizes both provisions; it recognizes Congress's decision to impose the "necessary incident" language only in Section 2511(2)(a)(i) and not in the "ordinary course of its business" *and* ensures that human review is subject to more limits than automated review.[17]

**Third,** the Court incorrectly interpreted the applicable cases as supporting a narrow reading of the "ordinary course of its business" exception. To the contrary, the cases applying the exception in analogous contexts involving electronic communications confirm that the exception is not narrowly limited to conduct that is instrumental to the transmission of a communication.

For example, in *Hall v. EarthLink Network, Inc.*, 396 F.3d 500 (2d Cir. 2005), the Second Circuit found the "ordinary course" exception applied where an ECS provider continued to process the plaintiff's emails even after he closed his account. *Id.* at 504-05. The automated processing there was neither necessary nor instrumental to transmitting the communication, yet the Second Circuit applied the ordinary course of business exception because the processing at issue was part of EarthLink's standard business practice. *Id.* at 505. This Court noted that EarthLink "did not have the ability to bounce e-mail back to senders after the termination of an account," *Gmail*, 2013 U.S. Dist. LEXIS 172784, at *33, but the Second Circuit did not rely on that fact in applying the exception; nor does it show that the processing at issue was necessary or instrumental to EarthLink's provision of email services. *Hall*, 396 F.3d at 505; *see also Google Privacy Policy*, 2013 WL 6248499 at *11.

*Kirch v. Embarq Management Co.*, 702 F.3d 1245 (10th Cir. 2012), further confirms that the ordinary course of business exception should be applied broadly. There, the plaintiffs alleged that the defendant, an ISP, unlawfully "intercepted their Internet communications" by extracting information about their Internet browsing histories for the purpose of delivering targeted advertisements by installing a third-party device that would extract data as it flowed across the ISP's network. *Id.* at 1245-48. The court affirmed the dismissal of the claim as a matter of law because all of the data at issue (plaintiffs' Internet browsing histories) was obtained in the course

---

[17] Indeed, the Supreme Court had held that courts "should hesitate . . . to treat [as surplusage] statutory terms in any setting, and resistance should be heightened when the words describe an element of a criminal offense." *Ratzlaf v. United States*, 510 U.S. 135, 140-41 (1994).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

GOOGLE'S MOTION TO DISMISS COMPLAINT
MEMORANDUM OF POINTS & AUTHORITIES
CASE NO. 5:15-CV-04062

of defendant's business as an ISP. *Id*. at 1246, 1250-51. The fact that the ISP extracted a subset of the data for purposes of delivering targeted advertisements had no effect on the analysis "because [defendant's] access was in the ordinary course of its core business as an ISP transmitting data over its equipment." *Id*. at 1249. *See also id*. at 1250-51 (explaining that the advertising delivery system at issue "gave [the defendant] access to no more of [the plaintiffs'] electronic communications than it had in the ordinary course of its business as an ISP").

It is of no moment that "Embarq itself did not review any of the raw data that NebuAd collected," as the Court noted in *Gmail*. 2013 U.S. Dist. LEXIS 172784, at *31. The *Kirch* court made no finding that the exception would be inapplicable if Embarq had reviewed the collected data. To the contrary, the district court in *Kirch* noted that the review and use of data for advertising purposes is an ordinary business practice, explaining that "plaintiffs have admitted that Embarq conducted the NebuAd test to further legitimate business purposes and that behavior advertising is a widespread business and is commonplace on the Internet." *Kirch*, 2001 WL 3651359, at *8 n.42. As Judge Grewal found in *Google Privacy Policy*, "*Kirch* thus supports the application of Section 2510(5)(a)(ii) where the provider is furthering its 'legitimate business purposes'–including advertising–and is not limited to only those acts that are technically necessary to processing email." 2013 WL 6248499 at *11.

In *Gmail*, the Court also cited a number of decisions construing the "ordinary course of its business" exception in the context of an employer monitoring employees' telephone and pager calls. *See Gmail*, 2013 U.S. Dist. LEXIS 172784, at *38-39 (citing, among others, *Adams v. City of Battle Creek*, 250 F.3d 980 (6th Cir. 2001) and *Watkins v. L.M. Berry & Co.*, 704 F.2d 577 (11th Cir. 1983)). Given the far different context of these cases, they cannot override the decisions discussed above that apply the "ordinary course of its business" exception in the specific context of an ECS provider's business practices. In any event, these cases do not support the Court's narrow interpretation. To the contrary, *Adams* holds that application of the exception requires that the use be merely "for a *legitimate* business purpose." 250 F.3d at 984 (emphasis added). And *Berry* noted that "if covert monitoring is to take place it must itself be justified by a valid business purpose, or, perhaps, at least must be shown to be undertaken normally." *Berry v.*

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13.

GOOGLE'S MOTION TO DISMISS COMPLAINT
MEMORANDUM OF POINTS & AUTHORITIES
CASE NO. 5:15-CV-04062

*Funk,* 146 F.3d 1003, 1009 (D.C. Cir. 1998) (quotation marks and internal citation omitted). If anything, these cases confirm that Google need only show that its Gmail-related practices are supported by a legitimate or valid business purpose in order to take advantage of the "ordinary course of its business" exception.

Judge Grewal applied this interpretation in *Google Privacy Policy,* which Google believes most accurately comports with the statutory text and legislative intent. In *Google Privacy Policy*, plaintiffs Gmail users alleged that Google's policy, which permits Google to combine user data from one product (Gmail, for example) with data from another product to deliver personalized features to the user, violated ECPA. 2013 WL 6248499 at *2-3. Plaintiffs argued these practices were unnecessary to the transmission of Gmail messages and thus did not fall within the "ordinary course of its business" exception. *Id.* at *10. The Court rejected this contention, concluding that "this narrow reading of the exemption, as being limited to only action taken to deliver the electronic communication, does not square with the plain meaning of the statutory text at issue." *Id.* The Court went on to explain:

> The more fundamental problem with Plaintiffs' narrow construction of Section 2510(5)(a)(ii) is that in defining "ordinary course of business" as "necessary" it begs the question of what exactly its means for a given action to be "necessary" to the delivery of Gmail. For example, in delivering Gmail is it really "necessary" do more than just comply with email protocols such as POP, IMAP and MAPI? What about spam-filtering or indexing? None of these activities have anything specifically to do with transmitting email. And yet not even Plaintiffs suggest that these activities are unnecessary and thus lie outside of the "ordinary course of business."

*Id.* at *11. These practical concerns provide yet more reason to apply the exception pursuant to its terms, which omit any requirement that the practice at issue be necessary or incidental to the transmission of a message.

**Fourth,** the Court held in *Gmail* that the "ordinary course of its business" exception applies where there is a "nexus between the need to engage in the alleged interception and the subscriber's ultimate business, that is, the ability to provide the underlying service or good," *Gmail*, 2013 U.S. Dist. LEXIS 172784, at *40—but it ignored the nexus that plainly justifies Google's automated processing in the Gmail system. As in *Gmail*, Plaintiff here complains that emails sent to and from Gmail users are processed to deliver targeted advertising. But the

revenue generated from targeted advertising is precisely what enables Google's "ability to provide the underlying service" of Gmail to its users and to do so *for free*. It would be inconsistent and anomalous to find that the "ordinary course of its business" exception allows Google to "intercept" emails in order to provide its Gmail service, but not to generate the revenue that enables the service in the first instance. Indeed, the use of data to target ads is routine and legitimate commercial behavior, as this Court has held in other contexts. *Cf. In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (Koh, J.) (granting motion to dismiss where collection of personally identifying information from consumer's phones for commercial use was routine commercial behavior, not a "serious invasion" of privacy); *see also Yunker v. Pandora*, No. 11-CV-03113 JSW, 2013 U.S. Dist. LEXIS 42691, at *42 (N.D. Cal. Mar. 26, 2013) (same); *Folgelstrom v. Lamps Plus*, 195 Cal. App. 4th 986, 992 (2011) ("Here, the supposed invasion of privacy essentially consisted of [Defendant] obtaining plaintiff's address…, and using it to mail him coupons and other advertisements. This conduct is not an egregious breach of social norms, but routine commercial behavior."). Thus, even if the Court applies the same legal standard that it articulated in *Gmail*, it should nonetheless find that the necessary "nexus" is satisfied here for purposes of the "ordinary course of its business" exception.

For all these reasons, Google requests that the Court revisit its prior ruling and find that the automated processing of emails in the Gmail system falls within the "ordinary course of its business" exception as applied to Google's business model as an ECS provider, in which the processing of emails to deliver targeted advertising funds Google's ability to provide its email services to its users for free.

**2.      The Court Should Certify the Question of the Proper Scope of the "Ordinary Course of Its Business" Exception Under 28 U.S.C. § 1292.**

Alternatively, if the Court does not intend to modify its prior ruling on the "ordinary course of its business" issue, Google requests that the Court certify the question for interlocutory review under 28 U.S.C. § 1292(b). Where an order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation," a district court may,

pursuant to 28 U.S.C. § 1292, certify the question to the court of appeals. *Regal Stone Ltd. v. Longs Drug Stores Cal., L.L.C.*, 881 F. Supp. 2d 1123, 1130-31 (N.D. Cal. 2012). And where an order "involves a new legal question or is of special consequence," a district court "*should not hesitate* to certify an interlocutory appeal." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 111 (2009) (emphasis added). This case easily meets these requirements as detailed below. Accordingly, Google asks the Court to certify the following question: Whether Google's automated scanning of emails in providing Google services falls within the "ordinary course of its business" exception, 18 U.S.C. § 2510(5)(a)(ii), to the Wiretap Act.[18]

> **a.      The Scope of the "Ordinary Course of Its Business" Exception Involves a Controlling Question of Law.**

Certification is appropriate where resolution of the legal question could terminate the litigation or a significant part of it. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011) (finding a controlling question where reversal would remove most claims). Courts have also found controlling questions where the litigation concerned issues of first impression that could have profound effects on an industry or societal level. *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 921 F.2d 21, 24 (2d Cir. 1990) ("the impact that an appeal will have on other cases is a factor" in determining whether a controlling question exists).

Here, the interpretation of "ordinary course of its business" may resolve the action or a substantial portion of the legal and factual issues, including the single federal claim upon which jurisdiction is based. A broad interpretation of the ordinary course exception would relieve Google of any liability under the Wiretap Act for the conduct challenged in the Complaint. Moreover, permitting appellate review at the outset of litigation, as here, will avoid the unnecessary wasting of the Court's and parties' time and resources on discovery, class

---

[18] While this Court did not certify a similar question a few years ago in the *Gmail* case, that decision was based solely on the conclusion that the "termination of the litigation is more likely to be materially advanced by proceeding to final judgment" because of the extensive discovery and motion practice that had already transpired. *Gmail*, 2014 U.S. Dist. LEXIS 10507, at *16. By contrast, as explained above, this factor is not present here where the Complaint has just been filed. Moreover, subsequent decisions in other cases have added to the confusion surrounding the proper interpretation of the "ordinary course of its business" exception.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16.

GOOGLE'S MOTION TO DISMISS COMPLAINT
MEMORANDUM OF POINTS & AUTHORITIES
CASE NO. 5:15-CV-04062

certification, expert discovery, and motion practice. *Helman v. Alcoa Global Fasteners Inc.*, No. CV 09-1353, 2009 WL 2058541, at *5-6 (C.D. Cal. June 16, 2009) (certifying question "of first impression" in early stage of case where appellate review could avoid the "expend[iture of] significant time and resources."). Lastly, resolution of this important and unanswered question could significantly impact Internet companies and current and future litigation over this issue. *Klinghoffer*, 921 F.2d at 24.[19] As noted below, since the *Gmail* decision in 2013, courts in this district have fundamentally disagreed as to the proper interpretation of the ordinary course of its business exception, leading to significant uncertainty for ECS providers as to what services they may properly provide to millions of their customers across the country. Resolution of this issue could bring needed clarity to an entire industry, and can only come from appellate review.

### b. Substantial Ground for Difference of Opinion Exists As to the Scope of the "Ordinary Course of Its Business" Exception.

A "substantial ground for difference of opinion exists where reasonable jurists might disagree on an issue's resolution," *Reese*, 643 F.3d at 688, or where "an issue involves one or more difficult questions of law not settled by some controlling authority." *VIA Techs., Inc. v. SonicBlue Claims LLC*, No. C 09-2109 PJH, 2011 WL 2437425, at *1 (N.D. Cal. June 17, 2011). Here, the simple phrase "ordinary course of its business" has given rise to starkly contrasting interpretations in the past few years among judges in this District. In *Gmail*, this Court determined that the "exception is narrow and designed only to protect electronic communication service providers against a finding of liability under the Wiretap Act where the interception facilitated or was incidental to provision of the electronic communication service at issue." 2013 U.S. Dist. LEXIS 172784, at *40. By contrast, a few months later in *Google Privacy Policy*, Judge Grewal rejected this reading as incompatible with the same statutory text and case law that the *Gmail* court had analyzed, as discussed above. 2013 WL 6248499 at *11. The court instead reasoned that the exception applied broadly to the "customary and routine business practices" of an ECS provider. *Id.* Judge Hamilton plotted a third course in *Campbell v.*

---

[19] In addition to this suit and the *Gmail* litigation, a number of prominent companies with millions of users have been sued for ECPA violations and have asserted the "ordinary course of its business" exception. *See Yahoo Mail*, 7 F. Supp. 3d at 1021; *Campbell*, 77 F. Supp. 3d at 838.

*Facebook*, agreeing with the *Google Privacy Policy* court that pursuant to the statutory text and case law "the exception must cover more than just 'necessary' activities, [but] also agree[ing] with the *Gmail* court's finding that there must be 'some nexus between the need to engage in the alleged interception and the subscriber's ultimate business, that is, the ability to provide the underlying service or good.'" 77 F. Supp. 3d at 844. Given this three-way split among judges in the same district concerning the proper interpretation of statutory text and case law and in the absence of controlling law on an important question, the Court "should not hesitate" to certify the interlocutory appeal. *Mohawk Indus.*, 558 U.S. at 111.

### c. Certification May Materially Advance the Termination of the Litigation.

Certification of the question at issue in this suit "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Courts do not require that the immediate appeal "have a final, dispositive effect on the litigation, only that it 'may materially advance' the litigation." *Reece*, 643 F.3d at 688. As discussed, were the Ninth Circuit to read the exception broadly, Google's challenged conduct would likely terminate the ECPA claim and potentially the entire litigation. It would certainly conserve this Court's and the parties' resources that would be otherwise expended on discovery, class certification, expert discovery, and motion practice on the ECPA claim. *Helman*, 2009 WL 2058541, at *5-6.

### C. The Court Should Decline Supplemental Jurisdiction Over The CIPA Claim.

Because Plaintiff's ECPA claims fail as a matter of law, the Court should decline supplemental jurisdiction over his CIPA claim—which involves a California statute, a California plaintiff, and a proposed class of California citizens.[20] The Ninth Circuit has "frequently recognized that when federal claims are dismissed before trial, supplemental state claims should ordinarily also be dismissed." *Avelar v. Youth & Family Enrichment Servs.*, 364 Fed. App'x 358, 359 (9th Cir. 2010) (instructing the district court to vacate its judgment and dismiss state law

---

[20] The sole basis for this Court's jurisdiction over Plaintiff's state CIPA claims is supplemental jurisdiction tied to Plaintiff's federal ECPA claims. (Compl. ¶ 10.) Because Plaintiff, a California resident, asserts California claims against a California defendant on behalf of a California class, there can be no minimal diversity under the Class Action Fairness Act, 28 U.S.C. § 1332(d), and no federal question jurisdiction without ECPA. (*Id.* ¶¶ 8, 10, 32.)

claims when the only federal claim had been dismissed); *ACRI v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) ("in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims"); *Wren v. Sletten Constr. Co.*, 654 F.2d 529, 536 (9th Cir. 1981) ("When the state issues apparently predominate and all federal claims are dismissed before trial, the proper exercise of discretion requires dismissal of the state claims.").

It is particularly appropriate to decline supplemental jurisdiction where the Court and the parties have yet to invest substantial time and resources to adjudicate Plaintiff's state law claims. *See Colvin v. Tooley-Young*, No. C14-1962JLR, 2015 U.S. Dist. LEXIS 90647, at *1 (W.D. Wash. July 13, 2015) (declining supplemental jurisdiction after dismissing plaintiffs' ECPA claim, noting that the court had not invested significant resources in the dispute and the parties had not conducted discovery concerning plaintiffs' state law claims). Similarly here, the case is at an early stage and the Court and parties have not yet invested substantial time or resources on the CIPA claim, making it all the more proper to decline jurisdiction at this juncture.

Even if the Court finds that Plaintiff's individual ECPA claim for statutory damages can proceed, it should still decline supplemental jurisdiction because Plaintiff's CIPA claims "raise[] a novel or complex issue of State law" that California courts have not yet addressed. 28 U.S.C. § 1367(c)(2); *Molski v. Kahn Winery*, 381 F. Supp. 2d 1209, 1211-12 (C.D. Cal. 2005) (declining jurisdiction over claims raising novel issues of state law because the "California courts should be given the opportunity to interpret California law"). As this Court noted in *Gmail*, "there is no binding authority with respect to whether section 631 applies to email." 2013 U.S. Dist. LEXIS 172784, at *74. In the absence of such binding authority, the Court was resigned to "predict what the California Supreme Court would do if confronted with this issue," and concluded that Section 631 applied to email. *Id.* at *78. Since that decision, no California court has considered this important issue, let alone reached a similar conclusion. As these novel issues of state law pertaining to the proposed California class will predominate over Plaintiff's individual ECPA claim, this Court should decline supplemental jurisdiction and permit the California courts to test Plaintiff's CIPA claims. *See NetApp, Inc. v. Nimble Storage*, 41 F. Supp. 3d 816, 838 (N.D. Cal.

2014) (Koh, J.) (declining supplemental jurisdiction over state claims, finding that "[j]udicial resources are best conserved by dismissing the case at this [pleadings] stage" because the claims would likely require different sources of proof, and dismissal "promotes comity as it enables California courts to interpret" state law); *Wong v. HSBC Mortg. Corp. (USA)*, 2009 U.S. Dist. LEXIS 10399, at *10 (N.D. Cal. Jan. 21, 2009) (declining jurisdiction because the state law claims presented novel issues of state law and "if said state law claims remain joined with the federal claim herein, the 'federal tail' will 'wag what is in substance a state dog'").

For these reasons, the Court should decline supplemental jurisdiction over Plaintiff's CIPA claims to avoid expending judicial resources on novel issues of state law that should be decided by California courts in the first instance.

**D.     The CIPA Claim Fails As A Matter Of Law for Multiple Reasons.**

Even if the Court opts to exercise jurisdiction, the CIPA claim should be dismissed because the statute does not apply to the processing of emails by an electronic communications service ("ECS") provider like Google.  Google acknowledges the Court held otherwise in *Gmail*, but respectfully submits that the Court reached the wrong result.

***First***, the Court looked to "the California Supreme Court's repeated finding that the California legislature intended for CIPA to establish broad privacy protections" and concluded this legislative intent "supports an expansive reading of the statute."  *Gmail*, 2013 U.S. Dist. LEXIS 172784, at *77.  But the clearest expression of legislative intent comes from the statute itself and supports a contrary reading.  Section 630 provides:

> The Legislature hereby declares that advances in science and technology have led to the development of new devices and techniques *for the purpose of eavesdropping* upon private communications and that the invasion of privacy resulting from the continual and increasing use of *such devices and techniques* has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society.

Cal. Penal Code § 630 (emphasis added).  Given the specific concern over "eavesdropping," CIPA should not be interpreted to reach technologies like email that cannot be "eavesdropped" in any sense of the word.  *See Black's Law Dictionary* 588 (9th ed. 2009) (defining "eavesdropping" as "[t]he act of secretly listening to the private conversation of others without their

consent"). The Legislature's focus on "such devices and techniques"—that is, devices and techniques for eavesdropping—without mentioning "related," "similar," or "future" devices and techniques shows it did *not* intend CIPA to automatically reach new technologies that might arise in the future.

To the contrary, the legislative history shows the opposite. Indeed, the Legislature *considered and rejected proposals to expand CIPA to cover electronic communications multiple times*. In 1995, the Legislature expanded Penal Code § 629 (the related statute to CIPA that addresses wiretapping by law enforcement) to cover certain types of electronic communications. In considering the bill, the Senate Judiciary Committee observed that "[i]t is not clear that California law specifically protects e-mail and other electronic communications from improper interception by either private parties or law enforcement." (McCune Decl., Exh. I at p. 4.) It thus posed the question "SHOULD, AS A COROLLARY TO THE EXTENSION OF THE WIRETAP LAW [Section 629] TO ELECTRONIC COMMUNICATIONS, THE PRIVACY LAWS [CIPA] BE AMENDED TO EXPRESSLY PROTECT ELECTRONIC COMMUNICATIONS FROM INTERCEPTION . . . ." (*Id.* (caps in original).)[21] The Legislature opted to amend *only* Section 629 to specifically address "electronic communications"[22] while declining to expand CIPA in similar fashion. (*Id.*)

In 2010, the Legislature amended (renamed) Section 629.50 again to cover additional forms of electronic communications. As the Senate Committee on Public Safety explained, the language of Section 629.50 at the time still did not cover certain electronic communications:

> California's current wiretap law . . . allows wiretapping (interception) of telephone communications and electronic digital pages by law enforcement . . . This bill re-enacts the basic provisions of the current wiretap statute, *but also updates California's wiretapping law to include interception of communications by e-mail, blackberry, instant messaging by phone and other forms of contemporaneous two way electronic communication*.

(McCune Decl. Exh. J at p. 4 (emphasis added).) Again, the Legislature decided to amend *only*

---

[21] The references to "Privacy Laws" refer to CIPA, which appears in the Penal Code as Section 1.5 of Title 15, and is entitled "Invasion of Privacy."

[22] Section 629.51 was added to define "electronic communication" and set forth related terms for purposes of Section 629. *See* Cal. Penal Code § 629.51.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Section 629.50, leaving the existing limitations of CIPA intact. The Legislature's repeated decisions to update other statutes while leaving Section 631 alone confirms the statute was not intended to cover new forms of electronic communications like emails that have emerged since the statute's enactment in 1967. *See Gross v. FBL Fin. Servs.*, 557 U.S. 167, 174 (2009) ("When Congress amends one statutory provision but not another, it is presumed to have acted intentionally."); *Deacon v. Pandora Media, Inc.*, 901 F. Supp. 2d 1166, 1178 (N.D. Cal. 2012) ("The omission of a provision in one statute that is included in another statute should be construed as intentional . . . and provisions not included in a statute by the Legislature should not be included by the courts").

   *Second*, this Court held that "the California Supreme Court regularly reads statutes to apply to new technologies where such a reading would not conflict with the statutory scheme." *Gmail*, 2013 U.S. Dist. LEXIS 172784, at *78. But the California Supreme Court's decisions do not support this proposition. The Court relied on *Davis v. Pacific Telephone & Telegraph Co.*, 59 P. 698 (Cal. 1899), which it described as an example of the California Supreme Court applying a functional interpretation of a statutory term to address new technology (in that case, the term "telegraph"). *Id.* But in *Sunset Telephone and Telegraph Co. v. City of Pasadena*, 161 Cal. 265 (1911), the Court revisited the question of whether a "telegraph" could be interpreted to include the subsequent development of the telephone. The Court rejected the prior interpretation from *Davis* that a "telegraph" includes "any apparatus for transmitting messages by means of electric currents and signals"—the very definition quoted in this Court's order. *Id.* at 275. Significantly, the California Supreme Court then held that the term "telegraph" "*must have meant only the kind of communication then known and in practical use under that name*" at the time the statute was enacted. *Id.* at 277 (emphasis added). Similarly here, CIPA should be interpreted to address only the forms of communications that the Legislature could conceivably have considered when it enacted the statute in 1967.[23]

---

[23] The Legislature has amended CIPA to cover new forms of communications *as they arise*. *See, e.g.*, McCune Decl., Exh. K (Sen. Bill No. 1431 (1985-86 Reg. Sess.) (expanding CIPA to include cellular radio telephone communications); *id.*, Exh. L (Assem. Bill No. 3457 (1989-90 Reg. Sess.) (expanding CIPA to include cordless telephone communications); *id.*, Exh. M

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

22.

GOOGLE'S MOTION TO DISMISS COMPLAINT
MEMORANDUM OF POINTS & AUTHORITIES
CASE NO. 5:15-CV-04062

1    This Court also cited *Apple v. Superior Court*, 56 Cal. 4th 128 (2013), in support of its

2    CIPA ruling. *Gmail*, 2013 U.S. Dist. LEXIS 172784, at *79. But *Apple* confirms why CIPA

3    should *not* be construed to regulate email processing by ECS providers. In *Apple*, the Court held

4    the Song Beverly Credit Card Act could not be interpreted to reach *online* credit card transactions

5    because doing so would create inconsistencies in the statutory scheme. *Apple*, 56 Cal. 4th at

6    150. As the Court explained, while the statute prohibits retailers from recording consumers'

7    personal information (like a zip code or an address) it allows retailers to view (but not record)

8    proof of identification to prevent fraud. *Id.* at 140. Online merchants, however, cannot take

9    advantage of this antifraud provision because proof of identification can only be provided if a

10   customer is physically present in a store. The Court held this inconsistency precluded interpreting

11   the statute to cover online transactions:

12       The safeguards against fraud that are provided in section 1747.08(d) are not
         available to the online retailer selling an electronically downloadable
13       product. Unlike a brick-and-mortar retailer, an online retailer cannot visually
         inspect the credit card, the signature on the back of the card, or the customer's
14       photo identification. Thus, section 1747.08(d)—the key antifraud mechanism in
         the statutory scheme—has no practical application to online transactions involving
15       electronically downloadable products. We cannot conclude that if the Legislature
         in 1990 had been prescient enough to anticipate online transactions involving
16       electronically downloadable products, it would have intended section 1747.08(a)'s
         prohibitions to apply to such transactions despite the unavailability of section
17       1747.08(d)'s safeguards.

18   *Id.* at 140-41.

19       Reading Section 631 to regulate email processing would create the same sort of internal

20   statutory inconsistency by depriving Google and other ECS providers of a critical exemption

21   within CIPA. When the Legislature enacted CIPA in 1967, it exempted from liability the

22   providers of the telephone and telegraph services addressed in the statute. Because these

23   providers were, at the time, regulated utilities, the statute's exemption is expressly directed at

24   "public utilities." *See* Penal Code § 631(b). As this Court found, however, ECS providers do not

25   fall within these provisions tailored to public utilities. Applying the liability provision of Section

26

27   (Assem. Bill No. 2735 (1981-82 Reg. Sess.) (expanding CIPA to include communications related
     to television programming). There would be no reason to update CIPA to include these
28   technologies if "telegraph" *already* captured new forms of communications.

Cooley LLP
Attorneys At Law
San Francisco

23.

GOOGLE'S MOTION TO DISMISS COMPLAINT
MEMORANDUM OF POINTS & AUTHORITIES
CASE NO. 5:15-CV-04062

631(a) to ECS providers would therefore conflict with the overall structure of the statute, which reflects an intent to prohibit interceptions of communications while exempting the providers of the communication service from liability.

As in *Apple*, the Court should not "conclude that if the Legislature in [1967] had been prescient enough to anticipate [email communications], it would have intended [Section 631's] prohibitions to apply to such [communications] despite the unavailability of [Section 631(b)'s] safeguards." *Apple*, 56 Cal. 4th at 141. Under these circumstances, the Court should not extend CIPA to reach an online context that the Legislature could not have contemplated.

***Third*** and relatedly, the Court's interpretation of CIPA puts ECS providers like Google in an untenable situation in which they face the risk of massive potential liability—both civil and criminal—for routine business conduct in providing a free email service to their users. For example, if Section 631 applies to an ECS provider's processing of email communications, then scanning email content to provide standard and beneficial features like spam detection would be effectively criminalized under California law. The same is true for a myriad of other standard email features that require automated scanning, processing, or analysis of email content. This anomalous result provides yet another reason why CIPA should not be expanded beyond its terms to reach email processing by ECS providers. *See United States v. Nosal*, 676 F.3d 854, 862 (9th Cir. 2012) (a "broad interpretation of a statute" should not be applied, if doing so would "criminalize a broad range of day-to-day activity.").[24]

Google acknowledges that the Court rejected a similar argument in the context of the ECPA claim in *Gmail,* explaining:

> The Court does not find persuasive Google's slippery slope contention that a narrow interpretation of the ordinary course of business exception will make it impossible for electronic communication service providers to provide basic features, such as email searches or spam control. . . . Some of these may fall within a narrow definition of "ordinary course of business" because they are instrumental to the provision of email service. Further, a service provider can seek consent to provide features beyond those linked to the provision of the service.

*Gmail*, 2013 U.S. Dist. LEXIS 172784, at *41, n.4. But the Court's reasoning regarding the

---

[24] Moreover, because CIPA is a criminal statute, the rule of lenity applies and requires that the statute be interpreted narrowly. *People v. Nuckles*, 56 Cal. 4th 601, 611 (2013).

ECPA claim highlights precisely why it should reach a different result as to CIPA. Unlike ECPA, CIPA (as construed by the Court) has no ordinary course of business provision to exempt the normal processing of email content. And unlike ECPA, CIPA requires consent of *all* parties, so the inherent protection for ECS providers noted in the Court's ruling (the ability to seek consent from users) is unavailable. Given the lack of equivalent protections, the "slippery slope" that the Court felt would not materialize under ECPA is a real and unavoidable risk under CIPA—if the statute is read to reach email processing by ECS providers like Google.

For all these reasons, Google respectfully requests that the Court reconsider its prior ruling and dismiss the current CIPA claim on the ground that the statute, by its express terms,[25] does not encompass an ECS provider's processing of email content sent to and from its users.

## V.     CONCLUSION.

For all of the reasons above, Plaintiff's Complaint should be dismissed in its entirety.

Dated: October 29, 2015

COOLEY LLP
MICHAEL G. RHODES (116127)
WHITTY SOMVICHIAN (194463)
KYLE C. WONG (224021)
KAREN L. BURHANS (303290)
AMY M. SMITH (287813)


*/s/ Whitty Somvichian*
Whitty Somvichian (194463)
Attorneys for Defendant GOOGLE INC.

121916019

---

[25] The first clause of Section 631 expressly refers to wiretapping of a "*telegraph* or *telephone wire, line, cable, or instrument*." Cal. Penal Code § 631 (emphasis added). The second clause covers other forms of interception that involve "read[ing]" or "learn[ing] the contents" of a communication, but reiterates that liability only applies if the communication is "in transit or passing over *any wire, line, or cable*, or is being sent from, or received at any place within this state." *Id.* (emphasis added). While the term "telegraph or telephone" is not repeated in the second clause, it is nonsensical to assume the Legislature intended to cover two totally different categories of "wire[s], line[s], or cable[s]" in two clauses of the same single-sentence provision.