COOLEY LLP
MICHAEL G. RHODES (116127) (rhodesmg@cooley.com)
WHITTY SOMVICHIAN (194463) (wsomvichian@cooley.com)
KYLE C. WONG (224021) (kwong@cooley.com)
KAREN L. BURHANS (303290) (kburhans@cooley.com)
AMY M. SMITH (287813) (amsmith@cooley.com)
101 California Street, 5th Floor
San Francisco, CA  94111-5800
Telephone:    (415) 693-2000
Facsimile:    (415) 693-2222

Attorneys for Defendant
GOOGLE INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| DANIEL MATERA, as an individual, and on behalf of the other persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE INC.,<br><br>Defendant. | Case No.  5:15-cv-04062 LHK<br><br>**REPLY IN SUPPORT OF DEFENDANT GOOGLE INC.'S MOTION TO DISMISS**<br><br>**F.R.C.P. 12(b)(1), 12(b)(6)**<br><br>Date:        February 25, 2016<br>Time:        1:30 p.m.<br>Courtroom: 8 - 4th Floor<br>                  280 S. First Street<br>                  San Jose, CA 95113<br><br>Judge:       The Hon. Lucy H. Koh<br>Trial Date:  Not yet set |

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## TABLE OF CONTENTS

**PAGE**

I.  INTRODUCTION ................................................................................................................ 1

II.  ARGUMENT ..................................................................................................................... 2

    A.  Plaintiff Has No Standing To Seek Injunctive Relief On His Classwide
Wiretap Act Claim As Gmail Users Consent To The Challenged Conduct. .......... 2

        1.  Google's 2014 Terms are Enforceable. ........................................................ 2

        2.  Google's Current Terms Provide Express Consent. .................................... 3

        3.  The Potential for Future Revision of Google's Terms Does Not
Create Standing. ......................................................................................... 5

    B.  Google's Alleged Scanning Practices Fall Within The Ordinary Course Of
Its Business Exception. ......................................................................................... 7

    C.  The Court Should Certify The Question Of The Proper Scope Of The
"Ordinary Course Of Its Business" Exception Under 28 U.S.C. § 1292. ............. 10

    D.  The Court Should Decline Supplemental Jurisdiction Over The CIPA
Claim As A Novel Issue Of State Law. ................................................................ 11

    E.  The CIPA Claims Fail As A Matter Of Law. ........................................................ 13

III.  CONCLUSION ................................................................................................................ 14

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**REPLY IN SUPPORT OF DEFENDANT GOOGLE INC.'S
MOTION TO DISMISS – CASE NO. 5:15-CV-04062 LHK**

**TABLE OF AUTHORITIES**

PAGE(S)

**Cases**

*Backhaut v. Apple Inc.*,
No. 14-CV-02285-LHK, 2015 U.S. Dist. LEXIS 107519 (N.D. Cal. Aug. 13,
2015) ..........................................................................................................................6

*Backhaut v. Apple Inc.*,
No. 14-CV-02285-LHK, 2015 U.S. Dist. LEXIS 161147 (N.D. Cal. Nov. 30,
2015) ........................................................................................................................11

*Baker v. United States*,
722 F.2d 517 (9th Cir. 1983).....................................................................................4

*Bennett v. Spear*,
520 U.S. 154 (1997)...................................................................................................7

*Campbell v. Facebook*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) ......................................................................11

*Crowley v. Cybersource Corp.*,
166 F. Supp. 2d 1263 (N.D. Cal. 2001) ...............................................................1, 12

*Edwards v. Princess Cruise Lines, Ltd.*,
471 F. Supp. 2d 1032 (N.D. Cal. 2007) ..................................................................12

*Exxon Mobil Corp. v. Allapath Servs., Inc.*,
545 U.S. 546 (2011)...................................................................................................8

*Gator.com Corp. v. L.L. Bean, Inc.*,
398 F.3d 1125 (9th Cir. 2005).....................................................................................5

*In re Google Inc. Gmail Litig.*,
No. 13-MD-02430-LHK, 2013 U.S. Dist. LEXIS 172784 (N.D. Cal. Sept. 26,
2013) ................................................................................................................. *passim*

*In re Google Inc. Gmail Litig.*,
No. 13-MD-02430-LHK, 2014 U.S. Dist. LEXIS 36957 (N.D. Cal. Mar. 18,
2014) ..........................................................................................................................4

*In re Google Privacy Policy Litig.*,
No. C-12-01382-PSG, 2013 WL 6248499 (N.D. Cal. Dec. 3, 2013) ....................8, 9

*Hall v. EarthLink Network, Inc.*,
396 F.3d 500 (2d Cir. 2005)......................................................................................9

*Jackson v. Fischer*,
No. C 11-2753 PJH, 2015 U.S. Dist. LEXIS 32128 (N.D. Cal. Mar. 13, 2015) ...............9, 10

*Kirch v. Embarq Management Co.*,
702 F.3d 1245 (10th Cir. 2012)................................................................................9

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**REPLY IN SUPPORT OF DEFENDANT GOOGLE INC.'S
MOTION TO DISMISS – CASE NO. 5:15-cv-04062 LHK**

**Table of Authorities**
(continued)

**Page(s)**

*Kremen v. Cohen*,
325 F.3d 1035 (9th Cir. 2003)................................................................................12

*Loewen v. Lyft, Inc.*,
No. 15-cv-01159-EDL, 2015 U.S. Dist. LEXIS 123131 (N.D. Cal. Sept. 15,
2015) ..........................................................................................................................4

*Lozano v. AT&T Wireless Servs., Inc.*,
504 F.3d 718 (9th Cir. 2007)..............................................................................5, 6

*Moeller v. Taco Bell Corp.*,
816 F. Supp. 2d 831 (N.D. Cal. 2011) ....................................................................5

*Nguyen v. Medora Holdings, LLC*,
No. 5:14-cv-00618-PSG, 2015 U.S. Dist. LEXIS 109125 (N.D. Cal. Aug. 18,
2015) ..........................................................................................................................6

*Olagues v. Russoniello*,
770 F.2d 791 (9th Cir. 1985)...................................................................................5

*Org. for the Advancement of Minorities v. Brick Oven Rest.*,
406 F. Supp. 2d 1120 (N.D. Cal. 2005) ................................................................12

*Rudgayzer v. Google, Inc.*,
986 F. Supp. 2d 151 (E.D.N.Y. 2013) ....................................................................3

*Schneider v. Cal. Dept. of Corrs.*,
151 F.3d 1194 (9th Cir. 1998)...............................................................................10

*Smith v. United States*,
508 U.S. 223 (1993).................................................................................................7

*Sunset Tel. and Tel. Co. v. City of Pasadena*,
161 Cal. 265 (1911) ..............................................................................................13

*United States v. Nosal*,
676 F.3d 854 (9th Cir. 2012)..................................................................................14

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) ...................................................................4, 5

**Statutes**

18 U.S.C. § 2511...................................................................................................1, 10

28 U.S.C.
§ 1292.....................................................................................................................10
§ 1367(c)(1)............................................................................................................12

Cal. Penal Code §§ 630, *et seq*............................................................................ *passim*

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## I.   INTRODUCTION

Google's Motion to Dismiss should be granted notwithstanding the scattershot arguments raised in Plaintiff's Opposition ("Opp.").

First, Plaintiff does not credibly contest the effect of Google's current Terms of Service ("TOS"), as amended in April 2014 after the Court's motion to dismiss order in *In re Google Inc. Gmail Litig.*, No. 5:13-MD-02430-LHK ("*Gmail*"), which require Gmail users to expressly consent to the automated analysis of Gmail content for targeted advertising and other purposes. Plaintiff claims these revised terms do not apply to "*prior* interceptions of email content" (Opp. 1), but the amended TOS makes no such distinction and explains that Google analyzes emails in Gmail users' accounts regardless of when they were received. Plaintiff also alludes to the purported ongoing use of data from emails that were deleted from Gmail users' accounts before the current terms went into effect, but this new theory is not reflected in the Complaint and Plaintiff's unsupported assertion, made for the first time in his briefing, cannot support Article III standing. Because Google's current terms eliminate the risk of any future violations, Plaintiff is barred from seeking injunctive relief on his claim under the Wiretap Act, 18 U.S.C. §§ 2511, *et seq*. Indeed, Plaintiff tacitly concedes as much by defining the proposed "ECPA class" in relation to the date when Google amended its terms.[1]

Second, Plaintiff offers no valid reason why the Court should exercise supplemental jurisdiction over his claim under California's Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 630, *et seq*. Indeed, Plaintiff concedes that California's appellate courts have, to date, offered no guidance on the question of whether CIPA applies to electronic communications like email. Given the novel state law issue posed by Plaintiff's CIPA claim, the Court should decline supplemental jurisdiction, as other courts have done in directly analogous circumstances. *Crowley v. Cybersource Corp.*, 166 F. Supp. 2d 1263, 1273 (N.D. Cal. 2001) (declining to exercise supplemental jurisdiction over state law claims because they raised "important issues

---

[1] Plaintiff's Complaint uses December 19, 2014 as the cutoff for his ECPA class definition, evidently viewing the language added to Google's Privacy Policy on that date as limiting his classwide ECPA claims. (Compl. ¶¶ 27, 32.) However, Plaintiff ignores the fact that Google's Terms of Service had already added that language months earlier, on April 14, 2014.

regarding the transmission of information over the Internet," which "should be left to the California courts to, in the first instance, apply California law to this area.").

Third, Plaintiff unsurprisingly urges the Court to apply its prior rulings from the *Gmail* matter, which allowed the Wiretap Act and CIPA claims in that case to proceed beyond the pleading stage. Plaintiff, however, offers little substantive rebuttal to the points Google raised in its Motion that call into question this Court's prior analysis. If the Court reaches these issues, despite the lack of Article III standing and proper supplemental jurisdiction, Google respectfully requests that the Court revisit its prior findings and dismiss the Wiretap Act and CIPA claims for all the reasons set forth in its Motion. Alternatively, the Court should certify for interlocutory review the important question of whether the "ordinary course of its business" provision of the Wiretap Act reaches the conduct at issue. Plaintiff does not dispute that this is a controlling issue of law that is potentially dispositive of the case. Moreover, the stark divide between the parties' positions on the issue—driven by the different standards articulated by different courts within this District—underscores the need for appellate guidance on the proper application of this important statutory provision impacting providers of electronic communications services ("ECS") like Google.

## II.   ARGUMENT

### A.   Plaintiff Has No Standing To Seek Injunctive Relief On His Classwide Wiretap Act Claim As Gmail Users Consent To The Challenged Conduct.

As shown in Google's Motion, Plaintiff has no standing to seek injunctive relief because there is no risk of a future Wiretap Act violation in light of Google's current TOS and Privacy Policy. Plaintiff's various efforts to avoid this outcome all fail.

#### 1.   Google's 2014 Terms are Enforceable.

As an initial matter, Plaintiff suggests there is some ambiguity as to whether Gmail users are bound by the current TOS. But the Court previously considered the Gmail sign-up process and found that the various versions of Google's TOS are "legal agreements" to which "Gmail users were required to agree." *In re Google Inc. Gmail Litig.*, No. 13-MD-02430-LHK, 2013 U.S. Dist. LEXIS 172784, at *10 (N.D. Cal. Sept. 26, 2013) (Koh, J.) ("*Gmail*"). Google's TOS,

including the version in effect as of the Court's September 26, 2013 order in *Gmail*, has consistently provided that amendments are implemented by posting. (Declaration of Jay McCune ("McCune Decl."), Exh. A and *Gmail* ECF No. 46-6 (section entitled "About these Terms").) Plaintiff does not dispute (nor could he) that the April 14, 2014 TOS was posted on Google's website in compliance with this provision. The current TOS is therefore binding on all Gmail users. *See, e.g., Rudgayzer v. Google, Inc.*, 986 F. Supp. 2d 151, 154 n. 1 (E.D.N.Y. 2013) (finding that a Gmail user who was bound to the TOS through an initial "clickwrap" agreement was then also "bound by future changes to the terms"). Plaintiff also does not dispute that Google's Privacy Policies are incorporated by reference to the TOS and thus constitute part of the "legal agreement" to which "Gmail users [are] required to agree." *Gmail*, 2013 U.S. Dist. LEXIS 172784, at *10.

### 2.     Google's Current Terms Provide Express Consent.

Plaintiff claims that certain provisions in the current TOS and Privacy Policy are still not sufficiently clear, but his hyper-technical quibbling with Google's disclosures is unconvincing.

*First*, Plaintiff claims Google does not adequately disclose that automated processing applies to Gmail users' emails with *non*-Gmail users. (Opp. 9.) This is nonsensical. Google advises users that its automated systems will "analyze your content *(including emails)*" without any limitation on the scope of "emails" covered by that provision. (McCune Decl., Exh. A.) Plaintiff offers no support for the absurd notion that this disclosure somehow excludes emails in a Gmail user's account that came from *non*-Gmail sources.

*Second*, Plaintiff claims Google's current terms should not apply to emails that were in a user's Gmail account before the effective date of the April 2014 amendment. But, again, the disclosure above contains no limitation as to time and necessarily includes emails in Gmail users' accounts that were received before and after the April 2014 amendment.

*Third*, Plaintiff suggests that Google continues to use data from emails that Gmail users received and deleted from their accounts before April 2014, and he claims he has standing to seek a mandatory injunction requiring the deletion of this data. But this new theory appears nowhere in the Complaint. Plaintiff's belated assertion, made for the first time in his opposition brief,

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3.

cannot support Article III standing.[2] *See Baker v. United States*, 722 F.2d 517, 518 (9th Cir. 1983) ("The facts to show [Article III] standing must be clearly apparent on the face of the complaint.").

*Fourth*, Plaintiff asserts that Google fails to explain that it "separately stores and catalogues the emails' content indefinitely." (Opp. 9.) But this assertion is simply false, as Google specifically explains that the automated scanning of email content occurs as the content is "stored." (McCune Decl., Exhs. A and B.) Moreover, the assertion that email content is stored "indefinitely" appears nowhere in the Complaint, as discussed above.

*Fifth*, Plaintiff argues "Google continues to hide the fact that it analyzes users' and non-users' email content for the purpose of creating individual data profiles of the communicants." (Opp. 9.) But the only alleged use of these profiles that Plaintiff identifies in the Complaint is related to targeted advertising, (Compl. ¶¶ 1, 17, 68b), which Plaintiff concedes is fully disclosed in Google's current terms. While Plaintiff alludes to unspecified "future" uses, (Compl. ¶ 21), these vague assertions cannot support standing. In *In re Yahoo Mail Litig.*, the Court held that Yahoo users consented to unspecified "future" uses of their emails where Yahoo's terms disclosed its storage of email data. 7 F. Supp. 3d 1016, 1031 (N.D. Cal. 2014) ("*Yahoo Mail*"). Similarly here, Google's express disclosure that email content is "stored" provides express consent for Google to use such data in the future.

*Sixth*, Plaintiff says that disclosures that appear in pop-ups or linked pages should not be considered part of the TOS. It is established law, however, that information incorporated into an online agreement via a direct link is binding. *See, e.g.*, *Gmail*, 2013 U.S. Dist. LEXIS 172784, at *10; *In re Google Inc. Gmail Litig.*, No. 13-MD-02430-LHK, 2014 U.S. Dist. LEXIS 36957, at *21 (N.D. Cal. Mar. 18, 2014) (Koh, J.) ("*Gmail II*") (holding that the terms of service incorporated the privacy policy "by linking to Google's Privacy Policy page, which contained the latest Privacy Policy"); *Loewen v. Lyft, Inc.*, No. 15-cv-01159-EDL, 2015 U.S. Dist. LEXIS

---

[2] Plaintiff may claim that he alludes to such use by alleging that "Google also cataloged the intercepted content, including the emails of Plaintiff and Class members, to create user profiles to be stored indefinitely." (Compl. ¶ 21.) But even if this conclusory statement could be credited at all, it simply says that user profiles are stored indefinitely. The Complaint does not allege, as Plaintiff now suggests, that information derived from emails is retained in the user profile even after the email is deleted. Nor can Plaintiff make any such allegation in good faith.

123131, at *28 (N.D. Cal. Sept. 15, 2015) (holding that arbitration rules linked to terms of service were incorporated by reference). Indeed, this Court relied on linked material in construing the adequacy of the agreement in the *Yahoo Mail* matter. *Yahoo Mail*, 7 F. Supp. 3d at 1021, 1028-29.

*Last*, Plaintiff tries to distinguish Google's current terms from the disclosures the Court approved in *Yahoo Mail*. But there are no meaningful distinctions that could support a different outcome here. Like Yahoo's terms, Google's terms specifically disclose that Google analyzes and stores the contents of emails in the Gmail system for targeted advertising and other purposes. Plaintiff notes that Yahoo's terms requires Yahoo users to notify non-Yahoo users, but this is irrelevant to considering whether Gmail users have expressly consented to the practices at issue.

### 3.    The Potential for Future Revision of Google's Terms Does Not Create Standing.

Plaintiff next contends that Google's current terms, even if sufficient to support express consent, do not eliminate standing because he speculates Google might revise its terms in the future to remove the relevant disclosures. (Opp. 12.) Plaintiff goes so far as to say that a "voluntary cessation" of a challenged practice does not undermine standing because it must be "absolutely clear" there will be no recurrence and Google "bears a heavy burden" on this issue. (*Id.*)

These are intentional misstatements of the applicable law. Plaintiff has cherry-picked concepts that apply to evaluating *mootness*, while ignoring the *standing* principles raised in Google's Motion.[3] The Ninth Circuit has specifically cautioned, however, that these principles cannot be conflated and "a careful analysis should distinguish the two doctrines." *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 733 (9th Cir. 2007). *See also Gator.com Corp. v. L.L.*

---

[3] In his Opposition, Plaintiff quotes language derived from discussions of mootness—not standing. In both *Moeller v. Taco Bell Corporation* and *Olagues v. Russoniello*, the courts analyzed standing and mootness in distinct sections of their respective opinions. *See Moeller v. Taco Bell Corp.*, 816 F. Supp. 2d 831, 848-51, 860-62 (N.D. Cal. 2011) (addressing standing in section B, and mootness in section D); *Olagues v. Russoniello*, 770 F.2d 791, 794-99 (9th Cir. 1985) (addressing standing in section III, and mootness in section II). Plaintiff cites and quotes from the sections pertaining to mootness, not standing.

*Bean, Inc.*, 398 F.3d 1125, 1134 (9th Cir. 2005) (explaining that it "is not so" "that the personal stake necessary to support jurisdiction is the same for both standing and mootness"). As the Court explains:

> In determining mootness, the *defendant* bears the burden of showing that its voluntary compliance moots a case by convincing the court that "it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." By contrast, in determining standing issues the court considers whether the *plaintiff* has demonstrated that, "if unchecked by the litigation, the defendant's allegedly wrongful behavior will likely occur or continue, and that the threatened injury is certainly impending."

*Lozano*, 504 F.3d at 733 (emphasis in original) (citation and quotation omitted). Moreover, a standing challenge focuses on whether at the *inception* of the case a litigant has met Article III requirements to bring the lawsuit, whereas a mootness challenge examines a situation where "plaintiff had standing when he or she filed suit but due to a changed circumstance his or her claim became moot." *Id.* at 732-33. Here, the April 2014 amendment both eliminated Plaintiff's standing to sue *and* occurred before the litigation, thus making mootness irrelevant.

Plaintiff's misplaced reliance on mootness standards (under which the defendant bears the burden) is an obvious effort to deflect attention from his failure to meet the applicable requirement for standing at the outset of the case (for which the *plaintiff* bears the burden). *See Backhaut v. Apple Inc.*, No. 14-CV-02285-LHK, 2015 U.S. Dist. LEXIS 107519, at *22-23 (N.D. Cal. Aug. 13, 2015) ("To establish standing for prospective injunctive relief . . . plaintiff must establish a real and immediate threat of repeated injury.") (internal citations and quotation marks omitted). Here, nothing in Plaintiff's Complaint or his Opposition demonstrates that Google will revise its terms in the future to remove the disclosures it added in 2014. Nor does Plaintiff offer any legal support for the notion that standing can be premised on the mere possibility of revised terms. As Google's cited authorities show, the standing analysis is based on a defendant's *current* disclosures, not the abstract possibility of future revision. *See Nguyen v. Medora Holdings, LLC*, No. 5:14-cv-00618-PSG, 2015 U.S. Dist. LEXIS 109125, at *20, *24-26 (N.D. Cal. Aug. 18, 2015) (finding that plaintiff lacked standing to seek injunctive relief regarding

defendant's product labeling, where the alleged misleading language had been removed and plaintiff failed to show "any 'threat' that [defendant] will change its label back to include an 'all natural' statement"). Similarly here, Plaintiff's mere speculation about future revisions to Google's terms is irrelevant to the standing analysis, which must be based on Google's current terms.

For these reasons, Plaintiff lacks standing to seek injunctive relief on his classwide Wiretap Act claim, and this claim should thus be dismissed as a matter of law.

### B. Google's Alleged Scanning Practices Fall Within The Ordinary Course Of Its Business Exception.

Plaintiff's *individual* claim under the Wiretap Act for statutory damages also fails. As Google's Motion shows, longstanding rules of statutory construction and relevant case law all support a broad interpretation of the Wiretap Act's "ordinary course of its business" exception. Nothing in the Opposition changes this conclusion.

Plaintiff places great weight on the word "ordinary" to support a contrary interpretation, suggesting that its usage in the context of the "ordinary course of its business" exception is "synonymous with" "providing a communication service" or facilitating "the transmission of communications." (Opp. 13 n.6.) But that leap of logic is unsupported. The statute does not define "ordinary" to have these specialized meanings, and the term must instead be construed "with its ordinary and natural meaning." *Smith v. United States*, 508 U.S. 223, 228 (1993). Plaintiff does not dispute that "ordinary" is generally defined as "customary or routine" and offers no reason why this plain meaning should not apply. *Id*. (examining dictionary definition for word's plain meaning).[4]

Plaintiff compounds his error by relying on portions of a Senate Report on the Wiretap Act, even though Congress's "authoritative statement is the statutory text, not the legislative

---

[4] Moreover, Congress expressly used the term "business" (and not "incidental" or "necessary" to transmission). In eliminating *any* commercial purpose from the exception in place of a technological one, Plaintiff's interpretation effectively reads out the term from the statute. This violates the "cardinal principle of statutory construction" that it "is our duty to give effect, if possible, to every clause and word of a statute." *Bennett v. Spear*, 520 U.S. 154, 173 (1997).

history."  *Exxon Mobil Corp. v. Allapath Servs., Inc.*, 545 U.S. 546, 568 (2011).  The Report, Plaintiff claims, shows that "Congress intended to create a dichotomy between processing emails to transmit the communications . . . and intercepting private email contents to acquire the *meaning* of those messages."  (Opp. 14.)  But the Report actually explains a completely different "dichotomy": the distinction between agents of "wire" communications services that provide a "traditional voice telephone service," as compared to those of ECS providers.  The Senate Report explains that agents of *wire* communications services are not allowed to engage in "observing" or "monitoring" because doing so would involve "humans listening in on voice conversations," but does not express any similar concerns as to agents of ECS providers.  The Report thus bolsters *Google's* interpretation, not Plaintiff's, because it confirms that automated processing is not subject to the same restrictions as human review of communications.  Plaintiff's repeated effort to equate the automated processing of Gmail to "listening in on . . . conversations" (Opp. 14), therefore fails.[5]

Plaintiff fares no better with his attempt to narrow decisions that broadly interpreted the ordinary course of business exception.  For instance, *In re Google Privacy Policy Litig.*, Judge Grewal was not "solely focused" on the word business (Opp. 13), but rather carefully examined the language of the entire exception.  No. C-12-01382-PSG, 2013 WL 6248499, at *10 (N.D. Cal. Dec. 3, 2013) ("*Google Privacy*") ("Congress also teamed the term 'business' with the terms 'ordinary course,' suggesting an interest in protecting a provider's customary and routine business practices.").  Nor did Judge Grewal conflate the exception with consent as Plaintiff contends. (Opp. 16.)  Indeed, having already examined the statutory text and case law, the court only engaged in the discussion about disclosed conduct falling within the ordinary course exception because *the plaintiffs* in the case raised the issue.  *Google Privacy*, 2013 WL 6248499, at *11.[6]

---

[5] While the Senate Report states that ECS providers "may" have to monitor transmissions to properly "route, terminate, and otherwise manage" emails, Congress gave no indication it intended to limit ECS monitoring only to such tasks—otherwise, it would have expressly placed such a limit on ECS providers in the law, as it did for wire communications service providers.

[6] Tellingly, Plaintiff has no meaningful rejoinder to Judge Grewal's identification of the "fundamental problem" with a constricted reading of the ordinary course of business exception: "it begs the question of what exactly its means for a given action to be 'necessary' to the delivery

*Hall v. EarthLink Network, Inc.*, 396 F.3d 500 (2d Cir. 2005), and *Kirch v. Embarq Management Co.*, 702 F.3d 1245 (10th Cir. 2012), do not support Plaintiff's attempt to depart from the clear language of the statute described above. Plaintiff claims that in *Hall*, the Second Circuit applied the ordinary course of business exception to EarthLink's conduct because EarthLink had demonstrated that it did not have the technical capability to stop receiving emails to a closed account. (Opp. 15.) Yet, the Second Circuit did not rely on that fact in applying the exception, nor does it show that the processing at issue was necessary or instrumental to EarthLink's provision of services. *Hall*, 396 F.3d at 505. Moreover, in *Kirch*, the ordinary course of business exception applied because Embarq had "access to no more of its users' electronic communications than it had in the ordinary course of its business as an ISP." 702 F.3d at 1250. The decision did not turn on whether Embarq had viewed the raw data, but rather that because it already had access to such data as part of its business, such access would fall within the exception. *Id.* Again, as with *Hall*, there was no suggestion that the access to raw data was necessary or instrumental to its provision of services.[7]

Plaintiff claims that Google is distorting the meaning of the "ordinary course of its business" provision so it can do "anything it wants with the contents of Class members' personal communications, so long as that act is undertaken in the pursuit of profit." (Opp. 13.) This hyperbolic claim is false. Google's plain-meaning interpretation does not give an ECS provider unfettered ability to access its users' communications, as Plaintiff suggests; rather, any processing of communications that is not already supported by users' consent (1) must be done for a legitimate business purpose (not one offered to justify an underlying non-business reason); (2) must be done in the ordinary course; (3) any review by "employees or agents" falling within

of Gmail." *Google Privacy*, 2013 WL 6248499, at *11.

[7] While Plaintiff and the Court suggest that "Google is more akin to NebuAd, which intercepted data for the purpose of providing targeted advertising" (*Gmail*, 2013 U.S. Dist. LEXIS 172784, at *32; Opp. 16), this ignores that: (1) unlike the one-time NebuAd test on Embarq, Google's scanning is an ordinary, routine part of its business; and (2) Google's targeted advertising is a component of its own integrated services—unlike NebuAd and Embarq, which were two companies with separate business goals, Google's business includes both the provision of email and targeted advertising, necessarily intertwined.

Section 2511(2)(a)(i) must further comply with the specific requirements of that provision; and (4) any disclosure of user information to third-parties is prohibited with only the specific exceptions permitted under 18 U.S.C. § 2702. Plaintiff's effort to raise the specter of over-reaching falls flat given these limitations on an ECS provider's ability to process communications in the "ordinary course of its business."[8]

Lastly, even were this Court to apply its interpretation of the exception, Google has demonstrated that serving ads to offset the costs of providing the service enables Google to offer the service in the first place. Plaintiff's only rejoinder is that the alleged conduct must be "the *only* way" Google can provide its services. (Opp. 19.) This is yet another limiting construction that is found nowhere in the statute.

In short, this Court should revisit its prior ruling and, in line with the plain meaning of the text, find that Google's conduct falls within the ordinary course of business exception.

### C. The Court Should Certify The Question Of The Proper Scope Of The "Ordinary Course Of Its Business" Exception Under 28 U.S.C. § 1292.

Were the Court not to modify its prior ruling on the "ordinary course of its business" exception, Google requested in its Motion that the Court certify the question for interlocutory review. Plaintiff does not dispute that, under Section 1292, Google has shown that such a ruling would involve "a controlling question of law…and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." Instead, Plaintiff quibbles with the last remaining requirement: whether the controlling question of law is one for which there is a substantial ground for difference of opinion. A survey of the case law makes clear that such a ground indisputably exists.

Plaintiff argues that there is in fact no difference of opinion, "full stop." (Opp. 20.) This

---

[8] Moreover, Plaintiff's discussion of automated processing in Google Apps for EDU does not appear in the Complaint and cannot support his arguments here. *Schneider v. Cal. Dept. of Corrs.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (court may not consider additional facts asserted in a plaintiff's memoranda in opposition to a motion to dismiss because such memoranda do not constitute pleadings under Rule 7(a)); *Jackson v. Fischer*, No. C 11-2753 PJH, 2015 U.S. Dist. LEXIS 32128, at *43 (N.D. Cal. Mar. 13, 2015) (same). Plaintiff does not even allege that he exchanged emails with Google Apps for EDU users.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10.

REPLY IN SUPPORT OF DEFENDANT GOOGLE INC.'S
MOTION TO DISMISS – CASE NO. 5:15-CV-04062 LHK

completely ignores Judge Hamilton's order in *Campbell v. Facebook*. 77 F. Supp. 3d 836, 843-844 (N.D. Cal. 2014). While the *Campbell* court endorsed part of the *Gmail* holding, it clearly charted a third course between *Gmail* and *Google Privacy*. *Id.* (noting "*Gmail* took a narrow view" while "*Google* [*Privacy*] took the broader view" and finding "both courts presented persuasive reasons to avoid an overly broad or narrow approach."). Likewise, Plaintiff overlooks Judge Grewal's careful analysis in *Google Privacy*, examining the statutory text and case law on the exception. Plaintiff may disagree with the analysis, but it cannot be blithely ignored based on the distinctions Plaintiff seeks to draw. It is undeniable, then, that no less than three different approaches to this exception have been issued by courts in this District in a span of just a few years.

Second, Plaintiff claims that there is no concern that an interlocutory appeal could significantly impact Internet companies in current and future litigation over this issue because the companies in these decisions all lost and are merely seeking a second bite at the apple. This is patently untrue. Google prevailed in *Google Privacy* on the ordinary course of business exception, a fact which Plaintiff conveniently ignores. Also, Apple recently prevailed before this very Court on this very exception in *Backhaut v. Apple*, No. 14-CV-02285-LHK, 2015 U.S. Dist. LEXIS 161147, at *20 (N.D. Cal. Nov. 30, 2015) (Koh, J.), and Twitter is currently briefing a motion to dismiss which concerns whether its automated processing of links in its Direct Message service falls within the ordinary course exception, *see Raney v. Twitter, Inc.*, No. 3:15-cv-04191-WHA (N.D. Cal.). Resolution of this issue is key for Internet companies generally, even those who have prevailed in particular cases. After all, they run the risk, as Google does here, of being in the untenable position of having potentially three different standards (or more) apply to their provision of electronic communication services. Interlocutory appeal is needed to dispel this uncertainty.

**D.    The Court Should Decline Supplemental Jurisdiction Over The CIPA Claim As A Novel Issue Of State Law.**

As Google's Motion shows, the Court should decline supplemental jurisdiction of the CIPA claim if it dismisses the Wiretap Act claim for the reasons above. Plaintiff does not dispute

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11.

REPLY IN SUPPORT OF DEFENDANT GOOGLE INC.'S
MOTION TO DISMISS – CASE NO. 5:15-CV-04062 LHK

that supplemental jurisdiction over state claims should be declined when the federal claims are dismissed or the state claims present a "novel or complex issue of State law." 28 U.S.C. § 1367(c)(1); (Mot. 18-19). Plaintiff further concedes that no California Court of Appeal has ever addressed whether Cal. Pen. Code § 631 applies to electronic communications like email. (Opp. 21.) Nonetheless, Plaintiff claims this question is not "novel" because a small number of district courts have addressed this issue without the benefit of any California state court authority. (Opp. 22.)

Yet the fact that a few district courts, including this one, have tried to "predict what the California Supreme Court would do if confronted with the issue" does not replace the need for a California court to determine the appropriate scope of CIPA. *Gmail*, 2013 U.S. Dist. LEXIS 17284, at *75. As a general matter, federal courts should be "reluctant to resolve novel or unsettled issues of state law." *Edwards v. Princess Cruise Lines, Ltd.*, 471 F. Supp. 2d 1032, 1035 n.6 (N.D. Cal. 2007). Until California courts have the opportunity to evaluate CIPA's application to email, this will remain a "novel" and unresolved issue, notwithstanding the existing rulings in federal court. *See Org. for the Advancement of Minorities v. Brick Oven Rest.*, 406 F. Supp. 2d 1120, 1130 (N.D. Cal. 2005) (declining supplemental jurisdiction and finding state law claims were "novel" despite being previously examined by district courts because there was no California authority on point).

Plaintiff also says that email is "the most common form of written communications in our society today," but it is not clear how that observation supports supplemental jurisdiction. (Opp. 22.) If anything, the ubiquity of email underscores why California courts should decide in the first instance whether CIPA reaches this important area of Internet communications. For example, in *Crowley*, 166 F. Supp. 2d at 1273, the court declined to exercise supplemental jurisdiction over plaintiff's state law claims because they raised "important issues regarding the transmission of information over the Internet" and the "papers submitted by the parties reveal[ed], by their numerous references to general principles rather than analogous authority, that the California courts have not had ample opportunity to address the applicability of the California tort law at issue in this case to Internet commerce." *Id.* The court concluded that this "should be left

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12.

**REPLY IN SUPPORT OF DEFENDANT GOOGLE INC.'S MOTION TO DISMISS – CASE NO. 5:15-CV-04062 LHK**

to the California courts to, in the first instance, apply California law to this area." *Id. See also Kremen v. Cohen*, 325 F.3d 1035, 1038 (9th Cir. 2003) (certifying novel question of state law for the California Supreme Court's review, noting that "[a]lthough we are quite capable of resolving the issue presented, we should not reach out to grab the question in the first instance simply because the case involves a novel and 'sexy' issue," and therefore "the spirit of comity and federalism cause us to seek certification").

For these reasons, the Court should decline supplemental jurisdiction and allow this novel issue of state law to be decided by California courts in the first instance, as comity requires.

**E.     The CIPA Claims Fail As A Matter Of Law.**

Even if the Court opts to reach the merits of the CIPA claim, Plaintiff's Opposition fails to show why CIPA should be applied to electronic communications that could not have been contemplated when the Legislature enacted the statute in 1967.  Indeed, Plaintiff largely ignores Google's substantive points, choosing instead to attack straw man arguments of his own making.

First, Plaintiff says Google is wrong to claim that CIPA covers only "eavesdropping" on oral communications.  This intentionally distorts Google's position.  Google referred to CIPA's statement of legislative purpose in Section 630, which addresses "eavesdropping," to highlight the Legislature's focus at the time of enactment.  But it has never disputed that CIPA extends beyond oral communications to address telegraphs and other forms of communications that involve a "wire, line, or cable"—*so long as those forms of communication were in place at the time of the statute's enactment in 1967. Sunset Tel. and Tel. Co. v. City of Pasadena*, 161 Cal. 265, 277 (1911).   Plaintiff makes no effort to contest this basic principle of statutory interpretation.

Second, Plaintiff argues that Google is not a public utility entitled to the exemptions of Section 631(a).  But Plaintiff is again attacking a straw man.  Google does not claim to be a public utility.  To the contrary, the fact that Google does *not* fall within the public utility exemption is precisely the point.  Sections 631(a) and (b), when interpreted in the context of their passage in 1967, reflect an intent to address interceptions of telephone and telegraph communications while exempting from liability the service providers that enabled those

communications at the time of CIPA's passage. Plaintiff's interpretation undermines this structure and creates an unintended disconnect in the statute by extending the liability provision of 631(a) to cover emails without affording providers of email services an exemption similar to 631(b). This anomalous result weighs heavily against Plaintiff's proffered interpretation. *United States v. Nosal*, 676 F.3d 854, 862 (9th Cir. 2012). Again, Plaintiff does not attempt to question this established canon of interpretation.

Third, Plaintiff asks the Court to ignore CIPA's legislative history because a portion of it involves Section 629, the related statute involving wiretapping by law enforcement. But Plaintiff ignores entirely (1) the 1995 legislative statements in which the Legislature specifically considered whether to amend CIPA to add electronic communications and declined to do so, and (2) the 1986 and 1990 amendments in which the Legislature amended CIPA (not Section 629) to cover new technologies, thus confirming that CIPA is not a continually evolving statute that automatically reaches new means of communication. Plaintiff has no answer to these critical aspects of the legislative history that do not involve Section 629 and confirm Google's interpretation.

## III.   CONCLUSION

For these reasons, and for the reasons discussed in Google's Motion, Google respectfully requests that the Court dismiss this action.

Dated: December 22, 2015

COOLEY LLP
MICHAEL G. RHODES (116127)
WHITTY SOMVICHIAN (194463)
KYLE C. WONG (224021)
KAREN L. BURHANS (303290)
AMY M. SMITH (287813)


*/s/  Whitty Somvichian*
Whitty Somvichian (194463)
Attorneys for Defendant
GOOGLE INC.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14.

REPLY IN SUPPORT OF DEFENDANT GOOGLE INC.'S
MOTION TO DISMISS – CASE NO. 5:15-CV-04062 LHK