1  Michael W. Sobol (SBN 194857)
   msobol@lchb.com
2  Nicole D. Sugnet (SBN 246255)
   nsugnet@lchb.com
3  Michael Levin-Gesundheit (SBN 292930)
   mlevin@lchb.com
4  LIEFF CABRASER HEIMANN
   & BERNSTEIN, LLP
5  275 Battery Street, 29th Floor
   San Francisco, CA 94111-3339
6  Telephone: 415.956.1000
   Facsimile: 415.956.1008
7
   Hank Bates (SBN 167688)
8  hbates@cbplaw.com
   CARNEY BATES & PULLIAM, PLLC
9  2800 Cantrell Road, Suite 510
   Little Rock, AR 72202
10 Telephone: 501.312.8500
   Facsimile: 501.312.8505
11
   Ray E. Gallo (SBN 158903)
12 rgallo@gallo-law.com
   Dominic R. Valerian (SBN 240001)
13 dvalerian@gallo-law.com
   GALLO LLP
14 1299 Fourth St., Suite 505
   San Rafael, CA 94901
15 Telephone: 415.257.8800

16 *Attorneys for Plaintiff*

17
                    UNITED STATES DISTRICT COURT
18
                    NORTHERN DISTRICT OF CALIFORNIA
19

20
21  DANIEL MATERA, as an individual, and   | Case No. 5:15-cv-04062 LHK
    on behalf of other persons similarly   |
    situated,                              | **PLAINTIFF'S SUPPLEMENTAL BRIEF**
22                                         | **REGARDING *SPOKEO, INC. V. ROBINS***
              Plaintiff,                   |
23                                         | Date:       June 27, 2016
    v.                                     | Time:       1:30 p.m.
24                                         | Courtroom:  8 - 4th Floor
    GOOGLE, INC.,                          |             280 S. First Street
25                                         |             San Jose, CA 95113
              Defendant.                   | Judge:      The Hon. Lucy H. Koh
26

27

28

**TABLE OF CONTENTS**

**Page**

INTRODUCTION .................................................................................................................. 1

ARGUMENT .......................................................................................................................... 1

    I.    The Supreme Court Reaffirmed that "Intangible" Injuries are Nonetheless "Concrete," for Purposes of Article III Standing Where, as Here, the Legislature Codifies Long-Recognized Common Law Rights. ................................ 1

        A.    ECPA and CIPA Codify Concrete Privacy Injuries that Have Been Long-Recognized in the Common Law. ......................................................... 3

        B.    By Enacting ECPA and CIPA, the U.S. Congress and California Legislature Recognized a "Concrete" Harm Stemming from the Interception of Private Communications. ....................................................... 5

    II.    Plaintiff's Injuries are "Particularized" and "Concrete," and Do Not Amount to a "Bare Procedural Violation." ................................................................................ 6

CONCLUSION ..................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page**

### Cases

*Berger v. State of N.Y.*,
  388 U.S. 41 (1967) ................................................................................................................ 4

*Billings v. Atkinson*,
  489 S.W.2d 858 (Tex. 1973) ................................................................................................. 4

*Church of Lukumi Babalu Aye, Inc. v. Hialeah*,
  508 U.S. 520 (1993) .............................................................................................................. 2

*Federal Election Commission v. Akins*,
  524 U.S. 11 (1998) ................................................................................................................ 8

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*,
  528 U.S. 167 (2000) .............................................................................................................. 1

*Gill v. Curtis Pub. Co.*,
  38 Cal. 2d 273 (1952) ........................................................................................................... 4

*Griswold v. Connecticut*,
  381 U.S. 479 (1965) .............................................................................................................. 3

*In re Google Privacy Policy Litig.*,
  No. C 12-01382 PSG, 2012 U.S. Dist. LEXIS 183041 (N.D. Cal. Dec. 28, 2012) ............... 2

*In re iPhone Application Litig.*,
  No. 11-md-2250-LHK, 2011 U.S. Dist. LEXIS 106865, (N.D. Cal. Sept. 20, 2011) ........... 2

*LaCourt v. Specific Media, Inc.*,
  No. SACV 10-1256-GW (JCGx), 2011 U.S. Dist. LEXIS 50543 (C.D. Cal. Apr. 28, 2011) ..... 2

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) .............................................................................................................. 2

*Pleasant Grove City v. Summum*,
  555 U.S. 460 (2009) .............................................................................................................. 2

*Public Citizen v. U.S. Department of Justice*,
  491 U.S. 440 (1989) .............................................................................................................. 8

*Shulman v. Grp. W Prods., Inc.*,
  18 Cal. 4th 200 (1998) .......................................................................................................... 4

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016) ................................................................................................... passim

*Summers v. Earth Island Institute*,
  555 U.S. 488 (2009) .............................................................................................................. 7

*Vernars v. Young*,
  539 F.2d 966 (3d Cir. 1976) .................................................................................................. 4

### Statutes

California Constitution, Article I, § 1 ............................................................................................ 4

California Invasion of Privacy Act, Cal. Pen. Code § 630 .................................................... 1, 6, 9

**TABLE OF AUTHORITIES**
**(continued)**

Page

California Invasion of Privacy Act, Cal. Pen. Code § 631 ............................................................... 3

California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ........................................... 2

Electronic Communications Privacy Act, 18 U.S.C. § 2510 ........................................................... 1

Electronic Communications Privacy Act, 18 U.S.C. § 2520(a) ...................................................... 3

**Other Authorities**

114 Cong. Rec. S6194 (daily ed. May 23, 1968) (statement of Sen. Fong) .................................... 5

Edward J. Bloustein,
  *Privacy as an Aspect of Human Dignity: An Answer to Dean Prosser*,
  39 N.Y.U. L. REV. 962 (1964) ..................................................................................................... 4

Restatement (First) of Torts §§569-570 (1938) ............................................................................... 9

Restatement (Second) of Torts § 652B (1977) ................................................................................ 3

Samuel D. Warren & Louis Brandeis,
  *The Right to Privacy*, 4 HARV. L. REV. 193 (1890) ................................................................ 3, 9

S. REP. NO. 99-541,
  reprinted in 1986 U.S.C.C.A.N. 3555 ............................................................................... 6, 8, 9

# INTRODUCTION

The Supreme Court's recent opinion in *Spokeo, Inc. v. Robins* reaffirmed that violations of a statute protecting against "intangible" harm *can* constitute "concrete" injuries sufficient to confer Article III standing, without the need to show any further harm. 136 S. Ct. 1540, 1549 (2016). Where, as here, the interests protected by a statute have a "close relationship" to rights rooted in the common law, or where Congress has "elevate[d]" certain rights "to the status of legally cognizable injuries," violations of those interests amount to injury-in-fact. *Id*. Through his claims under the Electronic Communications Privacy Act, 18 U.S.C. § 2510, *et seq.* ("ECPA") and the California Invasion of Privacy Act, Cal. Pen. Code § 630, *et seq.* ("CIPA"), Plaintiff alleges an injury that is tied to long-standing, common law rights to privacy and is explicitly contemplated in the legislative histories of the respective statutes. Far from being a "bare procedural violation," Google's conduct of intercepting and scanning Plaintiff's private communications is the core harm that ECPA and CIPA guard against. *Spokeo* leaves no doubt that Plaintiff alleges a concrete and particularized injury sufficient to confer Article III standing.

# ARGUMENT

**I.    The Supreme Court Reaffirmed that "Intangible" Injuries are Nonetheless "Concrete," for Purposes of Article III Standing Where, as Here, the Legislature Codifies Long-Recognized Common Law Rights.**

The Supreme Court's *Spokeo* opinion did not create the "dispositive standing defense" anticipated by Google in its earlier briefing. (*See* Def.'s Mot. to Stay [Dkt. No. 21] at 6). Instead, the Supreme Court reiterated the fundamental—and uncontroversial—principle that to establish injury-in-fact under Article III a plaintiff must allege "an injury that is both 'concrete *and particularized*.'" *Spokeo,* 136 S. Ct. at 1545 (quoting *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 180-181 (2000)) (emphasis in original). After clarifying that the "concrete" and "particularized" inquiries must be conducted separately, the Court affirmed the long-standing principle that a concrete injury can be either tangible, such as

monetary loss, or *intangible*, such as a violation of one's free speech or free exercise rights. *Id*. at 1549 (citing *Pleasant Grove City v. Summum*, 555 U.S. 460 (2009) (free speech); *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520 (1993) (free exercise)).

In evaluating whether an intangible injury is sufficiently "concrete" to satisfy the injury-in-fact requirement, the Court identified two important factors: "history and the judgment of Congress." *Id*. First, because standing is "grounded in historical practice," the Court explained that "it is instructive to consider whether an alleged intangible harm as a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id.* As an example, "the law has long permitted recovery by certain tort victims even if their harms may be difficult to prove or measure." *Id.* Second, the Court made clear that Congress itself can "'elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.'" *Id.* (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 578 (1992)). In "such a case," a plaintiff "need not allege any *additional* harm beyond the one Congress has identified." *Id*. (emphasis in original).[1]

As demonstrated below, both history and the judgments of Congress and the California legislature make clear that Google's unilateral interceptions of Plaintiff's electronic communications—without the need of any further allegations of harm—constitutes a concrete

---

[1] The Court's recognition that intangible injuries can satisfy Article III's demands renders irrelevant Google's reliance, in its Motion to Stay, on cases analyzing statutory claims that *require* economic harm as an element of proof for the claim. *See* Def.'s Mot. to Stay [Dkt. No. 21] at 3 (citing *In re iPhone Application Litig.*, No. 11-md-2250-LHK, 2011 U.S. Dist. LEXIS 106865, at *17 (N.D. Cal. Sept. 20, 2011) (Koh, J.) (addressing a claim under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA"), which require a showing of economic loss); *In re Google Privacy Policy Litig.*, No. C 12-01382 PSG, 2012 U.S. Dist. LEXIS 183041, at *14-15 (N.D. Cal. Dec. 28, 2012) (same, with regard to the plaintiffs' claims under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ("UCL"), which requires a showing of loss of either money or property); *LaCourt v. Specific Media, Inc.*, No. SACV 10-1256-GW (JCGx), 2011 U.S. Dist. LEXIS 50543, at *12 (C.D. Cal. Apr. 28, 2011) (same, regarding claims under the UCL and the CFAA)). As the Court explained in *Spokeo,* Congress has the power (and is in fact "well positioned") "to identify intangible harms that meet minimum Article III requirements," even if those harms prove difficult to measure. The legislature can also, of course, require proof of economic harm to plead a claim (as Google's cited cases demonstrate), but neither ECPA nor CIPA contain such a requirement.

1305431.5   - 2 -   PLAINTIFF'S SUPP. BRIEF RE *SPOKEO V. ROBINS*
5:15-CV-04062 LHK

injury sufficient to confer Article III standing for Plaintiff's claims under ECPA and CIPA, respectively.

### A. ECPA and CIPA Codify Concrete Privacy Injuries that Have Been Long-Recognized in the Common Law.

*Spokeo* instructs courts to consider whether the intangible injury at issue "has a close relationship" to an injury recognized at common law. 136 S. Ct. at 1549 (citation omitted). Both ECPA and CIPA (and their attendant prohibitions on interceptions of private communications) expressly protect and codify fundamental privacy rights that are rooted in history and the common law. ECPA allows "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation" of the statute to bring a civil action. 18 U.S.C. § 2520(a). Likewise, CIPA allows a plaintiff to bring a lawsuit for "read[ing], or attempt[ing] to read, or [] learn[ing] the contents or meaning of any message, report, or communications while the same is in transit . . . ." Cal. Pen. Code § 631. Respectively, these are codifications of well-established common law rights of privacy.

As Justice Brandeis explained in his seminal article, *The Right to Privacy*, "[t]he common law secures to each individual the right of determining, ordinarily, to what extent his thoughts sentiments and emotions shall be communicated to others." Samuel D. Warren & Louis Brandeis, *The Right to Privacy*, 4 HARV. L. REV. 193, 198 (1890). The Second Restatement of Torts recognizes the same privacy rights through its tort of intrusion upon seclusion, explaining that "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy." Restatement (Second) of Torts § 652B (1977). The Supreme Court has similarly recognized the primacy of privacy rights, explaining that the Constitution operates in the shadow of a "right to privacy older than the Bill of Rights." *Griswold v. Connecticut*, 381 U.S. 479, 486 (1965). For its part, California amended its constitution in 1972 to specifically enumerate a right

to privacy in its very first section. Cal. Const. art. I, § 1. And the California Supreme Court has recognized the fundamental injuries at stake in privacy violations, explaining as follows:

> [A] measure of personal isolation and personal control over the conditions of its abandonment is of the very essence of personal freedom and dignity . . . . A [person] . . . whose conversations may be overhead at the will of another . . . is less of a [person], has less human dignity, on that account. He who may intrude upon another at will is the master of the other and, in fact, intrusion is a primary weapon of the tyrant.

*Shulman v. Grp. W Prods., Inc.*, 18 Cal. 4th 200, 231 (1998) (quoting Edward J. Bloustein, *Privacy as an Aspect of Human Dignity: An Answer to Dean Prosser*, 39 N.Y.U. L. REV. 962, 973-74 (1964)); *see also Gill v. Curtis Pub. Co.*, 38 Cal. 2d 273, 276 (1952) ("Recognition has been given of a right to privacy, independent of the common rights to property, contract, reputation and physical integrity. . . . In short, it is the right to be let alone.") (internal quotation marks omitted).

Courts have long-recognized common law tort claims that mirror ECPA's and CIPA's prohibitions against the interception of private communications without consent. For example, in *Vernars v. Young*, 539 F.2d 966, 968-69 (3d Cir. 1976), the Third Circuit held that the plaintiff stated a common law invasion of privacy tort claim based on allegations that a fellow officer and director of a corporation "opened and read without her consent" her personal mail. The Court explained that "[j]ust as private individuals have a right to expect that their telephonic communications will not be monitored, they also have a reasonable expectation that their personal mail will not be opened and read by unauthorized persons." *Id.* at 969. Similarly, in *Billings v. Atkinson,* 489 S.W.2d 858, 860 (Tex. 1973), the Texas Supreme Court recognized a common law right of privacy cause of action based on an illegal wiretap of the plaintiff's residence. *See also Berger v. State of N.Y.,* 388 U.S. 41, 45-53 (1967) (setting forth the history of the development of common law and statutory rights protecting individuals from eavesdropping).

In enacting the Omnibus Crime Control and Safe Streets Act of 1968, which ECPA

amended, Congress recognized that it was codifying claims rooted in the common law: "[T]he right of privacy, the right to be left alone, and the right against unreasonable searches and seizures—the right, that is, to be personally secure—are among the most highly valued rights of an American citizen. These guarantees have been a part of Anglo-Saxon law ever since the 15th century." 114 Cong. Rec. S6194 (daily ed. May 23, 1968) (statement of Sen. Fong). Thus, there can be no doubt that the interception of one's private communications without prior consent—codified as unlawful by ECPA and CIPA—amounts to a "concrete" injury that bears, at a minimum, a "close relationship" to the common law's steadfast protection of one's fundamental right of privacy.

> **B.** **By Enacting ECPA and CIPA, the U.S. Congress and California Legislature Recognized a "Concrete" Harm Stemming from the Interception of Private Communications.**

The "judgment of Congress"—which is both "instructive and important"—also confirms that the claims here satisfy Article III. *Spokeo*, 136 S. Ct. at 1549. The legislative histories of ECPA and CIPA make clear that they were intended to recognize and codify the concrete harm that results from having a third party, like Google, intercept and analyze individuals' private communications.

ECPA was passed in 1986 to afford electronic communications the same protections that attach to private letters sent via the U.S. Postal Service. In recommending ECPA's passage, the Senate Committee on the Judiciary stated:

> A letter sent by first class mail is afforded a high level of protection against unauthorized opening by a combination of constitutional provisions, case law, and U.S. Postal Service statutes and regulations. Voice communications transmitted via common carrier are protected by Title III of the Omnibus Crime Control and Safe Streets Act of 1968. But there are no comparable Federal statutory standards to protect the privacy and security of communications transmitted by new noncommon carrier communications services or new forms of telecommunications and computer technology. This is so, even though American citizens and American businesses are using these new forms of technology in lieu of, or side-by-side

> with, first class mail and common carrier telephone services….*Congress must act to protect the privacy of our citizens. If we do not, we will promote the gradual erosion of this precious right.*

S. REP. NO. 99-541, 5, reprinted in 1986 U.S.C.C.A.N. 3555, 3559 (Oct. 17, 1986) (emphasis added). In enacting ECPA, Congress's unmistakable intent was to create an express legal right prohibiting the "unauthorized opening" of electronic communications, and a violation of this privacy right (such as Google's unauthorized message scanning) is a concrete injury.

The California Legislature made its intent in passing CIPA equally clear. In its "Declaration of Policy," CIPA states:

> The Legislature hereby declares that advances in science and technology have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications and that the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society.
>
> The Legislature by this chapter intends to protect the right of privacy of the people of this state.

Cal. Pen. Code § 630. Like ECPA, CIPA protects individuals from "the invasion of privacy resulting from the…use" of an eavesdropping device to intercept "private communications." *Id*. That privacy invasion is the precise concrete injury Plaintiff alleges here.

Because ECPA and CIPA authorize redress for now-codified injuries that were already recognized by the common law, suits alleging violations of these statutes—such as Plaintiff's allegations that Google intercepted, acquired, and used the content of private electronic communications—allege concrete injuries that confer Article III standing.

II. **Plaintiff's Injuries are "Particularized" and "Concrete," and Do Not Amount to a "Bare Procedural Violation."**

Plaintiff has alleged that, when he and Class members "sent emails to or received emails from Gmail users, Google intercepted these communications to scan, compile, analyze, and

archive the contents of the communications," in violation of ECPA and CIPA. Compl. at ¶ 19; *See also*, *id.* at ¶¶ 2, 4, 7, 20-25, 46-46, 61-66. Plaintiff has satisfied the "particularized" requirement by alleging that Google "violated *his* statutory rights, not just the statutory rights of other people," and that his personal interests in the privacy of his communications "are individualized rather than collective." 136 S. Ct. at 1544 (emphasis in original) (citation omitted). Plaintiff has also satisfied the "concrete" requirement because ECPA and CIPA draw on a centuries-old right to privacy and declare, as their goal, the protection of individuals' private communications. *See* Section II, *infra.*

Google's interception of Plaintiff's private communications is, in fact, *the* concrete and specific harm that both ECPA and CIPA were enacted to prevent. Thus, Plaintiff's injuries do not amount to a "bare procedural violation, divorced from any concrete harm" that will not give rise to an Article III injury. *Spokeo*, 136 S. Ct. at 1549. As the Supreme Court previously said, "deprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing." *Summers v. Earth Island Institute*, 555 U.S. 488, 496 (2009). But a "person who has been accorded a procedural right to protect his concrete interests" has standing to assert that right, and may do so "without meeting all the normal standards for redressability and immediacy." *Lujan*, 504 U.S. at 572 n.7.

In *Spokeo*, the Court provided several examples of injuries that satisfy concreteness, as well as a couple of "bare procedural violations" that might not. The Court cited favorably *Public Citizen v. U.S. Department of Justice*, which held that the plaintiff had standing to challenge the Department of Justice's failure to provide access to information, the disclosure of which was allegedly required by the Federal Advisory Committee Act, because the inability to obtain such information "constitutes a sufficiently distinct injury to provide standing to sue." *Spokeo*, 136 S.

Ct. at 1549 (citing *Public Citizen*, 491 U.S. 440, 449 (1989)). The Court also cited *Federal Election Commission v. Akins* wherein "a group of voters' 'inability to obtain information' that Congress had decided to make public [was] a sufficient injury in fact to satisfy Article III." *Spokeo*, 136 S. Ct. at 1549-50 (citing *Akins*, 524 U.S. 11, 20–25 (1998)). By contrast, the Court indicated that a person who alleges a procedural violation of a statute must at least show a risk of the harm that the statute was meant to protect against. For example, when "a consumer reporting agency fails to provide the [FCRA's] required notice to a user of the agency's consumer information" (a notice that is not a precondition to anything)—the plaintiff's path to a concrete injury will be harder, because that information "may be entirely accurate" and FCRA is designed to curb the inaccurate reporting of information. *Spokeo*, 136 S. Ct. at 1550. The Court suggested that the same is true if the reported information contains only "an incorrect zip code." *Id.*

In contrast to harmless procedural violations, Plaintiff's ECPA and CIPA claims arise from the precise injury that these statutes seek to prevent. The interception of the contents of one's private communications is the precise intangible harm that has long been recognized in the common law and was "elevat[ed] to the status of legally cognizable injuries," *Id*. at 1549 (quotation omitted), through the respective enactments of ECPA and CIPA. S. REP. 99-541, 1, reprinted at 1986 U.S.C.C.A.N. 3555, 3555 (The Electronic Communications Privacy Act amended the Federal wiretap law "to protect against the unauthorized interception of electronic communications"). Plaintiff's injury is thus concrete. The privacy intrusion inherent in the interception of email content is not some violation of a mere procedural requirement intended to prevent some downstream or consequential injury, but rather is the injury itself. An allegation of interception—and nothing more—therefore confers Article III standing under *Spokeo*.

This position is supported by the other, intangible harms that *Spokeo* identifies as being "difficult to prove or measure," but which are nonetheless concrete, such as libel or slander *per*

*se*. 136 S. Ct. at 1549 (citing Restatement (First) of Torts §§569-570 (1938)). It is even more fully developed in the concurrence of Justice Thomas, who explains the *de facto* Article III injury that arises from common law claims for trespass and other private rights:

> In a suit for the violation of a private right, courts historically presumed that the plaintiff suffered a *de facto* injury merely from having his personal, legal rights invaded. Thus, when one man placed his foot on another's property, the property owner needed to show nothing more to establish a traditional case or controversy. Many traditional remedies for private-rights causes of action—such as for trespass, infringement of intellectual property, and unjust enrichment—are not contingent on a plaintiff's allegation of damages beyond the violation of his private legal right.

*Id.* at 1551 (Thomas, J., concurring) (citations omitted). As in Justice Thomas's trespass example, here the interception is itself a harm—the proposition this Court entertained in its Order Granting Motion for Stay of Proceedings in the instant litigation. (Dkt. No. 36), at 6 ("More persuasive is Plaintiff's argument that, unlike the statute at issue in *Spokeo*, ECPA and CIPA allegedly codify common law rights, the violation of which has long been understood to supply a concrete injury sufficient to support Article III standing."); *see also,* Warren & Brandeis, *supra*, at 198 ("The common law secures to each individual the right of determining, ordinarily, to what extent his thoughts, sentiments, and emotions shall be communicated to others."); S. REP. NO. 99-541, reprinted in 1986 U.S.C.C.A.N. 3555, 3559 (stating that ECPA is meant to establish "Federal statutory standards to protect the privacy and security of communications transmitted by new noncommon carrier communications services or new forms of telecommunications and computer technology"); Cal. Pen. Code § 630 ("The Legislature by this chapter intends to protect the right of privacy of the people of this state.").

Accordingly, Plaintiff's claims of privacy intrusion under ECPA and CIPA are not "bare procedural violations," but rather are the concrete injuries that *Spokeo* firmly identifies as satisfying Article III's standing requirement.

# **CONCLUSION**

Plaintiff accuses Google of systematically intercepting and acquiring the contents of non-Gmail-users' private electronic communications, without consent, and outside of the ordinary course of business of an electronic communications service provider. The resulting injury—an invasion of privacy—has long been recognized at common law and is the specific wrong sought to be prevented by the U.S. Congress and the California Legislature in passing ECPA and CIPA, respectively. Far from attempting to vindicate a "bare procedural" right, Plaintiff alleges concrete and particularized privacy intrusions that constitute statutory violations. The Supreme Court's opinion in *Spokeo* reaffirms that such claims—with no further allegations of additional, consequential harm—confer Article III standing.

Dated: June 1, 2016                    Respectfully Submitted,

By: */s/ Michael W. Sobol*
         Michael W. Sobol

Michael W. Sobol (State Bar No. 194857)
Nicole D. Sugnet (State Bar No. 246255)
Michael Levin-Gesundheit (State Bar No. 292930)
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: 415.956.1000
Facsimile: 415.956.1008

Hank Bates (State Bar No. 167688)
CARNEY BATES & PULLIAM, PLLC
2800 Cantrell Road, Suite 510
Little Rock, AR 72202
Telephone: 501.312.8500
Facsimile: 501.312.8505

Ray E. Gallo (State Bar No. 158903)
Dominic Valerian (State Bar No. 240001)
GALLO LLP
1299 Fourth St., Suite 505
San Rafael, CA 94901
Phone: 415.257.8800

*Attorneys for Plaintiff*