| | |
|---|---|
| 1 | COOLEY LLP |
| | MICHAEL G. RHODES (116127) (rhodesmg@cooley.com) |
| 2 | WHITTY SOMVICHIAN (194463) (wsomvichian@cooley.com) |
| | KYLE C. WONG (224021) (kwong@cooley.com) |
| 3 | KAREN L. BURHANS (303290) (kburhans@cooley.com) |
| | AMY M. SMITH (287813) (amsmith@cooley.com) |
| 4 | 101 California Street, 5th Floor |
| | San Francisco, CA 94111-5800 |
| 5 | Telephone: (415) 693-2000 |
| | Facsimile: (415) 693-2222 |

Attorneys for Defendant GOOGLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DANIEL MATERA, as an individual, and on behalf of the other persons similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> GOOGLE INC., <br><br> Defendant. | Case No. 5:15-cv-04062 LHK <br><br> **SUPPLEMENTAL BRIEF RE:** *SPOKEO, INC. v. ROBINS* <br><br> Date: June 27, 2016 <br> Time: 1:30 p.m. <br> Dept.: Courtroom 8 - 4th Floor <br> 280 S. First Street <br> San Jose, CA 95113 <br><br> Judge: The Hon. Lucy H. Koh <br> Trial Date: Not yet set |

## TABLE OF CONTENTS

|      |      |                                                                                                                                                 | Page |
|------|------|-------------------------------------------------------------------------------------------------------------------------------------------------|------|
| I.   |      | INTRODUCTION                                                                                                                                    | 1    |
| II.  |      | BACKGROUND.                                                                                                                                     | 2    |
| III. |      | ANALYSIS.                                                                                                                                       | 4    |
|      | A.   | The alleged privacy harm bears no "relationship" to any "harm that has traditionally been regarded as providing a basis for a lawsuit."         | 4    |
|      | B.   | Congress did not intend automated processing of emails to constitute a *per se* concrete injury.                                                | 7    |
|      | C.   | Courts have consistently held that general assertions of privacy-related harms do not support Article III standing.                             | 8    |
| IV.  |      | CONCLUSION                                                                                                                                      | 10   |

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Burton v. Time Warner Cable Inc.*,
 No. CV 12-06764 JGB, 2013 U.S. Dist. LEXIS 94310 (C.D. Cal. Mar. 20, 2013) ........................9

*In re Facebook Internet Tracking Litig.*,
 Case No. 5:12-md-02314-EJD, 2015 WL 6438744 (N.D. Cal. Oct. 23, 2015) ..............................9

*Fiedler v. Clark*,
 714 F.2d 77 (9th Cir. 1983) ..........................................................................................................4

*In re Google Inc. Gmail Litig.*,
 No. 13-MD-02430-LHK, 2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) ....................................5

*In re Google Privacy Policy Litig.*,
 No. C 12-01382 PSF, 2012 U.S. Dist. LEXIS 183041 (N.D. Cal. Dec. 28, 2012) ......................9

*Griswold v. Connecticut*,
 381 U.S. 479 (1965) .....................................................................................................................7

*Hernandez v. Hillsides, Inc.*,
 47 Cal. 4th 272 (2009) .................................................................................................................6

*Hill v. Nat'l Collegiate Athletic Assn.*,
 7 Cal. 4th 1 (1994) .......................................................................................................................7

*In re iPhone Application Litig.*,
 844 F. Supp. 2d 1040 (N.D. Cal. 2012) .......................................................................................8

*In re iPhone Application Litigation*,
 No. 11-MD-02250-LHK, 2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) ..............................8, 10

*In re JetBlue Airways Corp. Privacy Litig.*,
 379 F. Supp. 2d 299 (E.D.N.Y. 2005) .........................................................................................9

*LaCourt v. Specific Media, Inc.*,
 No. SACV 10-1256-GW, 2011 U.S. Dist. LEXIS 50543 (C.D. Cal. Apr. 28, 2011) ..................9

*Lee v. Am. Nat'l Ins. Co.*,
 260 F.3d 997 (9th Cir. 2001) .......................................................................................................4

*Low v. LinkedIn*,
 No. 11-CV-01468-LHK, 2011 U.S. Dist. LEXIS 130840 (N.D. Cal. Nov. 11,
 2011) ............................................................................................................................................9

# TABLE OF AUTHORITIES
## (continued)

**Page**

*McRee v. Goldman*,
  No. 11-CV-00991-LHK, 2012 WL 929825 (N.D. Cal. Mar. 19, 2012) ..........................................10

*Med. Lab. Mgmt. Consultants v. Am. Broad. Cos., Inc.*,
  306 F.3d 806 (9th Cir. 2002) ...........................................................................................................7

*Murray v. Time Inc.*,
  No. C 12-00431 JSW, 2012 WL 3634387 (N.D. Cal. Aug. 24, 2012) ............................................9

*Pirozzi v. Apple, Inc.*,
  913 F. Supp. 2d 840 (N.D. Cal. 2012) ............................................................................................9

*Robins v. Spokeo, Inc.*,
  742 F.3d 409 (9th Cir. Feb. 4, 2014) ..............................................................................................2

*Robins v. Spokeo, Inc.*,
  No. CV-10-05306 ODW, 2011 WL 11562151 (C.D. Cal. Sept. 19, 2011) ....................................2

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016) .............................................................................................................. passim

*In re Yahoo Mail Litig.*,
  7 F. Supp. 3d 1016 (2014). ....................................................................................................... passim

**Statutes**

Electronic Communications Privacy Act, 18 U.S.C. §§ 2510, *et seq.* ....................................................1

Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ...........................................................................2

California Penal Code §§ 630, *et seq.* ....................................................................................................1

Stored Communications Act, 18 U.S.C. §§ 2701, *et seq.* .......................................................................9

## I. INTRODUCTION

The Supreme Court's decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) ("*Spokeo*") eliminates the only viable basis that Plaintiff had for Article III standing and the Complaint should accordingly be dismissed. Plaintiff, a non-Gmail user, alleges that the automated processing of emails he exchanged with Gmail users violates the ECPA and CIPA statutes.[1] He alleges no resulting harm from these automated processes, and relies solely on the purported statutory violations *alone* as the basis for Article III standing. But while this sort of statutory standing may have sufficed in this Circuit before *Spokeo*, it does no longer. *Spokeo* conclusively holds that "Article III standing requires a concrete injury *even in the context of a statutory violation*." *Id*. at 1543 (italics added). The critical question for standing purposes, then, is whether the alleged wrongful conduct—the automated processing of emails with no independent resulting harm—implicates "a legally protected interest that is concrete and particularized" *independently* of the alleged statutory violations. *Id*. (internal quotation marks omitted.)

This Court has already addressed an equivalent issue in *In re Yahoo Mail Litig.*, in the specific context of claims involving the automated processing of emails by an ECS provider.[2] 7 F. Supp. 3d 1016 (2014). After surveying California and federal law, the Court found that "the mere fact" of Yahoo's automated processing of email to serve targeted ads did not implicate a "legally protected privacy interest," where the plaintiff failed to plead "*with specificity*" the contents of the emails at issue. *Id*. (italics in original). That ruling fully applies here. Google protects the privacy of emails in numerous ways[3], and Plaintiff cannot show that Google violated

---

[1] "ECPA" refers to the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510, *et seq*. "CIPA" refers to the California Invasion of Privacy Act, California Penal Code §§ 630, *et seq*.

[2] "ECS" refers to an electronic communications service, defined in the ECPA as "any service which provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15).

[3] Google's Terms of Service and Privacy Policy specify how Google protects the privacy of user information, including emails. Further, Google applies numerous technological measures to safeguard privacy and ensure security. For example, Google's systems ensure that messages exchanged between Gmail users are encrypted via TLS, and notify Gmail users if messages from non-Gmail users are from unencrypted or unauthenticated sources.

any "legally protected privacy interest" simply because automated processing is applied in the Gmail system to enable various features and benefits for Gmail users. This precludes any finding of Article III standing, which likewise depends on adequate allegations of a "legally protected interest," as confirmed in *Spokeo*. 136 S. Ct. at 1548. The Complaint should accordingly be dismissed with prejudice for lack of standing.

## II. BACKGROUND.

*Spokeo* involves defendant Spokeo's "people search engine" that allows users to search for information on an identified individual, which Spokeo then collects from various databases and provides as search results. The plaintiff claimed that Spokeo's practices violate the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, which requires consumer reporting agencies to implement various requirements "to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). The plaintiff alleged that Spokeo's violations of FCRA led to the public dissemination of false information about him. The plaintiff further alleged that the public availability of this information currently harms his "employment prospects," among other alleged harms. *Robins v. Spokeo, Inc.*, 742 F.3d 409, 410-11 (9th Cir. Feb. 4, 2014).

The District Court held that the plaintiff had failed to plead injury because a violation of the FCRA, without more, was insufficient to confer Article III standing, and the plaintiff's allegations of harm to his employment prospects were "speculative, attenuated and implausible." *Robins v. Spokeo, Inc.*, No. CV-10-05306 ODW (AGRx), 2011 WL 11562151, at *1 (C.D. Cal. Sept. 19, 2011). The Ninth Circuit reversed, finding that the plaintiff had adequately pled Article III standing because he (1) alleged a violation of "*his* statutory rights, not just the statutory rights of other people," and (2) had "personal interests in the handling of his credit information" that are "individualized rather than collective." *Robins*, 742 F.3d at 413 (italics in original). Based on those findings, the Ninth Circuit held that the "alleged violations of Robins' statutory rights are sufficient to satisfy the injury-in-fact requirement of Article III." *Id.* at 413-14.

The Supreme Court reversed and remanded for further consideration. The Court reiterated that Article III standing requires "an invasion of a legally protected interest" that is both "concrete

and particularized." *Spokeo,* 136 S. Ct. at 1548. The Court found the Ninth Circuit's analysis fell short because it addressed only the particularization requirement. As the Court explained, "[p]articularization is necessary to establish injury in fact, but it is not sufficient. An injury in fact must also be 'concrete.'" *Id.* In general, a "concrete" injury means one that is "'*de facto*'; that is, it must actually exist," and is "real" and not "abstract." *Id.* The Court went on to describe certain principles that apply in determining whether a claim involves a concrete injury.

First, "Article III standing requires a concrete injury *even in the context of a statutory violation.*" *Id.* at 1549 (italics added). Thus, the fact that a complaint alleges a violation of a statute with a private right of action does not, in itself, demonstrate standing: "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.*

Second, a court must assess the individualized circumstances of a claim to determine if a plaintiff has suffered a concrete injury. For example, the Supreme Court emphasized that a credit report that violates FCRA's requirements "may result in no harm" because it could still be "entirely accurate." *Id.* at 1540. Even where a FRCA violation leads to the dissemination of false information, the Supreme Court cautioned that "not all inaccuracies cause harm or present any material risk of harm. An example that comes readily to mind is an incorrect zip code. It is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm." *Id.* This analysis makes clear that blanket assertions of harm will not suffice; instead, standing depends on whether a concrete injury exists given the specific circumstances and consequences of each alleged violation.

Third, in assessing whether a plaintiff has suffered a concrete injury, a court should look to the "history" of related claims and injuries. *Id.* at 1549. Specifically, "it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id.* To illustrate the point, the Court noted that certain common law theories like defamation and slander have permitted tort victims to state a claim "even if their harms may be difficult to prove

or measure." *Id.* Notably, the Court made no similar observations regarding any privacy-related claim under the common law.

### III. ANALYSIS.

Against this backdrop, Plaintiff's complaint must be dismissed for lack of Article III standing. Plaintiff claims that Google's automated processing of emails that he exchanged with Gmail users violates ECPA and CIPA, but does not allege that these purported violations resulted in any independent harm. Plaintiff does not allege, for example, that the alleged violations led to the disclosure of his confidential information to third parties, or that he suffered any other purported harm from the alleged "interceptions" of his emails. Under *Spokeo*, these bare allegations of purported statutory violations cannot confer standing.[4] The question, therefore, is whether Google's automated processing of emails in connection with the Gmail service—without any further alleged consequences to Plaintiff—constitutes a concrete injury under the analysis set forth in *Spokeo*. It plainly does not, for the following reasons.

#### A. The alleged privacy harm bears no "relationship" to any "harm that has traditionally been regarded as providing a basis for a lawsuit."

As discussed, *Spokeo* instructs courts to "consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." 136 S. Ct. at 1549. The Complaint alludes to this notion of "traditional harm" in alleging that Google's automated processing of emails amounts to an "egregious and illegal invasion[] of privacy" that violates "the privacy rights guaranteed by the laws of California and the United States." (Compl. ¶¶ 7, 31.) This Court, however, has already considered this precise issue and found that the automated processing of emails does *not* invade any such interests. *Yahoo Mail*, 7 F. Supp. 3d at 1040.

---

[4] With regard to CIPA, Ninth Circuit law was clear that state statutes cannot confer Article III standing, even before *Spokeo*. *See Lee v. Am. Nat'l Ins. Co.*, 260 F.3d 997, 1001-02 (9th Cir. 2001) ("[A] plaintiff whose cause of action is perfectly viable in state court under state law may nonetheless be foreclosed from litigating the same cause of action in federal court, if he cannot demonstrate the requisite injury."); *Fiedler v. Clark*, 714 F.2d 77, 79-80 (9th Cir. 1983) ("In determining jurisdiction, district courts of the United States must look to the sources of their power . . . not to the acts of state legislatures. However extensive their power to create and define substantive rights, the states have no power directly to enlarge or contract federal jurisdiction.").

In *Yahoo Mail*, plaintiffs alleged that Yahoo's automated processing of email content without the consent of non-Yahoo users violated their privacy rights protected by California's Constitution.[5] In its analysis, the Court first noted that "the California Constitution sets a 'high bar' for establishing an invasion of privacy claim" and "[e]ven disclosure of very personal information has not been deemed an 'egregious breach of social norms' sufficient to establish a constitutional right to privacy." *Id*. at 1038.

The Court then rejected plaintiffs' claim that "the mere fact that Yahoo intercepted and distributed their emails, regardless of the specific content in the emails…" gave rise to or implicated a "legally protected privacy interest and reasonable expectation of privacy in email *generally*…." *Id*. at 1040 (italics in original). The Court explained:

> Plaintiffs do not cite, nor has this Court found, any case in the California or federal courts holding that individuals have a legally protected privacy interest or reasonable expectation of privacy in emails generally. Rather, the cases in which courts have found a protected privacy interest in the context of email communications have done so in circumstances where the plaintiff alleged *with specificity* the material in the content of the email.

*Id*. (italics in original). Thus, the Court held that to demonstrate a "legally protectable privacy interest," a plaintiff must demonstrate "that the email intercepted includes content that qualifies under California law as 'confidential' or 'sensitive.'" *Id*. at 1041. Because plaintiffs failed to allege such facts, the Court found that their claim failed as a matter of law. *Id*.; *see also In re Google Inc. Gmail Litig.*, No. 13-MD-02430-LHK, 2013 WL 5423918, at *23 (N.D. Cal. Sept. 26, 2013) ("*Gmail MDL*") (holding plaintiffs failed to allege an objectively reasonable expectation that the emails at issue were "confidential" as required under section 632 of CIPA because "email services are by their very nature recorded on the computer of at least the recipient, who may then easily transmit the communication to anyone else who has access to the internet or print the communications.").

Like the plaintiffs in *Yahoo Mail*, Plaintiff here claims that *any* processing of *any* email

---

[5] An invasion of privacy claim under the California Constitution requires: "(1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by defendant constituting a serious invasion of privacy." *Yahoo Mail*, 7 F. Supp. 3d at 1037.

without prior consent results in an injury, regardless of the content, context, or consequences.[6] As in *Yahoo Mail*, Plaintiff makes no effort to identify the contents of any of the emails on which his claims are based. Like *Yahoo Mail*, the "mere fact" that Plaintiff claims he did not consent to the automated processing of the emails he exchanged with Gmail users does not demonstrate a "legally protected privacy interest." This precludes any finding of Article III standing, for the following reasons.

First, while the *Yahoo Mail* decision involved a motion to dismiss (not a direct challenge to Article III standing) the Court's ruling ties directly to the Article III requirement of a "*legally protected interest*" that is both "concrete and particularized." *Spokeo*, 136 S. Ct. at 1548 (italics added).

Second, this Court's requirement that a plaintiff plead "*with specificity* the material in the content of the email" at issue, *Yahoo Mail*, 7 F. Supp. 3d at 1040 (italic in original), is confirmed by *Spokeo*. As discussed above, the Supreme Court emphasized that not all violations of FCRA can support Article III standing because the dissemination of certain information (even if false) may not cause harm depending on the nature of the information at issue. *Spokeo*, 136 S. Ct. at 1550. This same individualized analysis of injury must be applied here. Just as the dissemination of false information cannot be presumed to support an Article III injury in every case, the automated processing of emails also cannot be deemed to violate a "legally protected privacy interest" in every case—as this Court found in *Yahoo Mail*.

Third, while the Court's ruling specifically addressed a claim under the California Constitution, it applies to common law privacy torts more broadly. For example, Plaintiff has pointed to the tort of intrusion upon seclusion as a potential ground for standing. (*See* Plaintiff's Opposition to Google's Motion to Stay, Dkt. 30 at 4.) But like a claim under the California Constitution, this tort applies only to matters "as to which the plaintiff has a reasonable expectation of privacy."[7] *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2009). The Court's

---

[6] Plaintiff's theory of Article III injury would thus include the automated processing of commercial emails, emails sent to large distribution lists and intended for recirculation, and even spam emails sent by non-Gmail users.

[7] To be clear, this common law element differs from the expectations of privacy that apply under

finding in *Yahoo Mail* regarding the parallel element of the California Constitution thus applies equally to the tort of intrusion upon seclusion and, indeed, to privacy torts in general.[8]

Fourth, Plaintiff similarly cannot rely on "privacy rights guaranteed by the laws of . . . the United States" (Compl. ¶ 31) to support a finding of concrete injury. For example, Plaintiff has alluded to the privacy rights recognized in *Griswold v. Connecticut*, 381 U.S. 479 (1965), (Dkt. 30 at 4-5), but *Griswold* involved citizens' right to privacy from *government* intrusion with respect to matters of *bodily privacy* and has no application here.

Under these circumstances, the generalized assertion of privacy-related harm on which Plaintiff relies should be rejected because it bears no "relationship" to any "harm that has traditionally been regarded as providing a basis for a lawsuit . . . ." *Spokeo*, 136 S. Ct. at 1549. To the contrary, this Court has found that traditional notions of privacy do *not* categorically bar all automated processing of emails.

**B.   Congress did not intend automated processing of emails to constitute a *per se* concrete injury.**

Further, there is nothing to indicate that in "the judgment of Congress," an ECS provider's automated processing of emails amounts to a concrete injury in every instance, as Plaintiff contends. *Spokeo*, 136 S. Ct. at 1549. In *Spokeo*, the Court acknowledged that Congress enacted FCRA because of a perceived need to "curb the dissemination of false information," yet this does not mean that all violations (even those that actually result in the dissemination of false credit information) can be deemed a concrete injury for purposes of Article III. *Id*. at 1550. Similarly here, the fact that Congress enacted ECPA to address wiretapping of electronic communications

---

the Fourth Amendment. As this Court has noted, a "party's reasonable expectation of privacy is considerably distinct in the context of" automated processing by an ECS provider as compared to circumstances triggering Fourth Amendment protections, like "the government's intelligence gathering and surveillance practices." *Yahoo Mail*, 7 F. Supp. 3d at 1042 n.11.

[8] Under California law, which Plaintiff specifically focuses on, all recognized privacy torts under common law require that the plaintiff have "conducted himself or herself in a manner consistent with an actual expectation of privacy." *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 26 (1994). Further, the Restatement (Second) of Torts, which summarizes the privacy rights recognized under common law more broadly, also requires a plaintiff to show a reasonable expectation of privacy. *See, e.g.*, *Med. Lab. Mgmt. Consultants v. Am. Broad. Cos., Inc.*, 306 F.3d 806, 812-13 (9th Cir. 2002).

does not mean that all alleged "interceptions" can be deemed a concrete injury conferring standing. To the contrary, Congress acknowledged that ECS providers must necessarily receive and process the communications they transmit in order to provide their services. For example, Congress recognized that "provider[s] of electronic communications services may have to monitor a stream of transmissions in order to properly route, terminate, and otherwise manage the individual messages they contain," and that such monitoring "may be necessary to the provision of an electronic communication service" and "are not prohibited." (Exhibit BB to Decl. of Kyle Wong in Support of Motion to Dismiss at 20, *Gmail MDL*, Dkt. 45-02; *Gmail MDL*, 2013 WL 5423918, at *7.) With respect to email in particular, Congress noted that "the providers of electronic mail create electronic copies of private correspondence for later reference," and that "[t]his information is processed for the benefit of the user." (Exhibit BB at 3, *Gmail MDL*, Dkt. 45-2 (emphasis added).) This legislative history rebuts any notion that Congress deemed all automated processing of all communications by ECS providers to constitute a concrete injury.

### C. Courts have consistently held that general assertions of privacy-related harms do not support Article III standing.

In applying *Spokeo*, it is also instructive to look at prior cases that evaluated Article III standing *without* relying on a statutory violation to support an injury-in-fact. While these cases predate *Spokeo*, they are consistent with the standard the Supreme Court has now clarified, which requires courts to look beyond an alleged statutory violation to determine if there is a concrete injury sufficient to support standing. These cases consistently demonstrate that generalized assertions of privacy-related harms, even when couched in terms of economic injuries, do not support Article III standing. For example, in *In re iPhone Application Litigation*, No. 11-MD-02250-LHK, 2011 WL 4403963, at *1 (N.D. Cal. Sept. 20, 2011), plaintiffs claimed that defendants violated the privacy rights of users of Apple iDevice (*e.g.*, iPhone, iPad, and iPod Touch) by allowing third-party applications to collect and use users' personal information. This Court held that plaintiffs had no Article III standing because they had failed to "articulate[] a 'coherent and factually supported theory' of injury." *Id.* at *5. Mere "general allegations" about

the defendants' practices and other "abstract concepts" were insufficient. *Id.*[9]

Numerous courts have reached the same conclusion, in cases involving privacy-related claims based on alleged improper access or use of online information. *See, e.g.*, *Low v. LinkedIn*, No. 11-CV-01468-LHK, 2011 U.S. Dist. LEXIS 130840, at *10 (N.D. Cal. Nov. 11, 2011) (plaintiff alleging that social media website disclosed users' browsing histories failed to plead "an injury-in-fact that is concrete and particularized, as well as actual and imminent," as required for Article III standing); *In re Facebook Internet Tracking Litig.*, No. 5:12-md-02314-EJD, 2015 WL 6438744, at *3 (N.D. Cal. Oct. 23, 2015) (plaintiffs alleging that social network tracked users' personal information and internet activity failed to plead "cognizable injury in fact"); *Burton v. Time Warner Cable Inc.*, No. CV 12-06764 JGB (AJWx), 2013 U.S. Dist. LEXIS 94310, at *28-30 (C.D. Cal. Mar. 20, 2013) (plaintiff alleging cable provider improperly retained personally identifiable information failed to plead injury sufficient for Article III standing); *In re Google Privacy Policy Litig.*, No. C 12-01382 PSF, 2012 U.S. Dist. LEXIS 183041, at *14-15 (N.D. Cal. Dec. 28, 2012) (plaintiffs alleging Google improperly combined users' information collected from different products in alleged violation of its own privacy policy failed to plead "coherent and factually supported theory of . . . injury" sufficient for Article III standing); *Pirozzi v. Apple, Inc.*, 913 F. Supp. 2d 840, 847 (N.D. Cal. 2012) (plaintiffs alleging mobile device manufacturer disclosed users' personally identifiable information failed to plead concrete injury sufficient for Article III standing); *Murray v. Time Inc.,* No. C 12-00431 JSW, 2012 WL 3634387, at *4 (N.D. Cal. Aug. 24, 2012) (plaintiff alleging that magazine disclosed personal information in violation of California's "Shine the Light" Act failed to plead facts sufficient for Article III standing); *LaCourt v. Specific Media, Inc.*, No. SACV 10-1256-GW (JCGx), 2011 U.S. Dist. LEXIS 50543, at *12 (C.D. Cal. Apr. 28, 2011) (plaintiffs alleging that ad network used flash cookies to

---

[9] In subsequent rulings in the case, this Court permitted certain claims to proceed after the plaintiffs pursued a theory of statutory standing, predicated on alleged violations of ECPA and the Stored Communications Act, 18 U.S.C. §§ 2701, *et seq.*, and also amended the complaint to add certain allegations of harm. *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1054-55 (N.D. Cal. 2012). Under *Spokeo*, this theory of statutory standing is no longer viable, as discussed above. Moreover, Plaintiff's Complaint here contains no allegations similar to the amendments that this Court deemed sufficient to confer standing on particular issues in *In re iPhone Litig*.

circumvent Internet users' privacy controls and track their Internet usage failed to plead facts sufficient for Article III standing); *In re JetBlue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299, 327 (E.D.N.Y. 2005) (plaintiffs alleging airline improperly transferred customers' personal information to third-party data mining company failed to allege facts sufficient to show injury for breach of contract claim).

This consistent line of authority confirms that, when the crutch of statutory standing is removed, generalized assertions of privacy-related injuries alone cannot support the concrete injury needed under Article III. In applying *Spokeo,* Court should similarly find that the "general allegations" in the Complaint here, predicated on "abstract concepts" of privacy, are insufficient. *In re iPhone Application Litig.*, 2011 WL 4403963, at *5.

## IV.  CONCLUSION.

For the foregoing reasons, the Complaint should be dismissed for failure to allege the concrete injury needed to support Article III standing. Moreover, Plaintiff should not be allowed to amend the Complaint to add further standing-related allegations. When the Supreme Court issued *Spokeo*, Google invited Plaintiff's counsel to consider amending the Complaint to address the Supreme Court's decision. Plaintiff declined. Because Plaintiff has already considered *Spokeo* and made the strategic decision to proceed based on the allegations of the current Complaint, Plaintiff should not be given a second bite at the apple to address standing issues. *See McRee v. Goldman*, No. 11-CV-00991-LHK, 2012 WL 929825, at *4 (N.D. Cal. Mar. 19, 2012) (dismissing claim with prejudice where plaintiff had already been given an opportunity to cure the deficiencies in his complaint).

Dated: June 1, 2016

COOLEY LLP
MICHAEL G. RHODES (116127)
WHITTY SOMVICHIAN (194463)
KYLE C. WONG (224021)
KAREN L. BURHANS (303290)
AMY M. SMITH (287813)

/s/ Whitty Somvichian
Whitty Somvichian (194463)
Attorneys for Defendant GOOGLE INC.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

132391849

10.

**SUPPLEMENTAL BRIEF RE:** *SPOKEO, INC. V. ROBINS* **- 5:15-CV-04062 LHK**