COOLEY LLP
MICHAEL G. RHODES (116127) (rhodesmg@cooley.com)
WHITTY SOMVICHIAN (194463) (wsomvichian@cooley.com)
KYLE C. WONG (224021) (kwong@cooley.com)
KAREN L. BURHANS (303290) (kburhans@cooley.com)
AMY M. SMITH (287813) (amsmith@cooley.com)
101 California Street, 5th Floor
San Francisco, CA 94111-5800
Telephone: (415) 693-2000
Facsimile: (415) 693-2222

Attorneys for Defendant GOOGLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DANIEL MATERA, as an individual, and on behalf of the other persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE INC.,<br><br>Defendant. | Case No. 5:15-cv-04062 LHK<br><br>**REPLY IN SUPPORT OF SUPPLEMENTAL BRIEF RE:** *SPOKEO, INC. V. ROBINS*<br><br>Date: June 27, 2016<br>Time: 1:30 p.m.<br>Dept.: Courtroom 8 - 4th Floor<br>280 S. First Street<br>San Jose, CA 95113<br><br>Judge: The Hon. Lucy H. Koh<br>Trial Date: Not yet set |

# I. ARGUMENT

Nothing in Plaintiff's Supplemental Brief Regarding *Spokeo v. Robins* justifies his failure to allege the "concrete and particularized" injury needed to support Article III standing. Because *Spokeo* invalidates the theory of statutory standing on which the Complaint relies, Plaintiff is left to claim that the automated processing of emails is itself a "concrete" injury—without any resulting harm or even any allegations about the content or context of the communications at issue. Plaintiff's arguments fall far short of demonstrating standing, for the following reasons.

## A. The Automated Processing Of Email Bears No Relationship To Any Harm Traditionally Regarded As Providing A Basis For A Lawsuit.

Plaintiff claims that "Courts have long-recognized common law tort claims that mirror ECPA's and CIPA's prohibitions against the interception of private communications without consent." (Dkt. 41 at 4.) To support this sweeping claim, Plaintiff cites a smattering of cases from the 1960s and 1970s; the Restatement (Second) of Torts (1977); and an amendment to the California Constitution in 1972. It is not at all clear that these authorities amount to the sort of "historical practice" the Supreme Court had in mind when it advised courts to examine whether an alleged "harm . . . has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016). Notably, the Court cites *Vermont Agency of Nat. Resources v. U.S. ex. rel. Stevens*, 529 U.S. 765 (2000) as an example of the appropriate analysis, in which it conducted a historical review of qui tam actions from the 13th Century to the framing of the Constitution in order to determine whether a qui tam relator had Article III standing. *Id.* Plaintiff offers no similar support here.[1]

Moreover, none of Plaintiff's authorities shows that the interception of a communication alone—regardless of the nature of the communication at issue—has "traditionally been regarded as providing a basis for a lawsuit." *Id*. To the contrary, Plaintiff's own cited authorities confirm that the common law claims that he invokes apply only where a plaintiff has demonstrated "an objectively reasonable expectation of seclusion or solitude" in the specific matters at issue. *See,*

---

[1] Plaintiff's citation to *The Right of Privacy*, an 1890 article *advocating* for the *new* recognition of a right of privacy as an independent legal concept, confirms that "in very early times, the law gave a remedy only for *physical* interference with life and property, for trespasses *vi et armis*." Samuel D. Warren & Louis Brandeis, *The Right to Privacy*, 4 HARV. L. REV. 193 (1890).

*e.g.*, *Shulman v. Group W Productions., Inc.*, 18 Cal. 4th 200, 232 (1998). *See also Hill v. Nat'l Collegiate Athletic Assn*., 7 Cal. 4th 1, 25 (1994) ("not every kind of conduct that strays from social custom or implicates personal feelings gives rise to a common law cause of action for invasion of privacy"); *Med. Lab. Mgmt. Consultants v. Am. Broad. Cos., Inc.*, 306 F.3d 806, 812-13 (9th Cir. 2002) (recognizing that the Restatement (Second) Torts § 652B requires a "subjective expectation of seclusion or solitude in the place, conversation, or matter" that is "objectively reasonable"). If anything, the common law principles on which Plaintiff relies confirm that the bare allegations of the Complaint are inadequate, given Plaintiff's failure to allege any facts about the contents or context of any of the emails at issue. *See In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1040-41 (2014) (holding that a plaintiff must plead "*with specificity*" the contents of the emails at issue in order to demonstrate a "legally protected privacy interest") (italics in original).

Further, Plaintiff's authorities show that common law privacy claims have addressed *direct human* intrusions, not the sort of automated processing at issue here. *See Vernars v. Young*, 539 F.2d 966, 968 (3d Cir. 1979) (involving intrusion upon seclusion claim in which individual defendants opened and read plaintiff's mail without her consent); Restatement (Second) of Torts § 652B (1977) (referring to "the use of the *defendant's senses*, with or without mechanical aids, to *oversee or overhear* the plaintiff's private affairs") (italics added). Google's automated processing of emails to display targeted advertising involves no human review of any email content and bears no resemblance to the types of direct human intrusions that have been traditionally recognized by privacy torts.

### B. The "Judgment Of Congress" Does Not Support Standing Here.

Plaintiff next claims that the U.S. and California legislatures viewed the interception of communications to be an intrinsic injury in enacting EPCA and CIPA. But the isolated legislative history on which Plaintiff relies consists simply of vague references to protecting privacy, without further explanation. To the extent these statements show that ECPA and CIPA were intended to reflect the prevailing law on privacy rights, that would support *Google's* position, not Plaintiff's, given the long-established limitations on privacy-related torts discussed above.

In any case, while *Spokeo* acknowledged that the "judgment of Congress" may be relevant

to the standing inquiry, Plaintiff ignores the important limitations the Court placed on such judgment. As the Supreme Court explains, Congress can only "elevate" injuries that are "concrete, *de facto* injuries" *independently* of the statutory terms Congress enacts:

> Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. Article III standing requires a concrete injury even in the context of a statutory violation.

*Spokeo*, 136 S. Ct. at 1549. Thus, even if Congress intended a statute to bar certain conduct, a violation of the statute does not establish standing unless the plaintiff also suffered concrete injury. Plaintiff therefore cannot claim that ECPA's legislative history allegedly evincing an intent to protect the privacy of electronic communications makes *all* violations a concrete harm under Article III.[2]

### C. Plaintiff's Effort To Distinguish *Spokeo* As Addressing Only "Procedural" Violations Is Unavailing.

In a related argument, Plaintiff claims he need not demonstrate a "concrete" injury beyond a violation of ECPA and CIPA because "the interception of email content is not some violation of a mere procedural requirement . . . but rather is the injury itself." (Dkt. 41 at 8.) But nothing in *Spokeo* suggests the requirement of an independent concrete injury applies only to statutes that involve "procedural requirement[s]." Rather, *Spokeo*'s holding applies *regardless* of whether a plaintiff characterizes a statute as procedural or substantive in nature. 136 S. Ct. at 1549.

In *Spokeo*, the Court explained that Congress "sought to curb the dissemination of false information by adopting procedures designed to decrease that risk." *Id*. at 1550. As Plaintiff points out, the Court held that a violation of those procedural provisions may not cause concrete injury because the consumer report at issue could still be "entirely accurate." *Id*. But the Court's analysis did not end there. The Court went on to caution that, even where a violation of FCRA's

---

[2] Further, CIPA's legislative history is irrelevant, as Ninth Circuit law holds that state legislatures cannot manufacture Article III harm from mere statutory violations. (Google's Supplemental Brief, Dkt. 42 at 4, n.4); *see also Khan v. Children's Nat'l Health Sys.*, No. CV TDC-15-2125, 2016 WL 2946165, at *7 (D. Md. May 19, 2016) (relying on *Spokeo* to reject the "proposition that a state legislature . . . can manufacture Article III standing for a litigant who has not suffered a concrete injury").

procedural terms leads to the actual disclosure of false information,

> not all inaccuracies cause harm or present any material risk of harm. An example that comes readily to mind is an incorrect zip code. It is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm.

*Id.* Thus, even where a defendant's violation causes the precise circumstance the statute was intended to prevent—in the case of FCRA, the "dissemination of false information"—a court must still assess the specific circumstances to determine if a plaintiff has suffered concrete injury.

Similarly here, Plaintiff cannot dispense with a showing of independent harm by simply claiming that the alleged interception of email is (in his interpretation of the statutes) "the precise injury that [ECPA and CIPA] seek to prevent." (Dkt. 41 at 8.) Just as the plaintiff in *Spokeo* could not rely solely on the dissemination of false information alone to demonstrate a concrete injury, Plaintiff cannot simply allege an interception and claim that the purported violation of ECPA and CIPA is sufficient to confer standing. In both cases, the plaintiff has allegedly suffered "the precise injury" that the statutes at issue "seek to prevent." But *Spokeo* demands more. Plaintiff must allege facts demonstrating that (unlike the Supreme Court's "zipcode" example) he suffered some actual, *de facto* harm from Google's conduct. Plaintiff asserts no such facts. Indeed, the allegations here do not even approach the allegations in *Spokeo*, in which Plaintiff Robins identified the particular false information that was disclosed, and further alleged that this false information harmed his employment prospects as he actively sought work. *Spokeo*, 136 S. Ct. at 1554 (Ginsburg, J., dissenting) (acknowledging that "Spokeo's report made him appear overqualified for jobs he might have gained, expectant of a higher salary than employers would be willing to pay, and less mobile because of family responsibilities").

In the end, Plaintiff alleges only what *Spokeo* clarifies is not enough: that "Congress . . . create[d] an express legal right prohibiting the unauthorized opening of electronic communications" and that he suffered "a violation of this" right. (Dkt. 41 at 6 (internal quotations omitted).)[3]

---

[3] Plaintiff misconstrues *Spokeo's* citation to two cases where the Supreme Court found standing based on the violation of a statute, without additional harm. Those cases involved statutes that created governmental obligations (the disclosure of governmental records) that had no prior basis in common law, whereas ECPA and CIPA (by Plaintiff's characterization) codify existing law

### D. Plaintiff Ignores The Prevailing Law Rejecting Claims Of Article III Injury In Similar Circumstances.

Google's Supplemental Brief summarizes the established line of authority demonstrating that generalized allegations of privacy-related injuries do not support Article III standing. Plaintiff seeks to avoid this line of authority by noting that some of the statutory claims in these cases required a showing of economic loss as an element of the claim. (Dkt. 41 at 2 n.1.) But separate and apart from whether the plaintiffs in those cases alleged all elements of their claims for Rule 12(b)(6) purposes, the courts concluded that plaintiffs *also* failed to allege an injury-in-fact under Article III. *See, e.g., In re iPhone Application Litig.*, No. 11-md-2250-LHK, 2011 U.S. Dist. LEXIS 106865, at *16 (N.D. Cal. Sept. 20, 2011) (no standing where plaintiffs failed to "identify what harm (if any) resulted from the access or tracking of their personal information"); *In re Google Privacy Policy Litig.*, No. C 12-01382 PSG, 2012 U.S. Dist. LEXIS 183041, at *20 (N.D. Cal. Dec. 28, 2012) (no standing where plaintiffs failed to offer "a coherent and factually supported theory of what [their] injury might be" under ECPA).

## II. CONCLUSION.

Plaintiff had the opportunity to amend his Complaint in light of *Spokeo* but declined, maintaining that his "allegation of interception—and nothing more" is sufficient to confer Article III standing. (Dkt. 41 at 8.) *Spokeo* expressly rejected this argument. The Complaint should be dismissed for failure to allege the concrete injury needed to support Article III standing.

Dated: June 13, 2016
COOLEY LLP
MICHAEL G. RHODES (116127)
WHITTY SOMVICHIAN (194463)
KYLE C. WONG (224021)
KAREN L. BURHANS (303290)
AMY M. SMITH (287813)

*/s/ Whitty Somvichian*
Whitty Somvichian (194463)
Attorneys for Defendant GOOGLE INC.

---

and must be construed in light of the limitations of that law. Moreover, the harm in these cases was not merely a violation of the statute; it was the inability of individual plaintiffs to access specific government records about particular political groups. *Federal Election Comm'n v. Akins*, 524 U.S. 11 (1998) (records regarding a specific lobbying group, including its members and expenditures); *Public Citizen v. Department of Justice*, 491 U.S. 440 (1989) (records regarding a specific political body and its deliberations on nominees to the federal judiciary).