Michael W. Sobol (194857)
msobol@lchb.com
Nicole D. Sugnet (246255)
nsugnet@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000

Hank Bates (167688)
hbates@cbplaw.com
CARNEY BATES & PULLIAM, PLLC
519 West 7th St.
Little Rock, AR 72201
Telephone: 501.312.8500
Facsimile: 501.312.8505

Ray E. Gallo (158903)
rgallo@gallo-law.com
Dominic R. Valerian (240001)
dvalerian@gallo-law.com
GALLO LLP
1299 Fourth St., Suite 505
San Rafael, CA 94901
Telephone: 415.257.8800

*Attorneys for Plaintiffs and the Proposed Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL MATERA and SUSAN RASHKIS, as individuals, and on behalf of other persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE, INC.,<br><br>Defendant. | Case No. 5:15-cv-04062 LHK<br><br>**PLAINTIFFS' NOTICE OF MOTION; MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; AND MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: March 9, 2017<br><br>Time: 1:30 p.m.<br><br>Courtroom: 8, 4th Floor<br><br>Judge: The Hon. Lucy H. Koh |

NOTICE OF MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that on March 9, 2017, at 1:30 p.m., in the Courtroom of the Honorable Lucy H. Koh, United States District Judge for the Northern District of California, 280 South 1st Street, 4th Floor, Courtroom 8, San Jose, California 95113, Plaintiffs Daniel Matera and Susan Rashkis ("Plaintiffs"), will and hereby do move the Court, pursuant to Federal Rule of Civil Procedure 23, for an Order:

a)     Granting preliminary approval of the proposed Class Action Settlement Agreement ("Settlement") entered into between the parties;[1]

b)     Certifying the Settlement Class as defined in the Settlement;

c)     Appointing Plaintiffs Daniel Matera and Susan Rashkis as Class Representatives of the proposed Classes;

d)     Appointing Michael W. Sobol of Lieff Cabraser Heimann & Bernstein LLP, Hank Bates of Carney Bates & Pulliam PLLC, and Ray Gallo of Gallo LLP as Class Counsel for the proposed Classes;

e)     Approving the parties' proposed notice program, including the proposed form of notice set forth in the Settlement, and directing that notice be disseminated pursuant to such program;

f)     Appointing KCC Class Action Services, LLC ("KCC") as Settlement Administrator, and directing KCC to carry out the duties and responsibilities of the Settlement Administrator specified in the Settlement;

g)     Staying all non-Settlement related proceedings in the above-captioned case (the "Action") pending final approval of the Settlement; and

h)     Setting a Fairness Hearing and certain other dates in connection with the final approval of the Settlement.

This motion is based on this notice of motion and motion, the accompanying memorandum of points and authorities, the Settlement, including all exhibits thereto, the accompanying Joint Declaration of Hank Bates, Michael W. Sobol, and Ray Gallo ("Joint Decl."), the argument of counsel, all papers and records on file in this matter, and such other matters as the Court may consider.

---

[1] *See* Exhibit 1 to the Joint Declaration of Michael W. Sobol, Hank Bates, and Ray Gallo ("Joint Declaration").

1    Dated: December 13, 2016          Respectfully submitted,

2                                      By: _/s/ Michael W. Sobol_____
                                           LIEFF CABRASER HEIMANN
3                                           & BERNSTEIN, LLP
                                           Michael W. Sobol (194857)
4                                          msobol@lchb.com
                                           Nicole D. Sugnet (246255)
5                                          nsugnet@lchb.com
                                           275 Battery Street, 29th Floor
6                                          San Francisco, CA 94111-3339
                                           Telephone: (415) 956-1000
7                                          Facsimile: (415) 956-1008

8                                          CARNEY BATES & PULLIAM, PLLC
                                           Joseph Henry ("Hank") Bates (167688)
9                                          519 W. 7th Street
                                           Little Rock, AR 72201
10                                         Telephone: (501) 312-8500
                                           Fax: (501) 312-8505
11
                                           GALLO LLP
12                                         Ray E. Gallo (158903)
                                           rgallo@gallo-law.com
13                                         Dominic R. Valerian (240001)
                                           dvalerian@gallo-law.com
14                                         1299 Fourth St., Suite 505
                                           San Rafael, CA 94901
15                                         Telephone: 415.257.8800

16                                         *Attorneys for Plaintiffs*

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES .................................................................. 1

I.      INTRODUCTION ................................................................................................................ 1

II.     OVERVIEW OF THE LITIGATION .................................................................................. 2

III.    THE PROPOSED SETTLEMENT AND SCHEDULE OF EVENTS .............................. 4

        A.      Summary of the Settlement Terms.......................................................................... 4

        B.      Proposed Schedule of Events .................................................................................. 6

IV.     LEGAL ANALYSIS ............................................................................................................ 6

        A.      Applicable Legal Standards .................................................................................... 6

        B.      Certification of the Proposed Settlement Class is Appropriate.............................. 7

                1.      Rule 23(a) is Satisfied. ................................................................................. 7

                        a.      The Settlement Classes are Too Numerous to Permit Joinder........ 7

                        b.      This Action Presents Common Questions of Law or Fact.............. 8

                        c.      Plaintiffs' Claims are Typical of Those of the Settlement
                                Classes............................................................................................. 9

                        d.      Plaintiffs and Their Counsel Will Fairly and Adequately
                                Protect the Interests of the Settlement Class Members................. 10

                2.      The Requirements of Rule 23(b)(2) are Satisfied .................................... 11

        C.      Preliminary Approval of the Settlement is Appropriate ...................................... 12

                1.      The Settlement Falls Within the Range of Possible Approval.................. 12

                2.      The Settlement is the Product of Arm's-Length Negotiations After a
                        Thorough Investigation, Without a Trace of Collusion ............................ 15

                3.      The Recommendation of Experienced Counsel Favors Approval............ 16

        D.      The Proposed Form of Notice and Notice Plan are Appropriate and Should
                be Approved.......................................................................................................... 17

CONCLUSION ...................................................................................................................... 18

- i -

# TABLE OF AUTHORITIES

Page

**CASES**

*Armstrong v. Davis,*
275 F.3d 849 (9th Cir. 2001) ............................................................................................. 9

*Arnott v. U.S. Citizenship & Immigration Services,*
290 F.R.D. 579 (C.D. Cal. 2012) ....................................................................................... 8

*Backhaut v. Apple Inc.,*
148 F. Supp. 3d 844 (N.D. Cal. 2015) ............................................................................. 13

*Campbell v. Facebook Inc.,*
315 F.R.D. 250 (N.D. Cal. 2016) ..................................................................................... 12

*Churchill Village, L.L.C. v. Gen. Elec.,*
361 F.3d 566 (9th Cir. 2004) ........................................................................................... 12

*Class Plaintiffs v. City of Seattle,*
955 F.2d 1268 (9th Cir. 1992) .................................................................................... 12, 15

*Ellis v. Naval Air Rework Facility,*
87 F.R.D. 15 (N.D. Cal. 1980) ......................................................................................... 15

*Hanlon v. Chrysler Corp,*
150 F.3d 1011 (9th Cir. 1998) ............................................................................... 8, 11, 12

*Hendricks v. Starkist Co,*
No. 13-cv-00729-HSG, 2015 U.S. Dist. LEXIS 96390
(N.D. Cal. July 23, 2015) ........................................................................................... 13, 18

*In re Heritage Bond Litig.,*
No. 02-ML-1475 DT, 2005 U.S. Dist. LEXIS 13555 (C.D. Cal. June 10, 2005) ................... 15

*In re Juniper Networks Sec. Litig.,*
264 F.R.D. 584 (N.D. Cal. 2009) ..................................................................................... 10

*In re Yahoo Mail Litig.,*
No. 13-cv-04980-LHK (ECF No. 182) (N.D. Cal. Mar. 15, 2016) ......................................... 15

*In re Yahoo Mail Litig.,*
No. 13-cv-04980-LHK, 2016 WL 4474612 (N.D. Cal. Aug. 25, 2016) .................................. 17

*In re Yahoo Mail Litig.,*
308 F.R.D. 577 (N.D. Cal. 2015) ........................................................................... 8, 9, 11, 12

*Jordan v. County of Los Angeles,*
669 F.2d 1311 (9th Cir. 1982), *vacated on other grounds*, 459 U.S. 810 (1982) .................. 7, 10

*Knight v. Red Door Salons, Inc.,*
No. 08-01520 SC, 2009 U.S. Dist. LEXIS 11149 (N.D. Cal. Feb. 2, 2009) ............................ 16

# TABLE OF AUTHORITIES
(continued)

Page

*Konop v. Hawaiian Airlines, Inc.*,
 302 F.3d 868 (9th Cir. 2002)...................................................................................... 14

*Linney v. Cellular Alaska Partnership*,
 No. C-96-3008 DLJ, 1997 WL 450064 (N.D. Cal. July 18, 1997)........................................ 16

*Lyon v. United States Immigration and Customs Enf't*,
 300 F.R.D. 628 (N.D. Cal. 2014)................................................................................... 17

*Newman v. Stein*,
 464 F.2d 689 (2d Cir. 1972).......................................................................................... 14

*Noel v. Hall*,
 568 F.3d 743 (9th Cir. 2009).......................................................................................... 14

*Phillips Petroleum Co. v. Shutts*,
 472 U.S. 797 (1985)..................................................................................................... 18

*Pilkington v. Cardinal Health, Inc.*,
 516 F.3d 1095 (9th Cir. 2008)........................................................................................ 12

*Rodriguez v. West Publishing Corp.*,
 563 F.3d 948 (9th Cir. 2009).......................................................................................... 14

*Spokeo v. Robbins*,
 136 S. Ct. 1540 (2016)................................................................................................... 3

*Staton v. Boeing Co.*,
 327 F.3d 938 (9th Cir. 2003).......................................................................................... 11

*Sueoka v. United States*,
 101 F. App'x 649 (9th Cir. 2004) .................................................................................... 8

*Wal-Mart Stores, Inc. v. Dukes*,
 131 S. Ct. 2541 (2011) ............................................................................................ 8, 17

**STATUTES**

California Invasion of Privacy Act,
 Cal. Pen. Code § 630, *et seq.* ................................................................................ passim

Class Action Fairness Act,
 28 U.S.C. § 1715........................................................................................................ 17

Electronic Communications Privacy Act,
 18 U.S.C. § 2510, *et seq* ....................................................................................... passim

**RULES**

Fed. R. Civ. P. 23(a)(1)................................................................................................... 7

Fed. R. Civ. P. 23(a)(3)................................................................................................... 9

TABLE OF AUTHORITIES
(continued)

Page

Fed. R. Civ. P. 23(b)(2)........................................................................................................ 11, 17

Fed. R. Civ. P. 23(c)(2) ............................................................................................................ 17

Fed. R. Civ. P. 23(e)(2) ............................................................................................................ 12

**TREATISES**

Newberg on Class Actions (4th ed. 2002) . .......................................................... passim

Manual for Complex Litigation (Fed. Jud. Center, 4th Ed. 2004)......................................... passim

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Plaintiffs and Defendant Google, Inc. ("Google" or "Defendant") have reached a proposed settlement (the "Settlement") in the above-captioned action (the "Action"). Pursuant to the terms of the Settlement, Google has agreed to eliminate any processing of email content—including the content of emails exchanged with non-Gmail accountholders—that it applies prior to the point when a Gmail user can retrieve the email in his or her mailbox, and that is used for the distinct purpose of advertising and creating advertising user models. With regard to any information generated by other processing of email content (e.g. spam filtering) that Google applies before the Gmail user can retrieve the email in his or her mailbox, Google will not use or access such information for the purpose of serving targeted advertising or creating advertising user models until after the Gmail user can retrieve the email in his or her mailbox using the Gmail interface. Class Counsel believes that these technical changes are substantial and that these changes, once implemented, will bring Google's email processing practices in compliance with Class Counsel's view of the California Invasion of Privacy Act, Cal. Pen. Code §§ 630, *et seq.* ("CIPA"), and the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510, *et seq.* ("ECPA"). Specifically, the changes required by the Settlement Agreement prohibit Google from processing—for purposes of advertising or creating advertising user models—any email content until a Gmail user can retrieve the email in his or her mailbox. Additionally, the costs of administering the Settlement (including providing notice to Class Members), as well as any attorneys' fees and costs and Service Awards to the Class Representatives that may be awarded by the Court, will be paid by Google. The Settlement achieves the goal of the litigation and falls well within the "range of reasonableness" applicable at the preliminary approval stage.

Although this injunctive relief-only Settlement does not require notice to Class Members, the Settlement nevertheless provides for a robust and far-reaching Internet and website media notice campaign targeted to the Classes and facilitated by the parties' proposed Settlement Administrator, KCC Class Action Services, LLC ("KCC"). The notice will explain in plain language the terms of the Settlement, the amount of attorneys' fees and expenses Class Counsel

1  will be seeking, and Class Members' rights, including the right to object to the Settlement or to

2  Class Counsel's fee request.

3       The Settlement is the product of extensive arm's-length negotiations between the parties

4  and their experienced and informed counsel. The settlement negotiations spanned over two

5  months and included two mediation sessions before a highly respected and skilled mediator,

6  Randall Wulff. Prior to reaching the Settlement, Class Counsel thoroughly researched both the

7  law and the facts involved in this case, reviewed and analyzed over 130,000 pages of documents

8  produced by Google, and reviewed and analyzed the deposition testimony of several Google

9  employees. Class Counsel therefore had a firm understanding of both the strengths and

10  weaknesses of Plaintiffs' allegations and Defendant's potential defenses. Both prior to and during

11  the negotiations, Class Counsel faced formidable opposition from Google's counsel who

12  zealously defended their client's position, including through Google's motion to dismiss.  Both

13  sides were well-represented by seasoned and informed counsel who vigorously pursued their

14  respective clients' interests.

15       In sum, the Settlement requires Google to make significant business practice changes that

16  will benefit the Settlement Classes now, without the inherent risks of continued litigation and

17  without requiring Class Members to release any claims they may have for monetary relief. The

18  Settlement was only reached after months of discovery and arm's-length negotiations and enjoys

19  the support of a neutral mediator who had an integral part in the settlement negotiations.

20  Accordingly, the Settlement satisfies the criteria for preliminary approval.

21  **II.     OVERVIEW OF THE LITIGATION**

22       Plaintiff Daniel Matera, on behalf of himself and a putative class, filed this Action

23  September 4, 2015. (ECF No. 1). The Complaint alleged that Google's practices of intercepting,

24  extracting, reading, and using the email contents of individuals who do not have email accounts

25  with Google ("non-Gmail" users)—but who exchange email messages with Gmail

26  accountholders—violated the California Invasion of Privacy Act, Cal. Pen. Code §§ 630, *et seq.*

27  ("CIPA") and the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510, *et seq.* ("ECPA").

28       On October 29, 2015, Google concurrently filed a Motion to Dismiss the Complaint (ECF

No. 20) and a Motion to Stay (ECF No. 21) in light of the Supreme Court's then-pending opinion in *Spokeo v. Robbins*, 136 S. Ct. 1540 (2016) ("*Spokeo*"). In response, on December 4, 2015, Plaintiffs respectively filed an Opposition to Google's Motion to Dismiss (ECF No. 29) and an Opposition to Google's Motion to Stay (ECF No. 30). The Court granted Google's Motion to Stay. (ECF No. 36). Following the issuance of the *Spokeo* opinion on May 16, 2016, the parties provided additional, supplemental briefing on the opinion's impact, if any, on Plaintiff Matera's Article III standing (ECF Nos. 41-42, 45-46).

On August 12, 2016, the Court issued an Order Denying Google's Motion to Dismiss as to the Merits of Plaintiff's Claims (ECF No. 49). Separately, on September 23, 2016, the Court issued an Order Granting in Part and Denying in Part Defendant's Motion to Dismiss Based on Lack of Standing (ECF No. 54), which granted, with prejudice, Google's motion to dismiss Plaintiff Matera's claim for an injunction as it relates to Google Apps for Education,[2] but which denied the remainder of Google's motion.

Subsequently, on October 17, 2016, Plaintiff Matera filed an Amended Complaint (ECF No. 58), adding additional Named Plaintiff Susan Rashkis, eliminating allegations pertaining to Google Apps, and refining and clarifying allegations relating to technical aspects of Google's challenged practices. On October 21, 2016, Google filed its Answer to the Amended Complaint (ECF No. 59).

The parties conducted extensive discovery, with Plaintiffs propounding initial sets of Interrogatories and Requests for Production of Documents on June 13, 2016, and Google propounding commensurate discovery on July 27, 2016. Throughout the summer, Google produced over 130,000 pages of documents, which Plaintiffs carefully reviewed and analyzed. These productions included relevant deposition testimony, interrogatory answers, and documents produced in the prior multi-district litigation challenging the same practices as the instant litigation, *In re Google Inc. Gmail Litig.*, No. 13-MD-02430-LHK (N.D. Cal.) ("*In re Gmail*"), as well as documents produced in response to targeted discovery regarding Google's email

---

[2] Plaintiffs initially challenged scanning practices associated with each of Google's email platforms: Gmail, Google Apps for Education, and Google Apps for Business. *See,* Complaint (ECF No. 1).

processing practices, the various servers and devices used to process emails, the various points of time during the email delivery process that Google processes emails, and the purposes for which Google processes emails.

Concurrently, the parties began discussions regarding a possible mediation. On August 31, 2016, the parties participated in mediation before the highly respected mediator, Randall Wulff. While the parties made good progress, they were unable to reach a resolution to the Action. However, the parties continued to communicate in an effort to reach settlement and, following an additional, half-day mediation session with Randall Wulff on November 4, 2016, the parties agreed to the key terms of the Settlement. The parties thereafter engaged in further negotiations regarding the remaining terms of the Settlement and worked together to develop a comprehensive set of settlement papers, including the Settlement Agreement, the proposed Notice, and the proposed orders. The parties also worked together to determine an appropriate notice plan.

The Settlement was executed by all parties on November 22, 2016. A copy of the executed Settlement is being submitted simultaneously herewith as Exhibit 1 to the Joint Declaration.

## III.   THE PROPOSED SETTLEMENT AND SCHEDULE OF EVENTS

### A.   Summary of the Settlement Terms

The Settlement requires Google to make significant technical changes to its processing of email messages that Class Counsel contend will bring Google's practices within compliance, in Class Counsel's view, of both ECPA and CIPA. These changes benefit both a Class of California residents ("CIPA Class") and a nationwide Class ("ECPA Class"), defined as follows:

CIPA Class:
All natural persons in the State of California who have never established a Gmail account with Google, and who have sent unencrypted emails to individuals with Gmail accounts.

ECPA Class:
All natural persons in the United States who have never established a Gmail account with Google, and who have sent unencrypted emails to individuals with Gmail accounts.

All members of both the CIPA Class and ECPA Class were subject to Google's practice

of processing the content of their emails for purposes of advertising and creating advertising user models. Pursuant to the terms of the Settlement, Google has agreed to the entry of a stipulated injunction—to be effective for not less than three years after the Court enters final judgment[3]— addressing the processing of emails for the purposes of targeted advertising and advertising user models as follows:

### i.   **Incoming Email Sent to a Gmail User**

Google will eliminate any processing of email content that it applies prior to the point when the Gmail user can retrieve the email in his or her mailbox using the Gmail interface and that is used for the distinct purpose of advertising and creating advertising user models. With regard to any information generated by other processing of email content[4] that Google applies before the Gmail user can retrieve the email in his or her mailbox using the Gmail interface, Google will not use or access such information for the purpose of serving targeted advertisements or creating advertising user models until after the Gmail user can retrieve the email in his or her mailbox using the Gmail interface. Settlement Agreement, ¶ 34(b).

### ii.   **Outgoing Email Sent to a Gmail User**

Google will refrain from any processing of email content that it applies prior to the point when the Gmail user can retrieve the outgoing email in his or her mailbox using the Gmail interface and that is used for the distinct purpose of advertising and creating advertising user models. With regard to any information generated by other processing of email content that Google applies before the Gmail user can retrieve the outgoing email in his or her mailbox using the Gmail interface, Google will not use or access such information for the purpose of serving targeted advertisements or creating advertising user models until after the Gmail user can retrieve

---

[3] In the Settlement Agreement, Google affirmatively represents "that it has no present intention of eliminating the technical changes [required by the Settlement] after the expiration of the term of the injunction. Google believes, however, that the architecture and technical requirements for providing email services on a large scan evolve and change dynamically and that a longer commitment may hinder Google's ability to improve and change its architecture and technology to meet changing demands." Settlement Agreement, ¶ 34(d).

[4] The settlement focuses on the practices challenged in Plaintiffs' Amended Complaint. The settlement prohibitions will not prevent Google from processing incoming and outgoing email for purposes other than delivering targeted advertising or creating advertising user models (such as the prevention of spam or malware).

the email in his or her mailbox using the Gmail interface. Settlement Agreement, ¶ 34(b).

The Settlement further provides that Settlement Administrative costs and any award of attorneys' fees and costs and/or service awards to the Class Representatives will be paid by Google. Google has agreed to not oppose an application by Class Counsel for an award of $2,200,000 in attorneys' fees and expenses, and for service awards in the amount of $2,000 to each of the Class Representatives. Settlement Agreement, ¶¶ 58-60.

In exchange for the foregoing consideration, the Action will be dismissed with prejudice upon final approval of the Settlement, and the Settlement Class Members will thereby release all claims which have been or could have been asserted against Google by any member of the Settlement Classes in this Action, with the caveat that the release provided under the Settlement Agreement extends solely to claims for declaratory, injunctive, and non-monetary equitable relief. No Settlement Class Member, with the exception of the Named Representatives, will release any claim for monetary damages under CIPA or ECPA. Settlement Agreement, ¶ 35.

## B.   Proposed Schedule of Events

Consistent with the provisions of the Settlement, Plaintiffs respectfully propose the following schedule for the various Settlement events:

| Date | Event |
| --- | --- |
| Notice of Settlement to be Disseminated | 21 days after the entry of the Court's Order of Conditional Class Certification and Preliminary Approval of Settlement |
| Class Counsel's motions for final approval and for attorneys' fees, costs, and service awards | 60 days after the entry of the Court's Order of Conditional Class Certification and Preliminary Approval of Settlement |
| Objection Deadline | 90 days after Dissemination of Notice |
| Deadline for Parties to File a Written Response to Any Comment or Objection Filed by a Class Member | 100 days after Dissemination of Notice |
| Settlement Administrator affidavit of compliance with notice requirements | 14 days before Final Approval Hearing |
| Final Approval Hearing | August 10, 2017 at 1:30 p.m., or as soon thereafter as is convenient for the Court |

## IV.   LEGAL ANALYSIS

### A.   Applicable Legal Standards

Federal Rule of Civil Procedure 23 requires judicial approval of the compromise of claims

brought on a class basis. The procedure for judicial approval of a proposed class action settlement is well established and is comprised of the following:

(1)     Certification of a settlement class and preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval.

(2)     Dissemination of notice of the proposed settlement to the affected class members.[5]

(3)     A formal fairness hearing, or final settlement approval hearing, at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement are presented.

*See* Manual for Complex Litigation (Fed. Jud. Center, 4th Ed. 2004), § 21.63 ("Manual"). This procedure safeguards class members' procedural due process rights and enables the Court to fulfill its role as guardian of class interests. *See* Newberg on Class Actions, § 11.22 *et seq.* (4th ed. 2002) ("Newberg").

At this juncture and with this motion, Plaintiffs respectfully request that the Court take the first steps in the settlement approval process by granting preliminary approval of the proposed Settlement, certifying the proposed Settlement Classes, and directing that notice be disseminated to the Settlement Classes pursuant to the proposed notice program.

**B.     Certification of the Proposed Settlement Class is Appropriate**

Plaintiffs contend, and Google does not dispute, for settlement purposes only, that the proposed classes meet the requirements for class certification under Rule 23(a) and Rule 23(b)(2).

**1.     Rule 23(a) is Satisfied.**

**a.     The Settlement Classes are Too Numerous to Permit Joinder**

A case may be certified as a class action only if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). While there is no fixed rule, numerosity is generally presumed when the potential number of class members reaches forty (40). *Jordan v. County of Los Angeles*, 669 F.2d 1311, 1319 (9th Cir. 1982), *vacated on other grounds*, 459 U.S. 810 (1982). In addition, "[b]ecause plaintiffs seek injunctive and declaratory relief, the

---

[5] As discussed in greater detail in Section D, *infra*, mandatory notice is not required for classes certified under Rule 23(b)(2), however the parties have agreed to put into place an extensive Notice Plan, consisting of 100,000,000 unique online impressions aimed at reaching Class Members.

1  numerosity requirement is relaxed and plaintiffs may rely on [ ] reasonable inference[s] arising

2  from plaintiffs' other evidence that the number of unknown and future members of [the] proposed

3  []class . . . is sufficient to make joinder impracticable." *Arnott v. U.S. Citizenship & Immigration*

4  *Services*, 290 F.R.D. 579, 586 (C.D. Cal. 2012) (all but last alteration in original) (quoting *Sueoka*

5  *v. United States*, 101 F. App'x 649, 653 (9th Cir. 2004)).

6       Here, numerosity is easily inferred. In a recent earnings call, Google announced that it has

7  over one billion monthly active Gmail users.[6] If even one percent of that user base exchanged an

8  email with a unique person in the United States who used an email service other than Gmail, the

9  ECPA Class would contain ten million members. Assuming that approximately 10 percent of

10  such persons reside in California, the CIPA Class would contain one million members.

11  Accordingly, the Settlement Classes are sufficiently numerous to satisfy Rule 23(a)(1).

12             **b.**     **This Action Presents Common Questions of Law or Fact**

13       Rule 23(a)(2) requires that there be one or more questions common to the class. *See*

14  *Hanlon v. Chrysler Corp*, 150 F.3d 1011, 1019 (9th Cir. 1998); *Wal-Mart Stores, Inc. v. Dukes*,

15  131 S. Ct. 2541, 2556 (2011); 4 Newberg § 3.10. Plaintiffs "need only show the existence of a

16  common question of law or fact that is significant and capable of classwide resolution." *In re*

17  *Yahoo Mail Litig.*, 308 F.R.D. 577, 592 (N.D. Cal. 2015) (citations omitted). Plaintiffs easily

18  meet this standard, as several significant common questions of law are fact exist, including the

19  following:

20       (1) Whether Google's acts and practices complained of herein amount to an intentional

21       and unauthorized connection to an electronic communication, in violation of Cal. Pen.

22       Code § 631(a) (on behalf of the CIPA Class);

23       (2) Whether Google's acts and practices complained of herein amount to the willful and

24       unauthorized reading, attempting to read, or learning the contents or meaning of Plaintiffs'

25       and Class Members' in-transit communications, in violation of Cal. Pen. Code § 631(a)

26       (on behalf of the CIPA Class);

---

27  [6] Frederic Lardinois, "Google Now Has More Than 1B Monthly Active Users," TechCrunch

28  (Feb. 1, 2016) (available at https://techcrunch.com/2016/02/01/gmail-now-has-more-than-1b-monthly-active-users/).

(3) Whether Google used or attempted to use any information acquired in violation of Cal. Pen. Code § 631(a) (on behalf of the CIPA Class);

(4) Whether Google intentionally intercepted, endeavored to intercept, or procured any other person to intercept or endeavor to intercept Plaintiffs' and Class Members' electronic communications in violation of 18 U.S.C. § 2511(1)(a) (on behalf of the ECPA Class);

(5) Whether Google acquired any "contents" of Plaintiffs' and Class Members' electronic communications, within the meaning of 18 U.S.C. § 2510(8)  (on behalf of the ECPA Class);

(6) Whether Plaintiffs' and Class Members' emails were "electronic communications" within the meaning of 18 U.S.C. § 2510(12) (on behalf of the ECPA Class);

(7) Whether Google used an "electronic, mechanical, or other device," within the meaning of 18 U.S.C. § 2510(5) (on behalf of the ECPA Class); and

(8) Whether Google intentionally used, or endeavored to use, the contents of Plaintiffs' and Class Members' electronic communications, knowing or having reason to know that the information was obtained in violation of 18 U.S.C. § 2511(1)(a) (on behalf of the ECPA Class).

The above questions will generate classwide answers that are central to resolving the Action. For example, whether Google processed non-Gmail users' emails before a Gmail user could access that email, as opposed to when those emails have already been received by the recipient, goes towards a key element of Plaintiffs' claims. *See In re Yahoo Mail Litig.*, 308 F.R.D. at 591. Commonality is therefore satisfied.

### c.   <u>Plaintiffs' Claims are Typical of Those of the Settlement Classes</u>

Rule 23(a)(3) requires that "the claims and defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality does not require total identity between representative plaintiffs and class members. *Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001). Rather, typicality is satisfied so long as the named plaintiffs'

claims stem "from the same event, practice, or course of conduct that forms the basis of the class claims, and is based upon the same legal theory." *Jordan*, 669 F.2d at 1322. *See also In re Juniper Networks Sec. Litig.*, 264 F.R.D. 584, 589 (N.D. Cal. 2009) ("representative claims are 'typical' if they are reasonably co-extensive with those of absent class members") (citation omitted).

Here, the named Plaintiffs' claims stem from the same common course of conduct as the claims of the Class Members. Plaintiffs and the Classes sent emails to Gmail users. Google processed the content of those emails, in part, for the purposes of delivering targeted advertising or creating advertising user models. Plaintiffs and the Class Members contend that they did not consent to the Google's processing of their emails. Like all Class Members, Plaintiffs suffer a substantial risk of repeated injury in the future: Although Plaintiffs contend they have never consented to having their emails processed by Google for the purpose of acquiring and cataloging their message content, and have never had any mechanism by which to opt-out of such practices, they have continued to—and must continue to—communicate with Gmail users via email. Indeed, by virtue of the ubiquity of Gmail, and the fact that tens if not hundreds of millions of Gmail accounts presently exist, Plaintiffs and Class Members cannot avoid sending emails to Gmail users now and in the future. Because the conduct complained of herein is systemic, Plaintiffs and all Class Members face substantial risk of the same injury in the future.

Google's conduct is common to all Class Members and results in injury to all Class Members. Thus, injunctive and declaratory relief will apply to all Plaintiffs and Class Members equally. Plaintiffs' claims are therefore typical of those of the Class Members, and Rule 23(a)(3) is satisfied.

### d. <u>Plaintiffs and Their Counsel Will Fairly and Adequately Protect the Interests of the Settlement Class Members</u>

Rule 23(a)(4) requires that the representative plaintiffs will "fairly and adequately" protect the interests of the class. The two-prong test for determining adequacy is: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members?, and (2) will the representative plaintiffs and their counsel prosecute the action

1    vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003);

2    (citing *Hanlon*, 150 F.3d at 1020). Both prongs are satisfied here.

3        First, the named Plaintiffs' interests are aligned with, and are not antagonistic to, the

4    interests of the Settlement Class Members. Indeed, the named Plaintiffs and the Settlement Class

5    Members, as non-Gmail accountholders, are equally interested in ensuring that Google's

6    treatment of and practices regarding the content of their private email communications are

7    conducted in compliance with ECPA and CIPA. *See Hanlon*, 150 F.3d at 1021 (adequacy

8    satisfied where "each . . . plaintiff has the same problem"). Accordingly, the named Plaintiffs will

9    fairly and adequately protect the interests of all Settlement Class Members.

10       Second, Class Counsel have extensive experience litigating and settling class actions,

11   including consumer cases throughout the United States. *See* Joint Decl., ¶¶ 20-27. Class Counsel

12   are well qualified to represent the Settlement Class. In addition, Class Counsel have vigorously

13   litigated this action in order to protect the interests of the Settlement Class and had a wealth of

14   information at their disposal before entering into settlement negotiations, which allowed Class

15   Counsel to adequately assess the strengths and weaknesses of Plaintiffs' case and balance the

16   benefits of settlement against the risks of further litigation. *See* Joint Decl., ¶¶ 10, 28-29. Thus,

17   Class Counsel have and will continue to fairly and adequately protect the interests of all

18   Settlement Class Members.

19                    **2.    The Requirements of Rule 23(b)(2) are Satisfied**

20       In addition to the requirements of Rule 23(a), at least one of the prongs of Rule 23(b) must

21   be satisfied. Here, the proposed Settlement Classes satisfy Rule 23(b)(2), which permits a class

22   action if the Court finds that "the party opposing the class has acted or refused to act on grounds

23   that apply generally to the class, so that final injunctive relief or corresponding declaratory relief

24   is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

25       Under identical circumstances, this Court has held that the requirements of Rule 23(b)(2)

26   are satisfied where "all emails sent from and to [an electronic communication service provider's]

27   subscribers are subject to the same interception and scanning processes." *In re Yahoo Mail Litig.*,

28   308 F.R.D. at 598 ("*Yahoo*"). Like this Action, *Yahoo* dealt with an email service provider's

1    common policy and practice of processing emails exchanged between Yahoo's email subscribers

2    and members of the class of non-Yahoo email users before the Yahoo user could access that

3    email in his or her mailbox. *Id*. Where, as here, the plaintiffs sought "uniform relief" addressing

4    commonly- and consistently-applied message-scanning practices, the Court held that the

5    requirements of Rule 23(b)(2) were satisfied. *Id*. at 600. *See also Campbell v. Facebook Inc.*, 315

6    F.R.D. 250, 269-70 (N.D. Cal. 2016) (same) (citing *Yahoo*, 308 F.R.D. at 598-601). The same is

7    true here, and Rule 23(b)(2) is accordingly satisfied.

8        **C.    Preliminary Approval of the Settlement is Appropriate**

9        Public policy "strong[ly] . . . favors settlements, particularly where complex class action

10   litigation is concerned." *Pilkington v. Cardinal Health, Inc.*, 516 F.3d 1095, 1101 (9th Cir. 2008);

11   *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004); *Class Plaintiffs v. City*

12   *of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

13       "[T]he decision to approve or reject a settlement is committed to the sound discretion of

14   the trial judge because he is exposed to the litigants and their strategies, positions, and proof."

15   *Hanlon*, 150 F.3d at 1026. In exercising such discretion, the Court should give "proper deference

16   to the private consensual decision of the parties . . . [T]he court's intrusion upon what is otherwise

17   a private consensual agreement negotiated between the parties to a lawsuit must be limited to the

18   extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or

19   overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a

20   whole, is fair, reasonable and adequate to all concerned." *Hanlon*, 150 F.3d at 1027. *See also* Fed.

21   R. Civ. P. 23(e)(2).

22       The proposed Settlement here satisfies the standard for preliminary approval because (a) it

23   is within the range of possible approval; (b) there is no reason to doubt its fairness because it is

24   the product of hard-fought, arm's-length negotiations between the parties and was only reached

25   after a thorough investigation by Plaintiffs' Counsel of the facts and the law; and (c) Plaintiffs

26   and Class Counsel believe it is in the best interest of the Settlement Classes.

27       **1.    The Settlement Falls Within the Range of Possible Approval**

28       To grant preliminary approval of the proposed Settlement, the Court need only find that it

1    falls within "the range of reasonableness." 4 Newberg § 11.25. The Manual for Complex

2    Litigation characterizes the preliminary approval stage as an "initial evaluation" of the fairness of

3    the proposed settlement made by the court on the basis of written submissions and informal

4    presentation from the settling parties. Manual § 21.632. Evaluating where a proposed settlement

5    falls within this spectrum entails focus "on substantive fairness and adequacy," weighing

6    "plaintiffs' expected recovery . . . against the value of the settlement offer." *Hendricks v. Starkist*

7    *Co*, No. 13-cv-00729-HSG, 2015 U.S. Dist. LEXIS 96390, at *17-18 (N.D. Cal. July 23, 2015)

8    (quotation omitted).

9    Here, Plaintiffs sought declaratory, injunctive, and non-monetary equitable relief under

10   CIPA and ECPA. While Google has vigorously opposed such relief, the terms of the Settlement

11   provide just that: Google has agreed to undertake substantial changes to its messaging

12   architecture, which Plaintiffs' contend will bring Google's practices into compliance with

13   Plaintiffs' view of both California and Federal wiretapping laws. Thus, Plaintiffs have achieved

14   their goal in litigating this Action.

15   In contrast to the tangible, immediate benefits of the Settlement, the outcome of continued

16   litigation and a trial against Google is uncertain and could add years to this litigation. Google has

17   vigorously denied Plaintiffs' allegations of wrongdoing, and, absent settlement, Plaintiffs

18   anticipate Google would defend this action aggressively at multiple, procedural steps prior to

19   trial, including a motion in opposition to class certification and a motion for summary judgment.

20   While Plaintiffs strongly believe in the merits of their case, they recognize that the law is in

21   relative infancy in the context of CIPA's and ECPA's application to email communications, and

22   this uncertainty presents at least some element of risk at multiple, critical junctures in this Action.

23   For instance, while it is settled that the scanning email content *after* a message's delivery does not

24   violate CIPA and ECPA, the precise contours of "in transit" (and therefore, unlawful) acquisitions

25   of an email's content are far from settled. *Compare e.g., Backhaut v. Apple Inc.*, 148 F. Supp. 3d

26   844, 849-50 (N.D. Cal. 2015) (granting defendant's motion for summary judgment as to

27   Plaintiffs' ECPA claims as, *inter alia*, "[t]here can be no interception for purposes of the Wiretap

28   Act if the acquisition of the message occurs while the message is in storage, even if it is in

1   temporary storage incidental to the transmission of the communication.") (citing *Konop v.*

2   *Hawaiian Airlines, Inc*., 302 F.3d 868, n.6 (9th Cir. 2002)) *with In re Carrier IQ, Inc., Consumer*

3   *Privacy Litig*., 78 F. Supp. 3d 1051, 1081-82 (N.D. Cal. 2015) (distinguishing *Konop* and holding

4   that ("even if . . . the communications at issue in this case were in transitory storage on Plaintiffs'

5   mobile devices (such as the devices' random access memory, cache memory, etc.) when the [the

6   purported interception occurred], it is not at all apparent why there was no "captur[ing] or

7   redirect[ing]" of these communications contemporaneous with their transmission.") (quoting *Noel*

8   *v. Hall*, 568 F.3d 743, 749 (9th Cir. 2009)).

9         While Plaintiffs firmly believe in the strength of their claims, and have amassed

10   substantial evidence in support of those claims through the discovery process, there is at least

11   some risk that, absent a settlement, Google might prevail in motion practice, at trial, or on appeal,

12   resulting in Class Members recovering nothing. This weighs in favor of preliminary approval.

13   *See, e.g., Rodriguez v. West Publishing Corp*., 563 F.3d 948, 966 (9th Cir. 2009) (noting that the

14   elimination of "[r]isk, expense, complexity, and likely duration of further litigation," including,

15   *inter alia*, an "anticipated motion for summary judgment, and . . . [i]nevitable appeals would

16   likely prolong the litigation, and any recovery by class members, for years," which facts militated

17   in favor of approval of settlement.); *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972) ("[I]n any

18   case there is a range of reasonableness with respect to a settlement – a range which recognizes the

19   uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily

20   inherent in taking any litigation to completion.").

21         Ultimately, Google has agreed to provide the injunctive relief sought by Plaintiffs on

22   behalf of the Settlement Classes. Namely, Google has agreed to make substantial architectural

23   changes, which Plaintiffs contend will bring Google's business practices into compliance with

24   their view of CIPA and ECPA. The release obtained by Google only extends to Settlement Class

25   Members' claims for declaratory, injunctive, and non-monetary equitable relief. No Settlement

26   Class Member, with the exception of the Named Representatives, will release any claim for

27   damages under CIPA or ECPA. This Court has held, under analogous circumstances, that such a

28   result obtained on behalf of a class of email users and certified under Rule 23(b)(2) is within the

range of possible approval. *In re Yahoo Mail Litig.*, No. 13-cv-04980-LHK (ECF No. 182) (N.D. Cal. Mar. 15, 2016).

In sum, the Settlement provides substantial relief to all Settlement Class Members based on the strengths of their respective claims without delay and is within the range of possible approval, particularly in light of the above risks that Settlement Class Members would face in litigation.

### 2. The Settlement is the Product of Arm's-Length Negotiations After a Thorough Investigation, Without a Trace of Collusion

"Before approving a class action settlement, the district court must reach a reasoned judgment that the proposed agreement is not the product of fraud or overreaching by, or collusion among, the negotiating parties." *City of Seattle*, 955 F.2d at 1290. Where a settlement is the product of arm's-length negotiations conducted by capable and experienced counsel, the court begins its analysis with a presumption that the settlement is fair and reasonable. *See* 4 Newberg § 11.41; *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 U.S. Dist. LEXIS 13555, at *32 (C.D. Cal. June 10, 2005); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980).

Here, the Settlement was reached after informed, extensive arm's-length negotiations. First, the Settlement was reached after a thorough investigation into and discovery of the legal and factual issues in the Action. In particular, before filing suit, Class Counsel conducted an extensive investigation into the factual underpinnings of the practices challenged in the Action, as well as the applicable law. In addition to their pre-filing efforts, Class Counsel engaged in an ongoing factual and legal investigation throughout the pendency of this Action. As part of their continued investigation, Class Counsel reviewed and analyzed thousands of documents produced by Google in discovery relating to the key issues in this Action, including, among other things, Google's messaging architecture and profiling capabilities, as well as all of the relevant deposition testimony of Google employees from the *In re Gmail* MDL. Joint Decl., ¶ 10.

Second, the Settlement was only reached after the parties participated in two separate mediation sessions before experienced mediator Randall Wulff. These mediation sessions were informed through the exchange of confidential mediation statements, which discussed the

1  strengths and weaknesses of both Plaintiffs' allegations and Google's potential defenses and

2  relevant documents related thereto. Throughout the mediation sessions, counsel vigorously

3  advocated for their respective clients' positions. Notwithstanding the contentious nature of the

4  mediation sessions, the parties were able to come to an agreement in principle with the assistance

5  of Mr. Wulff. Joint Decl., ¶ 11.

6       In sum, the Settlement was reached only after Class Counsel conducted an extensive

7  factual investigation and discovery into the Google's alleged misconduct and thoroughly

8  researched the law pertinent to Plaintiffs' and Class Members' claims and Google's defenses.

9  Consequently, Class Counsel had a wealth of information at their disposal before entering into

10  settlement negotiations, which allowed Class Counsel to adequately assess the strengths and

11  weaknesses of Plaintiffs' case and to balance the benefits of settlement against the risks of further

12  litigation. Nothing in the course of the negotiations or in the substance of the proposed Settlement

13  presents any reason to doubt the Settlement's fairness.

14       **3.**       **The Recommendation of Experienced Counsel Favors Approval**

15       In considering a proposed class settlement, "[t]he recommendations of plaintiffs' counsel

16  should be given a presumption of reasonableness." *Knight v. Red Door Salons, Inc.*, No. 08-

17  01520 SC, 2009 U.S. Dist. LEXIS 11149, at *11 (N.D. Cal. Feb. 2, 2009); *see also Linney v.*

18  *Cellular Alaska Partnership*, No. C-96-3008 DLJ, 1997 WL 450064, at 5 (N.D. Cal. July 18,

19  1997). As demonstrated herein and in each respective firm's resume, Class Counsel have

20  extensive experience litigating and settling consumer class actions and other complex matters

21  (Joint Decl., ¶¶ 20-27) and have conducted an extensive investigation into the factual and legal

22  issues raised in this Action (Joint Decl., ¶¶ 10, 28). Using their experience and knowledge, Class

23  Counsel have weighed the benefits of the Settlement against the inherent risks and expense of

24  continued litigation, and they believe that the proposed Settlement is fair, reasonable, and

25  adequate. Joint Decl., ¶ 29. The fact that qualified and well-informed counsel endorse the

26  Settlement as being fair, reasonable, and adequate weighs in favor of approving the Settlement.

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### D.     The Proposed Form of Notice and Notice Plan are Appropriate and Should be Approved

The Settlement seeks only declaratory, injunctive, and non-monetary equitable relief, and Plaintiffs seek certification of Settlement Classes pursuant to Fed. R. Civ. P. 23(b)(2). Accordingly, notice is discretionary, not mandatory. Fed. R. Civ. P. 23(c)(2) ("For any class certified under Rule 23(b)(1) or (b)(2), the court *may* direct appropriate notice to the class.") (emphasis added)); *Wal-Mart*, 131 S. Ct. at 2558 ("The Rule provides no opportunity for . . . (b)(2) class members to opt out, and does not even oblige the District Court to afford them notice of the action."); *In re Yahoo Mail Litig.,* No. 13-cv-04980-LHK, 2016 WL 4474612, at *5 (N.D. Cal. Aug. 25, 2016) ("[B]ecause Rule 23(b)(2) provides only injunctive and declaratory relief, 'notice to the class is not required.'") (quoting in part *Lyon v. United States Immigration and Customs Enf't*, 300 F.R.D. 628, 643 (N.D. Cal. 2014)).

Nevertheless, the parties have agreed to provide notice to members of the Settlement Classes in accordance with the Notice Plan attached as Exhibit C to the Settlement Agreement. Under those terms, notice shall be published via the Settlement Administrator, KCC, who will place banner ads on a collection of popular websites. KCC will ensure these ads make 100,000,000 unique impressions (*i.e.,* views of the ad) upon Internet users, with no single user receiving more than three impressions. The banner ads will direct Internet users, via a link, to the Settlement Website, which will provide fulsome notice to Class Members. The notice on the Settlement Website clearly and concisely apprises the reader of the terms of the Settlement and the date and manner by which any Class Member may object.[7] The cost of providing this notice is estimated to be $123,500. A copy of the proposed notice is attached as Exhibit B to the Settlement Agreement, and is sufficient to inform Class Members of the proposed Settlement and their right to object to it.[8]

In short, the form and manner of notice proposed here fulfill all of the requirements of

---

[7] The parties propose to give Class Members 90 days from the date that the Notice is initially disseminated to object to the Settlement.

[8] Google will also provide notice to appropriate federal and California government officials in compliance with the Class Action Fairness Act, 28 U.S.C. § 1715. *See* Settlement Agreement at ¶ 49.

1  Rule 23 and due process, and is "reasonably calculated, under all circumstances, to apprise

2  interested parties of the pendency of the action and afford them an opportunity to present their

3  objections." *Hendricks*, 2015 U.S. Dist. LEXIS 96390, at *24 (quoting *Phillips Petroleum Co. v.*

4  *Shutts*, 472 U.S. 797, 812 (1985)). Plaintiffs request that the Court direct that notice of the

5  proposed Settlement be given to the Settlement Class.

6  **CONCLUSION**

7  For the foregoing reasons, Plaintiffs respectfully request that the Court do the following:

8      a)   Grant preliminary approval of the proposed Settlement Agreement entered into
9           between the parties;

10     b)   Certify the Settlement Classes as defined in the Settlement;

11     c)   Appoint Plaintiffs Daniel Matera and Susan Rashkis as Class Representatives of
           the proposed Classes;

12     d)   Appoint Michael W. Sobol of Lieff Cabraser Heimann & Bernstein LLP, Hank
13          Bates of Carney Bates & Pulliam PLLC, and Ray Gallo of Gallo LLP as Class
            Counsel for the proposed Classes;

14     e)   Approve the parties' proposed notice program, including the proposed form of
15          notice attached as Exhibit B to the Settlement Agreement, and directing that notice
            be disseminated pursuant to such program;

16     f)   Appoint KCC as Settlement Administrator, and direct KCC to carry out the duties
17          and responsibilities of the Settlement Administrator specified in the Settlement;

18     g)   Stay all non-Settlement related proceedings in the above-captioned case pending
            final approval of the Settlement; and

19     h)   Set a Fairness Hearing and certain other dates in connection with the final approval
20          of the Settlement.

21  Dated: December 13, 2016                    Respectfully submitted,

22                                       By:  */s/ Michael W. Sobol*
                                             LIEFF CABRASER HEIMANN
23                                            & BERNSTEIN, LLP
                                             Michael W. Sobol (194857)
24                                           msobol@lchb.com
                                             Nicole D. Sugnet (246255)
25                                           nsugnet@lchb.com
                                             275 Battery Street, 29th Floor
26                                           San Francisco, CA 94111-3339
                                             Telephone: (415) 956-1000
27                                           Facsimile: (415) 956-1008

28

1

CARNEY BATES & PULLIAM, PLLC
Joseph Henry ("Hank") Bates (CA #167688)

2

519 W. 7th Street
Little Rock, AR 72201

3

Telephone: (501) 312-8500
Fax: (501) 312-8505

4

5

GALLO LLP
Ray E. Gallo (158903)
rgallo@gallo-law.com

6

Dominic R. Valerian (240001)
dvalerian@gallo-law.com

7

1299 Fourth St., Suite 505
San Rafael, CA 94901

8

Telephone: 415.257.8800

9

*Attorneys for Plaintiffs*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 19 -