Michael W. Sobol (194857)
msobol@lchb.com
Nicole D. Sugnet (246255)
nsugnet@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000

Hank Bates (167688)
hbates@cbplaw.com
CARNEY BATES & PULLIAM, PLLC
519 West 7th St.
Little Rock, AR 72201
Telephone: 501.312.8500
Facsimile: 501.312.8505

Ray E. Gallo (158903)
rgallo@gallo-law.com
Dominic R. Valerian (240001)
dvalerian@gallo-law.com
GALLO LLP
1299 Fourth St., Suite 505
San Rafael, CA 94901
Telephone: 415.257.8800

*Attorneys for Plaintiffs and the Proposed Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL MATERA and SUSAN RASHKIS, as individuals, and on behalf of other persons similarly situated,<br><br>                    Plaintiffs,<br><br>v.<br><br>GOOGLE, INC.,<br><br>                    Defendant. | Case No. 5:15-cv-04062 LHK<br><br>**JOINT DECLARATION OF CLASS COUNSEL IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date: March 9, 2017<br><br>Time: 1:30 p.m.<br><br>Courtroom: 8, 4th Floor<br><br>Judge: The Hon. Lucy H. Koh |

Michael W. Sobol, Hank Bates, and Ray Gallo, under penalty of perjury, submit this Joint Declaration in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement ("Joint Declaration"), and declare as follows:

## I.   **<u>INTRODUCTION</u>**

1.     Michael W. Sobol is a partner at Lieff, Cabraser, Heimann & Bernstein, LLP ("LCHB"), Hank Bates is a partner at Carney Bates & Pulliam, PLLC ("CBP"), and Ray Gallo is a partner at Gallo, LLP ("Gallo") (collectively, "Class Counsel").

2.     We are counsel to Plaintiffs Daniel Matera and Susan Rashkis ("Plaintiffs" or "Class Representatives") and the Settlement Classes in the above-captioned case (the "Action").

3.     We submit this Joint Declaration in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, and have personal knowledge of the matters set forth below based on our active participation in all aspects of the prosecution and settlement of this litigation.

4.     Pursuant to the terms of the Settlement, Google has agreed to eliminate any processing of email content—including the content of emails exchanged with non-Gmail accountholders—that it applies prior to the point when a Gmail user can retrieve the email in his or her mailbox, and that is used for the distinct purpose of advertising and creating advertising user models. With regard to any information generated by other processing of email content (e.g. spam filtering) that Google applies before the Gmail user can retrieve the email in his or her mailbox, Google will not use or access such information for the purpose of serving targeted advertising or creating advertising user models until after the Gmail user can retrieve the email in his or her mailbox using the Gmail interface.

5.     Class Counsel believes that these technical changes are substantial and that these changes, once implemented, will bring Google's email processing practices in compliance with Class Counsel's view of the California Invasion of Privacy Act, Cal. Pen. Code §§ 630, et seq.

("CIPA"), and the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510, et seq. ("ECPA").

## II.   OVERVIEW OF THE LITIGATION

6.     Plaintiff Daniel Matera, on behalf of himself and a putative class, filed this Action September 4, 2015. (ECF No. 1). The Complaint alleged that Google's practices of intercepting, extracting, reading, and using the email contents of individuals who do not have email accounts with Google ("non-Gmail" users)—but who exchange email messages with Gmail accountholders—violated the California Invasion of Privacy Act, Cal. Pen. Code §§ 630, *et seq.* ("CIPA") and the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510, *et seq.* ("ECPA").

7.     On October 29, 2015, Google concurrently filed a Motion to Dismiss the Complaint (ECF No. 20) and a Motion to Stay (ECF No. 21) in light of the Supreme Court's then-pending opinion in *Spokeo v. Robbins*, 136 S. Ct. 1540 (2016) ("*Spokeo*"). In response, on December 4, 2015, Plaintiffs respectively filed an Opposition to Google's Motion to Dismiss (ECF No. 29) and an Opposition to Google's Motion to Stay (ECF No. 30). The Court granted Google's Motion to Stay. (ECF No. 36). Following the issuance of the *Spokeo* opinion on May 16, 2016, the parties provided additional, supplemental briefing on the opinion's impact, if any, on Plaintiff Matera's Article III standing (ECF Nos. 41-42, 45-46).

8.     On August 12, 2016, the Court issued an Order Denying Google's Motion to Dismiss as to the Merits of Plaintiff's Claims (ECF No. 49). Separately, on September 23, 2016, the Court issued an Order Granting in Part and Denying in Part Defendant's Motion to Dismiss Based on Lack of Standing (ECF No. 54), which granted, with prejudice, Google's motion to dismiss Plaintiff Matera's claim for an injunction as it relates to Google Apps for Education,[1] but which denied the remainder of Google's motion.

---

[1] Plaintiffs initially challenged scanning practices associated with each of Google's email platforms: Gmail, Google Apps for Education, and Google Apps for Business. *See,* Complaint (ECF No. 1).

9.      Subsequently, on October 17, 2016, Plaintiff Matera filed an Amended Complaint (ECF No. 58), adding additional Named Plaintiff Susan Rashkis, eliminating allegations pertaining to Google Apps, and refining and clarifying allegations relating to technical aspects of Google's challenged practices. On October 21, 2016, Google filed its Answer to the Amended Complaint (ECF No. 59).

10.      The parties conducted extensive discovery, with Plaintiffs propounding initial sets of Interrogatories and Requests for Production of Documents on June 13, 2016, and Google propounding commensurate discovery on July 27, 2016. Throughout the summer, Google produced over 130,000 pages of documents, which Plaintiffs carefully reviewed and analyzed. These productions included relevant deposition testimony, interrogatory answers, and documents produced in the prior multi-district litigation challenging the same practices as the instant litigation, *In re Google Inc. Gmail Litig.*, No. 13-MD-02430-LHK (N.D. Cal.) ("*In re Gmail*"), as well as documents produced in response to targeted discovery regarding Google's email processing practices, the various servers and devices used to process emails, the various points of time during the email delivery process that Google processes emails, and the purposes for which Google processes emails.

11.      Concurrently, the parties began discussions regarding a possible mediation. On August 31, 2016, the parties participated in mediation before the highly respected mediator, Randall Wulff. While the parties made good progress, they were unable to reach a resolution to the Action. However, the parties continued to communicate in an effort to reach settlement and conducted an additional, half-day mediation session with Randall Wulff on November 4, 2016. These mediation sessions were informed through the exchange of confidential mediation statements, which discussed the strengths and weaknesses of both Plaintiffs' allegations and Google's potential defenses and relevant documents related thereto. Throughout the mediation

sessions, counsel vigorously advocated for their respective clients' positions. At the second mediation, the parties agreed to the key terms of the Settlement. The parties thereafter engaged in further negotiations regarding the remaining terms of the Settlement and worked together to develop a comprehensive set of settlement papers, including the Class Action Settlement Agreement, the proposed Notices, the Claim Form, and the proposed orders. The parties also worked together to determine an appropriate notice plan.

12.     The Settlement was executed by all parties on November 22, 2016. A true and correct copy of the executed Settlement and Exhibits is attached hereto as **Exhibit 1**.

## III.     THE SETTLEMENT TERMS

13.     The Settlement requires Google to eliminate any processing of email content that it applies prior to the point when the Gmail user can retrieve the email in his or her mailbox using the Gmail interface and that is used for the distinct purpose of advertising and creating advertising user models. With regard to any information generated by other processing of email content that Google applies before the Gmail user can retrieve the email in his or her mailbox using the Gmail interface, Google will not use or access such information for the purpose of serving targeted advertisements or creating advertising user models until after the Gmail user can retrieve the email in his or her mailbox using the Gmail interface. Ex. 1, ¶ 34(b).

14.     The Settlement additionally requires Google to refrain from any processing of email content that it applies prior to the point when the Gmail user can retrieve the outgoing email in his or her mailbox using the Gmail interface and that is used for the distinct purpose of advertising and creating advertising user models. With regard to any information generated by other processing of email content that Google applies before the Gmail user can retrieve the outgoing email in his or her mailbox using the Gmail interface, Google will not use or access such information for the purpose of serving targeted advertisements or creating advertising user

models until after the Gmail user can retrieve the email in his or her mailbox using the Gmail interface. Ex. 1, ¶ 34(b).

15.     The Settlement requires Google to implement the above changes as part of a Stipulated Injunction which shall be effective for a period of not less than three years commencing one-hundred eighty (180) days after the Court enters Final Judgment. Ex. 1, ¶ 34(a).

16.     As part of the Settlement, Google has represented that it has no present intention of eliminating the technical changes required by the Settlement after the expiration of the term of the injunction. Google believes, however, that the architecture and technical requirements for providing email services on a large scan evolve and change dynamically and that a longer commitment may hinder Google's ability to improve and change its architecture and technology to meet changing demands. Ex. 1, ¶ 34(d).

17.     The Settlement further provides that Settlement Administrative costs and any award of attorneys' fees and costs and/or Service Awards to the Class Representatives will be paid by Google. Google has agreed to not oppose an application by Class Counsel for an award of $2,200,000 in Attorneys' fees and Expenses, and for Service Awards in the amount of $2,000 to each of the Class Representatives. Ex. 1, ¶¶ 58-60.

18.     In exchange for the foregoing consideration, the Action will be dismissed with prejudice upon final approval of the Settlement, and the Settlement Class Members will thereby release all claims which have been or could have been asserted against Google by any member of the Settlement Classes in this Action, with the caveat that the release provided under the Settlement Agreement extends solely to claims for declaratory, injunctive, and non-monetary equitable relief. No Settlement Class Member, with the exception of the Named Representatives, will release any claim for monetary damages under CIPA or ECPA. Ex. 1, ¶ 35.

19.     The Settlement Classes are defined as follows:

JOINT DECLARATION IN SUPPORT OF
PRELIMINARY APPROVAL OF SETTLEMENT
5:15-CV-04062-LHK

CIPA Class:
All natural persons in the State of California who have never established a Gmail account with Google, and who have sent unencrypted emails to individuals with Gmail accounts.

ECPA Class:
All natural persons in the United States who have never established a Gmail account with Google, and who have sent unencrypted emails to individuals with Gmail accounts.

## IV.   QUALIFICATIONS OF CLASS COUNSEL

20.     As exemplified in each firm's respective firm resume, Class Counsel have extensive experience litigating and settling consumer class actions and other complex matters. Each firm has held significant leadership roles in prominent class actions throughout the United States. Collectively, Class Counsel have assisted putative class members in recovering billions of dollars.

### A.     *Qualifications of Michael W. Sobol*

21.     Michael W. Sobol is a 1989 graduate of Boston University School of Law. He practiced law in Massachusetts from 1989 to 1997. From 1995 through 1997, he was a Lecturer in Law at Boston University School of Law. In 1997, he left his position as partner in the Boston firm of Shafner, Gilleran & Mortensen, P.C. to move to San Francisco, where he joined LCHB. Since joining LCHB in 1997, he has almost exclusively represented plaintiffs in consumer protection class actions. Mr. Sobol has been a partner with LCHB since 1999, and is in his fifteenth years as chair of LCHB's consumer practice group. A copy of LCHB's firm resume, which describes the firm's experience in class action and other complex litigation, can be found at http://www.lchbdocs.com/pdf/firm-resume.pdf, and is not attached hereto given its length.

22.     During his time at LCHB, Mr. Sobol has overseen a wide range of consumer protection litigation and has served as plaintiffs' class counsel in numerous nationwide consumer class action cases. The following cases are representative examples of class actions in which he

JOINT DECLARATION IN SUPPORT OF
PRELIMINARY APPROVAL OF SETTLEMENT
5:15-CV-04062-LHK

has played a leadership role:

a.     Mr. Sobol served as co-lead class counsel in *Gutierrez v. Wells Fargo Bank, N.A*., No. C 07-05923 WHA (N.D. Cal.), a class action alleging unfair practices and false representations by Wells Fargo in connection with its imposition of overdraft charges. In 2013, the court reinstated a $203 million class judgment that had been entered in 2010 following a bench trial, and in 2014 the reinstated judgment was affirmed by the Ninth Circuit. Judge Alsup noted that LCHB "performed at a superior level as class trial counsel" and that LCHB's trial performance "ranks as one of the best this judge has seen in sixteen years on the bench." *Gutierrez v. Wells Fargo Bank, N.A*., No. C 07-05923 WHA, 2015 WL 2438274, at *1, 7 (N.D. Cal. May 21, 2015). In 2011, Mr. Sobol was named a finalist of the Consumer Attorneys of California's ("CAOC") Consumer Attorney of the Year award for his work in this case.

b.     Mr. Sobol served on the Plaintiffs' Executive Committee in *In re Checking Account Overdraft Litigation*, MDL 2036 (S.D. Fla.), a multidistrict proceeding involving more than two dozen banks and allegations of unfair practices and false representations in connection with the banks' imposition of overdraft charges. Class settlements totaling over a billion dollar have been approved by the court to date. In 2012, Mr. Sobol was named as a finalist for Trial Lawyer of the Year by Public Justice for his work in this litigation. The same year, Mr. Sobol was again named a finalist by CAOC for the Consumer Attorney of the Year award for his work in the *Yourke v. Bank of America*, a case that was a part of the MDL which resulted in a settlement of $410 million.

c.     Mr. Sobol served as Plaintiffs' Liaison Counsel and on the Plaintiffs' Executive Committee in *In re Chase Bank USA, N.A. "Check Loan" Contract Litigation*, MDL No. 2032 (N.D. Cal.), a nationwide multidistrict class action alleging that Chase breached its good faith obligation to credit cardholders by modifying the terms of their long-term fixed rate

loans. In November 2012, the court granted final approval to a $100 million nationwide

settlement that provides direct payments to approximately one million cardholders and important

injunctive relief. In 2013, Mr. Sobol was again named a finalist for CAOC's Consumer Attorney

of the Year award for his efforts in this litigation.

d.      Mr. Sobol served as co-class counsel in *Ebarle v. LifeLock, Inc*., Case No.

15-cv-00258-HSG (N.D. Cal.), a class action alleging that LifeLock misrepresented certain

aspects of its identity theft protection services to its subscribers. On September 20, 2016, Judge

Gilliam granted final approval of a settlement providing $68 million total to settlement class

members, with attorneys' fees and settlement administration cost being paid by LifeLock on top

of this $68 million fund.

e.      Mr. Sobol served as Interim Co-Lead Class Counsel in *Corona v. Sony*

*Pictures Entertainment, Inc.*, No. 14-cv-9600 (C.D. Cal.), a case arising out of a breach of Sony's

computer networks causing highly-sensitive and personally identifiable information of thousands

of Sony employees to be stolen and made public, exposing class members to long-term risk of

identity theft and credit fraud. Final approval of a settlement providing for $2 million to

compensate employees who had taken preventative measures to protect themselves and providing

for an additional two years of identity theft protection services was granted on April 6, 2016.

f.      Mr. Sobol served as co-class counsel in *In re TracFone Unlimited Service*

*Plan Litigation*, Case No. 13-cv-03440-EMC (N.D. Cal.), a class action alleging that TracFone

falsely advertised its cell phone plans as providing "unlimited" data when it imposed secret data

caps on the plans, pursuant to which it would throttle (*i.e.* severely slow down) or suspend

consumers' data. On July 2, 2015, Judge Chen granted final approval to a $40 million settlement

which included industry-leading business practice changes.

g.      Mr. Sobol served as class counsel in *Brazil v. Dell Inc*., No. C-07-01700

RMW (N.D. Cal.), a class action alleging false reference price advertising in connection with defendant's online sale of computers. This was the first class action of its kind to receive certification, and resulted in a settlement which allowed class members to submit claims for $50 payments and also included important practice changes.

h.     Mr. Sobol served as Lead Plaintiffs' Counsel in *In re Apple and AT&T iPad Unlimited Data Plan Litigation*, No. 10-cv-02553 RMW (N.D. Cal.), a class action alleging that defendants falsely advertised access to an unlimited data plan for the iPad device. In 2014, the court granted final approval of a settlement which allowed class members to submit claims for $40 payments and provided other benefits to class members.

i.     Mr. Sobol served as co-lead counsel in *Yarrington v. Solvay Pharmaceuticals, Inc*., No. 09-CV-2261 (D. Minn.), a class action alleging that Solvay deceptively marketed and advertised Estratest as an FDA-approved drug when in fact Estratest was not FDA-approved for any use. In March 2010, the court granted final approval to a $16.5 million settlement, pursuant to which consumers obtained partial refunds of up to 30% of the purchase price paid for Estratest.

j.     Mr. Sobol was co-lead plaintiffs' counsel in *Morris v. AT&T Wireless Services, Inc*., No. C-04-1997-MJP (W.D. Wash.), a case alleging that a nationwide class of cell phone customers was subjected to an end-of-billing cycle cancellation policy implemented by AT&T Wireless, thereby breaching customers' service agreements. On May 19, 2006, the New Jersey Superior Court granted final approval to a class settlement that guaranteed delivery to the class of $40 million in benefits.

k.     Mr. Sobol served as co-class counsel in *Pakeman, et al. v. American Honda Finance Corporation* (M.D. Tenn.), a case raising race discrimination claims under the Equal Credit Opportunity Act. On April 18, 2005, court granted final approval of a class

settlement requiring defendant to establish a refinance program applicable to $1 billion of its existing loan portfolio under which African Americans and Hispanic Americans are eligible for a reduction on their auto loan interest rate. The settlement also imposed a limit to the amount of "mark-up" lenders can impose on interest rates, increased the transparency of consumer disclosures, and funded consumer education programs. The monetary benefit to the class was estimated to be between about $47 million to $72 million.

l.      Mr. Sobol served as co-lead plaintiffs' counsel in *Reverse Mortgage Cases*, J.C.C.P. No. 4061 (San Mateo Sup. Ct.), an action brought against Transamerica alleging that it targeted senior citizens to market and sell "reverse mortgages" which were misleading as to loan terms and contained unfair charges and fees. A nationwide settlement provided relief to approximately 1600 members of the class averaging about $5,000 per class member, with some class members receiving many times that amount.

### B.      Qualifications of Hank Bates

23.      Hank Bates is a partner at CBP, a national law firm based in Little Rock, Arkansas. CBP is recognized as one of the country's premiere firms in the areas of consumer protection class actions, data privacy/security, securities fraud, environmental law and employment discrimination. A copy of CBP's firm résumé, which describes the firm's experience in class action and other complex litigation is available at http://www.cbplaw.com/firm-resume/.

24.      Since joining CBP in 2004, Mr. Bates has focused his practice on representing consumers, small businesses, governmental entities, farmers and shareholders in class actions and complex litigation involving consumer fraud, computer privacy, environmental law, and employment rights. He received his B.A. from Harvard University in 1987 and his J.D. from Vanderbilt University School of Law in 1992. Following law school, Mr. Bates was a law clerk for the Honorable Danny J. Boggs, United State Court of Appeals for the Sixth Circuit. Mr. Bates

practiced public-interest environmental law in San Francisco, California from 1993 to 1997, first

with the law firm of Shute, Mihaly & Weinberger and then with Earthjustice, before returning to

his home state of Arkansas. Below is a sampling of class actions and complex litigation

throughout the nation in which Mr. Bates and CBP are currently playing a leadership role:

a.    CBP is Co-Lead Counsel *in Ebarle, et al. v. LifeLock, Inc*., 3:15-cv-00258

(N.D. Cal.), a class action on behalf of customers of the identity theft protection service, arising

from claims that LifeLock delivered false statements about its services and failed to alert

customers on a timely basis of potential identity theft. A nationwide settlement of $81 million

was granted final approval in September, 2016.

b.    CBP is Co-Lead Counsel in *Campbell, et al. v. Facebook, Inc*., 4:13-cv-

05996-PJH (N.D. Cal.), a class action involving allegations of email interception and violations of

federal anti-wiretapping laws. The Plaintiffs were successful in opposing Facebook's motion to

dismiss, and certification was granted for a class of Facebook users seeking injunctive relief,

pursuant to Fed. R. Civ. P. 23(b)(2).

c.    CBP serves on the Plaintiffs' Steering Committee in *In re: The Home

Depot, Inc., Customer Data Security Breach Litigation*, 1:14-md-02583-TWT (N.D. Ga.), a

putative class action brought on behalf of injured financial institutions in the wake of a massive

retailer data breach.

d.    CBP is Counsel for Lead Plaintiff Umpqua Bank in *In re: Target

Corporation Customer Data Security Breach Litigation*, 0:14-cmd-02522-PAM-JJK (D. Minn.), a

recently-settled class of financial institution plaintiffs over injuries suffered from one of the

largest data breaches in history. A settlement, valued at $39.4 million, was granted final approval

by the Court on May 12, 2016 and settlement administration is ongoing.

e.    CBP is Co-Counsel in *Corona v. Sony Pictures Entertainment, Inc*., No.

1331850.1

CV 14-09600-RGK (Ex) (C.D. Cal.), a nationwide class action alleging that Sony had inadequate security measures in place, which allowed cyberattackers to successfully steal its employees' personally identifying information. A settlement, establishing a non-reversionary cash fund of $2 million to reimburse class members for measures they took to prevent identity theft as a result of the breach and providing up to $2.5 million for class members who experienced losses due to identity theft or misuse of their personally identifying information, was granted final approval on April 6, 2016. The settlement further provides for identity protection services for class members for a period of two years.

f.      CBP is Co-Lead Counsel in *Daniel, et al. v. Ford Motor Company*, 2:11-02890 WBS EFB (E.D. Cal.), a class action alleging violations of the Song-Beverly Consumer Warranty Act, the Magnuson-Moss Warranty Act, California's Consumers Legal Remedies Act, and California's Unfair Competition Law arising from an alleged rear suspension defect in Ford Focus model years 2005 through 2011. The Court has certified the class; CBP successfully opposed Ford's Motion for Summary Judgment; and the class action trial is set for September 2017.

g.      CBP is Co-Lead Counsel in *Jensen, et al. v Cablevision Systems Corporation*, 2:15-cv-04188-LDW-ARL (E.D.N.Y.), a putative class action alleging violations of the federal Computer Fraud and Abuse Act, arising from the defendant's practice of providing its residential customers with wireless routers that secretly emit secondary, public Wi-Fi networks over which the individual consumer had no control. This action is currently in the discovery phase.

h.      CBP is Co-Counsel in *Wayne Miner et al. v. Philip Morris USA Inc.*, Circuit Court of Pulaski County, Arkansas, Case No. 60CV-03-4661, a class action brought on behalf of Arkansas smokers over claims that the defendant misrepresented the safety of its "light"

cigarette products, which settled in 2016 for $45 million.

i.      CBP is Co-Lead Counsel in *Williams, et al. v. State Farm Mutual Automobile Ins. Co*., 4:11-cv-00749 KGB (E.D. AR), a class action alleging State Farm violated Arkansas subrogation law by receiving subrogation payments of medical payment and/or personal injury protection coverage from customers' settlements without first obtaining a judicial determination and/or agreement that the customer was made whole. The Court has certified the class; class notice has been completed; CBP successfully opposed State Farm's Motion for Summary Judgment; and the Court was recently notified that the parties have reached a settlement.

j.      CBP is Co-Lead Counsel in *Walker, et al. v. Bank of the Ozarks*, CV-11-77 (Ark.), a putative class action alleging violations of the Arkansas Deceptive Trade Practices Act, the duty of good faith and fair dealing resulting from Bank of the Ozarks' unfair and unconscionable assessment and collection of excessive overdraft fees. On March 17, 2016, the Arkansas Supreme Court affirmed the lower court's denial of Bank of the Ozarks motion to compel arbitration.

25.     In addition to the above, CBP has successfully litigated several other prominent class actions throughout the nation, a few of which include:

a.      *In re Bank of America Credit Protection Marketing & Sales Practices Litig*., United States District Court for the Northern District of California, Case No. 11-md-2269-THE (member of Plaintiffs' Executive Committee; $20 million settlement).

b.      *In re DQE, Inc. Securities Litigation*, United States District Court, Western District of Pennsylvania, Case No. 01-1851 (Co-Lead Counsel; $12 million settlement).

c.      *Esslinger v. HSBC Bank Nevada*, United States District Court for the Eastern District of Pennsylvania, Case No. 2:10-cv-03213-BMS (Co-Lead Counsel; $23.5 million

settlement).

   d. *Kardonick v. JPMorganChase*, United States District Court for the Southern District of Florida, Case No. 1:10-cv-23235-WMH (Co-Lead Counsel; $20 million settlement).

   e. *In re Lernout & Hauspie Securities Litigation*, United States District Court for the District of Massachusetts, No. 00-CV-11589-PBS (Co-Lead Counsel; $115 million settlement).

   f. *In re Liberty Refund Anticipation Loan Litig.*, United States District Court for the Northern District of Illinois, Case No. 1:12-cv-02949 (Co-Lead Counsel; $5.3 million settlement).

   g. *Middlesex County Retirement System v. Semtech Corp. et al.*, United States District Court for the Southern District of New York, Case No. 07-Civ-7183 (DC) (Co-Lead Counsel; $20 million settlement).

   h. *Spinelli v. Capital One Bank (USA), et al.*, United States District Court for the Middle District of Florida, Case No. 8:08-cv-132-T-33EAJ (Co-Lead Counsel; more than $100 million settlement).

   i. *In re Sterling Financial Corporation Securities Class Action*, United States District Court of the Southern District of New York, Case No. CV 07-2171(Co-Lead Counsel; $10.25 million settlement).

   j. *Nelson v. Wal-Mart Stores, Inc*., Eastern District of Arkansas, Case No. 04-00171, (Co-Lead Counsel; $17.5 million in recovery, as well as significant changes to Wal-Mart's hiring policies and four years of court supervision of the settlement terms).

   k. *The Quapaw Tribe of Oklahoma v. Blue Tee Corp*., United States District Court for the Northern District of Oklahoma, Case No.03-cv-0846-CVE-PJC (Co-Lead Counsel;

1    $11.5 million settlement).

2        **C.    *Qualifications of Ray E. Gallo***

3        26.    Mr. Gallo graduated from Yale College with a B.A. in Economics and Political

4    Science in May 1987 and received his J.D. from the University of California, Los Angeles School

5    of Law in December 1991. He joined the Los Angeles office of Crosby, Heafey, Roach & May

6    (now Reed Smith) in February 1992. After two years at Crosby, he left to start Gallo &

7    Associates (now Gallo LLP). In or about 1998, as a sixth year lawyer in commercial litigation

8    practice, Mr. Gallo received Martindale Hubbell's "AV" rating. Mr. Gallo has been actively

9    involved in the prosecution of consumer fraud class actions since 2004. He has been approved

10   and appointed as class counsel multiple times and has obtained final approval of class settlements

11   in the following class action cases:

12
13       a.    *Meier v. Rubios*, Los Angeles Super. Ct., Case No. BC 335793, filed June

14   28, 2005, final approval granted in 2006.

15
16       b.    *Sutton v. Pinkberry*, Los Angeles Super. Ct., Case No. 370909, filed May

17   10, 2007, final approval granted in 2008.

18
19       c.    *Bienstock v. Ventura Foods*, Los Angeles Super. Ct., Case No. BC 362937,

20   filed December 5, 2006, final approval granted in 2008.

21       d.    *Amador v. California Culinary Academy, Inc., et al*., San Francisco Super.

22   Ct., Case No. CGC-07-467710, filed September 27, 2007, final approval granted in 2012

23   (recovered $40 million for false advertising).

24       e.    *Bottoni v. Sallie Mae, Inc*., Northern District of California, Case No. C 10-

25   03602 LB, filed July 13, 2010, final approval granted November 21, 2013 (recovered $67.5

26   million in debt relief and $1 million in refunds for excessive collection charges).

27       f.    *Huber v. San Diego Ballpark Funding, LLC*, San Diego Super. Ct., Case

28

No. 37-2013-00066456-CU-CO-CTL, filed September 11, 2013, final approval granted March 4, 2016.

27.     Mr. Gallo has also prosecuted consumer mass action cases, including *Vasquez, et al. v. California School of Culinary Arts, Inc.*, Los Angeles Super. Ct., Case No. BC 393129, a consumer mass action on behalf of more than 1,000 plaintiffs, and R*yan Corley et al v. Google, In*c., US District Court NDCA Case No. 5:16-cv-00473-LHK (related to *Keith Amaral et al v. Google Inc.*, US District Court NDCA Case No. 5:16-cv-02553-LHK)) (representing 875 plaintiffs in the two actions). Mr. Gallo has also defended consumer class actions (*Daniels v. Compex Legal Serv*s., Los Angeles Super. Ct., Case No. BC485087 and *Romero v. Loacker USA, Inc.*, Santa Clara Super Ct., Case No. 1-14-CV-274434).

## V.     <u>RECOMMENDATION OF CLASS COUNSEL</u>

28.     Class Counsel had a wealth of information at their disposal before entering into settlement negotiations, which allowed Class Counsel to adequately assess the strengths and weaknesses of Plaintiffs' case and balance the benefits of settlement against the risks of further litigation. The parties conducted extensive discovery, with Plaintiffs propounding initial sets of Interrogatories and Requests for Production of Documents on June 13, 2016, and Google propounding commensurate discovery on July 27, 2016. Throughout the summer, Google produced over 130,000 pages of documents, which Plaintiffs carefully reviewed and analyzed. These productions included relevant deposition testimony, interrogatory answers, and documents produced in the prior multi-district litigation challenging the same practices as the instant litigation, *In re Google Inc. Gmail Litig.*, No. 13-MD-02430-LHK (N.D. Cal.) ("*In re Gmail*"), as well as documents produced in response to targeted discovery regarding Google's email processing practices, the various servers and devices used to process emails, the various points of time during the email delivery process that Google processes emails, and the purposes for which

1331850.1

Google processes emails.

29.     Against this backdrop, Class Counsel have weighed the benefits of the Settlement against the inherent risks and expense of continued litigation, and believe that the proposed Settlement is fair, reasonable, adequate, and in the best interest of the Class.

30.     Google has vigorously denied Plaintiffs' allegations of wrongdoing, and, absent settlement, Plaintiffs anticipate Google would defend this action aggressively at multiple, procedural steps prior to trial, including a motion in opposition to class certification and a motion for summary judgment. While Plaintiffs strongly believe in the merits of their case, they recognize that the law is in relative infancy in the context of CIPA's and ECPA's application to email communications, and this uncertainty presents at least some element of risk at multiple, critical junctures in this Action.

31.     The outcome of continued litigation, including trial and likely appeals, is far from certain, could add years to this litigation, and would entail significant expense. In contrast, the Settlement provides significant, immediate benefits to the Settlement Classes.

32.     Accordingly, Class Counsel believe the Settlement to be fair, adequate, and reasonable.

## V.     CONCLUSION

33.     In sum, the settlement negotiations in this Action were conducted at arm's length by informed and experienced counsel for both parties, spanned seven months, and included two, full-day mediation sessions before a reputable mediator who had an integral part in the settlement negotiations. Further, the Settlement provides a significant benefit to the Class now, without the inherent risk, expense, delay, and uncertainty of continued litigation.

34.     Consequently, Class Counsel believe the proposed Settlement is fair, reasonable, and adequate, and should be preliminarily approved by the Court.

1   We declare under penalty of perjury that the foregoing is true and correct and that this

2   declaration was executed on this 13th day of December, 2016.

3

4   San Francisco, California   */s/ Michael W. Sobol*_____
                                Michael W. Sobol, Esq.

5                               Lieff Cabraser Heimann & Bernstein, LLP

6

7   Little Rock, Arkansas   */s/ Hank Bates*_____
                            Hank Bates, Esq.

8                           Carney Bates & Pulliam, PLLC

9

10  San Francisco, California   */s/ Ray Gallo*_____
                                Ray Gallo, Esq.

11                              Gallo, LLP

12

13                          **ATTESTATION**

14      I, Michael W. Sobol, am the ECF user whose identification and password are being used

15  to file this Joint Declaration. I hereby attest that Hank Bates and Ray Gallo have concurred in this

16  filing.

17

18                          */s/ Michael W. Sobol*_____
                            Michael W. Sobol, Esq.

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

Michael W. Sobol (194857)
Nicole D. Sugnet (246255)
LIEFF CABRASER HEIMANN &
BERNSTEIN LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111
Telephone:  (415) 956-1000

Hank Bates (167688)
hbates@cbplaw.com
CARNEY BATES & PULLIAM, PLLC
519 West 7th St.
Little Rock, AR 72201
Telephone: 501.312.8500
Facsimile: 501.312.8505

Ray E. Gallo (158903)
rgallo@gallo-law.com
Dominic R. Valerian (240001)
dvalerian@gallo-law.com
GALLO LLP
1299 Fourth St., Suite 505
San Rafael, CA 94901
Telephone: 415.257.8800

*Attorneys for Plaintiff and the Proposed
Class*

Michael G. Rhodes (116127)
rhodesmg@cooley.com
Whitty Somvichian (194463)
wsomvichian@cooley.com
Kyle C. Wong (224021)
kwong@cooley.com
Karen L. Burhans (303290)
kburhans@cooley.com
Amy M. Smith (287813)
amsmith@cooley.com
COOLEY LLP
101 California Street, 5th Floor
San Francisco, CA  94111-5800
Telephone:    (415) 693-2000
Facsimile:    (415) 693-2222

*Attorneys for Defendant Google Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL MATERA and SUSAN RASHKIS, as individuals, and on behalf of other persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE, INC.,<br><br>Defendant. | Case No. 5:15-cv-04062 LHK<br><br>**CLASS ACTION SETTLEMENT AGREEMENT**<br><br>Judge:      The Hon. Lucy H. Koh |

1

Plaintiffs Daniel Matera and Susan Rashkis, on their own behalf and on behalf of the Class Members, and Defendant Google Inc. ("Google") hereby enter into this Class Action Settlement Agreement pursuant to Fed. R. Civ. P. 23, subject to the approval of the Court.

## RECITALS

1.      WHEREAS on September 4, 2015, Plaintiff Matera filed a Complaint and commenced this action;

2.      WHEREAS on October 29, 2015, Google filed a motion to dismiss the Complaint and a motion to stay the litigation;

3.      WHEREAS on February 5, 2016, the Court granted the motion to stay pending the United States Supreme Court's anticipated ruling in *Spokeo, Inc. v. Robins*;

4.      WHEREAS on May 25, 2016, the Court lifted the stay of the litigation and instructed the Parties to brief the issue of standing as informed by the Supreme Court's ruling in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016);

5.      WHEREAS on August 12, 2016, the Court denied Google's motion to dismiss as to the merits of Plaintiff's claims;

6.      WHEREAS on September 23, 2016, the Court issued an order granting in part and denying in part Google's motion to dismiss the Complaint based on lack of standing;

7.      WHEREAS on September 27, 2016, the Court approved the Parties' stipulation that Plaintiff may file an amended complaint;

8.      WHEREAS on October 7, 2016, Plaintiffs Matera and Rashkis filed an amended complaint;

9.      WHEREAS on October 21, 2016, Google filed an answer to the Amended Complaint;

2

10.     WHEREAS Google denies any wrongdoing whatsoever.  This Agreement shall in no event be construed or deemed to be evidence of or an admission, presumption or concession on the part of Google of any fault, liability, or wrongdoing as to any facts or claims asserted in this action (or any infirmity in the defenses it has asserted or could assert in the Action), or any other actions or proceedings, and shall not be interpreted, construed, offered, or received in evidence or otherwise used against Google in any other action or proceeding, whether civil, criminal or administrative;

11.     WHEREAS the Parties recognize that continued prosecution of this litigation would be protracted and expensive;

12.     WHEREAS counsel for the Parties have conducted arm's length negotiations with the assistance of a third-party neutral, Randall W. Wulff, with respect to a resolution of the claims in the Action, including a full-day mediation session on August 31, 2016 and a half-day mediation session on November 4, 2016;

13.     WHEREAS Plaintiffs have conducted substantial discovery relating to the basis for the claims alleged in the Action and Plaintiffs' Class Counsel conclude, in light of the substantial benefits the Agreement confers on the Class Members, the applicable law, the uncertainties in the outcome of the Action and the expense and length of time necessary to prosecute the Action through trial and possible appeals, that the terms of the Agreement are fair, adequate, and reasonable and that it is in Class Members' interest that the Action be fully and finally settled against Google on the terms set forth herein.  Google also believes that a settlement should be consummated as set forth herein.

NOW THEREFORE, the Parties, by and among themselves, and through their respective attorneys, hereby STIPULATE AND AGREE as follows:

3

## DEFINITIONS

14.    "Agreement" means this Class Action Settlement Agreement.

15.    "Action" means *Daniel Matera and Susan Rashkis v. Google, Inc.*, (N.D. Cal. Case No. 5:15-cv-04062 LHK).

16.    "CIPA Class" means all natural persons in the State of California who have never established a Gmail account with Google, and who have sent unencrypted emails to individuals with Gmail accounts.

17.    "Class Members" means all members of the CIPA Class and ECPA Class.

18.    "Class Representatives" means Daniel Matera and Susan Rashkis.

19.    "Court" means the United States District Court for the Northern District of California.

20.    "ECPA Class" means all natural persons in the United States who have never established a Gmail account with Google and who sent unencrypted emails to individuals with Gmail accounts.

21.    "Effective Date" means the first date after which the following events and conditions have occurred:   (a) the Court has entered a Final Judgment; and (b) the Final Judgment has become final in that the time for appeal or writ has expired or, if any appeal and/or petition for review is taken and the settlement is affirmed, the time period during which further petition for hearing, appeal, or writ of certiorari can be taken has expired.  If the Final Judgment is set aside, materially modified, or overturned by the Court or on appeal, and is not fully reinstated on further appeal, the judgment shall not be a Final Judgment.

22.    "Exhibits" means the exhibits to this Agreement.

4

23.     "Final Approval Hearing" means a hearing scheduled by the Court to determine the final fairness of the settlement embodied in this Agreement, provided that it grants preliminary approval and orders the Notice of Class Action Settlement, as provided for herein.

24.     "Final Judgment" means the Final Judgment and Order of Dismissal, as entered by the Court, substantially in the form attached hereto as Exhibit A.

25.     "Google" means defendant Google Inc.

26.     "Google's Counsel" means Cooley LLP.

27.     "Notice of Class Action Settlement" means the form of written notice of the proposed Class Action Settlement, as approved by the Court in the Preliminary Approval Order, substantially in the form attached hereto as Exhibit B.

28.     "Notice Plan" means the plan for publishing notice to Class Members, which is attached as Exhibit C.

29.     "Parties" means the Class Representatives and Google.

30.     "Plaintiffs' Class Counsel" means Lieff, Cabraser, Heimann & Bernstein, LLP; Carney, Bates & Pulliam, PLLC; and Gallo, LLP.

31.     "Preliminary Approval Order" means the Court's order preliminarily certifying the Classes for settlement purposes only, approving and directing notice, and setting the Final Approval Hearing, substantially in the form attached hereto as Exhibit D.

32.     "Settlement Administrator" means the third-party class action administrator as appointed by the Court in the Preliminary Approval Order.

33.     "Settlement Website" means the website containing Notice and other settlement documents maintained by the Settlement Administrator.

5

## SETTLEMENT CONSIDERATION

34.    In consideration for the releases set forth below, and the dismissal with prejudice of the Action, Google shall provide the following settlement benefits to Class Members.

a.    Google agrees to entry of a Stipulated Injunction which shall be effective for a period of not less than three years commencing one-hundred eighty (180) days after the Court enters Final Judgment, and addresses Google's processing of emails for the purposes of targeted advertising and advertising user models, as follows:

b.    For incoming email sent to a Gmail user, Google will eliminate any processing of email content that it applies prior to the point when the Gmail user can retrieve the email in his or her mailbox using the Gmail interface (currently, this occurs when the email is stored in the "Tingle" server) that is used for the distinct purpose of advertising and creating advertising user models.  Google agrees to refrain from such activity for the Relevant Period. With regard to any information generated by other processing of email content that Google applies before the Gmail user can retrieve the email in his or her mailbox using the Gmail interface, Google will not use or access such information for the purpose of serving targeted advertisements or creating advertising user models until after the Gmail user can retrieve the email in his or her mailbox using the Gmail interface.   These technical changes and commitments shall apply to all incoming email sent to Gmail users in the United States.

c.    For outgoing email sent by a Gmail user, Google will refrain from any processing of email content that it applies prior to the point when the Gmail user can retrieve the outgoing email in his or her mailbox using the Gmail interface (currently, this occurs when the email is stored in the "Tingle" server) that is used for the distinct purpose of advertising and creating advertising user models.  Google agrees to refrain from such activity for the Relevant Period.  With regard to any information generated by other processing of email content that

6

Google applies before the Gmail user can retrieve the outgoing email in his or her mailbox using the Gmail interface, Google will not use or access such information for the purpose of serving targeted advertisements or creating advertising user models until after the Gmail user can retrieve the email in his or her mailbox using the Gmail interface. These technical changes and commitments shall apply to all outgoing emails sent by Gmail users in the United States.

      d.    Google represents that it has no present intention of eliminating the technical changes described above after the expiration of the term of the injunction. Google believes, however, that the architecture and technical requirements for providing email services on a large scale evolve and change dynamically and that a longer commitment may hinder Google's ability to improve and change its architecture and technology to meet changing demands. If Google's new email architecture described above becomes outdated and must be improved or replaced during the pendency of the injunction, then Google may change its system design in a manner that will continue to comply with the requirements of the injunction above.

      e.    Google shall, upon making the changes required under this section, deliver a written certification under oath to Class Counsel stating that it has made the technical changes required under this paragraph.

      f.    Google agrees to make these technical changes without any admission that its current email architecture and systems that have been in place in any way violated the law.

      g.    The Parties acknowledge that Google's internal architecture for processing incoming and outgoing email is highly confidential. Should the Court require additional information regarding the technical changes required by this injunction, Google agrees to provide such information *in camera* or under seal to protect Google's confidentiality interest in its internal email architecture.

## RELEASES

35.     Upon entry of Final Judgment, the Class Representatives and all other Class Members, on behalf of themselves and their respective heirs, executors, administrators, representatives, agents, partners, successors, and assigns (collectively, the "Class Releasors"), waive, release, forever discharge, and will not in any manner pursue the Action or any claims, complaints, actions, proceedings, or remedies of any kind (including, without limitation, claims for attorneys' fees and expenses and costs) whether in law or in equity, under contract, tort or any other subject area, or under any statute, rule, regulation, order, or law, whether federal, state, or local, on any grounds whatsoever, arising from the beginning of time through the Effective Date, that were, could have been, or could be asserted by the Class Releasors arising out of or relating to any acts, facts, omissions or obligations, whether known or unknown, whether foreseen or unforeseen, arising out of or relating to the Action or the subject matter of the Action, against Google or any of Google's current or former directors, officers, members, administrators, agents, insurers, beneficiaries, trustees, employee benefit plans, representatives, servants, employees, attorneys, parents, subsidiaries, affiliates, divisions, branches, units, shareholders, investors, contractors, successors, joint venturers, predecessors, related entities, and assigns, and all other individuals and entities acting on Google's behalf (collectively, the "Google Releasees").  Notwithstanding the foregoing, the release provided for hereunder shall extend to claims for declaratory, injunctive and non-monetary equitable relief only.  Without limiting the foregoing, no Class Member, with the exception of the Class Representatives, hereby releases any claim for damages under CIPA or ECPA.

36.     The Class Representatives and Class Members represent and warrant that no claim, demand, complaint, action, proceeding, remedy, lien or any other matter subject to the release in Paragraph 35 has been in any way transferred to or is in any way held by any third

party, and that the Class Representatives and Class Members have the legal authority to release all such matters and agree to indemnify and hold the Google Releasees harmless from any liability, loss, claims, demands, damages, costs, expenses, or attorneys' fees incurred as a result of any person or entity asserting such assignment or transfer.

37.     Upon entry of Final Judgment, Google waives, releases, forever discharges, and will not in any manner pursue the Action or any claims, complaints, actions, proceedings, or remedies of any kind (including, without limitation, claims for attorneys' fees and expenses and costs) whether in law or in equity, under contract, tort or any other subject area, or under any statute, rule, regulation, order, or law, whether federal, state, or local, on any grounds whatsoever, arising from the beginning of time through the Effective Date, that were, could have been, or could be asserted by Google arising out of or relating to any acts, facts, omissions or obligations, whether known or unknown, whether foreseen or unforeseen, arising out of or relating to the Action or the subject matter of the Action, against the Class Members, Class Representatives, Plaintiffs' Class Counsel, and any of their respective heirs, executors, administrators, representatives, agents, partners, successors, and assigns ("Class Releasees"). The foregoing sentence notwithstanding, Google does not release and in fact retain any claim(s) which do not arise from or relate to the institution, prosecution, or settlement of the Action that they may otherwise have against any Class Releasee.

38.     Google represents and warrants that no claim, demand, complaint, action, proceeding, remedy, lien or any other matter subject to the release in Paragraph 37 has been in any way transferred to or is in any way held by any third party, and that Google has the legal authority to release all such matters and agrees to indemnify and hold the Class Releasees

9

harmless from any liability, loss, claims, demands, damages, costs, expenses, or attorneys' fees incurred as a result of any person or entity asserting such assignment or transfer.

39.     Except as explicitly provided herein, nothing in this Agreement abrogates, supersedes, modifies, or qualifies in any way any of the contractual terms and conditions applicable in the ordinary course of business to any relationship that may exist between Google and the Class Representatives or Class Members.

40.     The Parties acknowledge that they have consulted with legal counsel and are familiar with the provisions of California Civil Code Section 1542, which states:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

41.     The Parties, being aware of California Civil Code Section 1542, expressly waive any rights they may have under that statute as well as under any other statute or common law principles of similar effect with respect to the claims released in Paragraphs 35 and 37, above, arising out of or relating in any way to the Action.

42.     The Parties acknowledge that after the Effective Date they may discover facts different from or in addition to those that it may now know or believe to be true with respect to the matters being released by this Agreement.  The Parties expressly assume the risk of the possible discovery of any such additional or different facts.  This Agreement will remain effective in all respects regardless of any such additional or different facts.

43.     The Class Representatives acknowledge, and other Class Members by operation of law shall be deemed to have acknowledged, that the release of unknown claims was separately bargained for and was a key element of the settlement embodied in this Agreement.

44. Upon entry of Final Judgment, the Class Releasors shall be enjoined from prosecuting any claim they have released in the preceding paragraphs in any proceeding against the Google Releasees or based on any actions taken by the Google Releasees that are authorized or required by this Agreement or by the Final Judgment. It is further agreed that the settlement may be pleaded as a complete defense to any proceeding subject to this section.

45. Nothing in Paragraphs 35 and 37 shall be a bar to a claim, complaint, action, or proceeding for breach of this Agreement.

## NOTICE OF CLASS ACTION SETTLEMENT

46. The Parties agree to provide notice of the settlement to Class Members in accordance with the Notice Plan attached as Exhibit C.

47. The Settlement Administrator shall be responsible for disseminating notice pursuant to the Notice Plan and for operating the Settlement Website. Any material deviation from the Notice Plan must be approved by the Parties and the Court.

## APPROVAL OF SETTLEMENT & SETTLEMENT IMPLEMENTATION

48. <u>Preliminary Approval Hearing</u>. Class Representatives will move for preliminary approval of the Agreement, submit this Agreement and Exhibits hereto with the motion, and request that the Court hold a hearing thereon. Class Representatives will submit therewith a proposed Order Granting Preliminary Settlement Approval substantially in the form attached hereto as Exhibit D.

49. <u>Compliance with the Class Action Fairness Act</u>. Google will provide notice of this Agreement that meets the requirements of the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715, on the appropriate federal and state officials not later than ten calendar days after the Agreement is filed with the Court.

50. <u>Procedure for Objecting to Class Action Settlement</u>.

a.      Class Members who wish to object to the settlement must make a written statement objecting to the settlement.  Such written statement must be sent to the Settlement Administrator at the address specified in the Notice of Class Action Settlement, Exhibit B, no later than the deadline for objections set by the Court in its Preliminary Approval Order.

b.      Any objection must contain: (i) the objector's name, address, and personal signature, (ii) a statement whether the objector intends to appear at the Final Approval Hearing, either in person or through counsel, and, if through counsel, identifying counsel by name, address, and phone number, and (iii) a statement of the grounds for his or her objection.

c.      The date of the postmark on the envelope containing the written statement objecting to the settlement shall be the exclusive means used to determine whether an objection and/or intention to appear has been timely submitted.  In the event a postmark is illegible, the date of mailing shall be deemed to be three days prior to the date the Settlement Administrator received the written statement.  Class Members who fail to file and serve timely written objections in the manner specified above shall be deemed to have waived any objections and shall be forever barred from making any objection to the Agreement and the proposed settlement by appearing at the Final Approval Hearing, appeal, collateral attack, or otherwise.

51.     No Solicitation of Settlement Objections.  At no time shall any of the Parties or their counsel seek to solicit or otherwise encourage Class Members to submit written objections to the settlement, or encourage an appeal from the Court's Final Judgment.  None of the Parties shall initiate unsolicited contact with any Class Member for any purpose prohibited under this Agreement.

52.     Final Settlement Approval Hearing and Entry of Final Judgment.  A Final Approval Hearing shall be conducted to determine final approval of the settlement.  Upon final

12

approval of the settlement by the Court at or after the Final Approval Hearing, the Parties shall present a Final Judgment and Order of Dismissal to the Court for its approval and entry, substantially in the form attached hereto as Exhibit A.

53.    Costs of Notice and Administration.  Google shall be solely responsible for the costs and expenses incurred in the administration of the Settlement, including the cost of implementing the Notice Plan, not to exceed $140,000.  The Parties agree to cooperate in the settlement administration process and to make all reasonable efforts to control and minimize the costs and expenses incurred in the administration of the settlement.

54.    Termination.  The Parties shall have the right to terminate this Agreement if any of the following events occurs:

a.    The Court does not enter an order granting preliminary approval of the settlement, as provided herein;

b.    The Court does not enter an order granting final approval of the settlement, as provided herein;

c.    The Court does not enter a Final Judgment that is materially the same as the form attached hereto as Exhibit A;

d.    The Court requires Google to provide any class benefit other than those provided in this Agreement;

e.    The Court requires material alteration of any provision of the Agreement for the settlement to be approved, including without limitation, the releases set forth in Paragraphs 35 and 37 or the Notice Plan set forth in Paragraph 53 and Exhibit C; or

f.    The Court orders Google to pay an award of attorneys' fees, expenses, and Class Representative service awards that in the aggregate is greater than $2,204,000.00.

13

55.   <u>Notice of Termination</u>.   A party shall provide written notice of an intent to terminate this Agreement to counsel for the other party within thirty (30) calendar days after receiving notice that any of the foregoing events above has occurred.

56.   <u>Effect of Termination</u>.   In the event that this Agreement is voided, terminated, or cancelled, or fails to become effective for any reason whatsoever, then the Parties shall be deemed to have reverted to their respective statuses as of the date and time immediately prior to the execution of this Agreement, and they shall proceed in all respects as if this Agreement, its Exhibits, and any related agreements or orders, had never been executed or entered.

57.   In the event one or more appeals are filed from the Court's Final Judgment, or any other appellate review is sought prior to the Effective Date, administration of the settlement shall be stayed pending final resolution of the appeal or other appellate review.   Nothing, however, shall prohibit Google from fulfilling any of its obligations above, if in the exercise of its sole discretion it chooses to do so.

<b><u>ATTORNEYS' FEES, EXPENSES AND SERVICE AWARDS</u></b>

58.   Google agrees to pay Plaintiffs' Class Counsel a reasonable attorneys' fee, inclusive of expenses, in the amount of $2,200,000.00, subject to Court approval.

59.   Google agrees to pay each Class Representative a service award in the amount of $2,000, in recognition for their service to the Class Members, subject to Court approval.

60.   Upon entry of a Preliminary Approval Order, Plaintiffs' Class Counsel shall submit a motion for approval of, and award of reasonable attorneys' fees and expenses, in an amount not to exceed the amount Google agrees to pay, i.e., $2,200,000.00, as well as for approval of the Class Representatives' service awards.   Google will not oppose or in any way undermine Plaintiffs' Class Counsel's motion or solicit others to do so.   The Parties negotiated this settlement term only after all of the substantive settlement terms were resolved.

14

61.     Within thirty (30) business days of the latest of (1) entry of Final Judgment, and (2) receipt by Google of a completed W-9 form providing taxpayer identification information for the payment recipient identified below, Google will make payment of Plaintiffs' Class Counsel fee and the service awards to a trust account maintained by Lieff, Cabraser, Heimann & Bernstein, LLP.

## ADDITIONAL PROVISIONS

62.     Best Efforts.  The Parties agree to cooperate in good faith and use their best efforts to effectuate all of their respective obligations under the Agreement, including obtaining preliminary and final settlement approval, and all steps that may be necessary in order to reach the Effective Date, and to do so as quickly and efficiently as practicable.  In the event the Parties are unable to reach agreement on the form or content of any document needed to implement the settlement, or on any supplemental provisions that may become necessary to effectuate the terms of the settlement embodied in this Agreement, the Parties shall mediate the disagreement before Randall W. Wulff.  The Parties shall not seek the Court's intervention until they have exhausted the mediation process.

63.     Limited Admissibility of Agreement.  This Agreement is made in compromise of a dispute.  Regardless of whether the Court approves this Agreement, neither the Agreement nor anything that any of the Parties stated or did during the negotiation of this Agreement will be construed or used in any manner as an admission of liability or evidence of either party's fault, liability or wrongdoing.  On the contrary, the Parties expressly deny any liability or wrongdoing whatsoever.  Notwithstanding the foregoing restrictions in this paragraph, Google may file this Agreement and Final Judgment (if and when such Final Judgment is entered) in any action that may be or has been brought against it in order to support a defense, counterclaim or cross claim.

64.     Notices.  Unless otherwise specifically provided herein, all notices, demands, or other communications given hereunder shall be in writing and shall be deemed to have been duly given as of the date of electronic mailing. Postal mailing will be provided as well, addressed as follows:

> To Plaintiffs' Class Counsel
>
> Michael W. Sobol
> msobol@lchb.com
> Nicole D. Sugnet
> nsugnet@lchb.com
> LIEFF CABRASER HEIMANN & BERNSTEIN LLP
> 275 Battery Street, 29th Floor
> San Francisco, CA  94111
> Telephone: (415) 956-1000
> Facsimile: (415) 956-1008
>
> Hank Bates
> hbates@cbplaw.com
> CARNEY BATES & PULLIAM, PLLC
> 519 West 7th St.
> Little Rock, AR 72201
> Telephone: 501.312.8500
> Facsimile: 501.312.8505
>
> Ray E. Gallo
> rgallo@gallo-law.com
> Dominic R. Valerian
> dvalerian@gallo-law.com
> GALLO LLP
> 1299 Fourth St., Suite 505
> San Rafael, CA 94901
> Telephone: 415.257.8800
>
> To Google's Counsel
> Michael G. Rhodes
> Whitty Somvichian
> Cooley LLP
> 101 California Street, 5th Floor
> San Francisco, CA 94111
> rhodesmg@cooley.com
> wsomvichian@cooley.com
>
> To Google
>
> Google Inc.
> ATTN:  General Counsel

1600 Amphitheatre Parkway
Mountain View, CA 94043
Facsimile: 1-650-253-0001

65.     Privacy.    The Parties and all counsel agree that all orders and agreements regarding the confidentiality of documents and information remain in effect, including the Stipulated Protective Order entered on June 8, 2016, and all Parties and counsel remain bound to comply with them.  Nothing contained in this Agreement or any order of the Court related to this Agreement, nor any act required to be performed pursuant to this Agreement is intended to constitute, cause, or effect any waiver (in whole or in part) of any attorney-client privilege, work product protection or any other privilege or protective doctrine afforded by law.

66.     Exhibits.  The terms of this Agreement include the terms set forth in the attached Exhibits, which are incorporated by this reference as though fully set forth herein.  Exhibits to this Agreement are an integral part of the settlement.

67.     Captions or Headings.  The captions or headings of paragraphs in this Agreement are inserted for convenience, reference, and identification purposes only, and shall neither control, define, limit, nor affect any provisions of this Agreement.

68.     Defined Terms.  Terms defined in this Agreement shall have their defined meanings whenever and wherever they occur herein (including in Exhibits).

69.     Materiality.  The Parties have negotiated all of the terms and conditions of this Agreement at arm's-length.  All terms, conditions, and Exhibits in their exact form have been individually negotiated and bargained for at arm's-length, are material and necessary to this Agreement, and have been relied upon by the Parties in entering into this Agreement.

70.     Stay of Proceedings.  To the extent approved by the Court, the Parties agree to stay all proceedings in the Action, except such proceedings necessary to implement and complete the settlement, pending the entry of Final Judgment.

71.     <u>Amendment or Modification</u>.  Any amendment to this Agreement must be in writing, signed by the Parties, and expressly state that it is amending this Agreement.

72.     <u>Waiver of Compliance</u>.  No party will be treated as having waived any rights by not exercising (or delaying the exercise of) any rights under this Agreement.  Moreover, a waiver of any breach of this Agreement by any party shall not be deemed to be a waiver by any party of any other breach of this Agreement.

73.     <u>Entire Agreement</u>.  This Agreement sets out all terms agreed between the Parties and supersedes all previous or contemporaneous agreements between the Parties relating to its subject matter.  In entering into this Agreement neither party has relied on, and neither party will have any right or remedy based on, any statement, representation or warranty (whether made negligently or innocently), except those expressly set out in this Agreement.

74.     <u>Authorization to Enter Agreement</u>.  The Parties warrant and represent they are authorized to take all appropriate action required or permitted to be taken by such Parties pursuant to this Agreement, to effectuate its terms, and to execute any other documents required to effectuate the terms of this Agreement.

75.     <u>Parties' Knowledge and Advice of Counsel</u>.  Each party enters into this Agreement with the opportunity to seek the advice of counsel and executes and delivers this Agreement being fully informed as to its terms, content, and effect.

76.     <u>No Third Party Beneficiaries</u>.  This Agreement does not confer any benefits on any third party other than Class Members for whom a direct benefit is specifically provided hereunder.

77.     <u>Agreement Binding on Successors in Interest</u>.  This Agreement shall be binding on and inure to the benefit of the respective heirs, successors, and assigns of the Parties.

18

78.     <u>Assignment</u>.  This Agreement, including any of the rights and duties of any party hereto under the Agreement, may not be assigned without prior written approval by the other party.

79.     <u>No Additional Persons with Financial Interest</u>.  Google shall not be liable for any additional attorneys' fees and expenses of any Class Member's counsel, including any potential objectors or counsel representing a Class Member, other than what is expressly provided for in this Agreement.

80.     <u>Jurisdiction of the Court</u>.   The Court shall retain continuing and exclusive jurisdiction over the Parties to this Agreement, including all Class Members, and over the interpretation, implementation, administration and enforcement of this Agreement.

81.     <u>No Construction Against Any Party</u>.  The terms of this Agreement have been negotiated at arm's-length among knowledgeable Parties represented by experienced counsel. The Parties agree that the normal rules of construction that any ambiguity in a document is construed against the drafting party shall not apply to the interpretation or enforcement of this Agreement, as the Parties each participated in the drafting of this Agreement. The Parties expressly waive the presumption of California Civil Code section 1654 that uncertainties in a contract are interpreted against the party who caused the uncertainty to exist.

82.     <u>Extensions of Time</u>.  The Parties may agree upon a reasonable extension of time for any deadline or date reflected in this Agreement, without further notice (subject to Court approval as to Court dates).

83.     <u>Fees Not a Penalty</u>.  No consideration or amount or sum paid, credited, offered, or expended by Google in its performance of this Agreement constitutes a penalty, fine, punitive damages, or other form of assessment for any alleged claim against Google.

19

84.  <u>Collateral Attack</u>.  This Agreement shall not be subject to collateral attack by any Class Members at any time on or after the Effective Date.

85.  <u>Counterparts</u>.  The Parties may execute this Agreement in counterparts, including facsimile, PDF, and other electronic copies, which taken together will constitute one instrument.

86.  <u>Governing Law and Venue</u>.

(a) ALL CLAIMS ARISING OUT OF OR RELATING TO THIS AGREEMENT WILL BE GOVERNED BY CALIFORNIA LAW, WITHOUT REGARD TO OR APPLICATION OF CALIFORNIA'S CONFLICT OF LAWS RULES, AND WILL BE LITIGATED EXCLUSIVELY IN THE FEDERAL OR STATE COURTS OF SANTA CLARA COUNTY, CALIFORNIA, USA; THE PARTIES CONSENT TO PERSONAL JURISDICTION IN THOSE COURTS.

(b) If a party files any claim, complaint, action, or proceeding alleging a breach of this Agreement, the successful or prevailing party will be entitled to recover its attorneys' fees and other costs, in addition to any other relief to which the party may be entitled.  Any action or proceeding to enforce the Agreement shall, pursuant to the Court's retention of jurisdiction with respect to the settlement, be brought in this Court.

87.  <u>Signatures</u>.  Each person executing this Agreement warrants that such person has the full authority to do so.

IN WITNESS WHEREOF, the Parties have caused the Agreement to be executed by their duly authorized attorneys.

20

APPROVED AND AGREED TO BY THE PLAINTIFFS:

Dated: _____11-18-16_____, 2016        _____
                                       Daniel Matera

Dated: _____Nov. 17_____, 2016         _____
                                       Susan Rashkis


APPROVED AND AGREED TO BY DEFENDANT:


Dated: _____, 2016           GOOGLE, INC.

                                       By: _____
                                       Title: _____


137930685

21

APPROVED AND AGREED TO BY THE PLAINTIFFS:


Dated: _____, 2016      _____
                                       Daniel Matera

Dated: _____, 2016      _____
                                       Susan Rashkis


APPROVED AND AGREED TO BY DEFENDANT:


Dated: _Nov 22_____, 2016      GOOGLE, INC.

                               By: _____
                               Title: _Director, Litigation_____

137930685

21

# EXHIBIT A

1   COOLEY LLP
    MICHAEL G. RHODES (116127) (rhodesmg@cooley.com)
2   WHITTY SOMVICHIAN (194463) (wsomvichian@cooley.com)
    KYLE C. WONG (224021) (kwong@cooley.com)
3   KAREN L. BURHANS (303290) (kburhans@cooley.com)
    AMY M. SMITH (287813) (amsmith@cooley.com)
4   101 California Street
    5th Floor
5   San Francisco, CA  94111-5800
    Telephone:   (415) 693-2000
6   Facsimile:   (415) 693-2222

7   Attorneys for Defendant
    GOOGLE INC.

8

9                   UNITED STATES DISTRICT COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11                        SAN JOSE DIVISION

12

13   DANIEL MATERA, SUSAN RASHKIS as          Case No.  5:15-cv-04062 LHK
     individuals, and on behalf of other persons
14   similarly situated,                       [PROPOSED] FINAL ORDER
                                               APPROVING SETTLEMENT AND
15                    Plaintiff,               DISMISSING CLAIMS OF CLASS
                                               MEMBERS
16        v.
                                               Date:
17   GOOGLE INC.,                              Time:
                                               Dept.:      Courtroom 8 - 4th Floor
18                    Defendant.                           280 S. First Street
                                                          San Jose, CA 95113
19
                                               Judge:      The Hon. Lucy H. Koh
20                                             Trial Date:  Not yet set

21

22

23

24

25

26

27

28

This matter came on for hearing on _____, 2017. The Court has considered the Settlement Agreement ("Settlement"), objections and comments received regarding the Settlement, the record in the Action, and the arguments and authorities of counsel.  Good cause appearing,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** as follows**:**

1.     The Court, for purposes of this Final Judgment Approving Settlement and Dismissing Claims of Class Members with Prejudice ("Judgment"), adopts the terms and definitions set forth in the Settlement.

2.     This Court has jurisdiction over the subject matter of this Action, all parties to the Action, and all Class Members.

3.     The Court finds that the notice to the Class of the pendency of the Action and of this Settlement, Class Counsel's application for attorneys' fees and expenses, and the application for service awards for Class Representatives, as provided for in the Settlement and by Order of this Court, has been implemented and fully complied with the requirements of Federal Rule of Civil Procedure 23 and due process.

4.     The Court finds that Google properly and timely notified the appropriate state and federal officials of the Settlement, pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715.

5.     The Court approves the Settlement as fair, reasonable, and adequate and in the best interests of the Class Members.  The Court has specifically considered the factors relevant to class settlement approval (*see*, *e.g.*, *Churchill Village, L.L.C. v. General Elec.*, 361 F.3d 566 (9th Cir. 2004)), including, *inter alia*, the strength of Plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout trial; the relief provided for in the Settlement; the extent of discovery completed and stage of the proceedings; the experience and views of Class Counsel and the mediator; and the reaction of Class Members to the proposed settlement.

6.     The Court has also scrutinized the Settlement and negotiation history for any signs of potential collusion (*see*, *e.g.*, *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011)), and finds that the Settlement is not the product of collusion. This finding is supported by, among other things: the fact that the Settlement was negotiated by experienced, well-qualified

counsel and with the active involvement and assistance of a neutral, well-qualified mediator; the Settlement provides substantial benefits to Class Members and such benefits are not disproportionate to the attorneys' fees and expenses sought by Class Counsel; the benefits provided to Class Members are appropriate under the circumstances of this case; and the parties began negotiating regarding attorneys' fees and expenses only after reaching an agreement regarding the key deal terms.

7.     Pursuant to the Settlement, Google shall provide the following benefits to Class Members:

(a)     **Stipulated Injunction.** For a period of three years commencing one-hundred eighty (180) days after the date of the Final Judgment (the "Relevant Period"), Google shall be bound by the Stipulated Injunction set forth in the Settlement.  Under the terms of the Stipulated Injunction, Google shall make technical changes such that:

For incoming email sent to a Gmail user, Google will eliminate any processing of email content that it applies prior to the point when the Gmail user can retrieve the email in his or her mailbox using the Gmail interface (currently, this occurs when the email is stored in the "Tingle" server) that is used for the distinct purpose of advertising and creating advertising user models. Google agrees to refrain from such activity for the Relevant Period.  With regard to any information generated by other processing of email content that Google applies before the Gmail user can retrieve the email in his or her mailbox using the Gmail interface, Google will not use or access such information for the purpose of serving targeted advertisements or creating advertising user models until after the Gmail user can retrieve the email in his or her mailbox using the Gmail interface. These technical changes and commitments shall apply to all incoming email sent to Gmail users in the United States.

For outgoing email sent by a Gmail user, Google will refrain from any processing of email content that it applies prior to the point when the Gmail user can retrieve the outgoing email in his or her mailbox using the Gmail interface (currently, this occurs when the email is stored in the "Tingle" server) that is used for the distinct purpose of advertising and creating advertising user models.  Google agrees to refrain from such activity for the Relevant Period.  With regard to any information generated by other processing of email content that Google applies before the Gmail

user can retrieve the outgoing email in his or her mailbox using the Gmail interface, Google will not use or access such information for the purpose of serving targeted advertisements or creating advertising user models until after the Gmail user can retrieve the email in his or her mailbox using the Gmail interface.  These technical changes and commitments shall apply to all outgoing emails sent by Gmail users in the United States.

If Google's new email architecture described above becomes outdated and must be improved or replaced during the pendency of the injunction, then Google may change its system design in a manner that will continue to comply with the requirements of the injunction above.

**(b)    Certification.**  Google shall, upon making the changes required under this section, deliver a written certification under oath to Class Counsel stating that it has made the technical changes required under this paragraph.

**8.**    Class Counsel are hereby awarded attorneys' fees and expenses in the amount of $2,200,000.   Google shall pay such amounts to Class Counsel pursuant to the terms of the Settlement.  The Court finds these amounts to be fair and reasonable and fairly compensates Class Counsel for their contributions to the prosecution of this Action and the Settlement.

**9.**    The Court hereby awards service awards in the amount of $2,000 each, to each of the Plaintiffs as Class Representatives, to compensate them for their commitments and efforts on behalf of the Class in this Action.  Google shall pay such amounts to Plaintiffs, pursuant to the terms of the Settlement Agreement.

**10.**    The Parties are to bear their own costs, except as awarded by this Court in this Final Order.

**11.**    The Parties and Class Members are bound by the terms and conditions of the Settlement.  Upon the Effective Date of this Settlement, Plaintiffs and each and every Class Member shall be deemed to have released, acquitted and forever discharged Google from any and all Released Claims.  The full terms of the release described in this paragraph are set forth in Sections 35 through 45 of the Agreement.  The Court expressly adopts and incorporates by reference Sections 35 through 45 of the Agreement.

12.     Per the terms of the Settlement, as of the Effective Date, the Class Representatives and Class Members shall be deemed to have agreed not to sue or otherwise make any claim against Google relating to Released Claims.

13.     The benefits described above are the only consideration Google shall be obligated to give to the Class Members, with the exception of the service awards to be paid to the Class Representatives.

14.     The Action and all claims asserted in the Action are dismissed with prejudice as to the Class Representative and all Class Members.

15.     The Court reserves exclusive and continuing jurisdiction over the Action, the Class Representatives, the Class Members, and Google for the purposes of supervising the implementation, enforcement, and construction of the Settlement and this Judgment.


**IT IS SO ORDERED.**


Dated: _____                    _____
                                                THE HONORABLE LUCY H. KOH
                                                United States District Judge

138774433

# EXHIBIT B

## SUMMARY NOTICE OF CLASS ACTION SETTLEMENT

TO:   **ALL NATURAL PERSONS IN THE UNITED STATES WHO HAVE NEVER ESTABLISHED A GMAIL ACCOUNT WITH GOOGLE, AND WHO SENT UNENCRYPTED EMAILS TO INDIVIDUALS WITH GMAIL ACCOUNTS.**

**ALL NATURAL PERSONS IN THE STATE OF CALIFORNIA WHO HAVE NEVER ESTABLISHED A GMAIL ACCOUNT WITH GOOGLE, AND WHO HAVE SENT UNENCRYPTED EMAILS TO INDIVIDUALS WITH GMAIL ACCOUNTS.**

This Notice relates to a class action settlement affecting the individuals defined above (the "Settlement Classes"), as described further below.

A hearing will be held at [time] on [month] [day], 2017 before the Honorable Lucy H. Koh, United States District Court Judge, in Courtroom 8, at the Robert F. Peckham Federal Building, 280 South First Street, San Jose, California, to determine whether: (1) the proposed settlement against defendant Google Inc. ("Google") should be approved by the District Court as fair, reasonable, and adequate; (2) the Judgment and Order of Final Approval should be entered by the District Court to dismiss the Action with prejudice; and (3) the Fee and Expense Application should be approved.  The Fee and Expense Application is the request of Class Counsel (defined below) for payment of attorneys' fees and reasonable expenses incurred in connection with the prosecution of this Action, to be paid solely by Google (if approved).  Google will not oppose a Fee and Expense Application that does not exceed $2,200,000.  Class Counsel will also request that the two named plaintiffs in the Action each receive a service award of $2,000.

### Summary of the Action

The case was filed in the United States District Court for the Northern District of California (the "District Court"), as *Matera v. Google Inc.*, 5:15-cv-04062 LHK (the "Action"). The plaintiffs alleged that Google violates the California Invasion of Privacy Act, Penal Code § 630 *et seq.*, ("CIPA") and the Electronic Communications Privacy Act, 18 U.S.C. § 2510 *et seq.*, ("Wiretap Act") by scanning the content of non-Gmail users' emails while those emails were in

1   transit to Gmail users, and then utilizing the results of the scans for advertising and/or user

2   modeling purposes.  The individual plaintiffs and the Settlement Classes are represented by Lieff

3   Cabraser Heimann & Bernstein, LLP; Carney Bates & Pulliam, PLCC; and Gallo LLP ("Class

4   Counsel").

5        The Court has not made any determination of any wrongdoing by Google, and Google

6   denies that its automated processing of email violates CIPA or the Wiretap Act. On November 22,

7   2016 the parties agreed to settle all claims in the Action to avoid the costs and disruption of

8   further litigation.

9                    **Summary of the Proposed Settlement**

10       In the settlement, Google has agreed to insure that all incoming email to Gmail users and

11  all outgoing email from Gmail users is processed in a manner that plaintiffs and Class Counsel

12  agree does not violate CIPA or the Wiretap Act.  Specifically, (1) for incoming email, Google

13  will eliminate any processing of email content that it applies prior to the point when the Gmail

14  user can retrieve the email in his or her mailbox using the Gmail interface (currently, this occurs

15  when the email is stored in the "Tingle" server) that is used for the distinct purpose of advertising

16  and creating advertising user models; (2) with regard to any information generated by other

17  processing of email content that Google applies before the Gmail user can retrieve the email in

18  his or her mailbox using the Gmail interface, Google will not use or access such information for

19  the purpose of serving targeted advertisements or creating advertising user models until after the

20  Gmail user can retrieve the email in his or her mailbox using the Gmail interface; (3) for outgoing

21  email, Google will refrain from any processing of email content that it applies prior to the point

22  when the Gmail user can retrieve the outgoing email in his or her mailbox using the Gmail

23  interface (currently, this occurs when the email is stored in the "Tingle" server) that is used for

24  the distinct purpose of advertising and creating advertising user models; and (4) with regard to

25  any information generated by other processing of email content that Google applies before the

26  Gmail user can retrieve the outgoing email in his or her mailbox using the Gmail interface,

27  Google will not use or access such information for the purpose of serving targeted advertisements

28  or creating advertising user models until after the Gmail user can retrieve the email in his or her

mailbox using the Gmail interface.

**Your Rights May Be Affected by the Settlement**

If you have never had a Gmail account with Google but you sent unencrypted emails to Gmail users in the past, or if you intend to do so in the future, your rights may be affected by the settlement of the Action.  If approved by the Court, the settlement will affect your right to seek injunctive, declaratory and other non-monetary equitable relief against Google for the alleged practices at issue in this Action.  The settlement will not affect your right, if any, to seek monetary relief. You may obtain copies of the Settlement Agreement and related court filings, including the Fee and Expense Application, by writing to [ ] or on the internet at [ ].

**No Opt-Outs**

Because the plaintiffs are seeking only injunctive relief and Google is only agreeing to injunctive relief, class members cannot opt out of the settlement.  This means that all members of the Settlement Classes will be bound by the proposed settlement if the Court approves it.

**Release**

If the settlement is approved, you will be deemed to have released Google from and for any and all claims, whether known or unknown, which you have or may have in the future, that were alleged or asserted against Google in the Action or that could have been alleged or asserted against Google in the Action.  Notwithstanding the foregoing, you will only be deemed to have released claims for declaratory, injunctive, and non-monetary equitable relief.  You will not be deemed to have released any claims for monetary relief.

**Final Approval Hearing, Comments, and Objections**

The proposed Settlement Agreement will not be final unless and until the United States District Court approves it.  The Court has set a final approval hearing about the proposed settlement at [time] on [month] [day], 2017 before the Honorable Lucy H. Koh, United States District Court Judge, in Courtroom 8, at the Robert F. Peckham Federal Building, 280 South First Street, San Jose, California.  Any comments or objections from members of the Settlement Classes regarding the proposed Settlement Agreement must be submitted in writing by [date], 2017. To be considered, any objection must contain: (i) the objector's name, address, and

personal signature, (ii) a statement whether the objector intends to appear at the final approval hearing, either in person or through counsel, and, if through counsel, identifying counsel by name, address, and phone number, and (iii) a statement of the grounds for the objection.  If you do not submit a timely written objection, or if you do not request participation in the final approval hearing, you will not be able to participate in the final approval hearing.  Submit comments or objections to the Settlement Administrator at the address below, referencing "*Matera v. Google Inc.*, 5:15-CV-04062":

[Insert Settlement Administrator's Address]

### More Information

More information can be obtained by examining the file for *Matera v. Google Inc.*, Case No. 5:15-CV-04062 LHK, at the U.S. District Court for the Northern District of California, San Jose Division, Robert F. Peckham Federal Building, 280 South First Street, San Jose, CA 95113, during business hours.  Alternatively, you may obtain more information by contacting the Settlement Administrator at [add contact info].  **PLEASE DO NOT CONTACT THE DISTRICT COURT OR THE CLERK'S OFFICE WITH QUESTIONS REGARDING THIS NOTICE.**

The publication of this Notice is not an expression of any opinion by the Court as to the merits of the lawsuit or as to the fairness of the proposed settlement.  This notice is published to advise you of the pendency of the Actions, the proposed settlement, and your associated rights.

DATED:  [month] [day], 2016

BY ORDER OF THE DISTRICT COURT,
UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA

138576417

# EXHIBIT C



3301 Kerner Boulevard        415/798/5900   PHONE
San Rafael, CA  94901        415.892.7354   FAX
                             kccllc.com

November 17, 2016

Michael Sobol, Esq.
Lieff Cabraser Heimann & Bernstein LLP
275 Battery Street 29th Floor
San Francisco, CA 94111-3339

Re:      *Google Privacy Settlement*
         Class Action Settlement Administration Services Estimate

Dear Michael,

We appreciate the opportunity to submit this proposal and cost estimate for class action administration services pertaining to the *Google Privacy Settlement.*

For the purposes of this proposal, we applied the following assumptions with respect to KCC's duties:

- Perform any required CAFA mailing to appropriate government officials;
- KCC's Legal Notification Services will produce and place Internet Banner ads targeting adults 18+, at a 3x frequency cap and a 300x250 pixel banner ad size *only*, for a total of 100,000,000 impressions;
- Establish and maintain a case website that will contain relevant case documents, important dates and frequently asked questions; and
- Provide a Declaration of Notice Procedures to the parties indicating our compliance with the noticing efforts.

With experience administering more than 6,000 settlements, KCC provides high-quality and cost-effective class action administration services including pre-settlement consulting, settlement funds escrow, class member data management, legal notification, call center support, claims administration as well as disbursement and tax reporting services. We are a knowledgeable partner who proactively works with you throughout the settlement administration process and are well-positioned to handle your matter immediately.

Our domestic infrastructure, the largest in the industry, includes a 900-seat call center and document production capabilities that handle hundreds of millions of documents annually. Last year, our disbursement services team distributed $500 billion to payees in the form of 29 million checks and 11 million electronic transfers.

Please contact me with any questions regarding the enclosed case assumptions and cost estimate. We will hold this proposal and estimate open for ninety days from the date of this letter. Thank you for your time and consideration.

Sincerely,

Patrick J. Ivie
Senior EVP, Class Action Services
KCC LLC
Tel: (310) 776-7385
Cell: (310) 795-9742
Email: pivie@kccllc.com

Jenny Trang
Director, Class Action Services
KCC LLC
Tel: (212) 805-7306
Cell: (718) 753-1314
Email: JTrang@kccllc.com

**KCC**

## COST SUMMARY & SCOPE OF SERVICES

We will perform this administration for a flat cost of $123,500.

## CLASS MEMBER DATA MANAGEMENT

### Data and Forms Management
We will process class member data and pre-assign a unique sequential control number to each class member that will be used throughout the administration process.

We will format all relevant documents and will send all document proofs to you for approval prior to printing.

We will store all paper and electronic documentation received throughout the duration of the case. Upon the conclusion of the case, and absent any court orders or client requests pertaining to retention specifications, we will return or dispose of the physical materials within ninety (90) days. Any returned undeliverable mail will be disposed of within 2 days of receipt, absent any court orders or client requests pertaining to retention specifications. The storage of returned undeliverable mail will be billed as incurred.

## LEGAL NOTIFICATION

### CAFA Notice
We will copy the exhibits of the Settlement onto CD-ROMs and send them by USPS Priority Mail to all State Attorneys General and the US Attorney General. We recommend a generic cover letter and can share letters we have used previously.

### Notice Publication
KCC's Legal Notification Services team will produce and place Internet Banner ads, 300x250 pixels in size *only*, targeting adults 18+ at a 3x frequency cap, for a total of 100,000,000 impressions.

### Website Set-up and Maintenance
We will establish and maintain a case-specific website incorporating important court documents, dates, FAQs, forms and other pertinent case information.

### Declaration of Notice Procedures
We will prepare a Declaration of Notice Procedures to report our compliance with all class notification requirements.



**Administration Services Estimate**
*Google Privacy Settlement*
November 17, 2016

Patrick Ivie; pivie@kccllc.com; 310.776.7385
Jenny Trang; jtrang@kccllc.com; 718.753.1314

| Key Assumptions Used in Estimate Preparation | |
|---|---|
| Size of Class: | Unknown class members |

| | |
|---|---|
| Case Duration: | 6 months |
| # of Electronic, Finalized Data Files Provided (Excel, Access, etc.): | 1 file(s) |
| CAFA Notice Required? | Yes |
| Claims Processing: | No |
| Address Searches: | No |
| Media Campaign Required: | Yes |
| Expert Media Services: | No |
| English Only: | Yes |
| # of Email Campaigns: | N/A |
| Reminder Mailing: | No |
| Reminder Call Campaign: | No |
| Duration of Claims Filing Period: | N/A |
| Type of Telephone Support: | None |
| Type of Website Support: | Static |
| Duration of Website Support: | 6 months |

| SUMMARY OF COSTS | |
|---|---|
| FLAT COST**** | $123,500 |

| NOTICE PROCEDURES | RESPONSE RATE | QUANTITY | RATE PER UNIT | ESTIMATED COST | TOTAL |
|---|---|---|---|---|---|
| **System and Forms Set-up** | | | | | |
| - Set up Case Management System | | | | | |
| - Format Document(s) | | | | | |
| **CAFA Mailing** | | | | | |
| - CAFA Mailing to State Attorneys General and US Attorney General | | | | | |
| **Media Campaign** | | | | | |
| - Internet Media | | | | | |
| - Targeting adults 18+ at 3x frequency cap using 300x250 banner only | | 100,000,000 impressions | | | |
| **Website Set-up & Maintenance** | | | | | |
| - Design & Set up Static Website | | | | | |
| - Domain Registration (5 yrs/Privacy Registration) | | | | | |
| - Maintenance | | | | | |
| - Server Space rental | | | | | |
| **Case Management and Declaration of Notice Procedures** | | | | | |
| **FLAT COST****** | | | | | $123,500 |

| OTHER SERVICES AND OUT-OF-POCKET EXPENSES | RESPONSE RATE | QUANTITY | RATE PER UNIT | ESTIMATED COST | TOTAL |
|---|---|---|---|---|---|
| Other Services and Ad Hoc Reporting, as needed or requested | | | | (standard hourly rates) | |
| Other Charges and Out-of-Pocket Costs*** | | | | (actual) | |

\* Estimated Postage and Handling.
\*\* Does not include applicable taxes.
\*\*\* Includes, but is not limited to long distance calls, overnight shipping, photocopies, storage, PO Box rentals, broker fees, etc.
\*\*\*\* Flat Cost is contingent upon no significant change in the scope of work and does not contain taxes.

This Class Action Administration Services Estimate and the attached Cost Summary & Scope of Services (together, the "Proposal") are valid for ninety days from 11/17/2016. After such period, KCC reserves the right to amend the Proposal (including, without limitation, by increasing fees and costs) or to withdraw the Proposal in its sole discretion.

All services to be provided to the undersigned (the "Client") and all fees and costs set forth in the Proposal are subject to the terms, specifications, assumptions and conditions set forth in the Proposal and the attached Terms and Conditions (the "Terms of Service").

KCC Class Actions Services, LLC

BY: _____     DATE: _____

TITLE: _____


Lieff Cabraser Heimann & Bernstein LLP

BY: _____     DATE: _____

TITLE: _____

## TERMS AND CONDITIONS

All services to be provided by KCC Class Action Services, LLC (together with its affiliates, "KCC"), including services provided to Client as set forth in the attached Proposal, are subject to the following Terms and Conditions:

**1.   SERVICES**. KCC agrees to provide the services set forth in the Proposal attached hereto (the "Services"). Capitalized terms not otherwise defined herein have the meanings given to such terms in the Proposal. KCC will often take direction from Client's representatives, employees, agents and/or professionals (collectively, the "Client Parties") with respect to the Services. The parties agree that KCC may rely upon, and Client agrees to be bound by, any direction, advice or information provided by the Client Parties to the same extent as if provided by Client. Client agrees and understands that KCC shall not provide Client or any other party with any legal advice.

**2.   PRICES, CHARGES AND PAYMENT**. KCC agrees to charge and Client agrees to pay, subject to the terms herein, KCC for its fees and charges as set forth in the Proposal. Client acknowledges that any estimate in the Proposal is based on information provided by Client to KCC and actual fees and charges may vary depending on the circumstances and length of the case. Notwithstanding the foregoing, where total charges are expected to exceed $10,000 in any single month, KCC may require advance payment from Client due and payable upon demand and prior to the performance of services. KCC's prices are inclusive of commission and other charges and are generally adjusted periodically to reflect changes in the business and economic environment. KCC reserves the right to reasonably increase its prices, charges and rates annually. If any such increase exceeds 10%, KCC will give thirty (30) days written notice to Client. Client agrees to pay the reasonable out of pocket expenses incurred by KCC in connection with Services, including, but not limited to, transportation, lodging, and meals.

KCC agrees to submit its invoices to Client and Client agrees that the amount invoiced is due and payable upon receipt. If any amount is unpaid as of thirty (30) days from the receipt of the invoice, the Client further agrees to pay a late charge (the "Finance Charge"), calculated as one and one-half percent (1-1/2%) of the total amount unpaid every thirty (30) days. In the case of a dispute in the invoice amount, Client shall give written notice to KCC within twenty (20) days of receipt of the invoice by Client. Client agrees the Finance Charge is applicable to instances where KCC agreed to provide certain pre-settlement work while deferring the billing of said work until the settlement phase.

**3.   FURTHER ASSURANCES**. Client agrees that it will use its best efforts to include provisions reasonably acceptable to KCC in any relevant court order, settlement agreement or similar document that provide for the payment of KCC's fees and expenses hereunder.  No agreement to which KCC is not a party shall reduce or limit the full and prompt payment of KCC's fees and expenses as set forth herein and in the Proposal.

**4.   RIGHTS OF OWNERSHIP**. The parties understand that the software programs and other materials furnished by KCC to Client and/or developed during the course of the performance of Services are the sole property of KCC. The term "program" shall include, without limitation, data processing programs, specifications, applications, routines, and documentation. Client agrees not to copy or permit others to copy the source code from the support software or any other programs or materials furnished to Client. Fees and expenses paid by Client do not vest in Client any rights in such property, it being understood that such property is only being made available for Client's use during and in connection with the Services provided by KCC.

**5.   CONFIDENTIALITY**. Each of KCC and Client, on behalf of themselves and their respective employees, agents, professionals and representatives, agrees to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the Services; provided, however, that if either party reasonably believes that it is required to produce any such information by order of any governmental agency or other regulatory body it may, upon not less than five (5) business days' written notice to the other party, release the required information. These provisions shall survive termination of Services.

**6.   BANK ACCOUNTS**. At Client's request, KCC shall be authorized to establish accounts with financial institutions as agent for Client or as otherwise agreed by the parties.  All Client accounts established by KCC shall be deposit accounts of commercial banks with capital exceeding $1 billion and an S&P rating of "A" or higher (each, an "Approved Bank"). In some cases, KCC may derive financial benefits from financial institutions resulting from settlement funds and other moneys on deposit or invested with them including, for example, discounts provided on certain banking services and service fees.  The amounts held pursuant to these Terms and Conditions are at the sole risk of Client and, without limiting the generality of the foregoing, KCC shall have no responsibility or liability for any diminution of the fund that may result from any deposit made with an Approved Bank including any losses resulting from a default by the Approved Bank or other credit losses.  It is acknowledged and agreed that KCC will have acted prudently in depositing the fund at any Approved Bank, and KCC is not required to make any further inquiries in respect of any such bank.

**7.   TERMINATION**. The Services may be terminated by either party (i) upon thirty (30) days' written notice to the other party or (ii) immediately upon written notice for Cause (defined herein). As used herein, the term "Cause" means (i) gross negligence or willful misconduct of KCC that causes serious and material harm to Client, (ii) the failure of Client to pay KCC invoices for more than sixty (60) days from the date of invoice, or (iii) the accrual of invoices or unpaid services where KCC reasonably believes it will not be paid. Termination of Services shall not relieve Client of its obligations to pay all fees and expenses incurred prior to such termination.

In the event that the Services are terminated, regardless of the reason for such termination, KCC shall reasonably coordinate with Client to maintain an orderly transfer of data, programs, storage media or other materials furnished by Client to KCC or received by KCC in connection with the Services. Client agrees to pay for such services in accordance with KCC's then existing prices for such services.

**8.   LIMITATIONS OF LIABILITY AND INDEMNIFICATION**. Client shall indemnify and hold KCC, its affiliates, members, directors, officers, employees, consultants, subcontractors and agents (collectively, the "Indemnified Parties") harmless, to the fullest extent permitted by applicable law, from and against any and all losses, claims, damages, judgments, liabilities and expenses (including reasonable counsel fees and expenses) (collectively, "Losses") resulting from, arising out of or related to KCC's performance of Services. Such indemnification shall exclude Losses resulting from KCC's gross negligence or willful misconduct. Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third-parties against any Indemnified Party. Client shall notify KCC in writing promptly upon the assertion, threat or commencement of any claim, action, investigation or proceeding that Client becomes aware of with respect to the Services provided by KCC.

Except as provided herein, KCC's liability to Client or any person making a claim through or under Client or in connection with Services for any Losses of any kind, even if KCC has been advised of the possibility of such Losses, whether direct or indirect and unless due to gross negligence or willful misconduct of KCC, shall be limited to the total amount billed or billable for the portion of the particular work which gave rise to the alleged Loss. In no event shall KCC's liability for any Losses, whether direct or indirect, arising out of the Services exceed the total amount billed to Client and actually paid to KCC for the Services. In no event shall KCC be liable for any indirect, special or consequential damages such as loss of anticipated profits or other economic loss in connection with or arising out of the Services. Except as expressly set forth herein, KCC makes no representations or warranties, express or implied, including, but not limited to, any implied or express warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity. The provisions of this Section 8 shall survive termination of Services.

**9.   FORCE MAJEURE**. Whenever performance hereunder is materially prevented or impacted by reason of any act of God, strike, lock-out or other industrial or transportation disturbance, fire, lack of materials, law, regulation or ordinance, war or war condition, or by reason of any other matter beyond the performing party's reasonable control, then such performance shall be excused and shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

**10. INDEPENDENT CONTRACTORS**. KCC is and shall be an independent contractor of Client and no agency, partnership, joint venture or employment relationship shall arise, directly or indirectly, as a result of the Services or these Terms and Conditions.

**11. NOTICES**. All notices and requests hereunder shall be given or made upon the respective parties in writing and shall be deemed as given as of the third day following the day it is deposited in the U.S. Mail, postage pre-paid or on the day it is given if sent by facsimile or on the day after the day it is sent if sent by overnight courier to the appropriate address set forth in the Proposal or to such other address as the party to receive the notice or request so designates by written notice to the other.

**12. APPLICABLE LAW**. These Terms and Conditions will be governed by and construed in accordance with the laws of the State of California, without giving effect to any choice of law principles.

**13. ENTIRE AGREEMENT; MODIFICATIONS; SEVERABILITY; BINDING EFFECT**. These Terms and Conditions, together with the Proposal delivered pursuant hereto, constitutes the entire agreement and understanding of the parties in respect of the subject matter hereof and supersede all prior understandings, agreements or representations by or among the parties, written or oral, to the extent they relate in any way to the subject matter hereof. If any provision herein shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby. These Terms and Conditions may be modified only by a written instrument duly executed by the parties. All of the terms, agreements, covenants, representations, warranties and conditions of these Terms and Conditions are binding upon, and inure to the benefit of and are enforceable by, the parties and their respective successors and permitted assigns.

# EXHIBIT D

1  COOLEY LLP
   MICHAEL G. RHODES (116127) (rhodesmg@cooley.com)
2  WHITTY SOMVICHIAN (194463) (wsomvichian@cooley.com)
   KYLE C. WONG (224021) (kwong@cooley.com)
3  KAREN L. BURHANS (303290) (kburhans@cooley.com)
   AMY M. SMITH (287813) (amsmith@cooley.com)
4  101 California Street
   5th Floor
5  San Francisco, CA  94111-5800
   Telephone:   (415) 693-2000
6  Facsimile:   (415) 693-2222

7  Attorneys for Defendant
   GOOGLE INC.

8

9                UNITED STATES DISTRICT COURT

10              NORTHERN DISTRICT OF CALIFORNIA

11                    SAN JOSE DIVISION

12

13  DANIEL MATERA, SUSAN RASHKIS as          Case No.  5:15-cv-04062 LHK
    individuals, and on behalf of other persons
14  similarly situated,                      **[PROPOSED] ORDER
                                             CONDITIONALLY CERTIFYING A
15             Plaintiff,                     SETTLEMENT CLASS AND
                                             PRELIMINARILY APPROVING
16       v.                                   PROPOSED CLASS ACTION
                                             SETTLEMENT**
17  GOOGLE INC.,
                                             Date: March 9, 2017
18             Defendant.
                                             Time: 1:30 p.m.
19
                                             Courtroom: 8, 4th Floor
20
                                             Judge: The Hon. Lucy H. Koh
21

22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

[PROPOSED] ORDER CONDITIONALLY CERTIFYING
CLASS AND PRELIM. APPROVING CLASS ACTION
SETTLEMENT - 5:15-cv-04062 LHK

Upon review and consideration of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, and all exhibits and other evidence submitted in support thereof including the Class Action Settlement Agreement ("Agreement"), dated November 22, 2016, and executed by Plaintiffs Daniel Matera and Susan Rashkis individually and on behalf of the Class (as defined therein), and by Defendant Google Inc. ("Google"), it is hereby **ORDERED** as follows:

## FINDINGS

**1.** To grant preliminary approval of the proposed Settlement, the Court need only find that it falls within "the range of reasonableness." Alba Conte et al., *Newberg on Class Actions* § 11.25, at 11-91 (4th ed. 2002). *The Manual for Complex Litigation (Fourth)* (2004) ("*Manual*") characterizes the preliminary approval stage as an "initial evaluation" of the fairness of the proposed settlement made by the court on the basis of written submissions and informal presentation from the settling parties. *Manual* § 21.632. A proposed settlement may be finally approved by the trial court if it is determined to be "fundamentally fair, adequate and reasonable." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). While consideration of the requirements for final approval is unnecessary at this stage, all of the relevant factors for final approval weigh in favor of preliminarily approving the Settlement proposed here.

**2.** The Agreement appears to be the result of serious, informed, non-collusive negotiations conducted at arms' length by the parties' experienced counsel. The terms of the Agreement appear to be fair, reasonable, and adequate under Federal Rule of Civil Procedure 23. The terms do not improperly grant preferential treatment to any individual or segment of the class, and fall within the range of possible approval.

**3.** The Court bases these preliminary findings on the nature of the claims, which would have only allowed the Class to obtain injunctive relief and not monetary damages; the benefits to be conferred in the Agreement; the fact that a settlement represents a compromise of the Parties' respective positions in lieu of trial; and the submissions made by the Parties. The Court notes that the Agreement does not release any claims for monetary damages against Google.

**4.** Google has agreed to insure that it is processing emails in a manner that plaintiffs and Class Counsel agree does not violate CIPA or the Wiretap Act, which agreement shall remain in place

Cooley LLP
Attorneys At Law
San Francisco

1.

[PROPOSED] ORDER CONDITIONALLY CERTIFYING
CLASS AND PRELIM. APPROVING CLASS ACTION
SETTLEMENT - 5:15-CV-04062 LHK

for three years commencing one-hundred eighty (180) days after the date of the Final Judgment. The Agreement provides Plaintiffs the relief that Plaintiffs seek under both CIPA and the Wiretap Act.

**5.** As stated in the Settlement Agreement, "Google represents that it has no intention of eliminating the technical changes . . . after the expiration of th[is] [three year] term." Settlement Agreement at 36(d).

**6.** It is appropriate to provisionally certify the Settlement Classes (defined below), for settlement purposes only, pursuant to Federal Rule of Civil Procedure 23(b)(2):

**(a)** For settlement purposes only, the Settlement Classes are so numerous that joinder of all members is impracticable.

**(b)** For settlement purposes only, Plaintiffs' claims are typical of the Settlement Classes' claims.

**(c)** For settlement purposes only, there are questions of law or fact common to the Settlement Classes.

**(d)** For settlement purposes only, Plaintiffs and Class Counsel can fairly and adequately protect the interests of the Settlement Classes.

**IT IS ORDERED THAT:**

**1. Conditional Certification.** The Settlement Classes are conditionally certified, for settlement purposes only, under Federal Rule of Civil Procedure 23(b)(2) as:

**(a)** All natural persons in the United States who have never established a Gmail account with Google, and who have sent unencrypted emails to individuals with Gmail accounts.

**(b)** All natural persons in the State of California who have never established a Gmail account with Google, and who have sent unencrypted emails to individuals with Gmail accounts.

**2. Appointment of Class Representatives and Class Counsel for Settlement Purposes Only.** Plaintiffs Daniel Matera and Susan Rashkis are conditionally certified as the Class Representatives to implement the parties' settlement in accordance with the Agreement. Lieff Cabraser Heimann & Bernstein, LLP, Carney Bates & Pulliam, PLLC, and Gallo, LLP are

Cooley LLP
Attorneys At Law
San Francisco

2.

[Proposed] Order Conditionally Certifying
Class and Prelim. Approving Class Action
Settlement - 5:15-cv-04062 LHK

1   conditionally appointed as Class Counsel for settlement purposes under Rule 23(g).  The Court finds
2   that Plaintiffs and Class Counsel will fairly and adequately protect the Settlement Classes' interest.

3       **3.**      **Settlement Approval.**  The Court GRANTS preliminary approval of the Settlement
4   and all of the terms and conditions contained in it.

5       **4.**      **Provision of Class Notice.**

6       **(a)**      The Court approves the proposed notice and finds that the dissemination of
7   the Notice substantially in the manner and form set forth in the Agreement complies fully with the
8   requirements of Federal Rule of Civil Procedure 23 and due process of law.  The notice procedures
9   set forth in the Agreement are hereby found to be the best practicable means of providing notice of
10  the Agreement under the circumstances and, when completed, shall constitute due and sufficient
11  notice of the proposed Agreement and the Final Approval Hearing to all persons affected by and/or
12  entitled to participate in the Agreement, in full compliance with the applicable requirements of
13  Federal Rule of Civil Procedure 23 and due process.

14      **(b)**      Pursuant to the Notice Plan attached as Exhibit C to the Agreement, notice
15  shall be published via KCC Class Action Services, LLC's Legal Notification Services team, which
16  will place banner ads on a collection of popular websites.  The Settlement Administrator represents
17  that it will ensure these ads will make 100,000 unique impressions upon internet users, with no
18  single user receiving more than three impressions.  The banner ads will direct internet users, via a
19  link, to the Settlement Website providing fulsome notice to Class Members.  This is sufficient to
20  inform Class Members, who are all internet users, of the proposed Settlement and their right to
21  object to it.

22      **(c)**      No later than 14 days before the Final Approval Hearing Google shall file a
23  declaration attesting that notice was provided in accordance with the Settlement and this Order.

24      **5.**      **Final Approval Hearing.**  The Court will hold a Final Approval Hearing at
25  _____ on _____, 2017. At the Final Approval Hearing, the Court will consider: (1)
26  whether the Agreement should be finally approved as fair, reasonable, and adequate for the Class,
27  (2) whether a judgment dismissing the Action with prejudice, based on final settlement approval,

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3.

[PROPOSED] ORDER CONDITIONALLY CERTIFYING
CLASS AND PRELIM. APPROVING CLASS ACTION
SETTLEMENT - 5:15-CV-04062 LHK

1   should be entered; and (c) whether Plaintiffs' Counsel's application for attorneys' fees and expenses

2   and for service awards to the Class Representatives should be granted.

3        **6.      Objection to Settlement.**

4        **(a)**     Each Class Member shall be given a full opportunity to comment on or object

5   to the Agreement, and to participate at a Final Approval Hearing to be held in this Court on

6   _____, 2017.   The Class Notice shall state the date, time and location of the

7   hearing. Any Class Member wishing to comment on or object to the Agreement shall file such

8   comment or objection in writing shall mail such comment or objection to the Settlement

9   Administrator within 90 days after the dissemination of notice. The Settlement Administrator shall

10  forward copies of such comments or objections to counsel for both parties. Class Counsel shall file

11  such comments and/or objections with the Court within 100 days after dissemination of notice.

12  Should any party wish to file a written response to any comment or objection filed by a Class

13  Member, such response shall be filed no later than 10 days before the Final Approval Hearing.  No

14  Class Member shall be entitled to be heard at the Final Approval Hearing, whether individually or

15  through counsel, unless written notice of the Class Member's intention to appear at the Final

16  Approval Hearing shall have been timely mailed to the Settlement Administrator within 90 days

17  after the dissemination of notice.

18       **(b)**     Any objection must contain: the objector's name, address, and personal

19  signature; a statement whether the objector intends to appear at the Final Approval Hearing, either in

20  person or through counsel, and, if through counsel, identifying counsel by name, address, and phone

21  number; and a statement of the grounds for his, her, or its objection.

22       **(c)**     The date of the postmark on the envelope containing the written statement

23  objecting to the settlement shall be the exclusive means used to determine whether an objection

24  and/or intention to appear has been timely submitted. Class Members who fail to mail timely written

25  objections in the manner specified above shall be deemed to have waived any objections and shall be

26  forever barred from objecting to the Agreement and the proposed settlement by appearing at the

27  Final Approval Hearing, appeal, collateral attack, or otherwise.

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4.

[PROPOSED] ORDER CONDITIONALLY CERTIFYING
CLASS AND PRELIM. APPROVING CLASS ACTION
SETTLEMENT - 5:15-CV-04062 LHK

1    **7.    Final Approval.**    Within 60 days after the date of this Order the Class

2    Representatives shall file their memorandum in support of final approval of the Settlement, and

3    Class Counsel shall file their application for attorneys' fees and expenses and for service awards to

4    the Class Representatives.

5        **8.    Termination.**    If the Settlement Agreement terminates for any reason, this Action

6    will revert to its previous status in all respects as it existed before the Parties executed the

7    Agreement.  This Court's conditional certification of the Settlement Classes and findings underlying

8    the conditional certification shall be solely for settlement purposes.  This Order will not waive or

9    otherwise impact the Parties' rights or arguments.

10       **9.    Stay of Dates and Deadlines.**    All discovery and pretrial proceeding deadlines are

11   hereby vacated and suspended until further notice from the Court, except for such actions as are

12   necessary to implement the Agreement and this Order.

13       **10.    CAFA Notice.**    Google shall file with the Court a Notice of Compliance with 28

14   U.S.C. § 1715 within 30 days after the date of this Order.

15       **11.    Settlement Administrator.**    The Court hereby approves KCC Class Action Services,

16   LLC as Settlement Administrator to implement the Notice Plan.

17       **12.    Definitions.**    Unless otherwise defined herein, all terms that are capitalized herein

18   shall have the meanings ascribed to those terms in the Agreement.

19       **13.    Jurisdiction.**    The Court has jurisdiction over this Action pursuant to 28 U.S.C. §§

20   1331 and 1367, as Plaintiffs bring claims arising under the Electronic Communications Privacy Act

21   of 1986 and the California Invasion of Privacy Act.

22

23   **IT IS SO ORDERED.**

24

25   Dated: _____            _____

26                                            LUCY H. KOH
                                             United States District Judge
27

28   1331924.1

Cooley LLP
Attorneys At Law
San Francisco

5.

[Proposed] Order Conditionally Certifying
Class and Prelim. Approving Class Action
Settlement - 5:15-cv-04062 LHK