1  Michael W. Sobol (194857)
   msobol@lchb.com
2  LIEFF CABRASER HEIMANN & BERNSTEIN LLP
   275 Battery Street, 29th Floor
3  San Francisco, CA 94111
   Telephone: (415) 956-1000
4
   Hank Bates (167688)
5  hbates@cbplaw.com
   CARNEY BATES & PULLIAM, PLLC
6  519 West 7th St.
   Little Rock, AR 72201
7  Telephone: 501.312.8500
   Facsimile: 501.312.8505
8
   Ray E. Gallo (158903)
9  rgallo@gallo-law.com
   Dominic R. Valerian (240001)
10 dvalerian@gallo-law.com
   GALLO LLP
11 1299 Fourth St., Suite 505
   San Rafael, CA 94901
12 Telephone: 415.257.8800

13 *Attorneys for Plaintiffs and the Proposed Class*

14                    UNITED STATES DISTRICT COURT

15                   NORTHERN DISTRICT OF CALIFORNIA

16

17
   DANIEL MATERA and SUSAN              Case No. 5:15-cv-04062 LHK
18 RASHKIS, as individuals, and on behalf of
   other persons similarly situated,    **PLAINTIFFS' NOTICE OF MOTION;**
19                                       **MOTION FOR PRELIMINARY**
                      Plaintiffs,        **APPROVAL OF CLASS ACTION**
20                                       **SETTLEMENT; AND MEMORANDUM**
   v.                                    **OF POINTS AND AUTHORITIES**
21
   GOOGLE, INC.,                         Date: August 31, 2017
22
                      Defendant.         Time: 1:30 p.m.
23
                                         Courtroom: 8, 4th Floor
24
                                         Judge: The Hon. Lucy H. Koh
25

26

27

28

**NOTICE OF MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that on August 31, 2017, at 1:30 p.m., in the Courtroom of the Honorable Lucy H. Koh, United States District Judge for the Northern District of California, 280 South 1st Street, 4th Floor, Courtroom 8, San Jose, California 95113, Plaintiffs Daniel Matera and Susan Rashkis ("Plaintiffs"), will and hereby do move the Court, pursuant to Federal Rule of Civil Procedure 23, for an Order:

a) Granting preliminary approval of the proposed Class Action Settlement Agreement ("Settlement") entered into between the parties;[1]

b) Certifying the Settlement Class as defined in the Settlement;

c) Appointing Plaintiffs Daniel Matera and Susan Rashkis as Class Representatives of the proposed Classes;

d) Appointing Michael W. Sobol of Lieff Cabraser Heimann & Bernstein LLP, Hank Bates of Carney Bates & Pulliam PLLC, and Ray Gallo of Gallo LLP as Class Counsel for the proposed Classes;

e) Approving the parties' proposed notice program, including the proposed form of notice set forth in the Settlement, and directing that notice be disseminated pursuant to such program;

f) Appointing KCC Class Action Services, LLC ("KCC") as Settlement Administrator, and directing KCC to carry out the duties and responsibilities of the Settlement Administrator specified in the Settlement;

g) Staying all non-Settlement related proceedings in the above-captioned case (the "Action") pending final approval of the Settlement; and

h) Setting a Fairness Hearing and certain other dates in connection with the final approval of the Settlement.

This motion is based on this notice of motion and motion, the accompanying memorandum of points and authorities, the Settlement, including all exhibits thereto, the accompanying Joint Declaration of Hank Bates, Michael W. Sobol, and Ray Gallo ("Joint Decl."), the argument of counsel, all papers and records on file in this matter, and such other matters as the Court may consider.

---

[1] *See* Exhibit 1 to the Joint Declaration of Michael W. Sobol, Hank Bates, and Ray Gallo ("Joint Declaration").

| | |
|---|---|
| 1 | Dated: July 21, 2017        Respectfully submitted, |
| 2 | By: _/s/ Michael W. Sobol_ |
| 3 | LIEFF CABRASER HEIMANN & BERNSTEIN, LLP |
| | Michael W. Sobol (194857) |
| 4 | msobol@lchb.com |
| | 275 Battery Street, 29th Floor |
| 5 | San Francisco, CA 94111-3339 |
| | Telephone: (415) 956-1000 |
| 6 | Facsimile: (415) 956-1008 |
| 7 | CARNEY BATES & PULLIAM, PLLC |
| | Joseph Henry ("Hank") Bates (167688) |
| 8 | 519 W. 7th Street |
| | Little Rock, AR 72201 |
| 9 | Telephone: (501) 312-8500 |
| | Fax: (501) 312-8505 |
| 10 | |
| 11 | GALLO LLP |
| | Ray E. Gallo (158903) |
| | rgallo@gallo-law.com |
| 12 | Dominic R. Valerian (240001) |
| | dvalerian@gallo-law.com |
| 13 | 1299 Fourth St., Suite 505 |
| | San Rafael, CA 94901 |
| 14 | Telephone: 415.257.8800 |
| 15 | *Attorneys for Plaintiffs* |

1   Dated: July 21, 2017      Respectfully submitted,

2          By: _/s/ Michael W. Sobol_

3          LIEFF CABRASER HEIMANN
         & BERNSTEIN, LLP
3          Michael W. Sobol (194857)

4          msobol@lchb.com
         275 Battery Street, 29th Floor

5          San Francisco, CA 94111-3339
         Telephone: (415) 956-1000

6          Facsimile: (415) 956-1008

7          CARNEY BATES & PULLIAM, PLLC
         Joseph Henry ("Hank") Bates (167688)

8          519 W. 7th Street
         Little Rock, AR 72201

9          Telephone: (501) 312-8500
         Fax: (501) 312-8505

10

11          GALLO LLP
         Ray E. Gallo (158903)
         rgallo@gallo-law.com

12          Dominic R. Valerian (240001)
         dvalerian@gallo-law.com

13          1299 Fourth St., Suite 505
         San Rafael, CA 94901

14          Telephone: 415.257.8800

15          *Attorneys for Plaintiffs*

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES .................................................. 1

I.      INTRODUCTION ................................................................................ 1

II.     OVERVIEW OF THE LITIGATION .................................................... 3

        A.      Procedural History ................................................................ 3

        B.      Discovery ............................................................................... 4

        C.      Settlement ............................................................................... 5

III.    THE PROPOSED SETTLEMENT AND SCHEDULE OF EVENTS ............ 5

        A.      Summary of the Settlement Terms ......................................... 5

        B.      Proposed Schedule of Events ................................................ 7

        A.      Applicable Legal Standards .................................................. 8

        B.      Certification of the Proposed Settlement Class is Appropriate ............. 8

                1.      Rule 23(a) is Satisfied. .................................................. 8

                        a.      The Settlement Classes are Too Numerous to Permit Joinder ........ 8

                        b.      This Action Presents Common Questions of Law or Fact ............. 9

                        c.      Plaintiffs' Claims are Typical of Those of the Settlement Classes ........................ 11

                        d.      Plaintiffs and Their Counsel Will Fairly and Adequately Protect the Interests of the Settlement Class Members ................. 12

                2.      The Requirements of Rule 23(b)(2) are Satisfied ..................... 12

        C.      Preliminary Approval of the Settlement is Appropriate ..................... 13

                1.      The Settlement Falls Within the Range of Possible Approval ................. 14

                2.      The Settlement is the Product of Arm's-Length Negotiations After a Thorough Investigation, Without a Trace of Collusion ............................ 16

                3.      The Recommendation of Experienced Counsel Favors Approval ........... 17

        D.      The Proposed Form of Notice and Notice Plan are Appropriate and Should be Approved ..................... 18

        CONCLUSION .................................................................................... 20

**CASES**

*Armstrong v. Davis,*
  275 F.3d 849 (9th Cir. 2001)................................................................. 11

*Arnott v. U.S. Citizenship & Immigration Services,*
  290 F.R.D. 579 (C.D. Cal. Oct. 22, 2012) ............................................ 9

*Backhaut v. Apple Inc.,*
  148 F. Supp. 3d 844 (N.D. Cal. 2015) .................................................. 15

*Campbell v. Facebook Inc.,*
  315 F.R.D. 250 (N.D. Cal. 2016) .......................................................... 13

*Churchill Village, L.L.C. v. Gen. Elec.,*
  361 F.3d 566 (9th Cir. 2004) ................................................................. 13

*Class Plaintiffs v. City of Seattle,*
  955 F.2d 1268 (9th Cir. 1992) ......................................................... 13, 16

*Ellis v. Naval Air Rework Facility,*
  87 F.R.D. 15 (N.D. Cal. 1980) .............................................................. 16

*Hanlon v. Chrysler Corp,*
  150 F.3d 1011 (9th Cir. 1998) ..................................................... 9, 12, 13

*Hendricks v. Starkist Co,*
  No. 13-cv-00729-HSG, 2015 U.S. Dist. LEXIS 96390
  (N.D. Cal. July 23, 2015)................................................................. 14, 19

*In re Heritage Bond Litig.,*
  2005 U.S. Dist. LEXIS 13555 (C.D. Cal. June 10, 2005) .................... 16

*In re Juniper Networks Sec. Litig.,*
  264 F.R.D. 584 (N.D. Cal. 2009)........................................................... 11

*In re Yahoo Mail Litig.,*
  No. 13-cv-4980-LHK, 2016 WL 4474612 (N.D. Cal. Aug. 25, 2016)............... 16, 18

*In re Yahoo Mail Litig.,*
  308 F.R.D. 577 (N.D. Cal. 2015)............................................... 9, 10, 13

*Jordan v. County of Los Angeles,*
  669 F.2d 1311 (9th Cir. 1982), *vacated on other grounds*, 459 U.S. 810 (1982)................. 9, 11

*Knight v. Red Door Salons, Inc.,*
  2009 U.S. Dist. LEXIS 11149 (N.D. Cal. Feb. 2, 2009)........................ 17

*Konop v. Hawaiian Airlines, Inc.,*
  302 F.3d 868 (9th Cir. 2002).................................................................. 15

*Linney v. Cellular Alaska Partnership*,
  1997 WL 450064 (N.D. Cal. July 18, 1997) ............................................................... 17

*Lyon v. United States Immigration and Customs Enf't*,
  300 F.R.D. 628 (N.D. Cal. 2014) ............................................................................. 18

*Newman v. Stein*,
  464 F.2d 689 (2d Cir. 1972) ..................................................................................... 15

*Noel v. Hall*,
  568 F.3d 743 (9th Cir. 2009) .................................................................................... 15

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985) .................................................................................................. 19

*Pilkington v. Cardinal Health, Inc.*,
  516 F.3d 1095 (9th Cir. 2008) .................................................................................. 13

*Rodriguez v. West Publishing Corp.*,
  563 F.3d 948 (9th Cir. 2009) .................................................................................... 15

*Spokeo v. Robbins*,
  136 S. Ct. 1540 (2016) ............................................................................................... 3

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) .................................................................................... 12

*Sueoka v. United States*,
  101 F. App'x 649 (9th Cir. 2004) .............................................................................. 9

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011) ......................................................................................... 9, 18

**STATUTES**

18 U.S.C. § 2511(1)(a) ................................................................................................. 10

Cal. Pen. Code § 631(a) ........................................................................................... 9, 10

Class Action Fairness Act,
  28 U.S.C. § 1715 ...................................................................................................... 19

**RULES**

Fed. R. Civ. P. 23(a)(1) ................................................................................................ 8

Fed. R. Civ. P. 23(a)(3) .............................................................................................. 11

Fed. R. Civ. P. 23(b)(2) ........................................................................................ 13, 18

Fed. R. Civ. P. 23(c)(2) .............................................................................................. 18

Fed. R. Civ. P. 23(e)(2) .............................................................................................. 13

**TREATISES**

4 Newberg § 11.25 ....................................................................................................... 14

4 Newberg § 11.41 ....................................................................................................... 16

4 Newberg § 3.10 ........................................................................................................... 9

4 Newberg on Class Actions (4th ed. 2002),
    § 11.22 *et seq.* ........................................................................................................ 8

Manual for Complex Litigation (Fed. Jud. Center, 4th Ed. 2004), § 21.63 .............................. 8, 14

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Plaintiffs and Defendant Google Inc. ("Google") have reached a settlement (the "Settlement") to resolve the above-captioned action (the "Action"). Following the Court's order on March 15, 2017 denying the parties' first motion for preliminary settlement approval (ECF No. 71, the "Order"), the parties returned to litigation and discovery and concurrently negotiated the revised Settlement attached as Exhibit 1 to the Joint Declaration of Hank Bates, Michael Sobol, and Ray Gallo ("Joint Decl.").

The Settlement advances the privacy of Class Members' electronic communications and addresses the specific concerns identified in the Order and the Court's prior comments and rulings in the case. It would enjoin Google from any and all processing of email content for "Advertising Purposes" prior to the point when the Gmail user can retrieve the email in his or her Gmail mailbox ("pre-delivery processing").  "Advertising Purposes" means for the purpose of serving advertisements, including advertisements served in Gmail and in other Google products and services. "Advertising Purposes" includes the creation of user models for the purpose of serving advertising.  Further, the Settlement enjoins Google from using information it obtains from automated pre-delivery processing for Advertising Purposes, even if the information is also used for a non-Advertising Purpose.  This means that the "dual purpose" processing that would have been allowed under the prior proposed settlement (that is, processing done for both Advertising Purposes and non-Advertising Purposes like spam detection) will no longer be permitted under the current proposed Settlement.

As the parties advised the Court in their June 28, 2017 Case Management Statement (ECF No. 76), Google also will stop processing the contents of emails after they are stored in Gmail user's inboxes for Advertising Purposes, a business practice change that Google will implement independently of the Settlement, but which, consistent with its spirit and its terms, enhances the injunctive relief obtained here on behalf of the Settlement Class.

Google has agreed to bear the costs of administering the Settlement, including any attorneys' fees and expenses and Service Awards to the Class Representatives that may be

1   awarded by the Court, and a robust and far-reaching Notice program to advise the Settlement

2   Class of this litigation and the Settlement.  The proposed Internet and website media notice

3   campaign will disclose to Settlement Class members the scope and limitations of Google's

4   processing of the electronic communications they send to Gmail users, along with their legal

5   rights and options, including their objection and exclusion rights.  The parties have proposed that

6   KCC Class Action Services, LLC ("KCC") serve as the Settlement Administrator.

7        In exchange for the injunctive relief achieved by the Settlement, Settlement Class

8   members would release their claims for injunctive and non-monetary equitable relief only,

9   specifically retaining any claims for monetary relief under CIPA and ECPA.

10       The Settlement resulted from extensive arm's-length negotiations between the parties, and

11   specific guidance from the Court. Prior to the first motion for preliminary approval, settlement

12   negotiations spanned over two months and included two mediation sessions before respected and

13   skilled mediator, Randall Wulff.  Since March of 2017, the parties continued to engage in arm's-

14   length negotiations.  In parallel, adversarial discovery has continued (and continues through the

15   present) for purposes of prosecuting the Action.

16       Class Counsel advocated vigorously for Class Members. They have researched the law

17   and the facts involved in this case, reviewed and analyzed over 233,000 pages of documents

18   produced by Google, including by conducting a targeted and meaningful review of more than

19   103,000 pages of documents produced since the Court's March 15 Order.  They have prior

20   litigation experience applying CIPA and ECPA in varied factual contexts, have analyzed

21   deposition testimony from key Google employees from other litigation, and now have also taken

22   the deposition of a key Google employee and a corporate designee to ensure that the proposed

23   injunction addresses Google's current practices. Class Counsel had a firm understanding of both

24   the strengths and weaknesses of Plaintiffs' claims, the technical details of Gmail's email delivery

25   process and targeted advertising processes and Google's potential defenses when approaching

26   settlement negotiations. Both sides were well-represented by experienced and informed counsel

27   who represented their respective clients fully and zealously.

28       In sum, the Settlement requires Google to make significant business practice changes that

will benefit Class Members now and prospectively, without the inherent risks of continued litigation and without requiring Class Members to release any claims they may have for monetary relief. The Settlement was only reached after months of discovery and arm's-length negotiations and enjoys the support of a neutral mediator who had an integral part in the settlement negotiations. Accordingly, the Settlement falls within the "range of reasonableness" and satisfies the criteria for preliminary approval.

## II.    OVERVIEW OF THE LITIGATION

### A.    Procedural History

Plaintiff Daniel Matera, on behalf of himself and a putative class, filed this Action September 4, 2015. (ECF No. 1). The Complaint alleged that Google applies automated processing to intercept, extract, read, and use the email contents of individuals who do not have email accounts with Google ("non-Gmail" users)—but who exchange email messages with Gmail accountholders—for use in advertising in violation of the California Invasion of Privacy Act, Cal. Pen. Code §§ 630, *et seq.* ("CIPA") and the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510, *et seq.* ("ECPA").

On October 29, 2015, Google concurrently filed a Motion to Dismiss the Complaint (ECF No. 20) and a Motion to Stay (ECF No. 21) in light of the Supreme Court's then-pending opinion in *Spokeo v. Robbins*, 136 S. Ct. 1540 (2016) ("*Spokeo*"). In response, on December 4, 2015, Plaintiffs filed an Opposition to Google's Motion to Dismiss (ECF No. 29) and an Opposition to Google's Motion to Stay (ECF No. 30). The Court granted Google's Motion to Stay. (ECF No. 36). Following the issuance of the *Spokeo* opinion on May 16, 2016, the parties provided additional, supplemental briefing on the opinion's impact, if any, on Plaintiff Matera's Article III standing (ECF Nos. 41-42, 45-46).

On August 12, 2016, the Court issued an Order Denying Google's Motion to Dismiss as to the Merits of Plaintiff's Claims (ECF No. 49). Separately, on September 23, 2016, the Court issued an Order Granting in Part and Denying in Part Defendant's Motion to Dismiss Based on Lack of Standing (ECF No. 54), which granted, with prejudice, Google's motion to dismiss

1    Plaintiff Matera's claim for an injunction as it relates to Google Apps for Education,[2] but which

2    denied the remainder of Google's motion.

3         Subsequently, on October 17, 2016, Plaintiff Matera filed an Amended Complaint (ECF

4    No. 58), adding additional Named Plaintiff Susan Rashkis, eliminating allegations pertaining to

5    Google Apps, and refining and clarifying allegations relating to technical aspects of Google's

6    challenged practices. On October 21, 2016, Google filed its Answer to the Amended Complaint

7    (ECF No. 59).

8         **B.    Discovery**

9         Plaintiffs propounded initial sets of Interrogatories and Requests for Production on June

10   13, 2016, and Google propounded commensurate discovery on July 27, 2016. Throughout the

11   summer of 2016, Google produced over 130,000 pages of documents, which Plaintiffs carefully

12   reviewed and analyzed. These productions included relevant deposition testimony, interrogatory

13   answers, and documents produced in the prior multi-district litigation challenging the same

14   practices as the instant litigation, *In re Google Inc. Gmail Litig*., No. 13-MD-02430-LHK (N.D.

15   Cal.) ("*In re Gmail*"), as well as documents produced in response to targeted discovery regarding

16   Google's email processing practices, the various servers and devices used to process emails,

17   points of time during the email delivery process that Google processes emails, and the purposes

18   for which Google processes emails. Following the hearing on March 9, 2017, Google

19   supplemented its responses to Plaintiffs' Requests for Production, and to date has produced over

20   103,000 new pages of documents as part of a rolling production anticipated to be substantially

21   completed by the end of August 2017.  Additionally, Plaintiffs served Requests for Admission and

22   a Second Set of Interrogatories on May 17, 2017, to which Google responded on June 20, 2017.

23

---

24   [2] Plaintiffs initially challenged automated scanning practices associated with each of Google's
     email platforms: Gmail, Google Apps for Education, and Google Apps for Business. *See,*
25   Complaint (ECF No. 1). The Court determined that "Google ceased intercepting and scanning, for
     advertising purposes, the contents of emails processed via Google Apps for Education" (ECF No.
26   54 at 27).  In addition, although the Court denied Google's motion as it relates to Google Apps
     for Work, the Court noted that "the Court has learned that Google publicly represents that Google
27   no longer intercepts, scan and analyzes for advertising purposes emails transmitted via Google
     Apps for Work" (*id.* at 32).  Consequently, as noted above, the Amended Complaint eliminated
28   allegations related to Google Apps for Education and Google Apps for Work.

**C.     Settlement**

The parties participated in mediations before the highly respected mediator, Randall Wulff on August 31, 2016 and November 4, 2016. Those mediations resulted in a proposed settlement, executed on November 22, 2016, which was not granted preliminary approval. ECF No. 71. Subsequently, with the benefit of guidance from the Court, the parties resumed discovery, engaged in further negotiations regarding the remaining terms of the Settlement, and developed a comprehensive revised set of settlement papers, including the Settlement Agreement (Joint Decl. Ex. 1), the proposed Notice, and the proposed orders submitted herewith. The revised Settlement was executed by all parties on July 21, 2017.

**III.     THE PROPOSED SETTLEMENT AND SCHEDULE OF EVENTS**

**A.     Summary of the Settlement Terms**

The Settlement requires Google to make significant technical changes to its processing of email messages that will benefit both a Class of California residents ("CIPA Class") and a nationwide Class ("ECPA Class"), defined as follows:

> CIPA Class:
> All natural persons in the State of California who have never established a Gmail account with Google, and who have sent unencrypted emails to individuals with Gmail accounts.

> ECPA Class:
> All natural persons in the United States who have never established a Gmail account with Google, and who have sent unencrypted emails to individuals with Gmail accounts.

All members of both the CIPA Class and ECPA Class were subject to Google's practice of processing information obtained from electronic communications in transmission to or from Google for Advertising Purposes. Pursuant to the terms of the Settlement, Google has agreed to the entry of a stipulated injunction—to be effective for not less than three years commencing one-hundred eighty (180) days after the Court enters final judgment[3]—addressing such processing, as

---

[3] In the Settlement Agreement, Google affirmatively represents "that it has no present intention of eliminating the technical changes [required by the Settlement] after the expiration of the term of the injunction. Google believes, however, that the architecture and technical requirements for providing email services on a large scale evolve and change dynamically and that a longer commitment may hinder Google's ability to improve and change its architecture and technology to meet changing demands." Settlement Agreement, ¶ 40(d).

follows:

### i. <u>Incoming Email Sent to a Gmail User</u>

Google will cease all processing of email content that it applies prior to the point when the Gmail user can retrieve the email in his or her mailbox using the Gmail interface ("pre-delivery processing") and that is used for Advertising Purposes. No information resulting from pre-delivery processing of email content[4] will be used for any Advertising Purpose. In addition, information from pre-delivery processing of email content that occurred before the date of this Agreement or that occurs before the stipulated injunction goes into effect will not be used for Advertising Purposes once the stipulated injunction commences. Settlement Agreement, ¶ 40(a).

### ii. <u>Outgoing Email Sent to a non-Gmail User</u>

Although Google does not currently process outgoing emails for Advertising Purposes, Google will continue to refrain from processing of email content prior to the point when the Gmail user can retrieve the outgoing email in his or her mailbox using the Gmail interface ("outbound processing") that is used for Advertising Purposes and from using information from outbound processing of email content for any Advertising Purposes. Settlement Agreement, ¶ 40(b).

### iii. <u>Technical Implementation</u>

Google will implement architectural changes necessary to effectuate the Settlement terms by either eliminating altogether certain scanning processes during email delivery or ensuring that the outputs created from those processes are not used for any Advertising Purposes. Google currently anticipates that it will apply the former approach of eliminating scanning processes that are currently applied in the delivery process and used solely for Advertising Purposes. Upon execution of the required changes, Google will deliver a written certification under oath to Class Counsel stating that it has made the technical changes required to comply with the stipulated injunction. Settlement Agreement, ¶ 40(f). Moreover, Google will provide Plaintiffs discovery

---

[4] The settlement focuses on the practices challenged in Plaintiffs' Amended Complaint. The settlement prohibitions will not prevent Google from processing incoming and outgoing email for purposes other than Advertising Purposes (such as the prevention of spam or malware), but it will prevent Google from using for Advertising Purposes any information resulting from such processing, at any time.

1    sufficient to enable Plaintiffs to verify the required technical changes. Settlement Agreement, ¶

2    40(e).

3          The Settlement further provides that Settlement Administrative costs and any award of

4    attorneys' fees and costs and/or service awards to the Class Representatives will be paid by

5    Google. Google has agreed to pay (1) a reasonable attorneys' fee award as approved by the Court,

6    in an amount not to exceed $2,200,000 in fees and up to $100,000 for Class Counsel's actual out-

7    of-pocket expenses, and (2) service awards in the amount of $2,000 to each of the Class

8    Representatives. Settlement Agreement, ¶¶ 64-67.

9          In exchange for the foregoing consideration, the Action will be dismissed with prejudice

10   upon final approval of the Settlement, and the Class Members will thereby release all claims

11   which have been or could have been asserted against the Google Releasees, as that term is defined

12   in the Settlement Agreement, by any member of the Classes in this Action, with the caveat that

13   the release provided under the Settlement Agreement extends solely to claims for declaratory,

14   injunctive, and non-monetary equitable relief. No Class Member, with the exception of the

15   Named Representatives, will release any claim for monetary damages. The specific terms of the

16   release are set forth in the Settlement Agreement at ¶ 41.

17       **B.**    **Proposed Schedule of Events**

18         Consistent with the provisions of the Settlement, Plaintiffs respectfully propose the

19   following schedule for the various Settlement events:

20

| Date | Event |
|---|---|
| Notice of Settlement to be Disseminated | 21 days after the entry of the Court's Order of Conditional Class Certification and Preliminary Approval of Settlement |
| Class Counsel's motions for final approval and for attorneys' fees, costs, and service awards | 60 days after the entry of the Court's Order of Conditional Class Certification and Preliminary Approval of Settlement |
| Objection Deadline | 90 days after Dissemination of Notice |
| Deadline for Parties to File a Written Response to Any Comment or Objection Filed by a Class Member | 100 days after Dissemination of Notice |
| Settlement Administrator affidavit of compliance with notice requirements | 14 days before Final Approval Hearing |
| Final Approval Hearing | August 31, 2017 at 1:30 p.m., or as soon thereafter as is convenient for the Court |

# IV. LEGAL ANALYSIS

## A. Applicable Legal Standards

Federal Rule of Civil Procedure 23 requires judicial approval of the compromise of claims brought on a class basis. The procedure for judicial approval of a proposed class action settlement is well established and is comprised of the following:

(1) Certification of a settlement class and preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval.

(2) Dissemination of notice of the proposed settlement to the affected class members.[5]

(3) A formal fairness hearing, or final settlement approval hearing, at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement are presented.

*See* Manual for Complex Litigation (Fed. Jud. Center, 4th Ed. 2004), § 21.63 ("Manual"). This procedure safeguards class members' procedural due process rights and enables the Court to fulfill its role as guardian of class interests. *See* Newberg on Class Actions, § 11.22 *et seq.* (4th ed. 2002) ("Newberg").

At this juncture and with this motion, Plaintiffs respectfully request that the Court take the first steps in the settlement approval process by granting preliminary approval of the proposed Settlement, certifying the proposed Classes for settlement purposes, and directing that notice be disseminated to the Class Members pursuant to the proposed notice program.

## B. Certification of the Proposed Settlement Class is Appropriate

Plaintiffs contend, and Google does not dispute, for settlement purposes only, that the proposed classes meet the requirements for class certification under Rule 23(a) and Rule 23(b)(2).

### 1. Rule 23(a) is Satisfied.

#### a. The Settlement Classes are Too Numerous to Permit Joinder

A case may be certified as a class action only if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). While there is no fixed rule, numerosity is

---

[5] As discussed in greater detail in Section D, *infra*, mandatory notice is not required for classes certified under Rule 23(b)(2), however the parties have agreed to put into place an extensive Notice Plan, consisting of 100,000,000 unique online impressions aimed at reaching Class Members.

generally presumed when the potential number of class members reaches forty (40). *Jordan v. County of Los Angeles*, 669 F.2d 1311, 1319 (9th Cir. 1982), *vacated on other grounds*, 459 U.S. 810 (1982). In addition, "[b]ecause plaintiffs seek injunctive and declaratory relief, the numerosity requirement is relaxed and plaintiffs may rely on [ ] reasonable inference[s] arising from plaintiffs' other evidence that the number of unknown and future members of [the] proposed []class . . . is sufficient to make joinder impracticable." *Arnott v. U.S. Citizenship & Immigration Services*, 290 F.R.D. 579, 586 (C.D. Cal. 2012) (all but last alteration in original) (quoting *Sueoka v. United States*, 101 F. App'x 649, 653 (9th Cir. 2004)).

Here, numerosity is easily inferred. In a recent earnings call, Google announced that it has over one billion monthly active Gmail users.[6] If even one percent of that user base exchanged an email with a unique person in the United States who used an email service other than Gmail, the ECPA Class would contain ten million members. Assuming that approximately 10 percent of such persons reside in California, the CIPA Class would contain one million members. Accordingly, the Settlement Classes are sufficiently numerous to satisfy Rule 23(a)(1).

### b.    This Action Presents Common Questions of Law or Fact

Rule 23(a)(2) requires that there be one or more questions common to the class. *See Hanlon v. Chrysler Corp*, 150 F.3d 1011, 1019 (9th Cir. 1998); *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011); 4 Newberg § 3.10. Plaintiffs "need only show the existence of a common question of law or fact that is significant and capable of classwide resolution." *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 592 (N.D. Cal. 2015) (citations omitted). Plaintiffs easily meet this standard, as several significant common questions of law are fact exist, including the following:

(1)    Whether Google's acts and practices complained of herein amount to an intentional and unauthorized connection to an electronic communication, in violation of Cal. Pen. Code § 631(a) (on behalf of the CIPA Class);

---

[6] Frederic Lardinois, "Google Now Has More Than 1B Monthly Active Users," TechCrunch (Feb. 1, 2016) (available at https://techcrunch.com/2016/02/01/gmail-now-has-more-than-1b-monthly-active-users/).

(2)      Whether Google's acts and practices complained of herein amount to the willful and unauthorized reading, attempting to read, or learning the contents or meaning of Plaintiffs' and Class Members' in-transit communications, in violation of Cal. Pen. Code § 631(a) (on behalf of the CIPA Class);

(3)      Whether Google used or attempted to use any information acquired in violation of Cal. Pen. Code § 631(a) (on behalf of the CIPA Class);

(4)      Whether Google intentionally intercepted, endeavored to intercept, or procured any other person to intercept or endeavor to intercept Plaintiffs' and Class Members' electronic communications in violation of 18 U.S.C. § 2511(1)(a) (on behalf of the ECPA Class);

(5)      Whether Google acquired any "contents" of Plaintiffs' and Class Members' electronic communications, within the meaning of 18 U.S.C. § 2510(8)  (on behalf of the ECPA Class);

(6)      Whether Plaintiffs' and Class Members' emails were "electronic communications" within the meaning of 18 U.S.C. § 2510(12) (on behalf of the ECPA Class);

(7)      Whether Google used an "electronic, mechanical, or other device," within the meaning of 18 U.S.C. § 2510(5) (on behalf of the ECPA Class); and

(8)      Whether Google intentionally used, or endeavored to use, the contents of Plaintiffs' and Class Members' electronic communications, knowing or having reason to know that the information was obtained in violation of 18 U.S.C. § 2511(1)(a) (on behalf of the ECPA Class).

The above questions will generate classwide answers that are central to resolving the Action. For example, whether Google processed non-Gmail users' emails before a Gmail user could access that email, as opposed to when those emails have already been received by the recipient, goes towards a key element of Plaintiffs' claims. *See In re Yahoo Mail Litig.*, 308 F.R.D. at 591. Commonality is therefore satisfied.

**c.** **Plaintiffs' Claims are Typical of Those of the Settlement Classes**

Rule 23(a)(3) requires that "the claims and defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality does not require total identity between representative plaintiffs and class members. *Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001). Rather, typicality is satisfied so long as the named plaintiffs' claims stem "from the same event, practice, or course of conduct that forms the basis of the class claims, and is based upon the same legal theory." *Jordan*, 669 F.2d at 1322. *See also In re Juniper Networks Sec. Litig.*, 264 F.R.D. 584, 589 (N.D. Cal. 2009) ("representative claims are 'typical' if they are reasonably co-extensive with those of absent class members") (citation omitted).

Here, the named Plaintiffs' claims stem from the same common course of conduct as the claims of the Class Members. Plaintiffs and the Classes sent emails to Gmail users. Google processed the content of those emails, in part, for the purposes of delivering targeted advertising or creating advertising user models. Plaintiffs and the Class Members contend that they did not consent to the Google's processing of their emails. Like all Class Members, Plaintiffs suffer a substantial risk of repeated injury in the future: Although Plaintiffs contend they have never consented to having their emails processed by Google for the purpose of targeted advertising, and have never had any mechanism by which to opt out of such practices, they have continued to— and must continue to—communicate with Gmail users via email. Indeed, by virtue of the ubiquity of Gmail, and the fact that tens if not hundreds of millions of Gmail accounts presently exist, Plaintiffs and Class Members cannot avoid sending emails to Gmail users now and in the future. Because the conduct complained of herein is systemic, Plaintiffs and all Class Members face substantial risk of the same injury in the future.

Google's conduct is common to all Class Members and results in injury to all Class Members. Thus, injunctive and declaratory relief will apply to all Plaintiffs and Class Members equally. Plaintiffs' claims are therefore typical of those of the Class Members, and Rule 23(a)(3) is satisfied.

### d. Plaintiffs and Their Counsel Will Fairly and Adequately Protect the Interests of the Settlement Class Members

Rule 23(a)(4) requires that the representative plaintiffs will "fairly and adequately" protect the interests of the class. The two-prong test for determining adequacy is: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members?, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003); (citing *Hanlon*, 150 F.3d at 1020). Both prongs are satisfied here.

First, the named Plaintiffs' interests are aligned with, and are not antagonistic to, the interests of the Settlement Class Members. Indeed, the named Plaintiffs and the Settlement Class Members, as non-Gmail accountholders, are equally interested in ensuring that Google's treatment of and practices regarding the content of their private email communications are conducted in compliance with ECPA and CIPA. *See Hanlon*, 150 F.3d at 1021 (adequacy satisfied where "each . . . plaintiff has the same problem"). Accordingly, the named Plaintiffs will fairly and adequately protect the interests of all Settlement Class Members.

Second, Class Counsel have extensive experience litigating and settling class actions, including consumer cases throughout the United States. *See* Joint Decl., ¶¶ 22-29. Class Counsel are well qualified to represent the Settlement Class. In addition, Class Counsel have vigorously litigated this action in order to protect the interests of the Settlement Class and had a wealth of information at their disposal before entering into settlement negotiations, which allowed Class Counsel to adequately assess the strengths and weaknesses of Plaintiffs' case and balance the benefits of settlement against the risks of further litigation. *See* Joint Decl., ¶¶ 11-13, 30-31. Thus, Class Counsel have and will continue to fairly and adequately protect the interests of all Settlement Class Members.

### 2. The Requirements of Rule 23(b)(2) are Satisfied

In addition to the requirements of Rule 23(a), at least one of the prongs of Rule 23(b) must be satisfied. Here, the proposed Settlement Classes satisfy Rule 23(b)(2), which permits a class action if the Court finds that "the party opposing the class has acted or refused to act on grounds

that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

Under identical circumstances, this Court has held that the requirements of Rule 23(b)(2) are satisfied where "all emails sent from and to [an electronic communication service provider's] subscribers are subject to the same interception and scanning processes." *In re Yahoo Mail Litig.*, 308 F.R.D. at 598 ("*Yahoo*"). Like this Action, *Yahoo* dealt with an email service provider's common policy and practice of processing emails exchanged between Yahoo's email subscribers and members of the class of non-Yahoo email users before the Yahoo user could access that email in his or her mailbox. *Id.* Where, as here, the plaintiffs sought "uniform relief" addressing commonly- and consistently-applied message-scanning practices, the Court held that the requirements of Rule 23(b)(2) were satisfied. *Id.* at 600. *See also Campbell v. Facebook Inc.*, 315 F.R.D. 250, 269-70 (N.D. Cal. 2016) (same) (citing *Yahoo*, 308 F.R.D. at 598-601). The same is true here, and Rule 23(b)(2) is accordingly satisfied.

## C. Preliminary Approval of the Settlement is Appropriate

Public policy "strong[ly] . . . favors settlements, particularly where complex class action litigation is concerned." *Pilkington v. Cardinal Health, Inc.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

"[T]he decision to approve or reject a settlement is committed to the sound discretion of the trial judge because he is exposed to the litigants and their strategies, positions, and proof." *Hanlon*, 150 F.3d at 1026. In exercising such discretion, the Court should give "proper deference to the private consensual decision of the parties . . . [T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon*, 150 F.3d at 1027. *See also* Fed. R. Civ. P. 23(e)(2).

The proposed Settlement here satisfies the standard for preliminary approval because (a) it

is within the range of possible approval; (b) there is no reason to doubt its fairness because it is the product of hard-fought, arm's-length negotiations between the parties and was only reached after a thorough investigation by Plaintiffs' Counsel of the facts and the law; and (c) Plaintiffs and Class Counsel believe it is in the best interest of the Settlement Classes.

### 1.   The Settlement Falls Within the Range of Possible Approval

To grant preliminary approval of the proposed Settlement, the Court need only find that it falls within "the range of reasonableness." 4 Newberg § 11.25. The Manual for Complex Litigation characterizes the preliminary approval stage as an "initial evaluation" of the fairness of the proposed settlement made by the court on the basis of written submissions and informal presentation from the settling parties. Manual § 21.632. Evaluating where a proposed settlement falls within this spectrum entails focus "on substantive fairness and adequacy," weighing "plaintiffs' expected recovery . . . against the value of the settlement offer." *Hendricks v. Starkist Co*, No. 13-cv-00729-HSG, 2015 U.S. Dist. LEXIS 96390, at *17-18 (N.D. Cal. July 23, 2015) (quotation omitted).

Here, Plaintiffs sought declaratory, injunctive, and non-monetary equitable relief under CIPA and ECPA. While Google has vigorously opposed such relief, the terms of the Settlement provide just that: Google has agreed to undertake substantial changes to its Gmail architecture, which Plaintiffs contend will bring Google's practices challenged in this litigation into compliance with Plaintiffs' view of both California and Federal wiretapping laws.  Put simply, Google will cease the processing of email content that is done during the Gmail delivery process for Advertising Purposes. Thus, Plaintiffs have achieved their goal in litigating this Action.

In contrast to the tangible, immediate benefits of the Settlement, the outcome of continued litigation and a trial against Google is uncertain and could add years to this litigation. Google has vigorously denied Plaintiffs' allegations of wrongdoing, and, absent settlement, Plaintiffs anticipate Google would defend this action aggressively at multiple, procedural steps prior to trial, including a motion in opposition to class certification and a motion for summary judgment. While Plaintiffs strongly believe in the merits of their case, they recognize that the law is in relative infancy in the context of CIPA's and ECPA's application to email communications, and

this uncertainty presents at least some element of risk at multiple, critical junctures in this Action. For instance, while it is settled that the scanning email content *after* a message's delivery does not violate CIPA and ECPA, the precise contours of "in transit" (and therefore, unlawful) acquisitions of an email's content are far from settled. *Compare e.g., Backhaut v. Apple Inc.*, 148 F. Supp. 3d 844, 849-50 (N.D. Cal. 2015) (granting defendant's motion for summary judgment as to Plaintiffs' ECPA claims as, *inter alia*, "[t]here can be no interception for purposes of the Wiretap Act if the acquisition of the message occurs while the message is in storage, even if it is in temporary storage incidental to the transmission of the communication.") (citing *Konop v. Hawaiian Airlines, Inc*., 302 F.3d 868, n.6 (9th Cir. 2002)) *with In re Carrier IQ, Inc., Consumer Privacy Litig*., 78 F. Supp. 3d 1051, 1081-82 (N.D. Cal. 2015) (distinguishing *Konop* and holding that ("even if . . . the communications at issue in this case were in transitory storage on Plaintiffs' mobile devices (such as the devices' random access memory, cache memory, etc.) when the [the purported interception occurred], it is not at all apparent why there was no "captur[ing] or redirect[ing]" of these communications contemporaneous with their transmission.") (quoting *Noel v. Hall*, 568 F.3d 743, 749 (9th Cir. 2009)).

While Plaintiffs firmly believe in the strength of their claims, and have amassed substantial evidence in support of those claims through the discovery process, there is at least some risk that, absent a settlement, Google might prevail in motion practice, at trial, or on appeal, resulting in no relief for Class Members. This weighs in favor of preliminary approval. *See, e.g., Rodriguez v. West Publishing Corp*., 563 F.3d 948, 966 (9th Cir. 2009) (noting that the elimination of "[r]isk, expense, complexity, and likely duration of further litigation," including, *inter alia*, an "anticipated motion for summary judgment, and . . . [i]nevitable appeals would likely prolong the litigation, and any recovery by class members, for years," which facts militated in favor of approval of settlement.); *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972) ("[I]n any case there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.").

Ultimately, Google has agreed to provide the injunctive relief sought by Plaintiffs on behalf of the Settlement Classes. Namely, Google has agreed to make substantial architectural changes to eliminate pre-delivery scanning for Advertising Purposes. Further, the release obtained by the Google Releasees only extends to Settlement Class Members' claims for declaratory, injunctive, and non-monetary equitable relief. No Settlement Class Member, with the exception of the Named Representatives, will release any claim for damages under CIPA, ECPA or any other cause of action. This Court has held, under analogous circumstances, that such a result obtained on behalf of a class of email users and certified under Rule 23(b)(2) is within the range of possible approval. *In re Yahoo Mail Litig.*, No. 13-cv-04980-LHK (ECF No. 182) (N.D. Cal. Mar. 15, 2016).

In sum, the Settlement provides substantial relief to all Settlement Class Members based on the strengths of their respective claims without delay and is within the range of possible approval, particularly in light of the above risks that Settlement Class Members would face in litigation.

### 2.  The Settlement is the Product of Arm's-Length Negotiations After a Thorough Investigation, Without a Trace of Collusion

"Before approving a class action settlement, the district court must reach a reasoned judgment that the proposed agreement is not the product of fraud or overreaching by, or collusion among, the negotiating parties." *City of Seattle*, 955 F.2d at 1290. Where a settlement is the product of arm's-length negotiations conducted by capable and experienced counsel, the court begins its analysis with a presumption that the settlement is fair and reasonable. *See* 4 Newberg § 11.41; *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 U.S. Dist. LEXIS 13555, at *32 (C.D. Cal. June 10, 2005); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980).

Here, the Settlement was reached after informed, extensive arm's-length negotiations. First, the Settlement was reached after a thorough investigation into and discovery of the legal and factual issues in the Action. In particular, before filing suit, Class Counsel conducted an extensive investigation into the factual underpinnings of the practices challenged in the Action, as well as the applicable law. In addition to their pre-filing efforts, Class Counsel engaged in an

ongoing factual and legal investigation throughout the pendency of this Action. As part of their continued investigation, Class Counsel reviewed and analyzed hundreds of thousands of pages of documents produced by Google in discovery relating to the key issues in this Action, including, among other things, Google's messaging architecture and profiling capabilities, as well as all of the relevant deposition testimony of Google employees from the *In re Gmail* MDL, and a corporate designee who testified in this action regarding Google's current practices. Joint Decl., ¶ 30.

Second, the Settlement was only reached after the parties participated in two separate mediation sessions before experienced mediator Randall Wulff, which processes included the exchange of detailed, confidential mediation statements and vigorous advocacy on the part of both parties, throughout. Joint Decl., ¶ 14. The Settlement also benefits from direct guidance by the Court at the March 9, 2017 hearing on preliminary approval and in the Order. ECF No. 71. Finally, the Settlement represents the culmination of continued, adversarial discovery and case prosecution.

In sum, the Settlement was reached only after Class Counsel conducted an extensive factual investigation and discovery into the Google's alleged misconduct, including continued investigation to confirm current practices in 2017, and thoroughly researched the law pertinent to Plaintiffs' and Class Members' claims and Google's defenses. Consequently, Class Counsel had a wealth of information at their disposal before finalizing settlement negotiations, which allowed Class Counsel to adequately assess the strengths and weaknesses of Plaintiffs' case and to balance the benefits of settlement against the risks of further litigation. Nothing in the course of the negotiations or in the substance of the proposed Settlement presents any reason to doubt the Settlement's fairness.

### 3. The Recommendation of Experienced Counsel Favors Approval

In considering a proposed class settlement, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Knight v. Red Door Salons, Inc.*, No. 08-01520 SC, 2009 U.S. Dist. LEXIS 11149, at *11 (N.D. Cal. Feb. 2, 2009); *see also Linney v. Cellular Alaska Partnership*, No. C-96-3008 DLJ, 1997 WL 450064, at 5 (N.D. Cal. July 18,

1997). As demonstrated herein and in each respective firm's resume, Class Counsel have extensive experience litigating and settling consumer class actions and other complex matters (Joint Decl., ¶¶ 22-29) and have conducted an extensive investigation into the factual and legal issues raised in this Action (Joint Decl., ¶¶ 11-13, 30). Using their experience and knowledge, Class Counsel have weighed the benefits of the Settlement against the inherent risks and expense of continued litigation, and they believe that the proposed Settlement is fair, reasonable, and adequate. Joint Decl., ¶ 31. The fact that qualified and well-informed counsel endorse the Settlement as being fair, reasonable, and adequate weighs in favor of approving the Settlement.

### D.   The Proposed Form of Notice and Notice Plan are Appropriate and Should be Approved

The Settlement seeks only declaratory, injunctive, and non-monetary equitable relief, and Plaintiffs seek certification of Settlement Classes pursuant to Fed. R. Civ. P. 23(b)(2). Accordingly, notice is discretionary, not mandatory. Fed. R. Civ. P. 23(c)(2) ("For any class certified under Rule 23(b)(1) or (b)(2), the court *may* direct appropriate notice to the class.") (emphasis added)); *Wal-Mart*, 131 S. Ct. at 2558 ("The Rule provides no opportunity for . . . (b)(2) class members to opt out, and does not even oblige the District Court to afford them notice of the action."); *In re Yahoo Mail Litig.*, No. 13-cv-04980-LHK, 2016 WL 4474612, at *5 (N.D. Cal. Aug. 25, 2016) ("[B]ecause Rule 23(b)(2) provides only injunctive and declaratory relief, 'notice to the class is not required.'") (quoting in part *Lyon v. United States Immigration and Customs Enf't*, 300 F.R.D. 628, 643 (N.D. Cal. 2014)).

Nevertheless, the parties have agreed to provide notice to members of the Settlement Classes in accordance with the Notice Plan attached as Exhibit C to the Settlement Agreement. Under those terms, notice shall be published via the Settlement Administrator, KCC, who will place banner ads on a collection of popular websites. KCC will ensure these ads make 100,000,000 unique impressions (*i.e.,* views of the ad) upon Internet users, with no single user receiving more than three impressions. The banner ads will direct Internet users, via a link, to the Settlement Website, which will provide fulsome notice to Class Members. The notice on the Settlement Website clearly and concisely apprises the reader of the terms of the Settlement and

the date and manner by which any Class Member may object.[7] Specifically, the notice succinctly

describes the settlement in plain language as follows:

**Summary of the Proposed Settlement**

> In the Settlement, Google has agreed to cease all automated scanning of emails sent to Gmail accounts for advertising purposes while the emails are in transmission prior to delivery to the Gmail user's inbox. This includes elimination of any scanning to create user profiles for advertising purposes. The Settlement defines advertising purposes as "for the purpose of serving advertisements, including advertisements served in Gmail and in other Google products and services. 'Advertising Purposes' includes the creation of user models for the purpose of serving advertising." Although Google does not currently conduct any scanning for advertising purposes related to outbound emails sent by Gmail users, Google has agreed to refrain from initiating any scanning for advertising purpose of outbound emails. These prohibitions will remain in place for three years.

> Google also is making a business-related change to the Gmail service, as part of which, Google will no longer scan the contents of emails sent to Gmail accounts for advertising purposes, whether during the transmission process or after the emails have been delivered to the Gmail user's inbox. These changes are not subject to the three-year time period or other terms of the Settlement. Google views these additional changes as independent of the Settlement, but as consistent with and evidencing Google's commitment to the Settlement.

Joint Decl. Ex. 1-A (Notice).

The cost of providing this notice is estimated to be $123,500. A copy of the proposed

notice is attached as Exhibit B to the Settlement Agreement, and is sufficient to inform Class

Members of the proposed Settlement and their right to object to it.[8]

In short, the form and manner of notice proposed here fulfill all of the requirements of

Rule 23 and due process, and is "reasonably calculated, under all circumstances, to apprise

interested parties of the pendency of the action and afford them an opportunity to present their

objections." *Hendricks*, 2015 U.S. Dist. LEXIS 96390, at *24 (quoting *Phillips Petroleum Co. v.*

---

[7] The parties propose to give Class Members 90 days from the date that the Notice is initially disseminated to object to the Settlement.

[8] Google will also provide notice to appropriate federal and California government officials in compliance with the Class Action Fairness Act, 28 U.S.C. § 1715. *See* Settlement Agreement at ¶ 55.

*Shutts*, 472 U.S. 797, 812 (1985)). Plaintiffs request that the Court direct that notice of the proposed Settlement be given to the Settlement Class.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court do the following:

a) Grant preliminary approval of the proposed Settlement Agreement entered into between the parties;

b) Certify the Settlement Classes as defined in the Settlement;

c) Appoint Plaintiffs Daniel Matera and Susan Rashkis as Class Representatives of the proposed Classes;

d) Appoint Michael W. Sobol of Lieff Cabraser Heimann & Bernstein LLP, Hank Bates of Carney Bates & Pulliam PLLC, and Ray Gallo of Gallo LLP as Class Counsel for the proposed Classes;

e) Approve the parties' proposed notice program, including the proposed form of notice attached as Exhibit B to the Settlement Agreement, and directing that notice be disseminated pursuant to such program;

f) Appoint KCC as Settlement Administrator, and direct KCC to carry out the duties and responsibilities of the Settlement Administrator specified in the Settlement;

g) Stay all non-Settlement related proceedings in the above-captioned case pending final approval of the Settlement; and

h) Set a Fairness Hearing and certain other dates in connection with the final approval of the Settlement.

Dated: July 21, 2017                    Respectfully submitted,

By: */s/ Michael W. Sobol*
LIEFF CABRASER HEIMANN
 & BERNSTEIN, LLP
Michael W. Sobol (194857)
msobol@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

CARNEY BATES & PULLIAM, PLLC
Joseph Henry ("Hank") Bates (CA #167688)
519 W. 7th Street
Little Rock, AR 72201
Telephone: (501) 312-8500
Facsimile: (501) 312-8505

GALLO LLP
Ray E. Gallo (158903)
rgallo@gallo-law.com
Dominic R. Valerian (240001)
dvalerian@gallo-law.com
1299 Fourth St., Suite 505
San Rafael, CA 94901
Telephone: 415.257.8800

*Attorneys for Plaintiffs*