1   Michael W. Sobol (194857)
    msobol@lchb.com
2   LIEFF CABRASER HEIMANN & BERNSTEIN LLP
    275 Battery Street, 29th Floor
3   San Francisco, CA 94111
    Telephone: (415) 956-1000
4
    Hank Bates (167688)
5   hbates@cbplaw.com
    CARNEY BATES & PULLIAM, PLLC
6   519 West 7th St.
    Little Rock, AR 72201
7   Telephone: 501.312.8500
    Facsimile: 501.312.8505
8
    Ray E. Gallo (158903)
9   rgallo@gallo-law.com
    Dominic R. Valerian (240001)
10  dvalerian@gallo-law.com
    GALLO LLP
11  1299 Fourth St., Suite 505
    San Rafael, CA 94901
12  Telephone: 415.257.8800

13  *Attorneys for Plaintiffs and the Proposed Class*

14              UNITED STATES DISTRICT COURT

15             NORTHERN DISTRICT OF CALIFORNIA

16

17

18  DANIEL MATERA and SUSAN          Case No. 5:15-cv-04062 LHK
    RASHKIS, as individuals, and on behalf of
    other persons similarly situated,    **JOINT DECLARATION OF CLASS**
19                                       **COUNSEL IN SUPPORT OF PLAINTIFFS'**
                                         **MOTION FOR PRELIMINARY**
20              Plaintiffs,              **APPROVAL OF CLASS ACTION**
                                         **SETTLEMENT**
21  v.
                                         Date: August 31, 2017
22  GOOGLE, INC.,
                                         Time: 1:30 p.m.
23              Defendant.
                                         Courtroom: 8, 4th Floor
24
                                         Judge: The Hon. Lucy H. Koh
25

26

27

28

Michael W. Sobol, Hank Bates, and Ray Gallo, under penalty of perjury, submit this Joint Declaration in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement ("Joint Declaration"), and declare as follows:

## I.    __INTRODUCTION__

1.      Michael W. Sobol is a partner at Lieff, Cabraser, Heimann & Bernstein, LLP ("LCHB"), Hank Bates is a partner at Carney Bates & Pulliam, PLLC ("CBP"), and Ray Gallo is a partner at Gallo, LLP ("Gallo") (collectively, "Class Counsel").

2.      We are counsel to Plaintiffs Daniel Matera and Susan Rashkis ("Plaintiffs" or "Class Representatives") and the Settlement Classes in the above-captioned case (the "Action").

3.      We submit this Joint Declaration in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, and have personal knowledge of the matters set forth below based on our active participation in all aspects of the prosecution and settlement of this litigation.

4.      Pursuant to the terms of the Settlement, Google has agreed to cease all processing of email content that it applies prior to the point when the Gmail user can retrieve the email in his or her mailbox using the Gmail interface ("pre-delivery processing") and that is used for Advertising Purposes, as defined in the Settlement. No information resulting from pre-delivery processing of email content will be used for any Advertising Purpose.  In addition, information from pre-delivery processing of email content that occurred before the date of this Agreement or that occurs before the stipulated injunction goes into effect will not be used for Advertising Purposes once the stipulated injunction commences.

5.      For outgoing email sent from a Gmail account, Google has agreed that it will continue to refrain from processing of email content before the point when the Gmail user can retrieve the outgoing email in his or her mailbox using the Gmail interface ("outbound processing") that is used for Advertising Purposes and from using information from outbound processing of email content for any Advertising Purpose.

6.      Class Counsel believe that these technical changes are substantial and that these changes, once implemented, will bring the practices by Google challenged in this litigation into compliance with Class Counsels' view of the California Invasion of Privacy Act, Cal. Pen. Code

§§ 630, et seq. ("CIPA"), and the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510, et seq. ("ECPA").

## II.      OVERVIEW OF THE LITIGATION

### A.      Procedural History

7.      Plaintiff Daniel Matera, on behalf of himself and a putative class, filed this Action September 4, 2015. (ECF No. 1). The Complaint alleged that that Google applied automated processing to intercept, extract, read, and use the email contents of individuals who do not have email accounts with Google ("non-Gmail" users)—but who exchange email messages with Gmail accountholders—for use in advertising, in violation of the California Invasion of Privacy Act, Cal. Pen. Code §§ 630, *et seq.* ("CIPA") and the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510, *et seq.* ("ECPA").

8.      On October 29, 2015, Google concurrently filed a Motion to Dismiss the Complaint (ECF No. 20) and a Motion to Stay (ECF No. 21) in light of the Supreme Court's then-pending opinion in *Spokeo v. Robbins*, 136 S. Ct. 1540 (2016) ("*Spokeo*"). In response, on December 4, 2015, Plaintiffs respectively filed an Opposition to Google's Motion to Dismiss (ECF No. 29) and an Opposition to Google's Motion to Stay (ECF No. 30). The Court granted Google's Motion to Stay. (ECF No. 36). Following the issuance of the *Spokeo* opinion on May 16, 2016, the parties provided additional, supplemental briefing on that opinion's impact, if any, on Plaintiff Matera's Article III standing (ECF Nos. 41-42, 45-46).

9.      On August 12, 2016, the Court issued an Order Denying Google's Motion to Dismiss as to the Merits of Plaintiff's Claims (ECF No. 49). Separately, on September 23, 2016, the Court issued an Order Granting in Part and Denying in Part Defendant's Motion to Dismiss Based on Lack of Standing (ECF No. 54), which granted, with prejudice, Google's motion to dismiss Plaintiff Matera's claim for an injunction as it relates to Google Apps for Education,[1] but which denied the remainder of Google's motion.

10.      Subsequently, on October 17, 2016, Plaintiff Matera filed an Amended Complaint

---

[1] Plaintiffs initially challenged scanning practices associated with each of Google's email platforms: Gmail, Google Apps for Education, and Google Apps for Business. *See,* Complaint (ECF No. 1).

1    (ECF No. 58), adding additional Named Plaintiff Susan Rashkis, eliminating allegations

2    pertaining to Google Apps, and refining and clarifying allegations relating to technical aspects of

3    Google's challenged practices. On October 21, 2016, Google filed its Answer to the Amended

4    Complaint (ECF No. 59).

5         **B.   <u>Discovery</u>**

6         11.    Plaintiffs propounded initial sets of Interrogatories and Requests for Production on

7    June 13, 2016, and Google propounded commensurate discovery on July 27, 2016. Throughout

8    the summer of 2016, Google produced more than 130,000 pages of documents, which Plaintiffs

9    carefully reviewed and analyzed. These productions included relevant deposition testimony,

10   interrogatory answers, and documents produced in the prior multi-district litigation challenging

11   the same practices as the instant litigation, *In re Google Inc. Gmail Litig.*, No. 13-MD-02430-

12   LHK (N.D. Cal.) ("*In re Gmail*"), as well as documents produced in response to Plaintiffs' own

13   targeted discovery regarding Google's email processing practices, the various servers and devices

14   used to process emails, the various points of time during the email delivery process that Google

15   processes emails, and the purposes for which Google processes emails. Following the hearing on

16   March 9, 2017, Google supplemented its responses to Plaintiffs' Requests for Production, and to

17   date has produced more than 103,000 new pages of documents as part of a rolling production

18   anticipated to be substantially completed by the end of August 2017.  Additionally, Plaintiffs

19   served Requests for Admission and a Second Set of Interrogatories on May 17, 2017, to which

20   Google responded on June 20, 2017.

21        12.    Google's document production has included a large volume of engineering-

22   focused documents, including design documents, discussions by Google Software Engineers of

23   source code and functionality related to the procedures, modules, and systems involved in the

24   processing and interpretation of e-mail content, and portions of Google's internal software

25   engineering knowledge base relevant to the processing, extraction, storage, and use in advertising

26   of e-mail content.

27

28

JOINT DECLARATION IN SUPPORT OF
PRELIMINARY APPROVAL OF SETTLEMENT
5:15-CV-04062-LHK

13.     Class Counsel have not relied solely on Google's productions to conduct their investigation.  They have also reviewed presentations, whitepapers, and discussions of Google's content extraction technology presented by Google Software Engineers at technology conferences and in specialized trade and academic journals; examined patents and file histories for numerous patents assigned to Google in fields related to the processing, extraction, and use of email content for advertising; and reviewed presentations and papers published by current and former Google software engineers related to the technology used by Google to extract meaning from content.

**C.     Settlement**

14.     The parties participated in mediations before highly-respected mediator Randall Wulff on August 31, 2016 and November 4, 2016. These mediations resulted in a proposed settlement, executed on November 22, 2016, which was not granted preliminary approval.  ECF No. 71.  Subsequently, with the benefit of guidance from the Court, the parties resumed discovery, engaged in further negotiations regarding the remaining terms of the Settlement, and developed a comprehensive revised set of settlement papers, including the Settlement Agreement, the proposed Notice, and the proposed orders submitted herewith. The revised Settlement was executed by all parties on July 21, 2017. A true and correct copy of the executed Settlement and Exhibits is attached hereto as **Exhibit 1**.

**III.     THE SETTLEMENT TERMS**

15.     The Settlement requires Google to cease all processing of email content that it applies prior to the point when the Gmail user can retrieve the email in his or her mailbox using the Gmail interface ("pre-delivery processing") and that is used for Advertising Purposes as defined by the Settlement. The Settlement further provides that no information resulting from pre-delivery processing of email content will be used for any Advertising Purpose.  In addition, information from pre-delivery processing of email content that occurred before the date of the settlement or that occurs before the stipulated injunction goes into effect will not be used for Advertising Purposes once the stipulated injunction commences. Ex. 1, ¶ 40(a).

16.     For outgoing email sent from a Gmail account, Google will continue to refrain from processing of email content prior to the point when the Gmail user can retrieve the outgoing

email in his or her mailbox using the Gmail interface ("outbound processing") that is used for Advertising Purposes and from using information from outbound processing of email content for any Advertising Purpose. Ex. 1, ¶ 40(b).

17.     The Settlement requires Google to implement the above changes as part of a Stipulated Injunction that shall be effective for a period of not less than three years beginning one-hundred eighty (180) days after the Court enters Final Judgment. Ex. 1, ¶ 40.

18.     As part of the Settlement, Google has represented that it has no present intention of eliminating the technical changes required by the Settlement after the expiration of the term of the injunction. Google believes, however, that the architecture and technical requirements for providing email services on a large scan evolve and change dynamically and that a longer commitment may hinder Google's ability to improve and change its architecture and technology to meet changing demands. Ex. 1, ¶ 40(d).

19.     The Settlement further provides that Settlement Administrative costs and any award of attorneys' fees and costs and/or Service Awards to the Class Representatives will be paid by Google. Google has agreed to pay (1) a reasonable attorneys' fee award as approved by the Court, in an amount not to exceed $2,200,000 in fees and up to $100,000 for Class Counsel's actual out-of-pocket expenses, and (2) service awards in the amount of $2,000 to each of the Class Representatives. Ex. 1, ¶¶ 64-67.

20.     In exchange for the foregoing consideration, the Action will be dismissed with prejudice upon final approval of the Settlement, and the Settlement Class Members will thereby release all claims which have been or could have been asserted against Google by any member of the Settlement Classes in this Action, with the caveat that the release provided under the Settlement Agreement extends solely to claims for declaratory, injunctive, and non-monetary equitable relief. No Class Member, with the exception of the Named Representatives, will release any claim for monetary damages. The specific terms of the release are set forth in the Settlement Agreement at ¶ 41.

21.     The Settlement Classes are defined as follows:

CIPA Class:
All natural persons in the State of California who have never established a Gmail account with Google, and who have sent unencrypted emails to individuals with Gmail accounts.

ECPA Class:
All natural persons in the United States who have never established a Gmail account with Google, and who have sent unencrypted emails to individuals with Gmail accounts.

## IV.     QUALIFICATIONS OF CLASS COUNSEL

22.     As exemplified in each firm's respective firm resume, Class Counsel have extensive experience litigating and settling consumer class actions and other complex matters. Each firm has held significant leadership roles in prominent class actions throughout the United States. Collectively, Class Counsel have assisted putative class members in recovering billions of dollars.

### A.     *Qualifications of Michael W. Sobol*

23.     Michael W. Sobol is a 1989 graduate of Boston University School of Law. He practiced law in Massachusetts from 1989 to 1997. From 1995 through 1997, he was a Lecturer in Law at Boston University School of Law. In 1997, he left his position as partner in the Boston firm of Shafner, Gilleran & Mortensen, P.C. to move to San Francisco, where he joined LCHB. Since joining LCHB in 1997, he has almost exclusively represented plaintiffs in consumer protection class actions. Mr. Sobol has been a partner with LCHB since 1999, and is in his fifteenth year as chair of LCHB's consumer practice group. A copy of LCHB's firm resume, which describes the firm's experience in class action and other complex litigation, can be found at http://www.lchbdocs.com/pdf/firm-resume.pdf, and is not attached hereto given its length.

24.     During his time at LCHB, Mr. Sobol has overseen a wide range of consumer protection litigation and has served as plaintiffs' class counsel in numerous nationwide consumer class action cases. The following cases are representative examples of class actions in which he has played a leadership role:

**A.**     Mr. Sobol served as co-lead class counsel in *Gutierrez v. Wells Fargo Bank, N.A.*, No. C 07-05923 WHA (N.D. Cal.), a class action alleging unfair practices and false

1   representations by Wells Fargo in connection with its imposition of overdraft charges. In 2013,

2   the court reinstated a $203 million class judgment that had been entered in 2010 following a

3   bench trial, and in 2014 the reinstated judgment was affirmed by the Ninth Circuit. Judge Alsup

4   noted that LCHB "performed at a superior level as class trial counsel" and that LCHB's trial

5   performance "ranks as one of the best this judge has seen in sixteen years on the bench."

6   *Gutierrez v. Wells Fargo Bank, N.A.*, No. C 07-05923 WHA, 2015 WL 2438274, at *1, 7 (N.D.

7   Cal. May 21, 2015). In 2011, Mr. Sobol was named a finalist of the Consumer Attorneys of

8   California's ("CAOC") Consumer Attorney of the Year award for his work in this case.

9           **B.**     Mr. Sobol served on the Plaintiffs' Executive Committee in *In re Checking*

10  *Account Overdraft Litigation*, MDL 2036 (S.D. Fla.), a multidistrict proceeding involving more

11  than two dozen banks and allegations of unfair practices and false representations in connection

12  with the banks' imposition of overdraft charges. Class settlements totaling more than a billion

13  dollars have been approved by the court to date. In 2012, Mr. Sobol was named as a finalist for

14  Trial Lawyer of the Year by Public Justice for his work in this litigation. The same year, Mr.

15  Sobol was again named a finalist by CAOC for the Consumer Attorney of the Year award for his

16  work in the *Yourke v. Bank of America*, a case that was a part of the MDL which resulted in a

17  settlement of $410 million.

18          **C.**     Mr. Sobol served as Plaintiffs' Liaison Counsel and on the Plaintiffs'

19  Executive Committee in *In re Chase Bank USA, N.A. "Check Loan" Contract Litigation*, MDL

20  No. 2032 (N.D. Cal.), a nationwide multidistrict class action alleging that Chase breached its

21  good faith obligation to credit cardholders by modifying the terms of their long-term fixed rate

22  loans. In November 2012, the court granted final approval to a $100 million nationwide

23  settlement that provides direct payments to approximately one million cardholders and important

24  injunctive relief. In 2013, Mr. Sobol was again named a finalist for CAOC's Consumer Attorney

25  of the Year award for his efforts in this litigation.

26          **D.**     Mr. Sobol served as co-class counsel in *Ebarle v. LifeLock, Inc.*, Case No.

27  15-cv-00258-HSG (N.D. Cal.), a class action alleging that LifeLock misrepresented certain

28  aspects of its identity theft protection services to its subscribers. On September 20, 2016, Judge

JOINT DECLARATION IN SUPPORT OF
PRELIMINARY APPROVAL OF SETTLEMENT
5:15-CV-04062-LHK

Gilliam granted final approval of a settlement providing $68 million total to settlement class members, with attorneys' fees and settlement administration cost being paid by LifeLock on top of this $68 million fund.

**E.**     Mr. Sobol served as Interim Co-Lead Class Counsel in *Corona v. Sony Pictures Entertainment, Inc.*, No. 14-cv-9600 (C.D. Cal.), a case arising out of a breach of Sony's computer networks causing highly-sensitive and personally identifiable information of thousands of Sony employees to be stolen and made public, exposing class members to long-term risk of identity theft and credit fraud. Final approval of a settlement providing for $2 million to compensate employees who had taken preventative measures to protect themselves and providing for an additional two years of identity theft protection services was granted on April 6, 2016.

**F.**     Mr. Sobol served as co-class counsel in *In re TracFone Unlimited Service Plan Litigation*, Case No. 13-cv-03440-EMC (N.D. Cal.), a class action alleging that TracFone falsely advertised its cell phone plans as providing "unlimited" data when it imposed secret data caps on the plans, pursuant to which it would throttle (*i.e.* severely slow down) or suspend consumers' data. On July 2, 2015, Judge Chen granted final approval to a $40 million settlement which included industry-leading business practice changes.

**G.**     Mr. Sobol served as class counsel in *Brazil v. Dell Inc.*, No. C-07-01700 RMW (N.D. Cal.), a class action alleging false reference price advertising in connection with defendant's online sale of computers. This was the first class action of its kind to receive certification, and resulted in a settlement which allowed class members to submit claims for $50 payments and also included important practice changes.

**H.**     Mr. Sobol served as Lead Plaintiffs' Counsel in *In re Apple and AT&T iPad Unlimited Data Plan Litigation*, No. 10-cv-02553 RMW (N.D. Cal.), a class action alleging that defendants falsely advertised access to an unlimited data plan for the iPad device. In 2014, the court granted final approval of a settlement which allowed class members to submit claims for $40 payments and provided other benefits to class members.

**I.**     Mr. Sobol served as co-lead counsel in *Yarrington v. Solvay Pharmaceuticals, Inc.*, No. 09-CV-2261 (D. Minn.), a class action alleging that Solvay

1    deceptively marketed and advertised Estratest as an FDA-approved drug when in fact Estratest

2    was not FDA-approved for any use. In March 2010, the court granted final approval to a $16.5

3    million settlement, pursuant to which consumers obtained partial refunds of up to 30% of the

4    purchase price paid for Estratest.

5            **J.**      Mr. Sobol was co-lead plaintiffs' counsel in *Morris v. AT&T Wireless*

6    *Services, Inc.*, No. C-04-1997-MJP (W.D. Wash.), a case alleging that a nationwide class of cell

7    phone customers was subjected to an end-of-billing cycle cancellation policy implemented by

8    AT&T Wireless, thereby breaching customers' service agreements. On May 19, 2006, the New

9    Jersey Superior Court granted final approval to a class settlement that guaranteed delivery to the

10   class of $40 million in benefits.

11           **K.**      Mr. Sobol served as co-class counsel in *Pakeman, et al. v. American*

12   *Honda Finance Corporation* (M.D. Tenn.), a case raising race discrimination claims under the

13   Equal Credit Opportunity Act. On April 18, 2005, court granted final approval of a class

14   settlement requiring defendant to establish a refinance program applicable to $1 billion of its

15   existing loan portfolio under which African Americans and Hispanic Americans are eligible for a

16   reduction on their auto loan interest rate. The settlement also imposed a limit to the amount of

17   "mark-up" lenders can impose on interest rates, increased the transparency of consumer

18   disclosures, and funded consumer education programs. The monetary benefit to the class was

19   estimated to be between about $47 million to $72 million.

20           **L.**      Mr. Sobol served as co-lead plaintiffs' counsel in *Reverse Mortgage Cases*,

21   J.C.C.P. No. 4061 (San Mateo Sup. Ct.), an action brought against Transamerica alleging that it

22   targeted senior citizens to market and sell "reverse mortgages" which were misleading as to loan

23   terms and contained unfair charges and fees. A nationwide settlement provided relief to

24   approximately 1600 members of the class averaging about $5,000 per class member, with some

25   class members receiving many times that amount.

26           **B.**    ***Qualifications of Hank Bates***

27           25.    Hank Bates is a partner at CBP, a national law firm based in Little Rock,

28   Arkansas. CBP is recognized as one of the country's premiere firms in the areas of consumer

protection class actions, data privacy/security, securities fraud, environmental law and employment discrimination. A copy of CBP's firm resume, which describes the firm's experience in class action and other complex litigation is available at http://www.cbplaw.com/firm-resume/.

26.     Since joining CBP in 2004, Mr. Bates has focused his practice on representing consumers, small businesses, governmental entities, farmers and shareholders in class actions and complex litigation involving consumer fraud, computer privacy, environmental law, and employment rights. He received his B.A. from Harvard University in 1987 and his J.D. from Vanderbilt University School of Law in 1992. Following law school, Mr. Bates was a law clerk for the Honorable Danny J. Boggs, United State Court of Appeals for the Sixth Circuit. Mr. Bates practiced public-interest environmental law in San Francisco, California from 1993 to 1997, first with the law firm of Shute, Mihaly & Weinberger and then with Earthjustice, before returning to his home state of Arkansas. Below is a sampling of class actions and complex litigation throughout the nation in which Mr. Bates and CBP are currently playing a leadership role:

A.     CBP is Co-Lead Counsel *in Ebarle, et al. v. LifeLock, Inc*., 3:15-cv-00258 (N.D. Cal.), a class action on behalf of customers of the identity theft protection service, arising from claims that LifeLock delivered false statements about its services and failed to alert customers on a timely basis of potential identity theft. A nationwide settlement of $81 million was granted final approval in September, 2016.

B.     CBP is Co-Lead Counsel in *Campbell, et al. v. Facebook, Inc*., 4:13-cv-05996-PJH (N.D. Cal.), a class action involving allegations of email interception and violations of federal anti-wiretapping laws. The Plaintiffs were successful in opposing Facebook's motion to dismiss, and certification was granted for a class of Facebook users seeking injunctive relief, pursuant to Fed. R. Civ. P. 23(b)(2).  Preliminary approval of an injunctive-relief settlement was granted on April 26, 2017.

C.     CBP serves on the Plaintiffs' Steering Committee in *In re: The Home Depot, Inc., Customer Data Security Breach Litigation*, 1:14-md-02583-TWT (N.D. Ga.), a putative class action brought on behalf of injured financial institutions in the wake of a massive

retailer data breach.  On April 19, 2017, preliminary approval was granted to a settlement providing compensation of $27.225 million to affected financial institutions.

**D.**     CBP is Counsel for Lead Plaintiff Umpqua Bank in *In re: Target Corporation Customer Data Security Breach Litigation*, 0:14-cmd-02522-PAM-JJK (D. Minn.), a recently-settled class of financial institution plaintiffs over injuries suffered from one of the largest data breaches in history. A settlement, valued at $39.4 million, was granted final approval by the Court on May 12, 2016 and settlement administration is ongoing.

**E.**     CBP is Co-Counsel in *Corona v. Sony Pictures Entertainment, Inc*., No. CV 14-09600-RGK (Ex) (C.D. Cal.), a nationwide class action alleging that Sony had inadequate security measures in place, which allowed cyberattackers to successfully steal its employees' personally identifying information. A settlement, establishing a non-reversionary cash fund of $2 million to reimburse class members for measures they took to prevent identity theft as a result of the breach and providing up to $2.5 million for class members who experienced losses due to identity theft or misuse of their personally identifying information, was granted final approval on April 6, 2016. The settlement further provides for identity protection services for class members for a period of two years.

**F.**     CBP is Co-Lead Counsel in *Daniel, et al. v. Ford Motor Company*, 2:11-02890 WBS EFB (E.D. Cal.), a class action alleging violations of the Song-Beverly Consumer Warranty Act, the Magnuson-Moss Warranty Act, California's Consumers Legal Remedies Act, and California's Unfair Competition Law arising from an alleged rear suspension defect in Ford Focus model years 2005 through 2011. The Court has certified the class; CBP successfully opposed Ford's Motion for Summary Judgment; and the class action trial is set for September 2017.

**G.**     CBP is Co-Lead Counsel in *Jensen, et al. v Cablevision Systems Corporation*, 2:17-cv-00100-ADS-AKT (E.D.N.Y.), a putative class action alleging violations of the federal Computer Fraud and Abuse Act, arising from the defendant's practice of providing its residential customers with wireless routers that secretly emit secondary, public Wi-Fi networks over which the individual consumer had no control.

**H.**     CBP is Co-Counsel in *Wayne Miner et al. v. Philip Morris USA Inc.*, Circuit Court of Pulaski County, Arkansas, Case No. 60CV-03-4661, a class action brought on behalf of Arkansas smokers over claims that the defendant misrepresented the safety of its "light" cigarette products, which settled in 2016 for $45 million.

**I.**     CBP is Co-Lead Counsel in *Williams, et al. v. State Farm Mutual Automobile Ins. Co.*, 4:11-cv-00749 KGB (E.D. AR), a class action alleging State Farm violated Arkansas subrogation law by receiving subrogation payments of medical payment and/or personal injury protection coverage from customers' settlements without first obtaining a judicial determination and/or agreement that the customer was made whole. The Court has certified the class; class notice has been completed; CBP successfully opposed State Farm's Motion for Summary Judgment; and the Court was recently notified that the parties have reached a settlement.

**J.**     CBP is Co-Lead Counsel in *Walker, et al. v. Bank of the Ozarks*, CV-11-77 (Ark.), a putative class action alleging violations of the Arkansas Deceptive Trade Practices Act, the duty of good faith and fair dealing resulting from Bank of the Ozarks' unfair and unconscionable assessment and collection of excessive overdraft fees. On March 17, 2016, the Arkansas Supreme Court affirmed the lower court's denial of Bank of the Ozarks motion to compel arbitration.

27.     In addition to the above, CBP has successfully litigated several other prominent class actions throughout the nation, a few of which include:

**A.**     *In re Bank of America Credit Protection Marketing & Sales Practices Litig.*, United States District Court for the Northern District of California, Case No. 11-md-2269-THE (member of Plaintiffs' Executive Committee; $20 million settlement).

**B.**     *In re DQE, Inc. Securities Litigation*, United States District Court, Western District of Pennsylvania, Case No. 01-1851 (Co-Lead Counsel; $12 million settlement).

**C.**     *Esslinger v. HSBC Bank Nevada*, United States District Court for the Eastern District of Pennsylvania, Case No. 2:10-cv-03213-BMS (Co-Lead Counsel; $23.5 million settlement).

**D.**     *Kardonick v. JPMorganChase*, United States District Court for the Southern District of Florida, Case No. 1:10-cv-23235-WMH (Co-Lead Counsel; $20 million settlement).

**E.**     *In re Lernout & Hauspie Securities Litigation*, United States District Court for the District of Massachusetts, No. 00-CV-11589-PBS (Co-Lead Counsel; $115 million settlement).

**F.**     *In re Liberty Refund Anticipation Loan Litig*., United States District Court for the Northern District of Illinois, Case No. 1:12-cv-02949 (Co-Lead Counsel; $5.3 million settlement).

**G.**     *Middlesex County Retirement System v. Semtech Corp. et al.*, United States District Court for the Southern District of New York, Case No. 07-Civ-7183 (DC) (Co-Lead Counsel; $20 million settlement).

**H.**     *Spinelli v. Capital One Bank (USA), et al.*, United States District Court for the Middle District of Florida, Case No. 8:08-cv-132-T-33EAJ (Co-Lead Counsel; more than $100 million settlement).

**I.**     *In re Sterling Financial Corporation Securities Class Action*, United States District Court of the Southern District of New York, Case No. CV 07-2171(Co-Lead Counsel; $10.25 million settlement).

**J.**     *Nelson v. Wal-Mart Stores, Inc*., Eastern District of Arkansas, Case No. 04-00171, (Co-Lead Counsel; $17.5 million in recovery, as well as significant changes to Wal-Mart's hiring policies and four years of court supervision of the settlement terms).

**K.**     *The Quapaw Tribe of Oklahoma v. Blue Tee Corp*., United States District Court for the Northern District of Oklahoma, Case No.03-cv-0846-CVE-PJC (Co-Lead Counsel; $11.5 million settlement).

### C.     *Qualifications of Ray E. Gallo*

28.     Mr. Gallo graduated from Yale College with a B.A. in Economics and Political Science in May 1987 and received his J.D. from the University of California, Los Angeles School of Law in December 1991. He joined the Los Angeles office of Crosby, Heafey, Roach & May

1  (now Reed Smith) in February 1992. After two years at Crosby, he left to start Gallo &

2  Associates (now Gallo LLP). In or about 1998, as a sixth year lawyer in commercial litigation

3  practice, Mr. Gallo received Martindale Hubbell's "AV" rating. Mr. Gallo has been actively

4  involved in the prosecution of consumer fraud class actions since 2004. Most notably, he has lead

5  the nation in obtaining monetary relief for students misled by for-profit schools in both mass and

6  class action proceedings. He has been approved and appointed as class counsel multiple times and

7  has obtained final approval of class settlements in the following class action cases:

8         **A.**     *Meier v. Rubios*, Los Angeles Super. Ct., Case No. BC 335793, filed June

9  28, 2005, final approval granted in 2006, was an early food fraud case alleging that Defendant

10 falsely marketed a "lobster burrito" that contained nothing properly called lobster. The settlement

11 required, among other things, a cessation of these claims.

12        **B.**     *Sutton v. Pinkberry*, Los Angeles Super. Ct., Case No. 370909, filed May

13 10, 2007, final approval granted in 2008, alleged the sale of purported frozen "yogurt" that did

14 not meet California's definition of yogurt and was instead largely the product of a powdered mix.

15 The settlement involved a change in Pinkberry's practices.

16        **C.**     *Bienstock v. Ventura Foods*, Los Angeles Super. Ct., Case No. BC 362937,

17 filed December 5, 2006, final approval granted in 2008, alleged that defendants "guacamole"

18 product contained no material amount of avocado and was therefore falsely marketed. The

19 settlement provided for a renaming.

20        **D.**     *Amador v. California Culinary Academy, Inc., et al*., San Francisco Super.

21 Ct., Case No. CGC-07-467710, filed September 27, 2007, final approval granted in 2012, alleged

22 the defendant school falsely sold "chef" training and led prospective students to believe they

23 would become chefs, will having no data to suggest more than an incidental percentage of its

24 graduates ever became chefs. The class settlement, the largest of its kind in the country, provided

25 a $40M common fund (plus certain debt forgiveness) allocated largely based on the outcomes

26 achieved by former students.

27

28

1       **E.**     *Bottoni v. Sallie Mae, Inc*., Northern District of California, Case No. C 10-

2  03602 LB, filed July 13, 2010, final approval granted November 21, 2013, (recovered $67.5

3  million in debt relief and $1 million in refunds for excessive collection charges).

4       **F.**     *Huber v. San Diego Ballpark Funding, LLC*, San Diego Super. Ct., Case

5  No. 37-2013-00066456-CU-CO-CTL, filed September 11, 2013, final approval granted March 4,

6  2016, alleged that the San Diego Padres violated their Seat License Agreements with certain

7  season ticket holders by making seats in the same restricted sections available to purchasers

8  holding no seat license. The settlement provided for substantial purchase price refunds.

9       29.     Mr. Gallo has also prosecuted consumer mass action cases, including *Vasquez, et*

10  *al. v. California School of Culinary Arts, Inc.*, Los Angeles Super. Ct., Case No. BC 393129, a

11  consumer mass action on behalf of a total of approximately 1,400 plaintiffs (on the same basis as

12  Amador), and R*yan Corley et al v. Google, In*c., US District Court NDCA Case No. 5:16-cv-

13  00473-LHK (related to *Keith Amaral et al v. Google Inc.*, US District Court NDCA Case No.

14  5:16-cv-02553-LHK)) (representing 875 plaintiffs in the two actions). Vasquez resulted in more

15  than $2M in settlements based on statutory settlement offers and, as reported in The Atlantic, an

16  additional $17.5M thereafter. Mr. Gallo has also been lead counsel for the defense in consumer

17  class actions (*Daniels v. Compex Legal Serv*s., Los Angeles Super. Ct., Case No. BC485087, and

18  *Romero v. Loacker USA, Inc.*, Santa Clara Super Ct., Case No. 1-14-CV-274434).

19  **V.**     **RECOMMENDATION OF CLASS COUNSEL**

20       30.     Class Counsel had a wealth of information at their disposal before entering into

21  settlement negotiations, which allowed Class Counsel to adequately assess the strengths and

22  weaknesses of Plaintiffs' case and balance the benefits of settlement against the risks of further

23  litigation. The parties conducted extensive discovery, with Plaintiffs propounding initial sets of

24  Interrogatories and Requests for Production of Documents on June 13, 2016, and Google

25  propounding commensurate discovery on July 27, 2016. Throughout the summer of 2016, Google

26  produced over 130,000 pages of documents, which Plaintiffs carefully reviewed and analyzed.

27  These productions included relevant deposition testimony, interrogatory answers, and documents

28  produced in the prior multi-district litigation challenging the same practices as the instant

litigation, *In re Google Inc. Gmail Litig.*, No. 13-MD-02430-LHK (N.D. Cal.) ("*In re Gmail*"), as well as documents produced in response to targeted discovery regarding Google's email processing practices, the various servers and devices used to process emails, the various points of time during the email delivery process that Google processes emails, and the purposes for which Google processes emails.  Following the hearing on March 9, 2017, Google supplemented its responses to Plaintiffs' Requests for Production, and to date has produced more than 103,000 pages of documents as part of a rolling production anticipated to be substantially completed by the end of August 2017.  Additionally, Plaintiffs served Requests for Admission and a Second Set of Interrogatories on May 17, 2017, to which Google responded on June 20, 2017.  Class Counsel reviewed and analyzed hundreds of thousands of pages of documents produced by Google in discovery relating to the key issues in this Action, including, among other things, Google's messaging architecture and profiling capabilities, as well as all of the relevant deposition testimony of Google employees from the *In re Gmail* MDL, and a corporate designee who testified in this action regarding Google's current practices.  Class Counsel had a firm understanding of both the strengths and weaknesses of Plaintiffs' claims and Google's potential defenses when approaching settlement negotiations.

31.  Against this backdrop, Class Counsel have weighed the benefits of the Settlement against the inherent risks and expense of continued litigation, and believe that the proposed Settlement is fair, reasonable, adequate, and in the best interest of the Class.

32.  Google has vigorously denied Plaintiffs' allegations of wrongdoing, and, absent settlement, Plaintiffs anticipate Google would defend this action aggressively at multiple, procedural steps prior to trial, including opposing class certification and moving for summary judgment. While Plaintiffs strongly believe in the merits of their case, they recognize that the law is in its relative infancy in the context of CIPA's and ECPA's application to email communications, and this uncertainty presents at least some element of risk at multiple, critical junctures in this Action.

33.     The outcome of continued litigation, including trial and likely appeals, is far from certain, could add years to this litigation, and would entail significant expense. In contrast, the Settlement provides significant, immediate benefits to the Settlement Classes.

34.     Accordingly, Class Counsel believe the Settlement to be fair, adequate, and reasonable.

## VI.     <u>CONCLUSION</u>

35.     In sum, the settlement negotiations in this Action were conducted at arm's length by informed and experienced counsel for all parties, spanned seven months, and included two, full-day mediation sessions before a reputable mediator who had an integral part in the settlement negotiations. Further, the Settlement provides a significant benefit to the Class now, without the inherent risk, expense, delay, and uncertainty of continued litigation.

36.     Consequently, Class Counsel believe the proposed Settlement is fair, reasonable, and adequate, and should be preliminarily approved by the Court.

We declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on this 21st day of July, 2017.

San Francisco, California          /s/ Michael W. Sobol
                                   Michael W. Sobol, Esq.
                                   Lieff Cabraser Heimann & Bernstein, LLP


Little Rock, Arkansas              /s/ Hank Bates
                                   Hank Bates, Esq.
                                   Carney Bates & Pulliam, PLLC


Boston, Massachusetts             /s/ Ray Gallo
                                   Ray Gallo, Esq.
                                   Gallo, LLP

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ATTESTATION**

I, Michael W. Sobol, am the ECF user whose identification and password are being used to file this Joint Declaration. I hereby attest that Hank Bates and Ray Gallo have concurred in this filing.

_/s/ Michael W. Sobol_
Michael W. Sobol, Esq.

# EXHIBIT 1

Michael W. Sobol (194857)
msobol@lchb.com
LIEFF CABRASER HEIMANN &
BERNSTEIN LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111
Telephone:  (415) 956-1000

Hank Bates (167688)
hbates@cbplaw.com
CARNEY BATES & PULLIAM, PLLC
519 West 7th St.
Little Rock, AR 72201
Telephone: (501) 312-8500
Facsimile: (501) 312-8505

Ray E. Gallo (158903)
rgallo@gallo-law.com
Dominic R. Valerian (240001)
dvalerian@gallo-law.com
GALLO LLP
1299 Fourth St., Suite 505
San Rafael, CA 94901
Telephone: (415) 257-8800

*Attorneys for Plaintiffs and the Proposed
Class*

Michael G. Rhodes (116127)
rhodesmg@cooley.com
Whitty Somvichian (194463)
wsomvichian@cooley.com
Kyle C. Wong (224021)
kwong@cooley.com
Karen L. Burhans (303290)
kburhans@cooley.com
Amy M. Smith (287813)
amsmith@cooley.com
COOLEY LLP
101 California Street, 5th Floor
San Francisco, CA  94111-5800
Telephone:    (415) 693-2000
Facsimile:    (415) 693-2222

*Attorneys for Defendant Google Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL MATERA and SUSAN RASHKIS, as individuals, and on behalf of other persons similarly situated,<br><br>              Plaintiffs,<br><br>v.<br><br>GOOGLE, INC.,<br><br>              Defendant. | Case No. 5:15-cv-04062 LHK<br><br><br>**CLASS ACTION SETTLEMENT AGREEMENT**<br><br><br>Judge:      The Hon. Lucy H. Koh |

Plaintiffs Daniel Matera and Susan Rashkis, on their own behalf and on behalf of the Class Members, and Defendant Google Inc. ("Google") hereby enter into this Class Action Settlement Agreement pursuant to Fed. R. Civ. P. 23, subject to the approval of the Court.

## RECITALS

1.      WHEREAS on September 4, 2015, Plaintiff Matera filed a Complaint and commenced this action;

2.      WHEREAS on October 29, 2015, Google filed a motion to dismiss the Complaint and a motion to stay the litigation;

3.      WHEREAS on February 5, 2016, the Court granted the motion to stay pending the United States Supreme Court's anticipated ruling in *Spokeo, Inc. v. Robins*;

4.      WHEREAS on May 25, 2016, the Court lifted the stay of the litigation and instructed the Parties to brief the issue of standing as informed by the Supreme Court's ruling in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016);

5.      WHEREAS on August 12, 2016, the Court denied Google's motion to dismiss as to the merits of Plaintiff's claims;

6.      WHEREAS on September 23, 2016, the Court issued an order granting in part and denying in part Google's motion to dismiss the Complaint based on lack of standing;

7.      WHEREAS on September 27, 2016, the Court approved the Parties' stipulation that Plaintiff may file an amended complaint;

8.      WHEREAS on October 7, 2016, Plaintiffs Matera and Rashkis filed an amended complaint;

9.      WHEREAS on October 21, 2016, Google filed an answer to the Amended Complaint;

1

10.     WHEREAS counsel for the Parties conducted arm's length negotiations with the assistance of a third-party neutral, Randall W. Wulff, with respect to a resolution of the claims in the Action, including a full-day mediation session on August 31, 2016 and a half-day mediation session on November 4, 2016;

11.     WHEREAS, as a result of those efforts, on November 27, 2016, the parties entered into a settlement agreement;

12.     WHEREAS on November 28, 2016, the Court stayed the Action pending approval of the class action settlement;

13.     WHEREAS on December 13, 2016, Plaintiffs filed a Motion for Preliminary Approval of the Class Action Settlement and the Court heard argument on such Motion on March 9, 2017;

14.     WHEREAS on March 15, 2017, the Court denied the Plaintiffs' Motion for Preliminary Approval of the Class Action Settlement and the parties thereafter renegotiated the terms of the proposed settlement to comport with the Court's denial order;

15.     WHEREAS Google denies any wrongdoing whatsoever.  This Agreement shall in no event be construed or deemed to be evidence of or an admission, presumption or concession on the part of Google of any fault, liability, or wrongdoing as to any facts or claims asserted in this action (or any infirmity in the defenses it has asserted or could assert in the Action), or any other actions or proceedings, and shall not be interpreted, construed, offered, or received in evidence or otherwise used against Google in any other action or proceeding, whether civil, criminal or administrative;

16.     WHEREAS the Parties recognize that continued prosecution of this litigation would be protracted and expensive;

17.     WHEREAS Plaintiffs have conducted discovery relating to the basis for the claims alleged in the Action and Plaintiffs' Class Counsel conclude, in light of the substantial benefits the Agreement confers on the Class Members, the applicable law, the uncertainties in the outcome of the Action and the expense and length of time necessary to prosecute the Action through trial and possible appeals, that the terms of the Agreement are fair, adequate, and reasonable and that it is in Class Members' interest that the Action be fully and finally settled against Google on the terms set forth herein.  Google also believes that a settlement should be consummated as set forth herein.

NOW THEREFORE, the Parties, by and among themselves, and through their respective attorneys, hereby STIPULATE AND AGREE as follows:

## DEFINITIONS

18.     "Advertising Purposes" means for the purpose of serving advertisements, including advertisements served in Gmail and in other Google products and services. "Advertising Purposes" includes the creation of user models for the purpose of serving advertising.

19.     "Agreement" means this Class Action Settlement Agreement.

20.     "Action" means *Daniel Matera and Susan Rashkis v. Google, Inc.*, (N.D. Cal. Case No. 5:15-cv-04062 LHK).

21.     "CIPA Class" means all natural persons in the State of California who have never established a Gmail account with Google, and who have sent unencrypted emails to individuals with Gmail accounts.

22.     "Class Members" means all members of the CIPA Class and ECPA Class.

23.     "Class Representatives" means Daniel Matera and Susan Rashkis.

24.     "Court" means the United States District Court for the Northern District of California.

25.     "ECPA Class" means all natural persons in the United States who have never established a Gmail account with Google and who sent unencrypted emails to individuals with Gmail accounts.

26.     "Effective Date" means the first date after which the following events and conditions have occurred:  (a) the Court has entered a Final Judgment; and (b) the Final Judgment has become final in that the time for appeal or writ has expired or, if any appeal and/or petition for review is taken and the settlement is affirmed, the time period during which further petition for hearing, appeal, or writ of certiorari can be taken has expired.  If the Final Judgment is set aside, materially modified, or overturned by the Court or on appeal, and is not fully reinstated on further appeal, the judgment shall not be a Final Judgment.

27.     "Exhibits" means the exhibits to this Agreement.

28.     "Final Approval Hearing" means a hearing scheduled by the Court to determine the final fairness of the settlement embodied in this Agreement, provided that it grants preliminary approval and orders the Notice of Class Action Settlement, as provided for herein.

29.     "Final Judgment" means the Final Judgment and Order of Dismissal, as entered by the Court, substantially in the form attached hereto as Exhibit A.

30.     "Gmail account" means an email account for Google's Gmail service only.  This definition explicitly excludes G Suite (formerly Google Apps for Work and also known as Google Enterprise) and G Suite for Education (formerly Google Apps for Education).

31.     "Google" means defendant Google Inc.

32.     "Google's Counsel" means Cooley LLP.

4

33.     "Notice of Class Action Settlement" means the form of written notice of the proposed Class Action Settlement, as approved by the Court in the Preliminary Approval Order, substantially in the form attached hereto as Exhibit B.

34.     "Notice Plan" means the plan for publishing notice to Class Members, which is attached as Exhibit C.

35.     "Parties" means the Class Representatives and Google.

36.     "Plaintiffs' Class Counsel" means Lieff, Cabraser, Heimann & Bernstein, LLP; Carney, Bates & Pulliam, PLLC; and Gallo, LLP.

37.     "Preliminary Approval Order" means the Court's order preliminarily certifying the Classes for settlement purposes only, approving and directing notice, and setting the Final Approval Hearing, substantially in the form attached hereto as Exhibit D.

38.     "Settlement Administrator" means the third-party class action administrator as appointed by the Court in the Preliminary Approval Order.

39.      "Settlement Website" means the website containing Notice and other settlement documents maintained by the Settlement Administrator.

## SETTLEMENT CONSIDERATION

40.     In consideration for the releases set forth below, and the dismissal with prejudice of the Action, Google shall provide the following settlement benefits to Class Members.  Google agrees to entry of a Stipulated Injunction which shall be effective for a period of not less than three years commencing one-hundred eighty (180) days after the Court enters Final Judgment (the "Relevant Period"), as follows:

### Architectural Changes

a.      For incoming email sent to a Gmail account, Google will cease all processing of email content that it applies prior to the point when the Gmail user can retrieve the email in his or her mailbox using the Gmail interface ("pre-delivery processing") and that is used for Advertising Purposes.   No information resulting from pre-delivery processing of email content will be used for any Advertising Purpose.   In addition, information from pre-delivery processing of email content that occurred before the date of this Agreement or that occurs before the Stipulated Injunction goes into effect will not be used for Advertising Purposes once the Stipulated Injunction commences.   Google agrees to refrain from all such activity described in this Section 40(a) for the Relevant Period.   These technical changes and commitments shall apply to all incoming email sent to Gmail users in the United States.

b.      For outgoing email sent from a Gmail account, Google will refrain from all processing of email content prior to the point when the Gmail user can retrieve the outgoing email in his or her mailbox using the Gmail interface ("outbound processing") that is used for Advertising Purposes, and from using information from outbound processing of email content for any Advertising Purpose.   Google agrees to refrain from all such activity for the Relevant Period.   These technical changes and commitments shall apply to all outgoing emails sent by Gmail users in the United States.

c.      For purposes of clarification, nothing in this Agreement will restrict Google's ability to apply pre-delivery and outbound processing to emails received by Gmail users or sent by Gmail users, where such processing is done exclusively for non-Advertising Purposes.

d.      Google represents that it has no present intention of eliminating the technical changes described above after the expiration of the term of the injunction.   Google

believes, however, that the architecture and technical requirements for providing email services on a large scale evolve and change dynamically and that a longer commitment may hinder Google's ability to improve and change its architecture and technology to meet changing demands.  If Google's new email architecture described above becomes outdated and must be improved or replaced during the pendency of the injunction, then Google may change its system design in a manner that will continue to comply with the requirements of the injunction above.

e.      Google does not presently know, at the time of execution of this Agreement, the precise technical changes it will implement to comply with this section. Accordingly, Google agrees to provide Plaintiffs discovery sufficient to enable Plaintiffs to verify the technical changes required under this section.

f.      Google shall, upon making the changes required under this section, deliver a written certification under oath to Class Counsel stating that it has made the technical changes required under this paragraph.

g.      Google agrees to make these technical changes without any admission that its current email architecture and systems that have been in place in any way violated the law.

h.      The Parties acknowledge that Google's internal architecture for processing incoming and outgoing email is highly confidential.  Should the Court require additional information regarding the technical changes required by this injunction, Google agrees to provide such information *in camera* or under seal to protect Google's confidentiality interest in its internal email architecture.

**Google Website Modifications**

i.      Within one-hundred eighty (180) days after the Court enters Final Judgment, Google will update existing statements on Google Help Center web pages that

describe the advertising-related scanning of emails in the Gmail system to be consistent with Google's practices following implementation of the Stipulated Injunction.

## **RELEASES**

41.     Upon entry of Final Judgment, the Class Representatives and all other Class Members, on behalf of themselves and their respective heirs, executors, administrators, representatives, agents, partners, successors, and assigns (collectively, the "Class Releasors"), waive, release, forever discharge, and will not in any manner pursue the Action or any claims, complaints, actions, proceedings, or remedies of any kind (including, without limitation, claims for attorneys' fees and expenses and costs) whether in law or in equity, under contract, tort or any other subject area, or under any statute, rule, regulation, order, or law, whether federal, state, or local, on any grounds whatsoever, arising from the beginning of time through the Effective Date, that were, could have been, or could be asserted by the Class Releasors arising out of or relating to any acts, facts, omissions or obligations, whether known or unknown, whether foreseen or unforeseen, arising out of or relating to the Action or the subject matter of the Action, against Google or any of Google's current or former directors, officers, members, administrators, agents, insurers, beneficiaries, trustees, employee benefit plans, representatives, servants, employees, attorneys, parents, subsidiaries, affiliates, divisions, branches, units, shareholders, investors, contractors, successors, joint venturers, predecessors, related entities, and assigns, and all other individuals and entities acting on Google's behalf (collectively, the "Google Releasees").  Notwithstanding the foregoing, the release provided for hereunder shall extend to claims for declaratory, injunctive and non-monetary equitable relief only.  Without limiting the foregoing, no Class Member, with the exception of the Class Representatives, hereby releases any claim for damages under CIPA or ECPA.

42.     The Class Representatives and Class Members represent and warrant that no claim, demand, complaint, action, proceeding, remedy, lien or any other matter subject to the release in Paragraph 41 has been in any way transferred to or is in any way held by any third party, and that the Class Representatives and Class Members have the legal authority to release all such matters and agree to indemnify and hold the Google Releasees harmless from any liability, loss, claims, demands, damages, costs, expenses, or attorneys' fees incurred as a result of any person or entity asserting such assignment or transfer.

43.     Upon entry of Final Judgment, Google waives, releases, forever discharges, and will not in any manner pursue the Action or any claims, complaints, actions, proceedings, or remedies of any kind (including, without limitation, claims for attorneys' fees and expenses and costs) whether in law or in equity, under contract, tort or any other subject area, or under any statute, rule, regulation, order, or law, whether federal, state, or local, on any grounds whatsoever, arising from the beginning of time through the Effective Date, that were, could have been, or could be asserted by Google arising out of or relating to any acts, facts, omissions or obligations, whether known or unknown, whether foreseen or unforeseen, arising out of or relating to the Action or the subject matter of the Action, against the Class Members, Class Representatives, Plaintiffs' Class Counsel, and any of their respective heirs, executors, administrators, representatives, agents, partners, successors, and assigns ("Class Releasees"). The foregoing sentence notwithstanding, Google does not release and in fact retain any claim(s) which do not arise from or relate to the institution, prosecution, or settlement of the Action that they may otherwise have against any Class Releasee.

44.     Google represents and warrants that no claim, demand, complaint, action, proceeding, remedy, lien or any other matter subject to the release in Paragraph 43 has been in

any way transferred to or is in any way held by any third party, and that Google has the legal authority to release all such matters and agrees to indemnify and hold the Class Releasees harmless from any liability, loss, claims, demands, damages, costs, expenses, or attorneys' fees incurred as a result of any person or entity asserting such assignment or transfer.

45.     Except as explicitly provided herein, nothing in this Agreement abrogates, supersedes, modifies, or qualifies in any way any of the contractual terms and conditions applicable in the ordinary course of business to any relationship that may exist between Google and the Class Representatives or Class Members.

46.     The Parties acknowledge that they have consulted with legal counsel and are familiar with the provisions of California Civil Code Section 1542, which states:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor**.

47.     The Parties, being aware of California Civil Code Section 1542, expressly waive any rights they may have under that statute as well as under any other statute or common law principles of similar effect with respect to the claims released in Paragraphs 41 and 43, above, arising out of or relating in any way to the Action.

48.     The Parties acknowledge that after the Effective Date they may discover facts different from or in addition to those that it may now know or believe to be true with respect to the matters being released by this Agreement.  The Parties expressly assume the risk of the possible discovery of any such additional or different facts.  This Agreement will remain effective in all respects regardless of any such additional or different facts.

49.     The Class Representatives acknowledge, and other Class Members by operation of law shall be deemed to have acknowledged, that the release of unknown claims was separately bargained for and was a key element of the settlement embodied in this Agreement.

50.     Upon entry of Final Judgment, the Class Releasors shall be enjoined from prosecuting any claim they have released in the preceding paragraphs in any proceeding against the Google Releasees or based on any actions taken by the Google Releasees that are authorized or required by this Agreement or by the Final Judgment.  It is further agreed that the settlement may be pleaded as a complete defense to any proceeding subject to this section.

51.     Nothing in Paragraphs 41 and 43 shall be a bar to a claim, complaint, action, or proceeding for breach of this Agreement.

## NOTICE OF CLASS ACTION SETTLEMENT

52.     The Parties agree to provide notice of the settlement to Class Members in accordance with the Notice Plan attached as Exhibit C.

53.     The Settlement Administrator shall be responsible for disseminating notice pursuant to the Notice Plan and for operating the Settlement Website.  Any material deviation from the Notice Plan must be approved by the Parties and the Court.

## APPROVAL OF SETTLEMENT & SETTLEMENT IMPLEMENTATION

54.     Preliminary Approval Hearing.  Class Representatives will move for preliminary approval of the Agreement, submit this Agreement and Exhibits hereto with the motion, and request that the Court hold a hearing thereon.  Class Representatives will submit therewith a proposed Order Granting Preliminary Settlement Approval substantially in the form attached hereto as Exhibit D.

55.     Compliance with the Class Action Fairness Act.  Google will provide notice of this Agreement that meets the requirements of the Class Action Fairness Act ("CAFA"), 28

U.S.C.

§ 1715, on the appropriate federal and state officials not later than ten calendar days after the Agreement is filed with the Court.

56.     Procedure for Objecting to Class Action Settlement.

a.      Class Members who wish to object to the settlement must make a written statement objecting to the settlement.  Such written statement must be sent to the Settlement Administrator at the address specified in the Notice of Class Action Settlement, Exhibit B, no later than the deadline for objections set by the Court in its Preliminary Approval Order.

b.      Any objection must contain: (i) the objector's name, address, and personal signature, (ii) a statement whether the objector intends to appear at the Final Approval Hearing, either in person or through counsel, and, if through counsel, identifying counsel by name, address, and phone number, and (iii) a statement of the grounds for his or her objection.

c.      The date of the postmark on the envelope containing the written statement objecting to the settlement shall be the exclusive means used to determine whether an objection and/or intention to appear has been timely submitted.  In the event a postmark is illegible, the date of mailing shall be deemed to be three days prior to the date the Settlement Administrator received the written statement.  Class Members who fail to file and serve timely written objections in the manner specified above shall be deemed to have waived any objections and shall be forever barred from making any objection to the Agreement and the proposed settlement by appearing at the Final Approval Hearing, appeal, collateral attack, or otherwise.

57.     No Solicitation of Settlement Objections.  At no time shall any of the Parties or their counsel seek to solicit or otherwise encourage Class Members to submit written objections to the settlement, or encourage an appeal from the Court's Final Judgment.  None of the Parties

shall initiate unsolicited contact with any Class Member for any purpose prohibited under this Agreement.

58.     <u>Final Settlement Approval Hearing and Entry of Final Judgment</u>.   A Final Approval Hearing shall be conducted to determine final approval of the settlement.   Upon final approval of the settlement by the Court at or after the Final Approval Hearing, the Parties shall present a Final Judgment and Order of Dismissal to the Court for its approval and entry, substantially in the form attached hereto as Exhibit A.

59.     <u>Costs of Notice and Administration</u>.   Google shall be solely responsible for the costs and expenses incurred in the administration of the Settlement, including the cost of implementing the Notice Plan, not to exceed $140,000.   The Parties agree to cooperate in the settlement administration process and to make all reasonable efforts to control and minimize the costs and expenses incurred in the administration of the settlement.

60.     <u>Termination</u>.   The Parties shall have the right to terminate this Agreement if any of the following events occurs:

a.     The Court does not enter an order granting preliminary approval of the settlement, as provided herein;

b.     The Court does not enter an order granting final approval of the settlement, as provided herein;

c.     The Court does not enter a Final Judgment that is materially the same as the form attached hereto as Exhibit A;

d.     The Court requires Google to provide any class benefit other than those provided in this Agreement;

13

e.      The Court requires material alteration of any provision of the Agreement for the settlement to be approved, including without limitation, the releases set forth in Paragraphs 41 and 43 or the Notice Plan set forth in Paragraph 52 and Exhibit C; or

f.      The Court orders Google to pay an award of attorneys' fees, expenses, and Class Representative service awards that in the aggregate is greater than the amounts contemplated in Sections 64-66, below.

61.      <u>Notice of Termination</u>.   A party shall provide written notice of an intent to terminate this Agreement to counsel for the other party within thirty (30) calendar days after receiving notice that any of the foregoing events above has occurred.

62.      <u>Effect of Termination</u>.   In the event that this Agreement is voided, terminated, or cancelled, or fails to become effective for any reason whatsoever, then the Parties shall be deemed to have reverted to their respective statuses as of the date and time immediately prior to the execution of this Agreement, and they shall proceed in all respects as if this Agreement, its Exhibits, and any related agreements or orders, had never been executed or entered.

63.      In the event one or more appeals are filed from the Court's Final Judgment, or any other appellate review is sought prior to the Effective Date, administration of the settlement shall be stayed pending final resolution of the appeal or other appellate review.  Nothing, however, shall prohibit Google from fulfilling any of its obligations above, if in the exercise of its sole discretion it chooses to do so.

## **ATTORNEYS' FEES, EXPENSES AND SERVICE AWARDS**

64.      Google agrees to pay Plaintiffs' Class Counsel reasonable attorneys' fees and expenses in an amount to be approved by the Court but in no event greater than $2,200,000 in fees and Plaintiffs' Class Counsel's actual out-of-pocket expenses up to $100,000.

65.     Google agrees to pay each Class Representative a service award in the amount of $2,000, in recognition for their service to the Class Members, subject to Court approval.

66.     Upon entry of a Preliminary Approval Order, Plaintiffs' Class Counsel shall submit a motion for approval of, and award of reasonable attorneys' fees and expenses, in an amount not to exceed $2,200,000 in fees and Plaintiffs' Class Counsel's actual out-of-pocket expenses up to $100,000, as well as for approval of the Class Representatives' service awards. Google will not oppose or in any way undermine Plaintiffs' Class Counsel's motion or solicit others to do so.  The Parties negotiated this settlement term only after all of the substantive settlement terms were resolved.

67.     Within thirty (30) business days of the latest of (1) entry of Final Judgment, and (2) receipt by Google of a completed W-9 form providing taxpayer identification information for the payment recipient identified below, Google will make payment of Plaintiffs' Class Counsel fee and the service awards to a trust account maintained by Lieff, Cabraser, Heimann & Bernstein, LLP.

## ADDITIONAL PROVISIONS

68.     Best Efforts.  The Parties agree to cooperate in good faith and use their best efforts to effectuate all of their respective obligations under the Agreement, including obtaining preliminary and final settlement approval, and all steps that may be necessary in order to reach the Effective Date, and to do so as quickly and efficiently as practicable.  In the event the Parties are unable to reach agreement on the form or content of any document needed to implement the settlement, or on any supplemental provisions that may become necessary to effectuate the terms of the settlement embodied in this Agreement, the Parties shall mediate the disagreement before Randall W. Wulff.  The Parties shall not seek the Court's intervention until they have exhausted the mediation process.

69. <u>Limited Admissibility of Agreement</u>.  This Agreement is made in compromise of a dispute.  Regardless of whether the Court approves this Agreement, neither the Agreement nor anything that any of the Parties stated or did during the negotiation of this Agreement will be construed or used in any manner as an admission of liability or evidence of either party's fault, liability or wrongdoing.  On the contrary, the Parties expressly deny any liability or wrongdoing whatsoever.  Notwithstanding the foregoing restrictions in this paragraph, Google may file this Agreement and Final Judgment (if and when such Final Judgment is entered) in any action that may be or has been brought against it in order to support a defense, counterclaim or cross claim.

70. <u>Notices</u>.  Unless otherwise specifically provided herein, all notices, demands, or other communications given hereunder shall be in writing and shall be deemed to have been duly given as of the date of electronic mailing. Postal mailing will be provided as well, addressed as follows:

> <u>To Plaintiffs' Class Counsel</u>
>
> Michael W. Sobol
> msobol@lchb.com
> LIEFF CABRASER HEIMANN & BERNSTEIN LLP
> 275 Battery Street, 29th Floor
> San Francisco, CA  94111
> Telephone: (415) 956-1000
> Facsimile: (415) 956-1008
>
> Hank Bates
> hbates@cbplaw.com
> CARNEY BATES & PULLIAM, PLLC
> 519 West 7th St.
> Little Rock, AR 72201
> Telephone: (501) 312-8500
> Facsimile: (501) 312-8505
>
> Ray E. Gallo
> rgallo@gallo-law.com
> Dominic R. Valerian
> dvalerian@gallo-law.com
> GALLO LLP
> 1299 Fourth St., Suite 505
> San Rafael, CA 94901
> Telephone: (415) 257-8800

<u>To Google's Counsel</u>
Michael G. Rhodes
Whitty Somvichian
Cooley LLP
101 California Street, 5th Floor
San Francisco, CA 94111
rhodesmg@cooley.com
wsomvichian@cooley.com

<u>To Google</u>

Google Inc.
ATTN:  General Counsel
1600 Amphitheatre Parkway
Mountain View, CA 94043
Facsimile: 1-650-253-0001

71.     <u>Privacy</u>.     The Parties and all counsel agree that all orders and agreements regarding the confidentiality of documents and information remain in effect, including the Stipulated Protective Order entered on June 8, 2016, and all Parties and counsel remain bound to comply with them.  Nothing contained in this Agreement or any order of the Court related to this Agreement, nor any act required to be performed pursuant to this Agreement is intended to constitute, cause, or effect any waiver (in whole or in part) of any attorney-client privilege, work product protection or any other privilege or protective doctrine afforded by law.

72.     <u>Exhibits</u>.  The terms of this Agreement include the terms set forth in the attached Exhibits, which are incorporated by this reference as though fully set forth herein.  Exhibits to this Agreement are an integral part of the settlement.

73.     <u>Captions or Headings</u>.  The captions or headings of paragraphs in this Agreement are inserted for convenience, reference, and identification purposes only, and shall neither control, define, limit, nor affect any provisions of this Agreement.

74.     <u>Defined Terms</u>.   Terms defined in this Agreement shall have their defined meanings whenever and wherever they occur herein (including in Exhibits).

75.     <u>Materiality</u>.   The Parties have negotiated all of the terms and conditions of this Agreement at arm's-length.   All terms, conditions, and Exhibits in their exact form have been individually negotiated and bargained for at arm's-length, are material and necessary to this Agreement, and have been relied upon by the Parties in entering into this Agreement.

76.     <u>Stay of Proceedings</u>.   To the extent approved by the Court, the Parties agree to stay all proceedings in the Action, except such proceedings necessary to implement and complete the settlement and including the discovery contemplated in Section 40(e) above, pending the entry of Final Judgment.

77.     <u>Amendment or Modification</u>.   Any amendment to this Agreement must be in writing, signed by the Parties, and expressly state that it is amending this Agreement.

78.     <u>Waiver of Compliance</u>.   No party will be treated as having waived any rights by not exercising (or delaying the exercise of) any rights under this Agreement.   Moreover, a waiver of any breach of this Agreement by any party shall not be deemed to be a waiver by any party of any other breach of this Agreement.

79.     <u>Entire Agreement</u>.   This Agreement sets out all terms agreed between the Parties and supersedes all previous or contemporaneous agreements between the Parties relating to its subject matter.   In entering into this Agreement neither party has relied on, and neither party will have any right or remedy based on, any statement, representation or warranty (whether made negligently or innocently), except those expressly set out in this Agreement.

80.     <u>Authorization to Enter Agreement</u>.   The Parties warrant and represent they are authorized to take all appropriate action required or permitted to be taken by such Parties pursuant to this Agreement, to effectuate its terms, and to execute any other documents required to effectuate the terms of this Agreement.

81.   <u>Parties' Knowledge and Advice of Counsel</u>.   Each party enters into this Agreement with the opportunity to seek the advice of counsel and executes and delivers this Agreement being fully informed as to its terms, content, and effect.

82.   <u>No Third Party Beneficiaries</u>.   This Agreement does not confer any benefits on any third party other than Class Members for whom a direct benefit is specifically provided hereunder.

83.   <u>Agreement Binding on Successors in Interest</u>.   This Agreement shall be binding on and inure to the benefit of the respective heirs, successors, and assigns of the Parties.

84.   <u>Assignment</u>.   This Agreement, including any of the rights and duties of any party hereto under the Agreement, may not be assigned without prior written approval by the other party.

85.   <u>No Additional Persons with Financial Interest</u>.   Google shall not be liable for any additional attorneys' fees and expenses of any Class Member's counsel, including any potential objectors or counsel representing a Class Member, other than what is expressly provided for in this Agreement.

86.   <u>Jurisdiction of the Court</u>.   The Court shall retain continuing and exclusive jurisdiction over the Parties to this Agreement, including all Class Members, and over the interpretation, implementation, administration and enforcement of this Agreement.

87.   <u>No Construction Against Any Party</u>.   The terms of this Agreement have been negotiated at arm's-length among knowledgeable Parties represented by experienced counsel. The Parties agree that the normal rules of construction that any ambiguity in a document is construed against the drafting party shall not apply to the interpretation or enforcement of this Agreement, as the Parties each participated in the drafting of this Agreement. The Parties

expressly waive the presumption of California Civil Code section 1654 that uncertainties in a contract are interpreted against the party who caused the uncertainty to exist.

88.     <u>Extensions of Time</u>.  The Parties may agree upon a reasonable extension of time for any deadline or date reflected in this Agreement, without further notice (subject to Court approval as to Court dates).

89.     <u>Fees Not a Penalty</u>.  No consideration or amount or sum paid, credited, offered, or expended by Google in its performance of this Agreement constitutes a penalty, fine, punitive damages, or other form of assessment for any alleged claim against Google.

90.     <u>Collateral Attack</u>.  This Agreement shall not be subject to collateral attack by any Class Members at any time on or after the Effective Date.

91.     <u>Counterparts</u>.  The Parties may execute this Agreement in counterparts, including facsimile, PDF, and other electronic copies, which taken together will constitute one instrument.

92.     <u>Governing Law and Venue</u>.

(a) ALL CLAIMS ARISING OUT OF OR RELATING TO THIS AGREEMENT WILL BE GOVERNED BY CALIFORNIA LAW, WITHOUT REGARD TO OR APPLICATION OF CALIFORNIA'S CONFLICT OF LAWS RULES, AND WILL BE LITIGATED EXCLUSIVELY IN THE FEDERAL OR STATE COURTS OF SANTA CLARA COUNTY, CALIFORNIA, USA; THE PARTIES CONSENT TO PERSONAL JURISDICTION IN THOSE COURTS.

(b)  If a party files any claim, complaint, action, or proceeding alleging a breach of this Agreement, the successful or prevailing party will be entitled to recover its attorneys' fees and other costs, in addition to any other relief to which the party may be entitled.  Any action or

proceeding to enforce the Agreement shall, pursuant to the Court's retention of jurisdiction with respect to the settlement, be brought in this Court.

93. <u>Signatures</u>. Each person executing this Agreement warrants that such person has the full authority to do so.

IN WITNESS WHEREOF, the Parties have caused the Agreement to be executed by their duly authorized attorneys.

APPROVED AND AGREED TO BY THE PLAINTIFFS:


Dated: _____, 2017      _____
                                      Daniel Matera

Dated: _____, 2017      _____
                                      Susan Rashkis


APPROVED AND AGREED TO BY DEFENDANT:


Dated: __Juy 21__, 2017      GOOGLE INC.

                             By: _William G Berry_

                             Title: _William G Berry_
                                    LITIGATION COUNSEL

148288830

21

proceeding to enforce the Agreement shall, pursuant to the Court's retention of jurisdiction with respect to the settlement, be brought in this Court.

93.    <u>Signatures</u>.  Each person executing this Agreement warrants that such person has the full authority to do so.

IN WITNESS WHEREOF, the Parties have caused the Agreement to be executed by their duly authorized attorneys.

APPROVED AND AGREED TO BY THE PLAINTIFFS:

Dated: _____7-21_____, 2017          _____
                                          Daniel Matera

Dated: _____7-21_____, 2017          _____
                                          Susan Rashkis


APPROVED AND AGREED TO BY DEFENDANT:


Dated: _____, 2017          GOOGLE INC.

                                        By: _____
                                        Title: _____

21

proceeding to enforce the Agreement shall, pursuant to the Court's retention of jurisdiction with respect to the settlement, be brought in this Court.

     93.   <u>Signatures</u>.  Each person executing this Agreement warrants that such person has the full authority to do so.

     IN WITNESS WHEREOF, the Parties have caused the Agreement to be executed by their duly authorized attorneys.

APPROVED AND AGREED TO BY THE PLAINTIFFS:

Dated: _____, 2017    _____
                                  Daniel Matera

Dated: _July 21_____, 2017    _____
                                  Susan Rashkis

APPROVED AND AGREED TO BY DEFENDANT:

Dated: _____, 2017    GOOGLE, INC.

                                  By: _____

                                  Title: _____

# EXHIBIT A

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DANIEL MATERA, SUSAN RASHKIS as individuals, and on behalf of other persons similarly situated,<br><br>             Plaintiffs,<br><br>   v.<br><br>GOOGLE INC.,<br><br>             Defendant. | Case No.  5:15-cv-04062 LHK<br><br>**[PROPOSED] FINAL ORDER APPROVING SETTLEMENT AND DISMISSING CLAIMS OF CLASS MEMBERS**<br><br>Date:<br>Time:<br>Dept.:     Courtroom 8 - 4th Floor<br>          280 S. First Street<br>          San Jose, CA 95113<br><br>Judge:    The Hon. Lucy H. Koh<br>Trial Date:  June 18, 2018 |

This matter came on for hearing on [_____], 2017. The Court has considered the Settlement Agreement ("Settlement"), objections and comments received regarding the Settlement, the record in the Action, and the arguments and authorities of counsel.  Good cause appearing,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** as follows**:**

1.     The Court, for purposes of this Final Judgment Approving Settlement and Dismissing Claims of Class Members with Prejudice ("Judgment"), adopts the terms and definitions set forth in the Settlement.

2.     This Court has jurisdiction over the subject matter of this Action, all parties to the Action, and all Class Members.

3.     The Court finds that the notice to the Class of the pendency of the Action and of this Settlement, Class Counsel's application for attorneys' fees and expenses, and the application for service awards for Class Representatives, as provided for in the Settlement and by Order of this Court, has been implemented and fully complied with the requirements of Federal Rule of Civil Procedure 23 and due process.

4.     The Court finds that Google properly and timely notified the appropriate state and federal officials of the Settlement, pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715.

5.     The Court approves the Settlement as fair, reasonable, and adequate and in the best interests of the Class Members.  The Court has specifically considered the factors relevant to class settlement approval (*see*, *e.g.*, *Churchill Village, L.L.C. v. General Elec.*, 361 F.3d 566 (9th Cir. 2004)), including, *inter alia*, the strength of Plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout trial; the relief provided for in the Settlement; the extent of discovery completed and stage of the proceedings; the experience and views of Class Counsel and the mediator; and the reaction of Class Members to the proposed settlement.

6.     The Court has also scrutinized the Settlement and negotiation history for any signs of potential collusion (*see*, *e.g.*, *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011)), and finds that the Settlement is not the product of collusion. This finding is supported by, among other things: the fact that the Settlement was negotiated by experienced, well-qualified

**[PROPOSED] FINAL ORD. APPROVING SETTLEMENT AND DISMISSING CLAIMS OF CLASS MEMBERS**

counsel; the Settlement provides substantial benefits to Class Members and such benefits are not disproportionate to the attorneys' fees and expenses sought by Class Counsel; the benefits provided to Class Members are appropriate under the circumstances of this case; and the parties began negotiating regarding attorneys' fees and expenses only after reaching an agreement regarding the key deal terms.

**7.**     Pursuant to the Settlement, Google shall provide the following benefits to Class Members:

**(a)**     **Stipulated Injunction.** For a period of three years commencing one-hundred eighty (180) days after the date of the Final Judgment (the "Relevant Period"), Google shall be bound by the Stipulated Injunction set forth in the Settlement.  Under the terms of the Stipulated Injunction, Google shall make technical changes such that:

For incoming email sent to a Gmail account, Google will cease all processing of email content that it applies prior to the point when the Gmail user can retrieve the email in his or her mailbox using the Gmail interface ("pre-delivery processing") and that is used for Advertising Purposes, as that term is defined in the Settlement.  No information resulting from pre-delivery processing of email content will be used for any Advertising Purpose.  In addition, information from pre-delivery processing of email content that occurred before the date of this Agreement or that occurs before the Stipulated Injunction goes into effect will not be used for Advertising Purposes once the Stipulated Injunction commences.  Google agrees to refrain from all such activity described in this section (Section 40(a) of the Settlement) for the Relevant Period.  These technical changes and commitments shall apply to all incoming email sent to Gmail users in the United States.  For outgoing email sent from a Gmail account, Google will refrain from all processing of email content prior to the point when the Gmail user can retrieve the outgoing email in his or her mailbox using the Gmail interface ("outbound processing") that is used for Advertising Purposes, and from using information from outbound processing of email content for any Advertising Purpose.  Google agrees to refrain from all such activity for the Relevant Period.  These technical changes and commitments shall apply to all outgoing emails sent by Gmail users in the United States.

**[PROPOSED] FINAL ORD. APPROVING SETTLEMENT AND DISMISSING CLAIMS OF CLASS MEMBERS**

If Google's new email architecture described above becomes outdated and must be improved or replaced during the pendency of the injunction, then Google may change its system design in a manner that will continue to comply with the requirements of the injunction above.

**(b)   Certification.**  Google shall, upon making the changes required under this section, deliver a written certification under oath to Class Counsel stating that it has made the technical changes required under this paragraph.

**8.**   Class Counsel are hereby awarded attorneys' fees and expenses in the amount of $2,200,000 in fees and Class Counsel's actual out-of-pocket expenses up to $100,000.  Google shall pay such amounts to Class Counsel pursuant to the terms of the Settlement.  The Court finds these amounts to be fair and reasonable and fairly compensates Class Counsel for their contributions to the prosecution of this Action and the Settlement.

**9.**   The Court hereby awards service awards in the amount of $2,000 each, to each of the Plaintiffs as Class Representatives, to compensate them for their commitments and efforts on behalf of the Class in this Action.  Google shall pay such amounts to Plaintiffs, pursuant to the terms of the Settlement Agreement.

**10.**   The Parties are to bear their own costs, except as awarded by this Court in this Final Order.

**11.**   The Parties and Class Members are bound by the terms and conditions of the Settlement. Upon the Effective Date of this Settlement, Plaintiffs and each and every Class Member shall be deemed to have released, acquitted and forever discharged the Google Releasees, as that term is defined in the Settlement, from any and all Released Claims.  The full terms of the release described in this paragraph are set forth in Sections 41 through 51 of the Agreement.  The Court expressly adopts and incorporates by reference Sections 41 through 51 of the Agreement.

**12.**   Per the terms of the Settlement, as of the Effective Date, the Class Representatives and Class Members shall be deemed to have agreed not to sue or otherwise make any claim against Google relating to Released Claims.

**[PROPOSED] FINAL ORD. APPROVING SETTLEMENT AND DISMISSING CLAIMS OF CLASS MEMBERS**

**13.**     The benefits described above are the only consideration Google shall be obligated to give to the Class Members, with the exception of the service awards to be paid to the Class Representatives.

**14.**     The Action and all claims asserted in the Action are dismissed with prejudice as to the Class Representatives and all Class Members.

**15.**     The Court reserves exclusive and continuing jurisdiction over the Action, the Class Representatives, the Class Members, and Google for the purposes of supervising the implementation, enforcement, and construction of the Settlement and this Judgment.

**IT IS SO ORDERED.**

Dated: _____          _____

                                    THE HONORABLE LUCY H. KOH
                                    United States District Judge

# EXHIBIT B

## NOTICE OF CLASS ACTION SETTLEMENT

**TO:** **ALL NATURAL PERSONS IN THE UNITED STATES WHO HAVE NEVER ESTABLISHED A GMAIL ACCOUNT WITH GOOGLE AND WHO SENT EMAILS TO INDIVIDUALS WITH GMAIL ACCOUNTS.**

A class action settlement has been reached with Google affecting people who have never had a Gmail account of their own, but have sent an email to a Gmail account (the "Settlement"). The Settlement requires Google to make business practice changes regarding the way it processes emails involving Gmail users. The Settlement does not provide money compensation to the class members. The plaintiffs' lawyers will request that the Court award them reasonable attorneys' fees and expenses as compensation for their obtaining Google's agreement to make changes to its business practices.

You are not required to take any action. This Notice further explains the litigation, Settlement, and how you may comment or object to the Settlement if you want.

### Summary of the Action

The plaintiffs in this case allege that Google applies automated processing to scan the content of emails sent by non-Gmail users to a Gmail account, while those emails are still in transit, and uses information obtained from the scanning for advertising purposes including creating user profiles of the Gmail users. In the case plaintiffs filed in the United States District Court for the Northern District of California (the "District Court"), entitled *Matera v. Google Inc.*, 5:15-cv-04062 LHK (the "Action"), they alleged that Google's conduct violates the California Invasion of Privacy Act, Penal Code § 630 *et seq.*, ("CIPA") and the Electronic Communications Privacy Act, 18 U.S.C. § 2510 *et seq.*, ("Wiretap Act"). The complaint requests that Google be required to change its practices and stop scanning emails of non-Gmail users as described above. The complaint does not seek any form of money compensation for the plaintiffs or other class members.

The Court has not made any determination of any wrongdoing by Google, and Google denies the allegations of the complaint and plaintiffs' claims that Google's automated processing of email violates CIPA or the Wiretap Act. On July 21, 2017 the parties agreed to settle all claims

1     in the Action to avoid the costs and disruption of further litigation.

2                         **Summary of the Proposed Settlement**

3          In the Settlement, Google has agreed to cease all automated scanning of emails sent to

4     Gmail accounts for advertising purposes while the emails are in transmission prior to delivery to

5     the Gmail user's inbox.  This includes elimination of any scanning to create user profiles for

6     advertising purposes.  The Settlement defines advertising purposes as "for the purpose of serving

7     advertisements, including advertisements served in Gmail and in other Google products and

8     services. 'Advertising Purposes' includes the creation of user models for the purpose of serving

9     advertising."  Although Google does not currently conduct any scanning for advertising purposes

10    related to outbound emails sent by Gmail users, Google has agreed to refrain from initiating any

11    scanning for advertising purpose of outbound emails.  These prohibitions will remain in place for

12    three years.

13         Google also is making a business-related change to the Gmail service, as part of which,

14    Google will no longer scan the contents of emails sent to Gmail accounts for advertising purposes,

15    whether during the transmission process or after the emails have been delivered to the Gmail

16    user's inbox.  These changes are not subject to the three-year time period or other terms of the

17    Settlement.  Google views these additional changes as independent of the Settlement, but as

18    consistent with and evidencing Google's commitment to the Settlement.

19                           **Settlement Class Members**

20         You are a Settlement Class Member if you are a natural person (that is, not a business or

21    other legal entity) in the United States who has never had a Google Gmail account, but have sent

22    an email to any person or entity which was not encrypted.  (Emails are typically sent without

23    special encryption, or coding for secrecy, and plaintiffs do not allege that encrypted emails were

24    subject to Google's scanning.)  For all Settlement Class Members, the Settlement resolves their

25    claim under the federal Wiretap Act.  For Settlement Class Members within the State of

26    California, the Settlement also resolves their claim under California's CIPA law.  The Settlement

27    Class and Subclass are defined as follows:

28         All natural persons in the United States who have never established a Gmail

                                          2.

1     account with Google, and who sent unencrypted emails to individuals with

2     Gmail accounts.

3     All natural persons in the State of California who have never established a

4     Gmail account with Google, and who sent unencrypted emails to individuals

5     with Gmail accounts.

6                        **Your Rights May Be Affected by the Settlement**

7     If you have never had a Gmail account with Google but you sent unencrypted emails to

8     Gmail users in the past, or if you intend to do so in the future, your rights may be affected by this

9     Settlement.  If approved by the Court, the Settlement will affect your right to seek injunctive,

10    declaratory and other non-monetary equitable relief against Google for the alleged practices at

11    issue in this Action.  The settlement will not affect your right, if any, to seek monetary relief from

12    Google. You may obtain copies of the Settlement Agreement and related court filings, including

13    the Fee and Expense Application, by writing to [ ] or on the internet at [ ].

14                                         **No Opt-Outs**

15    Because the plaintiffs are seeking only injunctive relief and Google is only agreeing to

16    injunctive relief, class members cannot opt out of the Settlement.  This means that all members of

17    the Settlement Classes will be bound by the Settlement if the Court approves it.

18                                           **Release**

19    If the Settlement is approved, Settlement Class members will be deemed to have released

20    Google from and for any and all claims, whether known or unknown, which you have or may

21    have in the future, that were alleged or asserted against Google in the Action or that could have

22    been alleged or asserted against Google in the Action.  Notwithstanding the foregoing, you will

23    only be deemed to have released claims for declaratory, injunctive, and non-monetary equitable

24    relief.  You will not be deemed to have released any claims for monetary relief.

25                **Plaintiffs' Counsel's Request for Reasonable Attorneys' Fees and Costs**

26    The individual plaintiffs and the Settlement Classes are represented by Lieff Cabraser

27    Heimann & Bernstein, LLP; Carney Bates & Pulliam, PLCC; and Gallo LLP ("Class Counsel").

28    Class Counsel will request that the Court award them a reasonable attorneys' fee and

**NOTICE OF PROPOSED SETTLEMENT OF CLASS
ACTION – CASE NO. 5:15-CV-04062 LHK**

1  reimbursement of their costs for their service to the Settlement Class in litigating this Action and

2  obtaining the Settlement for the benefit of the Settlement Class Members.  Any attorneys' fee and

3  costs awarded by the Court will be paid solely by Google.  Google will not oppose a Fee and

4  Expense Application that does not exceed $2,200,000 in fees and Class Counsel's actual out-of-

5  pocket expenses up to $100,000.  Class Counsel will also request that the two named plaintiffs in

6  the Action each receive a service award of $2,000 each.  These requests for an award of

7  attorney's fees and costs and service awards will be filed with the Court on or before [_____]

8  and will be available for review on the internet at [_____].

9  **Final Approval Hearing, Comments, and Objections**

10  The proposed Settlement will not be final unless and until the United States District Court

11  approves it.  The Court has set a final approval hearing about the proposed settlement at [time] on

12  [month] [day], 2017 before the Honorable Lucy H. Koh, United States District Court Judge, in

13  Courtroom 8, at the Robert F. Peckham Federal Building, 280 South First Street, San Jose,

14  California, to determine whether: (1) the proposed Settlement is fair, reasonable, and adequate;

15  (2) a Judgment and Order of Final Approval should be entered by the District Court to dismiss the

16  Action with prejudice; and (3) the plaintiffs' lawyers' Fee and Expense Application should be

17  approved.  Any Settlement Class member may submit a comment or objection to the Settlement.

18  Comments or objections must be submitted in writing by [date], 2017, to the Settlement

19  Administrator at the address below, referencing "*Matera v. Google Inc.*, 5:15-CV-04062."  To be

20  considered, any objection must contain: (i) the objector's name, address, and personal signature;

21  (ii) a statement whether the objector intends to appear at the final approval hearing, either in

22  person or through counsel, and, if through counsel, identifying the counsel; and (iii) a statement

23  of the grounds for the objection.  If you do not submit a timely written objection, or if you do not

24  request participation in the final approval hearing, you will not be able to participate in the final

25  approval hearing.  Submit comments or objections to:

26  [Insert Settlement Administrator's Address]

27  ///

28  ///

///

### More Information

You may obtain more information at [website] or by contacting the Settlement Administrator at [add contact info]. **PLEASE DO NOT CONTACT THE DISTRICT COURT OR THE CLERK'S OFFICE WITH QUESTIONS REGARDING THIS NOTICE.**

This Notice is not an expression of any opinion by the Court as to the merits of the lawsuit or as to the fairness of the Settlement. This notice is published to advise you of the pendency of the Actions, the Settlement, and your associated rights.

DATED: [month] [day], 2017

BY ORDER OF THE DISTRICT COURT,
UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA

# EXHIBIT C



3301 Kerner Boulevard      415.798.5900   PHONE
San Rafael, CA  94901      415.892.7354   FAX
                           kccllc.com

July 19, 2017

Michael Sobol, Esq.
Lieff Cabraser Heimann & Bernstein LLP
275 Battery Street 29th Floor
San Francisco, CA 94111-3339

Re:     *Google Privacy Settlement*
        Class Action Settlement Administration Services Estimate

Dear Michael,

We appreciate the opportunity to submit this proposal and cost estimate for class action administration services pertaining to the *Google Privacy Settlement.*

For the purposes of this proposal, we applied the following assumptions with respect to KCC's duties:

- Perform any required CAFA mailing to appropriate government officials;
- KCC's Legal Notification Services will produce and place Internet Banner ads targeting adults 18+, at a 3x frequency cap and a 300x250 pixel banner ad size *only*, for a total of 100,000,000 impressions;
- Establish and maintain a case website that will contain relevant case documents, important dates and frequently asked questions; and
- Provide a Declaration of Notice Procedures to the parties indicating our compliance with the noticing efforts.

With experience administering more than 6,000 settlements, KCC provides high-quality and cost-effective class action administration services including pre-settlement consulting, settlement funds escrow, class member data management, legal notification, call center support, claims administration as well as disbursement and tax reporting services. We are a knowledgeable partner who proactively works with you throughout the settlement administration process and are well-positioned to handle your matter immediately.

Our domestic infrastructure, the largest in the industry, includes a 900-seat call center and document production capabilities that handle hundreds of millions of documents annually. Last year, our disbursement services team distributed $500 billion to payees in the form of 29 million checks and 11 million electronic transfers.

Please contact me with any questions regarding the enclosed case assumptions and cost estimate. We will hold this proposal and estimate open for ninety days from the date of this letter. Thank you for your time and consideration.

Sincerely,

Patrick J. Ivie
Senior EVP, Class Action Services
KCC LLC
Tel: (310) 776-7385
Cell: (310) 795-9742
Email: pivie@kccllc.com

Jenny Trang
Director, Class Action Services
KCC LLC
Tel: (212) 805-7306
Cell: (718) 753-1314
Email: JTrang@kccllc.com

## COST SUMMARY & SCOPE OF SERVICES

We will perform this administration for a flat cost of $123,500.

## CLASS MEMBER DATA MANAGEMENT

### Data and Forms Management
We will process class member data and pre-assign a unique sequential control number to each class member that will be used throughout the administration process.

We will format all relevant documents and will send all document proofs to you for approval prior to printing.

We will store all paper and electronic documentation received throughout the duration of the case. Upon the conclusion of the case, and absent any court orders or client requests pertaining to retention specifications, we will return or dispose of the physical materials within ninety (90) days. Any returned undeliverable mail will be disposed of within 2 days of receipt, absent any court orders or client requests pertaining to retention specifications. The storage of returned undeliverable mail will be billed as incurred.

## LEGAL NOTIFICATION

### CAFA Notice
We will copy the exhibits of the Settlement onto CD-ROMs and send them by USPS Priority Mail to all State Attorneys General and the US Attorney General. We recommend a generic cover letter and can share letters we have used previously.

### Notice Publication
KCC's Legal Notification Services team will produce and place Internet Banner ads, 300x250 pixels in size *only*, targeting adults 18+ at a 3x frequency cap, for a total of 100,000,000 impressions.

### Website Set-up and Maintenance
We will establish and maintain a case-specific website incorporating important court documents, dates, FAQs, forms and other pertinent case information.

### Declaration of Notice Procedures
We will prepare a Declaration of Notice Procedures to report our compliance with all class notification requirements.

 KCC

**Administration Services Estimate**
*Google Privacy Settlement*

July 19, 2017

Patrick Ivie; pivie@kccllc.com; 310.776.7385
Jenny Trang; jtrang@kccllc.com; 718.753.1314

| Key Assumptions Used in Estimate Preparation | |
|---|---|
| Size of Class | Unknown class members |
| Case Duration | 6 months |
| # of Electronic, Finalized Data Files Provided (Excel, Access, etc.) | 1 file(s) |
| CAFA Notice Required? | Yes |
| Claims Processing | No |
| Address Searches | No |
| Media Campaign Required | Yes |
| Expert Media Services: | No |
| English Only | Yes |
| # of Email Campaigns | N/A |
| Reminder Mailing | No |
| Reminder Call Campaign | No |
| Duration of Claims Filing Period | N/A |
| Type of Telephone Support | None |
| Type of Website Support | Static |
| Duration of Website Support: | 6 months |

| SUMMARY OF COSTS | |
|---|---|
| FLAT COST**** | $123,500 |

| NOTICE PROCEDURES | RESPONSE RATE | QUANTITY | RATE PER UNIT | ESTIMATED COST | TOTAL |
|---|---|---|---|---|---|
| **System and Forms Set-up** | | | | | |
| - Set up Case Management System | | | | | |
| - Format Document(s) | | | | | |
| **CAFA Mailing** | | | | | |
| - CAFA Mailing to State Attorneys General and US Attorney General | | | | | |
| **Media Campaign** | | | | | |
| - Internet Media | | | | | |
| - Targeting adults 18+ at 3x frequency cap using 300x250 banner only | | 100,000,000 impressions | | | |
| **Website Set-up & Maintenance** | | | | | |
| - Design & Set up Static Website | | | | | |
| - Domain Registration (5 yrs/Privacy Registration) | | | | | |
| - Maintenance | | | | | |
| - Server Space rental | | | | | |
| **Case Management and Declaration of Notice Procedures** | | | | | |
| **FLAT COST**** | | | | | $123,500 |

| OTHER SERVICES AND OUT-OF-POCKET EXPENSES | RESPONSE RATE | QUANTITY | RATE PER UNIT | ESTIMATED COST | TOTAL |
|---|---|---|---|---|---|
| Other Services and Ad Hoc Reporting, as needed or requested | | | | (standard hourly rates) | |
| Other Charges and Out-of-Pocket Costs*** | | | | (actual) | |

\* Estimated Postage and Handling.
\*\* Does not include applicable taxes.
\*\*\* Includes, but is not limited to long distance calls, overnight shipping, photocopies, storage, PO Box rentals, broker fees, etc.
\*\*\*\* Flat Cost is contingent upon no significant change in the scope of work and does not contain taxes.

This Class Action Administration Services Estimate and the attached Cost Summary & Scope of Services (together, the "Proposal") are valid for ninety days from 7/19/2017.  After such period, KCC reserves the right to amend the Proposal (including, without limitation, by increasing fees and costs) or to withdraw the Proposal in its sole discretion.

All services to be provided to the undersigned (the "Client") and all fees and costs set forth in the Proposal are subject to the terms, specifications, assumptions and conditions set forth in the Proposal and the attached Terms and Conditions (the "Terms of Service").

KCC Class Actions Services, LLC

BY: _____   DATE: _____

TITLE: _____

Lieff Cabraser Heimann & Bernstein LLP

BY: _____   DATE: _____

TITLE: _____

## TERMS AND CONDITIONS

All services to be provided by KCC Class Action Services, LLC (toge her with its affiliates, "KCC"), including services provided to Client as set forth in the attached Proposal, are subject to the following Terms and Conditions:

**1.   SERVICES**. KCC agrees to provide the services set forth in the Proposal attached hereto (the "Services"). Capitalized terms not otherwise defined herein have the meanings given to such terms in the Proposal. KCC will often take direction from Client's representatives, employees, agents and/or professionals (collectively, the "Client Parties") with respect to the Services. The par ies agree that KCC may rely upon, and Client agrees to be bound by, any direction, advice or information provided by the Client Parties to the same extent as if provided by Client. Client agrees and understands that KCC shall not provide Client or any other party with any legal advice.

**2.   PRICES, CHARGES AND PAYMENT**. KCC agrees to charge and Client agrees to pay, subject to the terms herein, KCC for its fees and charges as set forth in the Proposal. Client acknowledges that any estimate in he Proposal is based on information provided by Client to KCC and actual fees and charges may vary depending on the circumstances and length of the case. Notwithstanding the foregoing, where total charges are expected to exceed $10,000 in any single month, KCC may require advance payment from Client due and payable upon demand and prior to the performance of services. KCC's prices are inclusive of commission and other charges and are generally adjusted periodically to reflect changes in the business and economic environment. KCC reserves the right to reasonably increase its prices, charges and rates annually. If any such increase exceeds 10%, KCC will give thirty (30) days written notice to Client. Client agrees to pay the reasonable out of pocket expenses incurred by KCC in connection with Services, including, but not limited to, transportation, lodging, and meals.

KCC agrees to submit its invoices to Client and Client agrees that the amount invoiced is due and payable upon receipt. If any amount is unpaid as of thirty (30) days from the receipt of the invoice, the Client further agrees to pay a late charge (the "Finance Charge"), calculated as one and one-half percent (1-1/2%) of the total amount unpaid every hirty (30) days. In the case of a dispute in the invoice amount, Client shall give written notice to KCC within twenty (20) days of receipt of the invoice by Client. Client agrees the Finance Charge is applicable to instances where KCC agreed to provide certain pre-settlement work while deferring the billing of said work until the settlement phase.

**3.   FURTHER ASSURANCES**. Client agrees hat it will use its best efforts to include provisions reasonably acceptable to KCC in any relevant court order, settlement agreement or similar document that provide for the payment of KCC's fees and expenses hereunder.  No agreement to which KCC is not a party shall reduce or limit the full and prompt payment of KCC's fees and expenses as set forth herein and in the Proposal.

**4.   RIGHTS OF OWNERSHIP**. The parties understand that the software programs and other materials furnished by KCC to Client and/or developed during the course of the performance of Services are the sole property of KCC. The term "program" shall include, without limitation, data processing programs, specifications, applications, routines, and documentation. Client agrees not to copy or permit others to copy the source code from the support software or any other programs or materials furnished to Client. Fees and expenses paid by Client do not vest in Client any rights in such property, it being understood that such property is only being made available for Client's use during and in connection with the Services provided by KCC.

**5.   CONFIDENTIALITY**. Each of KCC and Client, on behalf of hemselves and their respective employees, agents, professionals and representatives, agrees to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the Services; provided, however, that if either party reasonably believes that it is required to produce any such information by order of any governmental agency or other regulatory body it may, upon not less than five (5) business days' written notice to the other party, release the required information. These provisions shall survive termination of Services.

**6.   BANK ACCOUNTS**. At Client's request, KCC shall be authorized to establish accounts with financial institutions as agent for Client or as o herwise agreed by the parties. All Client accounts established by KCC shall be deposit accounts of commercial banks with capital exceeding $1 billion and an FIR rating of "A-" or higher (each, an "Approved Bank"). In some cases, KCC may derive financial benefits from financial institutions resulting from settlement funds and other moneys on deposit or invested with them including, for example, discounts provided on certain banking services and service fees.  The amounts held pursuant to these Terms and Conditions ("Amounts Held") are at the sole risk of Client and, without limi ing he generality of the foregoing, KCC shall have no responsibility or liability for any diminution of the fund that may result from any deposit made with an Approved Bank including any losses resulting from a default by the Approved Bank or other credit losses.  It is acknowledged and agreed that KCC will have acted prudently in depositing the fund at any Approved Bank, and KCC is not required to make any further inquiries in respect of any such bank.

**7.   TERMINATION**. The Services may be terminated by either party (i) upon thirty (30) days' written notice to the other party or (ii) immediately upon written notice for Cause (defined herein). As used herein, the term "Cause" means (i) gross negligence or willful misconduct of KCC that causes serious and material harm to Client, (ii) the failure of Client to pay KCC invoices for more than sixty (60) days from the date of invoice, or (iii) the accrual of invoices or unpaid services where KCC reasonably believes it will not be paid. Termination of Services shall not relieve Client of its obligations to pay all fees and expenses incurred prior to such termination.

In the event that the Services are terminated, regardless of the reason for such termination, KCC shall reasonably coordinate with Client to maintain an orderly transfer of data, programs, storage media o o her materials furnished by Client to KCC or received by KCC in connection with the Services. Client agrees to pay for such services in accordance wi h KCC's then existing prices for such services.

**8.   LIMITATIONS OF LIABILITY AND INDEMNIFICATION**. Client shall indemnify and hold KCC, its affiliates, members, directors, officers, employees, consultants, subcontractors and agents (collectively, the "Indemnified Parties") harmless, to the fullest extent permitted by applicable law, from and against any and all losses, claims, damages, judgments, liabilities and expenses (including reasonable counsel fees and expenses) (collec ively, "Losses") resulting from, arising out of or related to KCC's performance of Services. Such indemnification shall exclude Losses resulting from KCC's gross negligence or willful misconduct. Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third-par ies against any Indemnified Party. Client shall notify KCC in writing promptly upon the assertion, threat or commencement of any claim, action, investigation or proceeding that Client becomes aware of with respect to the Services provided by KCC.

Except as provided herein, KCC's liability to Client or any person making a claim through or under Client or in connection with Services for any Losses of any kind, even if KCC has been advised of the possibility of such Losses, whether direct or indirect and unless due to gross negligence or willful misconduct of KCC, shall be limited to the total amount billed or billable for the portion of the particular work which gave rise to the alleged Loss. In no event shall KCC's liability for any Losses, whether direct or indirect, arising out of the Services exceed the greater of (i) the total amount billed and paid by or through Client for the Services and (ii) solely in the event of any loss of the Amount Held caused by KCC's gross negligence or willful misconduct, the total Amount Held under Section 6.  . In no event shall KCC be liable for any indirect, special or consequential damages such as loss of anticipated profits or other economic loss in connection with or arising out of the Services. Except as expressly set forth herein, KCC makes no representations or warranties, express or implied, including, but not limited to, any implied or express warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity. The provisions of this Section 8 shall survive termination of Services.

**9.   FORCE MAJEURE**. Whenever performance hereunder is materially prevented or impacted by reason of any act of God, strike, lock-out or other industrial or transporta ion disturbance, fire, lack of materials, law, regulation or ordinance, war or war condition, or by reason of any other matter beyond the performing party's reasonable control, then such performance shall be excused and shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

**10. INDEPENDENT CONTRACTORS**. KCC is and shall be an independent contractor of Client and no agency, partnership, joint venture or employment relationship shall arise, directly or indirectly, as a result of the Services or these Terms and Conditions.

**11. NOTICES**. All notices and requests hereunder shall be given or made upon the respective parties in writing and shall be deemed as given as of the third day following the day it is deposited in he U.S. Mail, postage pre-paid or on the day it is given if sent by facsimile or on the day after the day it is sent if sent by overnight courier to he appropriate address set forth in the Proposal or to such other address as the party to receive the notice or request so designates by written notice to the other.

**12. APPLICABLE LAW**. These Terms and Conditions will be governed by and construed in accordance with the laws of the State of California, without giving effect to any choice of law principles.

**13. ENTIRE  AGREEMENT;  MODIFICATIONS;  SEVERABILITY;  BINDING EFFECT**. These Terms and Conditions, together with the Proposal delivered pursuant hereto, constitutes the entire agreement and understanding of the parties in respect of the subject matter hereof and supersede all prior understandings, agreements or representations by or among the parties, written or oral, to the extent they relate in any way to the subject matter hereof. If any provision herein shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby. These Terms and Conditions may be modified only by a written instrument duly executed by the parties. All of the terms, agreements, covenants, representations, warranties and conditions of these Terms and Conditions are binding upon, and inure to the benefit of and are enforceable by, the parties and their respective successors and permitted assigns.

# EXHIBIT D

1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                        NORTHERN DISTRICT OF CALIFORNIA

10                                SAN JOSE DIVISION

11

12   DANIEL MATERA, SUSAN RASHKIS as         Case No.  5:15-cv-04062 LHK
     individuals, and on behalf of other persons
13   similarly situated,                     **[PROPOSED] ORDER
                                             CONDITIONALLY CERTIFYING A
14              Plaintiffs,                   SETTLEMENT CLASS AND
                                             PRELIMINARILY APPROVING
15        v.                                 PROPOSED CLASS ACTION
                                             SETTLEMENT**
16   GOOGLE INC.,
                                             Date:
17              Defendant.                   Time:
                                             Dept.:      Courtroom 8 - 4th Floor
18                                                       280 S. First Street
                                                         San Jose, CA 95113
19
                                             Judge:      The Hon. Lucy H. Koh
20                                           Trial Date: June 18, 2018

21

22

23

24

25

26

27

28

Upon review and consideration of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, and all exhibits and other evidence submitted in support thereof including the Class Action Settlement Agreement ("Agreement"), dated July 21, 2017 and executed by Plaintiffs Daniel Matera and Susan Rashkis individually and on behalf of the Class (as defined therein), and by Defendant Google Inc. ("Google"), it is hereby **ORDERED** as follows:

## FINDINGS

**1.**     To grant preliminary approval of the proposed Settlement, the Court need only find that it falls within "the range of reasonableness."  Alba Conte et al., *Newberg on Class Actions* § 11.25, at 11-91 (4th ed. 2002). *The Manual for Complex Litigation (Fourth)* (2004) ("*Manual*") characterizes the preliminary approval stage as an "initial evaluation" of the fairness of the proposed settlement made by the court on the basis of written submissions and informal presentation from the settling parties. *Manual* § 21.632.  A proposed settlement may be finally approved by the trial court if it is determined to be "fundamentally fair, adequate and reasonable." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  While consideration of the requirements for final approval is unnecessary at this stage, all of the relevant factors for final approval weigh in favor of preliminarily approving the Settlement proposed here.

**2.**     The Agreement appears to be the result of serious, informed, non-collusive negotiations conducted at arms' length by the parties' experienced counsel.  The terms of the Agreement appear to be fair, reasonable, and adequate under Federal Rule of Civil Procedure 23. The terms do not improperly grant preferential treatment to any individual or segment of the class, and fall within the range of possible approval.

**3.**     The Court bases these preliminary findings on the nature of the claims, which would have only allowed the Class to obtain injunctive relief and not monetary damages; the benefits to be conferred in the Agreement; the fact that a settlement represents a compromise of the Parties' respective positions in lieu of trial; and the submissions made by the Parties. The Court notes that the Agreement does not release any claims for monetary damages against Google.

**4.**     Google has agreed, for a period of three years commencing one-hundred eighty (180) days after the date of the Final Judgment ("Relevant Period"), to cease all processing of email content

that it applies prior to the point when the Gmail user can retrieve the email in his or her mailbox using the Gmail interface ("pre-delivery processing") and that is used for Advertising Purposes, as that term is defined in the Agreement.  No information resulting from pre-delivery processing of email content will be used for any Advertising Purpose.  In addition, Google has agreed that information from pre-delivery processing of email content that occurred before the date of the Agreement or that occurs before the Stipulated Injunction goes into effect will not be used for Advertising Purposes once the Stipulated Injunction commences.  For outgoing email sent from a Gmail account, Google will refrain from all processing of email content prior to the point when the Gmail user can retrieve the outgoing email in his or her mailbox using the Gmail interface ("outbound processing") that is used for Advertising Purposes, and from using information from outbound processing of email content for any Advertising Purpose.  Google agrees to refrain from all such activity for the Relevant Period.  The Agreement provides Plaintiffs the relief that Plaintiffs seek under both CIPA and the Wiretap Act.

**5.**    As stated in the Settlement Agreement, "Google represents that it has no present intention of eliminating the technical changes . . . after the expiration of the [three-year] term of the injunction." Agreement at 40(d).

**6.**    It is appropriate to provisionally certify the Settlement Classes (defined below), for settlement purposes only, pursuant to Federal Rule of Civil Procedure 23(b)(2):

**(a)**    For settlement purposes only, the Settlement Classes are so numerous that joinder of all members is impracticable.

**(b)**    For settlement purposes only, Plaintiffs' claims are typical of the Settlement Classes' claims.

**(c)**    For settlement purposes only, there are questions of law or fact common to the Settlement Classes.

**(d)**    For settlement purposes only, Plaintiffs and Class Counsel can fairly and adequately protect the interests of the Settlement Classes.

**IT IS ORDERED THAT:**

1. **Conditional Certification.**  The Settlement Classes are conditionally certified, for settlement purposes only, under Federal Rule of Civil Procedure 23(b)(2) as:

    **(a)**    All natural persons in the United States who have never established a Gmail account with Google, and who have sent unencrypted emails to individuals with Gmail accounts.

    **(b)**    All natural persons in the State of California who have never established a Gmail account with Google, and who have sent unencrypted emails to individuals with Gmail accounts.

2. **Appointment of Class Representatives and Class Counsel for Settlement Purposes Only.**  Plaintiffs Daniel Matera and Susan Rashkis are conditionally certified as the Class Representatives to implement the parties' settlement in accordance with the Agreement.  Lieff Cabraser Heimann & Bernstein, LLP, Carney Bates & Pulliam, PLLC, and Gallo, LLP are conditionally appointed as Class Counsel for settlement purposes under Rule 23(g).  The Court finds that Plaintiffs and Class Counsel will fairly and adequately protect the Settlement Classes' interest.

3. **Settlement Approval.**  The Court GRANTS preliminary approval of the Settlement and all of the terms and conditions contained in it.

4. **Provision of Class Notice.**

    **(a)**    The Court approves the proposed notice and finds that the dissemination of the Notice substantially in the manner and form set forth in the Agreement complies fully with the requirements of Federal Rule of Civil Procedure 23 and due process of law.  The notice procedures set forth in the Agreement are hereby found to be the best practicable means of providing notice of the Agreement under the circumstances and, when completed, shall constitute due and sufficient notice of the proposed Agreement and the Final Approval Hearing to all persons affected by and/or entitled to participate in the Agreement, in full compliance with the applicable requirements of Federal Rule of Civil Procedure 23 and due process.

    **(b)**    Pursuant to the Notice Plan attached as Exhibit C to the Agreement, notice shall be published via KCC Class Action Services, LLC's Legal Notification Services team, which will place banner ads on a collection of popular websites.  The Settlement Administrator represents that it will ensure these ads will make 100,000,000 unique impressions upon internet users, with no

single user receiving more than three impressions.  The banner ads will direct internet users, via a link, to the Settlement Website providing fulsome notice to Class Members.  This is sufficient to inform Class Members, who are all internet users, of the proposed Settlement and their right to object to it.

**(c)**     No later than 14 days before the Final Approval Hearing Google shall file a declaration attesting that notice was provided in accordance with the Settlement and this Order.

**5.      Final Approval Hearing.**   The Court will hold a Final Approval Hearing at [_____] on [_____], 2017. At the Final Approval Hearing, the Court will consider: (1) whether the Agreement should be finally approved as fair, reasonable, and adequate for the Class, (2) whether a judgment dismissing the Action with prejudice, based on final settlement approval, should be entered; and (c) whether Plaintiffs' Counsel's application for attorneys' fees and expenses and for service awards to the Class Representatives should be granted.

**6.      Objection to Settlement.**

**(a)**     Each Class Member shall be given a full opportunity to comment on or object to the Agreement, and to participate at a Final Approval Hearing to be held in this Court on [_____], 2017.  The Class Notice shall state the date, time and location of the hearing. Any Class Member wishing to comment on or object to the Agreement shall file such comment or objection in writing shall mail such comment or objection to the Settlement Administrator within 90 days after the dissemination of notice. The Settlement Administrator shall forward copies of such comments or objections to counsel for both parties. Class Counsel shall file such comments and/or objections with the Court within 100 days after dissemination of notice. Should any party wish to file a written response to any comment or objection filed by a Class Member, such response shall be filed no later than 10 days before the Final Approval Hearing.  No Class Member shall be entitled to be heard at the Final Approval Hearing, whether individually or through counsel, unless written notice of the Class Member's intention to appear at the Final Approval Hearing shall have been timely mailed to the Settlement Administrator within 90 days after the dissemination of notice.

**(b)**     Any objection must contain: the objector's name, address, and personal

1 | signature; a statement whether the objector intends to appear at the Final Approval Hearing, either in

2 | person or through counsel, and, if through counsel, identifying counsel by name, address, and phone

3 | number; and a statement of the grounds for his, her, or its objection.

4 |         **(c)**      The date of the postmark on the envelope containing the written statement

5 | objecting to the settlement shall be the exclusive means used to determine whether an objection

6 | and/or intention to appear has been timely submitted. Class Members who fail to mail timely written

7 | objections in the manner specified above shall be deemed to have waived any objections and shall be

8 | forever barred from objecting to the Agreement and the proposed settlement by appearing at the

9 | Final Approval Hearing, appeal, collateral attack, or otherwise.

10 |      **7.**      **Final Approval.**      Within 60 days after the date of this Order the Class

11 | Representatives shall file their memorandum in support of final approval of the Settlement, and

12 | Class Counsel shall file their application for attorneys' fees and expenses and for service awards to

13 | the Class Representatives.

14 |      **8.**      **Termination.**    If the Settlement Agreement terminates for any reason, this Action

15 | will revert to its previous status in all respects as it existed before the Parties executed the

16 | Agreement.  This Court's conditional certification of the Settlement Classes and findings underlying

17 | the conditional certification shall be solely for settlement purposes.  This Order will not waive or

18 | otherwise impact the Parties' rights or arguments.

19 |      **9.**      **Stay of Dates and Deadlines.**    All discovery and pretrial proceeding deadlines are

20 | hereby vacated and suspended until further notice from the Court, except for such actions as are

21 | necessary to implement the Agreement and this Order.

22 |      **10.**      **CAFA Notice.**    Google shall file with the Court a Notice of Compliance with 28

23 | U.S.C. § 1715 within 30 days after the date of this Order.

24 |      **11.**      **Settlement Administrator.**    The Court hereby approves KCC Class Action Services,

25 | LLC as Settlement Administrator to implement the Notice Plan.

26 |      **12.**      **Definitions.**    Unless otherwise defined herein, all terms that are capitalized herein

27 | shall have the meanings ascribed to those terms in the Agreement.

28 |

**13.     Jurisdiction.**  The Court has jurisdiction over this Action pursuant to 28 U.S.C. §§ 1331 and 1367, as Plaintiffs bring claims arising under the Electronic Communications Privacy Act of 1986 and the California Invasion of Privacy Act.

**IT IS SO ORDERED.**

Dated: _____          _____

                                    LUCY H. KOH
                                    United States District Judge