UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL MATERA and SUSAN RASHKIS, as individuals, and on behalf of other persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No. 5:15-CV-04062 LHK<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS AND SERVICE AWARDS** |

Having reviewed the Plaintiffs' Motion for an Award of Attorneys' Fees and Costs and Service Awards and the documents submitted in support thereof, the arguments at the February 8, 2018 hearing, the supplemental declarations filed on February 8 and 9, 2018, and the record in this case, the Court now FINDS, CONCLUDES, and ORDERS as follows:

1. Plaintiff Daniel Matera, on behalf of himself and those similarly situated, commenced this action (the "Action") on September 4, 2015. (ECF No. 1). The Complaint alleged that Google's practices of intercepting, extracting, reading, and using the email contents of individuals who do not have email accounts with Google ("non-Gmail" users)—but who exchange email messages with Gmail accountholders—violated the California Invasion of Privacy Act, Cal. Pen. Code §§ 630, *et seq.* ("CIPA") and the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510, *et seq.* ("ECPA").

2. On October 29, 2015, Google concurrently filed a Motion to Dismiss the Complaint (ECF No. 20) and a Motion to Stay (ECF No. 21) in light of the Supreme Court's then-pending opinion in *Spokeo v. Robins*, 136 S. Ct. 1540 (2016) ("*Spokeo*"). In response, on December 4, 2015, Plaintiffs filed an Opposition to Google's Motion to Dismiss (ECF No. 29) and an Opposition to Google's Motion to Stay (ECF No. 30). The Court granted Google's Motion to Stay on February 5, 2016. (ECF No. 36). Following the issuance of the *Spokeo* opinion on May 16, 2016, the parties provided additional, supplemental briefing on the opinion's impact, if any, on Plaintiff Matera's Article III standing (ECF Nos. 41-42, 45-46).

3. On August 12, 2016, the Court issued an Order Denying Google's Motion to Dismiss as to the Merits of Plaintiff's Claims (ECF No. 49). Separately, on September 23, 2016, the Court issued an Order Granting in Part and Denying in Part Defendant's Motion to Dismiss Based on Lack of Standing (ECF No. 54), which granted, with prejudice, Google's motion to dismiss Plaintiff Matera's claim for an injunction as it relates to Google Apps for Education,[1] but denied the remainder of Google's motion.

---

[1] Plaintiffs initially challenged scanning practices associated with each of Google's email platforms: Gmail, Google Apps for Education, and Google Apps for Business. *See,* Complaint (ECF No. 1). The Court determined that "Google ceased intercepting and scanning, for advertising purposes, the contents of emails processed via Google Apps for Education" (ECF No. 54 at 27). In addition, although the Court denied Google's motion as it relates to Google Apps

*Footnote continued on next page*

4.     Subsequently, on October 17, 2016, Plaintiff Matera filed an Amended Complaint (ECF No. 58), adding additional Named Plaintiff Susan Rashkis, eliminating allegations pertaining to Google Apps for Education and Google Apps for Work, and refining and clarifying allegations relating to technical aspects of Google's challenged practices. On October 21, 2016, Google filed its Answer to the Amended Complaint (ECF No. 59).

5.     The parties participated in mediations before mediator, Randall Wulff on August 31, 2016 and November 4, 2016. Those mediations resulted in a proposed settlement, executed on November 22, 2016, for which a Motion for Preliminary Approval was filed on December 13, 2016 (ECF No. 62), and which the Court denied approval of on March 16, 2017 (ECF No. 71). The parties then resumed both the Action and parallel settlement discussions, resulting in a second proposed settlement, which was executed on July 21, 2017 and for which a Motion for Preliminary Approval was filed on the same day (ECF No. 79). The Court granted preliminary approval to this settlement on August 31, 2017 and ordered that Class Counsel file an application for attorneys' fees on or before October 30, 2017 (ECF No. 89).

6.     Plaintiffs have now filed their Motion for an Award of Attorneys' Fees and Costs and Service Awards ("Fee Motion"), supported by the joint declaration of Class Counsel Michael Sobol, Hank Bates, and Ray Gallo ("Joint Declaration"), which attaches as exhibits summaries of Class Counsel's hours billed, hourly rates, and costs incurred, as well as declarations from each Class Representative attesting to their respective participation in this Action. The Court addresses, in turn, the appropriateness of the attorneys' fees, costs, and service awards sought.

7.     In a class action settlement, a court may award reasonable attorneys' fees and costs as authorized by law or by the parties' agreement. *See* Fed. R. Civ. P. 23(h); *see also Hendricks v. Starkist Co.*, No. 13-cv-00729-HSG, 2016 U.S. Dist. LEXIS 134872, at *34 (N.D. Cal. Sept. 29, 2016) (stating a court has the power to award reasonable attorneys' fees and costs where "a

---

*Footnote continued from previous page*
for Work, the Court noted that "the Court has learned that Google publicly represents that Google no longer intercepts, scan and analyzes for advertising purposes emails transmitted via Google Apps for Work" (*id.* at 32). Consequently, as noted above, the Amended Complaint eliminated allegations related to Google Apps for Education and Google Apps for Work.

litigant proceeding in a representative capacity secures a 'substantial benefit' for a class of persons.").

8. ECPA provides for an award of reasonable attorneys' fees and costs. *See* 18 U.S.C. § 2520(b)(3) (providing that appropriate relief includes "a reasonable attorney's fee and other litigation costs reasonably incurred."). In addition, in light of the CIPA claim, the requested attorneys' fees are authorized in this Action pursuant to California's "private attorney general" statute, which provides for an award of attorneys' fees "to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if . . . a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons. . . ." *See* Cal. Civ. Proc. Code § 1021.5; *Serrano v. Unruh*, 652 P.2d 985, 991 (Cal. 1982) (explaining that such an award advances "the policy of encouraging private actions to vindicate important rights affecting the public interest").

9. "Under Ninth Circuit law, the district court has discretion in [class settlement] cases to choose either the percentage-of-the-fund or the lodestar method." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). While courts often rely on the percentage method where a settlement creates a common fund, they rely on the lodestar method where—as here—the fees are being paid separately from the class relief and the relief is injunctive and thus not readily quantifiable. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998); *see also In re Toys "R" Us FACTA Litig.*, 295 F.R.D. 438, 460 (C.D. Cal. 2014).

10. Under the lodestar method, a "lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth Headset Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011) (citing *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003)). The district court may adjust this lodestar figure "upward or downward by an appropriate positive or negative multiplier reflecting a host of reasonableness factors." *Id.* at 941–42 (citations and internal quotation marks omitted). These factors include "the quality of representation, the benefit obtained for the class, the complexity

1 and novelty of the issues presented, and the risk of nonpayment.'" *Id.* at 942 (quoting *Hanlon v.*
2 *Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998)).

3       11.     Here, Class Counsel seek $2,200,000 in attorneys' fees along with reimbursement
4 of $51,421.93 in costs and $2,000 in incentive awards for each of the two Class representatives.
5 Class Counsel contend that their lodestar is $2,062,439.50 and that their multiplier is 1.07. The
6 Court will assess the appropriateness of this multiplier below, in the context of the factors set
7 forth in *In re Bluetooth*.

8       **A.**     **Quality of Representation and Benefit Obtained for the Class**

9       12.     Pursuant to the Settlement, Google shall provide the following benefits to Class
10 Members:

11     Stipulated Injunction. For a period of three years commencing one-hundred eighty (180)
12 days after the date of the Final Judgment (the "Relevant Period"), Google shall be bound by the
13 Stipulated Injunction set forth in the Settlement. Under the terms of the Stipulated Injunction,
14 Google shall make technical changes such that:

15     For incoming email sent to a Gmail account, Google will cease all processing of email
16 content that it applies prior to the point when the Gmail user can retrieve the email in his or her
17 mailbox using the Gmail interface ("pre-delivery processing") and that is used for Advertising
18 Purposes, as that term is defined in the Settlement. No information resulting from pre-delivery
19 processing of email content will be used for any Advertising Purpose. In addition, information
20 from pre-delivery processing of email content that occurred before the date of this Agreement or
21 that occurs before the Stipulated Injunction goes into effect will not be used for Advertising
22 Purposes once the Stipulated Injunction commences. Google agrees to refrain from all such
23 activity described in this section (Section 40(a) of the Settlement) for the Relevant Period. These
24 technical changes and commitments shall apply to all incoming email sent to Gmail users in the
25 United States. For outgoing email sent from a Gmail account, Google will refrain from all
26 processing of email content prior to the point when the Gmail user can retrieve the outgoing email
27 in his or her mailbox using the Gmail interface ("outbound processing") that is used for
28 Advertising Purposes, and from using information from outbound processing of email content for

1  any Advertising Purpose.  Google agrees to refrain from all such activity for the Relevant Period.

2  These technical changes and commitments shall apply to all outgoing emails sent by Gmail users

3  in the United States.

4         13.     At the February 8, 2018 hearing on the motion for final approval of class action

5  settlement, Google's counsel represented that Google had already implemented the technical

6  changes and thus the Stipulated Injunction would be in effect for three years and 180 days after

7  the Final Judgment.

8         14.     Pursuant to the Settlement, if Google's new email architecture described above

9  becomes outdated and must be improved or replaced during the pendency of the injunction, then

10  Google may change its system design in a manner that will continue to comply with the

11  requirements of the injunction above.

12         15.     In the Settlement, Google represented that it has no present intention of

13  eliminating the technical changes after expiration of the term of the injunction.  Settlement

14  Section 40(d). Moreover, about three months after the Court denied preliminary approval of the

15  parties' first class action settlement on March 15, 2017, Google announced on June 23, 2017 that

16  it would no longer scan the content of Gmail emails for targeted advertising.  Brian Fung, "Gmail

17  will no longer snoop on your emails for advertising purposes," Washington Post, June 26, 2017.

18         16.     Additionally, because the Settlement only contemplates injunctive relief, no Class

19  Member (with the exception of the Class Representatives) releases his or her rights to seek

20  monetary damages from Google.

21         17.     In prosecuting this Action, Class Counsel reviewed and analyzed more than

22  233,000 pages of documents produced by Google, analyzed deposition testimony from key

23  Google employees from other litigation, and took the depositions of Google employees to ensure

24  that the Settlement's terms fully addressed Google's current practices.  Class Counsel also

25  successfully opposed Google's motion to dismiss, both on the merits and as to standing under

26  *Spokeo*, and participated in months-long negotiations that included two separate mediation

27  sessions.  Accordingly, the Court finds that the quality of representation and the benefit obtained

28  for the class weighs in favor of Class Counsel's fee request.

**B.    Complexity and Novelty of the Issues Involved**

18.    In terms of both complexity and novelty, this Action required applying the law to highly-sophisticated, highly-technical fact patterns, addressing questions such as, *inter alia*, whether discrete acts of processing occur within the "ordinary course of business" or whether the Google's message scanning occurs "in transit" in the milliseconds taken to move an email from sender to recipient. Beyond the technical novelty and sophistication of the issues contemplated in this Action, this Action also required the litigation of standing under statutorily-codified privacy rights following the Supreme Court's opinion in *Spokeo v. Robins*, 136 S. Ct. 1540 (2016). *See, e.g.* (ECF Nos. 41, 42, 45, 46). Accordingly, the complexity and novelty of issues *In re Bluetooth* factor weighs in Class Counsel's favor.

**C.    Risk of Nonpayment**

19.    In taking this matter on a contingent basis, Class Counsel assumed considerable risk. Class Counsel advanced all of the costs of litigation and of attorney and paralegal time. In light of these facts, the Court finds that the risk of nonpayment weighs in favor of Class Counsel's fee request.

**D.    Application of the Lodestar Method Demonstrates the Reasonableness of the Requested Fee**

20.    The Ninth Circuit recently reconfirmed that "[t]here is a strong presumption that the lodestar figure represents a reasonable fee." *Rodriguez v. W. Publ'g Corp.*, 602 F. App'x 385, 387 (9th Cir. 2015). "Only in rare or exceptional cases will an attorney's reasonable expenditure of time on a case not be commensurate with the fees to which he is entitled." *Cunningham v. County of Los Angeles*, 879 F.2d 481, 488 (9th Cir. 1988) (emphasis omitted). Lodestar is calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989). As this figure approximates the market value of the legal services, it "'presumptively provides an accurate measure of reasonable attorney's fees.'" *In re Toys "R" Us*, 295 F.R.D. at 460, (quoting *Harris v. Marhoefer*, 24 F.3d 16, 18 (9th

1   Cir. 1994)); *Guam Soc'y of Obstetricians & Gynecologists v. Ada*, 100 F.3d 691, 696 (9th Cir.
2   1996).

3       21.    The Joint Declaration of Class Counsel states that a total of 4,064.50 hours were
4   expended by 19 billers for a lodestar of $2,062,439.50.  The Court approves the hourly rates for
5   all billers except Richard Anthony at Lieff Cabraser Heimann & Bernstein, LLP ("Lieff
6   Cabraser") and Justin Craig at Carney Bates & Pulliam, PLLC ("Carney Bates").

7       22.    The Court notes that on August 18, 2017, Chief Judge Phyllis Hamilton approved
8   Mr. Anthony's hourly rate of $345 for research and litigation support in *Campbell v. Facebook*,
9   Case No. 13-CV-05996-PJH, ECF No. 238-1 and 253.  Although Class Counsel contend that Mr.
10  Anthony's role transitioned from Paralegal-Research Department to Litigation Support in 2016,
11  ECF No. 100, Class Counsel still requested a $345 hourly rate for Mr. Anthony in their
12  application for attorney's fees in the *Campbell* case on May 26, 2017, ECF No. 238-1, which as
13  stated above was approved on August 18, 2017, ECF No. 253.  For the other Lieff Cabraser
14  billers in the *Campbell* case and in the instant case, Class Counsel request the same hourly rates
15  in both cases.  Class Counsel in the instant case have not provided sufficient support for the
16  increase in Mr. Anthony's hourly rate to $375 as requested in the instant case.  Therefore, Mr.
17  Anthony's hourly rate will be approved at $345.  Mr. Anthony only billed 12 hours in the instant
18  case, ECF No. 97-1; thus, the lower hourly rate reduces the lodestar only by $360.

19      23.    Similarly, the Court notes that on August 18, 2017, Chief Judge Phyllis Hamilton
20  approved Carney Bates associate Justin Craig's hourly rate of $375 in *Campbell v. Facebook*,
21  Case No. 13-CV-05996-PJH, ECF No. 238-1 and 253.  For the other Carney Bates billers in the
22  *Campbell* case and in the instant case, Class Counsel request the same hourly rates in both cases.
23  However, in the instant case Class Counsel request that Mr. Craig, who graduated from the
24  University of Arkansas at Little Rock in 2014 and practices in Little Rock, Arkansas be
25  compensated at an hourly rate of $395.  Class Counsel request this same hourly rate of $395 for
26  Carney Bates associates Kristin Brown and David Slade, who both graduated from the University
27  of Arkansas, Little Rock in 2013 and have an additional year of legal experience.  Class Counsel
28  in the instant case have not provided sufficient support for the increase in Mr. Craig's hourly rate

1 to $395 as requested in the instant case. Therefore, Mr. Craig's hourly rate will be approved at
2 $375. Mr. Craig only billed 20.60 hours in the instant case, ECF No. 97-1; thus, the lower hourly
3 rate reduces the lodestar only by $412.

4    24.    Accordingly, the Court finds that Plaintiffs' lodestar is $2,061,667.50 and the
5 multiplier is 1.067.

### E. The Requested Fee Represents a Multiplier Well Within the Range of Reasonableness in the Ninth Circuit and Within This District

8    25.    With the above reduction, Class Counsel seek a multiplier of 1.067 on their
9 lodestar of $2,061,667.50, for a total of $2,200,000 in attorneys' fees. For the purpose of
10 awarding Class Counsel a reasonable fee, the lodestar may be adjusted in light of the (1) results
11 obtained, (2) novelty and complexity of the questions presented, (3) skill exhibited by counsel, (4)
12 preclusion of other legal work because of counsel's acceptance and prosecution of the case, and
13 (5) risk of nonpayment. *Hanlon*, 150 F.3d 1011, 1029 (9th Cir. 1998); *Kerr v. Screen Extras*
14 *Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975); *Ketchum v. Moses*, 24 Cal.4th 1122, 1132, 17 P.3d
15 735, 741 (Cal. 2001). The Ninth Circuit recently held that a district court "*must* apply a risk
16 multiplier to the lodestar 'when (1) attorneys take a case with the expectation they will receive a
17 risk enhancement if they prevail, (2) their hourly rate does not reflect that risk, and (3) there is
18 evidence the case was risky.' Failure to apply a risk multiplier in cases that meet these criteria is
19 an abuse of discretion." *Stetson v. Grissom*, 821 F.3d 1157, 1166 (9th Cir. 2016) (emphasis in
20 original). Each of these three factors is present here—Class Counsel anticipated a risk multiplier
21 upon commencement of this action; the hourly rates utilized in the lodestar calculation include no
22 risk multiplier but are simply regional market rates; and this case posed heightened risks due to
23 the application of novel legal issues in a highly technical context.

24    26.    In *Vizcaino v. Microsoft Corp.*, the Ninth Circuit conducted a survey of attorneys'
25 fees awards in cases ranging from $50 to 200 million between 1996 and 2001. 290 F.3d 1043,
26 1052–54 (9th Cir. 2002). In the vast majority of cases (20 of 24, or 83%), the multiplier ranged
27 from 1.0–4.0. *Id.* Here, Class Counsel seek a 1.067 multiplier of their $2,061,667.50 lodestar, for

1  a total of $2,200,000 in fees. This multiplier of 1.067, in the bottom of *Vizcaino*'s continuum, is
2  within the range of reasonableness of multipliers.

3    **F.    Class Counsel's Litigation Expenses Were Reasonably Incurred in
4            Furtherance of the Prosecution of the Claims, and Should be Awarded**

5       27.   Class Counsel also request reimbursement for out-of-pocket expenses incurred to
6  prosecute this class action. Class Counsel state that these expenses were incidental and necessary
7  to the effective representation of the Class. *See, e.g.*, *In re Media Vision Tech. Sec. Litig.*, 913 F.
8  Supp. 1362, 1366 (N.D. Cal. 1996). The Court agrees. Class Counsel incurred $51,421.93 in
9  unreimbursed out-of-pocket costs over the course of this litigation, which included, *inter alia*,
10 travel for depositions and hearings, deposition transcripts, mediation fees, legal research, postage,
11 and other customary litigation expenses. As detailed in Class Counsel's Joint Declaration, these
12 costs were reasonably incurred in furtherance of the investigation, prosecution, and Settlement of
13 the Action and should be reimbursed. *See In re Toys "R" Us FACTA Litig.*, 295 F.R.D. at 469.

14   **G.    The Requested Service Awards Are Reasonable and Should Be Approved**

15      28.   As the Ninth Circuit has recognized, "named plaintiffs, as opposed to designated
16 class members who are not named plaintiffs, are eligible for reasonable incentive payments."
17 *Staton*, 327 F.3d at 977. Such awards are "intended to compensate class representatives for work
18 done on behalf of the class [and] make up for financial or reputational risk undertaken in bringing
19 the action." *Rodriguez v. West Publishing Corp.,* 563 F.3d 948, 958 (9th Cir. 2009). Class
20 Counsel seek service awards of $2,000 for each Class Representative. In this District, service
21 awards in the amount of $5,000 per class representative are "presumptively reasonable." *In re*
22 *LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 592 (N.D. Cal. 2015); *Dyer v. Wells Fargo Bank,*
23 *N.A.,* 303 F.R.D. 326, 335 (N.D. Cal. 2014); *Faigman v. AT & T Mobility LLC*, No. 06-cv-04622-
24 MHP, 2011 WL 672648, at *5 (N.D. Cal. Feb. 16, 2011).

25      29.   The requested service awards are well justified under the circumstances. The
26 Class Representatives actively participated in this Action, investing substantial time over the past
27 two years in collaborating and communicating with Class Counsel, monitoring the litigation and
28 reviewing case filings and other pertinent documents, as described in Class Counsel's moving

papers and in Declarations by the Class Representatives.  Further, in advocating for the privacy rights of the Class, the Class Representatives were willing to risk a level of public exposure that is attendant with litigation.  In so doing, the Class Representatives achieved a significant result for members of the Class.  Accordingly, having considered the time and effort expended by the Class Representatives, as well as the result achieved for the Class, the Court concludes that the requested service award of $2,000 for each Class Representative is reasonable.

30. It is therefore ORDERED that Class Counsel be awarded $2,200,000 in reasonable attorneys' fees and $51,421.93 in costs, and that Class Representatives Daniel Matera and Susan Rashkis will each receive $2,000 service awards, in accordance with the Settlement Agreement.

**IT IS SO ORDERED.**

Dated:  February 9, 2018

*Lucy H. Koh*
HONORABLE LUCY H. KOH
UNITED STATES DISTRICT JUDGE